**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**(www.flsb.uscourts.gov)**

In re:

São Fernando Açúcar e Álcool Ltda., São        Chapter 15
Fernando Energia I Ltda., São Fernando
Energia II Ltda., São Marcos Energia e
Participações Ltda., and São Pio        Case No.:
Empreendimentos e Participações Ltda.

      Debtors in a Foreign Proceeding.
_____/

**MOTION FOR ORDER GRANTING RECOGNITION OF FOREIGN MAIN**
**PROCEEDING PURSUANT TO §§ 1515 AND 1517 OF THE BANKRUPTCY CODE**

Vinicius Coutinho Consultoria e Perícia S/S Ltda. (the "Foreign Representative"), the duly

appointed judicial administrator of the estates in bankruptcy of São Fernando Açúcar e Álcool

Ltda. ("SF A&A"), São Fernando Energia I Ltda. ("SF Energia I"), São Fernando Energia II Ltda.

("SF Energia II"), São Marcos Energia e Participações Ltda. ("São Marcos") and São Pio

Empreendimentos e Participações Ltda. ("São Pio") (collectively, the "Debtors" or the "São

Fernando Group"), files this *Motion for Order Granting Recognition of Foreign Main Proceeding*

*Pursuant to §§ 1515 and 1517 of the Bankruptcy Code* (the "Motion"). The Motion seeks entry

of an Order granting (i) recognition, pursuant to 11 U.S.C. § 1517[1], of the Debtors' court-approved

insolvency proceeding pending in the 5th Civil Court of the City of Dourados, in the state of Mato

Grosso do Sul, Brazil (the "Brazilian Bankruptcy Court") under case no. 0802789-

69.2013.8.12.0002 (the "Brazilian Bankruptcy Case"); (ii) related relief pursuant to sections 1520

_____

[1] Unless otherwise specified herein, all statutory references shall be to Title 11 U.S.C. §
101 *et seq.* (the "Bankruptcy Code").

and 1521 of the Bankruptcy Code; and (iii) any other and further relief which may be available under the Bankruptcy Code.  In support of the Motion, the Foreign Representative respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The Foreign Representative files the Chapter 15 Petition for Recognition of a Foreign Proceeding (the "Petition") pursuant to section 1504 of the Bankruptcy Code seeking recognition of the Brazilian Bankruptcy Case as a "foreign main proceeding" as defined in section 1502(4) of the Bankruptcy Code.

2.      The Declaration of Vinicius Alexander Oliva Sales Coutinho (the "Declaration"), made under penalty of perjury, addressing the requirements of § 1515(c) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 1007(a)(4), is attached hereto as **Exhibit "A".**

3.      The Order placing the Debtor in liquidation pursuant to Brazilian law is attached to the Declaration as Exhibit 3.

4.      The Petition, this Motion, and the accompanying Declaration demonstrate that the Brazilian Bankruptcy Case should be recognized as a foreign main proceeding pursuant to section 1517 of the Bankruptcy Code.

5.      The Trustee seeks the type of relief that Chapter 15 was designed to provide, and the Brazilian Bankruptcy Case and this Petition meet all the requirements for recognition and the requested relief.

## JURISDICTION AND VENUE

6.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and sections 109 and 1501 of the Bankruptcy Code.

7.      This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(P), and the Court

may enter a final order consistent with Article III of the United States Constitution.

8.      The city of Dourados, in the state of Mato Grosso do Sul, Brazil, is the Debtors' center of main interests, as the Debtors were maintained their principal place of business there.

9.      Venue is proper in this district under 28 U.S.C. § 1410. The Foreign Representative has retained Sequor Law, P.A., in this district and Sequor Law holds in its trust account in this district US$1,500 on behalf of and for the benefit of the Debtors, to which funds Sequor Law has no rights of setoff, charging lien, or similar right.

## BACKGROUND

10.      The Declaration sets forth in detail the background and basis for recognition. *See* Declaration.

11.      The Foreign Representative has satisfied each of the requirements for recognition of the Debtors and the Foreign Representative under Chapter 15 of the Bankruptcy Code, as follows:

(a)      The Foreign Representative qualifies as a "foreign representative" under section 101(24) of the Bankruptcy Code by virtue of his appointment as judicial administrator the São Fernando Group by the Brazilian Bankruptcy Court, which grants him the power to, among other things, (i) carry out the liquidation of the São Fernando Group under Brazilian law; (ii) investigate the business and affairs of the São Fernando Group including conducting discovery of documents and information wherever located; and (iii) pursue available claims for the benefit of the creditors.  Implicit within the powers granted to him under Brazilian law, the Foreign Representative may file auxiliary insolvency proceedings abroad and be recognized as the foreign representative for the bankruptcy of the Debtors under the laws of Brazil.

(b)      The Brazilian Bankruptcy Case qualifies as a "foreign proceeding" under

section 101(23) of the Bankruptcy Code because it is a judicial proceeding pending in the Brazilian Bankruptcy Court under the bankruptcy laws of Brazil for the purpose of liquidation. *See* Exh. A, at Exh. 1.

(c)    The Brazilian Bankruptcy Case further qualifies as a "foreign main proceeding" because the Brazilian Bankruptcy Case is a foreign proceeding pending in the state of Mato Grosso do Sul, in Brazil, which is the Debtors' principal place of business.

(d)    Trustee submits that section 109(a) of the Bankruptcy Code does not apply herein.  To the extent section 109(a) of the Bankruptcy Code applies in Chapter 15 cases, the Debtors qualify as a "debtor" under section 109(a) because the Debtor is the subject of a foreign proceeding and has assets in the United States.

(e)    Lastly, this Petition is accompanied by the Brazilian Bankruptcy Court's Liquidation Order converting the initial court-approved reorganization to a liquidation of the Debtors, as well as the Brazilian Bankruptcy Court's approval of the Trustee's commitment agreement as judicial administrator of the São Fernando Group.  *See* Exh. A, at Exhs. 1 & 2. Further, the Statements required by section 1515(c) of the Bankruptcy Code and Fed. R. Bankr. P. 1007(a)(4) are being filed together herewith.  *See* Exh. A.

## **RELIEF REQUESTED**

12.    By this Motion, the Trustee respectfully requests an Order pursuant to sections 105(a), 1507, 1517, 1520 and 1521 of the Bankruptcy Code, substantially in the form of the Proposed Order, attached hereto as **Exhibit "B"**, granting the following relief:

(a)    Recognizing the Brazilian Bankruptcy Case as a "foreign main proceeding" and the Trustee as the Foreign Representative of the Debtors;

(b)    Granting the relief allowable as of right upon recognition of a foreign main

proceeding under section 1520 of the Bankruptcy Code;

      (c)    Granting the following additional relief under section 1521 of the Bankruptcy Code:

      (1)    staying the commencement or continuation of any action or proceeding without the consent of the Foreign Representative concerning the rights, obligations or liabilities of the Debtors, the Debtors' estate to the extent not stayed under section 1520(a) of the Bankruptcy Code;

      (2)    staying execution against the Debtor to the extent not stayed under § 1520(a);

      (3)    suspending the right to transfer or otherwise dispose of any assets of the Debtors to the extent this right has not been suspended under section 1520(a);

      (4)    providing for the examination of witnesses, the taking of evidence, and the delivery of information concerning the assets, affairs, rights, obligations or liability of the Debtor and the Debtor's estate under § 1521(a)(4), the Federal Rules of Bankruptcy Procedure, including Fed. R. Bankr. P. 2004, and Local Rule 2004-1;

      (5)    entrusting the administration or realization of all of the assets of the Debtors within the territorial jurisdiction of the United States to the Foreign Representative;

      (6)    entrusting the distribution of all or part of the assets of the Debtors located within the United States to the Foreign Representative;

      (7)    otherwise granting comity to and giving full force and effect to the Orders of the Brazilian Bankruptcy Court, including, without limitation, those attached as Exhibits 1 and 2 to the Declaration; and

(d)      granting the Foreign Representative such other and further relief as this Court may deem just and proper.

## **CONCLUSION**

WHEREFORE, the Trustee respectfully requests that the Court enter an Order granting the relief requested herein and such other and further relief as the Court deems just and proper.

Dated: August 22, 2019,                                Respectfully submitted,

**SEQUOR LAW, P.A.**
1001 Brickell Bay Dr., 9th Floor
Miami, Florida 33131
Telephone: (305) 372-8282
Facsimile: (305) 372-8202
Email: lblanco@sequorlaw.com
            jmendoza@sequorlaw.com


By:    */s/ Leyza F. Blanco*
       Leyza F. Blanco
       Florida Bar No. 104639
       Juan J. Mendoza
       Florida Bar No.: 113587

F:\WDOX\CLIENTS\70129\1001\00302752.DOCX

# EXHIBIT "A"

CORTE DE FALÊNCIAS DOS ESTADOS UNIDOS
DISTRITO DO SUL DA FLÓRIDA
DIVISÃO DE MIAMI
www.flsb.uscourts.gov

In re:

São Fernando Açúcar e Álcool Ltda., São
Fernando Energia I Ltda., São Fernando
Energia II Ltda., São Marcos Energia e
Participações Ltda., and São Pio
Empreendimentos e Participações Ltda.

Capítulo 15

Caso Nº:

    Devedoras em um procedimento estrangeiro.

## DECLARAÇÃO DE VINICIUS ALEXANDER OLIVA SALES COUTINHO EM SUPORTE À PETIÇÃO DO CAPÍTULO 15 PARA <u>RECONHECIMENTO DE UM PROCEDIMENTO ESTRANGEIRO</u>

Eu, Vinicius Alexander Oliva Sales Coutinho, representante da Vinicius Coutinho Consultoria e Perícia S / S Ltda. declaro, sob pena de perjúrio prevista nas leis dos Estados Unidos, o seguinte:

1.    Tenho mais de 18 anos de idade e, se solicitado, poderia perfeitamente testemunhar sobre todos os assuntos estabelecidos nesta Declaração, com base em meus conhecimentos pessoais, exceto quando especificado de outra forma neste documento. Como tenho conhecimentos limitados de inglês, preparei esta Declaração em português, minha língua nativa.

2.    Em 4 de abril de 2013, a São Fernando Açúcar e Álcool Ltda. ("SF A & A"), São Fernando Energia I Ltda. ("SF Energia I"), a São Fernando Energia II Ltda. ("SF Energia II"), a São Marcos Energia e Participações Ltda. ("São Marcos") e São Pio Empreendimentos e Participações Ltda. ("São Pio") (coletivamente, as "Devedoras" ou o "Grupo São Fernando") ajuizaram pedido de recuperação judicial distribuído para 5ª Vara Cível da Cidade de Dourados, no estado de Mato Grosso do Sul, Brasil (o "Juízo de Falências Brasileiro"). Em 13 de abril de

1

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

2013, o Juízo Brasileiro de Falências proferiu uma decisão (a "Decisão Inicial") deferindo o processamento do pedido das Devedoras para a recuperação judicial e designando Vinicius Coutinho Consultoria e Perícia S / S Ltda. como Administradora Judicial. A Decisão Inicial e sua tradução estão anexadas como **Anexo 1**.

### Análise Fática

3.      Criado em 2008, o Grupo São Fernando consiste num grupo de empresas dedicadas, entre outras coisas, ao cultivo de cana-de-açúcar, à fabricação e exportação de açúcar e etanol e à geração de energia elétrica. Como parte de seus negócios, o Grupo São Fernando operava uma usina de etanol industrial na cidade de Dourados, no estado de Mato Grosso do Sul, Brasil.

4.      A SF A & A, principal empresa operacional do Grupo São Fernando, foi criada em 2008. Durante todo período relevante, a SF A & A foi controlada por seus dois acionistas, Heber Participações ("Heber") e São Marcos, cada um deles detendo 50% da SF A & A. Na época, São Marcos era detida e controlada por Guilherme de Barros C. M. Bumlai ("Guilherme Bumlai") e seu irmão, Mauricio de Barros Bumlai ("Mauricio Bumlai" e junto com Guilherme, os "Irmãos Bumlai").

5.      Em 2011, quando o Grupo São Fernando enfrentava dificuldades financeiras, a Heber vendeu suas ações da SF A & A para São Pio, que também era detida e controlada pelos Irmãos Bumlai. Como resultado, desde 2011, os Irmãos Bumlai tornaram-se os únicos proprietários das sociedades que compunham o Grupo São Fernando.

6.      Durante 2008 e 2009, a SF A & A obteve empréstimos (os "Empréstimos 2009") do Banco Nacional de Desenvolvimento Econômico e Social ("BNDES") totalizando aproximadamente 395 milhões de reais (BRL) (aproximadamente US$ 105 milhões sob a atual

2

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

taxa de câmbio)[1] para financiar a construção de uma usina de etanol. A construção da usina de etanol foi concluída em 2009 e a usina começou a operar em 2010.

7.      Não obstante ao desenvolvimento da fábrica, o Grupo São Fernando enfrentou crise financeira por vários anos. Na tentativa de reestruturar suas dívidas, em 2012, o Grupo São Fernando, através da SF Energia I, obteve empréstimo adicional do BNDES de aproximadamente R$ 100 milhões (aproximadamente US$ 26 milhões sob a taxa de câmbio atual) (o "Empréstimo 2012" e, em conjunto com o Empréstimos de 2009, os "Empréstimos do BNDES").

8.      Apesar do Empréstimo de 2012, as crises financeiras do Grupo São Fernando continuaram e, pouco depois de receber o Empréstimo de 2012, em abril de 2013, o Grupo São Fernando ajuizou pedido de recuperação judicial perante a Justiça brasileira com fundamento na Lei 11.101/2005. Em 13 de abril de 2013, o Juízo Brasileiro de Falências proferiu a Decisão Inicial deferindo o processamento do pedido das Devedoras para a recuperação judicial e designando Vinicius Coutinho Consultoria e Perícia S / S Ltda. como Administradora Judicial. Vide An. 1.

9.      Em 24 de setembro de 2013, os credores do Grupo São Fernando aprovaram o plano de recuperação proposto pelo Grupo São Fernando. Naquela altura, o Grupo São Fernando possuía dívidas de aproximadamente R$ 1,3 bilhão (aproximadamente US$ 338 milhões), incluindo dívidas tributárias e extraconcursais. Em 27 de setembro de 2013, o Juízo Brasileiro de Falências proferiu uma decisão (a "Decisão de Recuperação") homologando o plano de recuperação e concedendo o pedido de recuperação judicial. A Decisão de Recuperação e sua tradução encontram-se anexadas como **Anexo 2**.

10.     No entanto, os esforços para recuperação do Grupo São Fernando tiveram curta duração, uma vez que o grupo não pôde cumprir os pagamentos previstos no plano ao BNDES e a

---

[1] A taxa de câmbio de hoje para o dólar americano em reais é de aproximadamente (1 USD / 3,74 BRL).

3

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

outros credores. Consequentemente, em 8 de junho de 2017, o Juízo Brasileiro proferiu sentença (a "Sentença de Quebra") declarando a falência das empresas do Grupo São Fernando. A Sentença de Quebra e sua tradução estão anexadas aqui como **Anexo 3**. Entre outras coisas, a Sentença de Quebra determinou a continuidade da operação do Grupo São Fernando, desta forma permitindo sua liquidação como uma empresa em atividade. An. 3. Esta foi uma medida excepcional ordenada pelo Juízo de Falências brasileiro para maximizar o valor da massa.

11.     A Sentença de quebra também confirmou a continuação da minha nomeação como administradora judicial do Grupo São Fernando. An. 3. Parte dos meus deveres como Administrador Judicial implica (i) realizar a liquidação do Grupo São Fernando segundo a lei brasileira; (ii) investigar as causas da insolvência do Grupo São Fernando, incluindo a produção de documentos e informações onde quer que estejam localizados; e (iii) buscar ações disponíveis em benefício dos credores.

12.     Além disso, na Sentença de Quebra, considerando a evidência de atividade fraudulenta dos Irmãos Bumlai, o Juízo Brasileiro de Falências também determinou o bloqueio de todos os ativos dos Irmãos Bumlai como medida cautelar.

13.     Paralelamente aos procedimentos instaurados no Processo Brasileiro de Falência, em 2016 o Ministério Público Federal brasileiro ajuizou Ação Civil Pública contra o ex-presidente do BNDES, Luciano Coutinho, os Irmãos Bumlai, José Carlos Bumlai, pai dos Irmãos Bumlai, e outras partes relacionadas (em conjunto, os "Requeridos da ACP"), acusando-os de envolvimento em atos fraudulentos para obtenção de Empréstimos do BNDES, totalizando aproximadamente R$ 500 milhões (aproximadamente US$ 133 milhões). Embora a Ação Civil Pública esteja pendente, o Juiz dessa Ação Civil Pública emitiu ordem para bloqueio dos ativos dos Requeridos da ACP

4

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

até o valor de R$ 665 milhões (aproximadamente US$ 177 milhões). Consequentemente, os Irmãos Bumlai estão sujeitos a duas ordens de bloqueio emitidas por dois juízos brasileiros distintos.

### Bases para o reconhecimento do Capítulo 15 do Código de Falência

14.    As minhas investigações sobre os assuntos das devedoras identificaram indícios de má gestão dos bens das devedoras pelos Irmãos Bumlai, bem como desvio de recursos do Grupo São Fernando. Além disso, minhas investigações revelaram evidências de que os Irmãos Bumlai, juntamente com seu pai, José Carlos Bumlai, e seus irmãos, Fernando Bumlai e Cristiane Bumlai (em conjunto, a "Família Bumlai"), podem ter usado o Grupo São Fernando para obter benefícios pessoais ilegais.

15.    Como exemplo do acima mencionado, os Irmãos Bumlai fizeram com que o Grupo São Fernando celebrasse um contrato de arrendamento com uma sociedade detida por seus irmãos (Fernando Bumlai e Cristiane Bumlai) para arrendar uma aeronave Cessna por aproximadamente US$ 130.000,00 por mês, mais os custos de manutenção. Não existe razão comercial que justifique tal transação e o Grupo São Fernando não obteve nenhum benefício dela. O Juízo Brasileiro de Falências concordou, e observou que tal negócio "vem marcado, no mínimo, por excentricidade, senão por rematado abuso de poder ou mesmo de mecanismos fraudulentos, com o escopo precípuo de sangrar ainda mais a contabilidade de companhia, que já se compadecia da ruinosa administração". A decisão do Juízo de Falências brasileiro e sua tradução estão anexadas como **Anexo 4**.

16.    Com base no exposto, como representante judicial do Grupo São Fernando, tenho o dever, de acordo com a lei brasileira, de continuar a investigar os negócios, assuntos e relações

5

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

do Grupo São Fernando em todo o mundo. Parte desse processo envolve investigar os controladores do Grupo São Fernando, a Família Bumlai, e os recipientes de recursos desviados do Grupo São Fernando. Além disso, tenho o dever de investigar a natureza e a extensão das atividades realizadas nos Estados Unidos que poderiam estar relacionadas às Devedoras ou a seus ativos, bem como a possibilidade de que outros ativos possam ter sido adquiridos nos Estados Unidos usando recursos pertencentes ao Grupo São Fernando.

17.     A partir de então, procuro realizar recuperações na medida do possível, inclusive ajuizando e afirmando reinvindicações de propriedade que podem estar disponíveis para mim nos Estados Unidos. Eu também posso propor ações contra terceiros que possam ser processados e que possam ser responsabilizados perante o Grupo São Fernando nos Estados Unidos. Com base em minhas investigações, tenho motivos para acreditar que os Irmãos Bumlai podem ter utilizado membros da família e corporações, inclusive nos Estados Unidos, para desviar recursos do Grupo São Fernando, direta ou indiretamente, através de entidades que eles detêm e/ou controlam.

### Regra 1007 (a) 94) Divulgações

18.     Eu forneço as seguintes informações de acordo com a Regra 1007 (a) (4) do Regulamento Federal de Falências.

> a.   Não tenho conhecimento de nenhum processo estrangeiro, como esse termo é definido em 11 U.S.C. § 101 (23), das Devedores que não este Capítulo 15 ajuizado.
>
> b.   A Vinicius Coutinho Consultoria e Perícia S / S Ltda., representada por mim, é a "administradora judicial" devidamente nomeada no processo de falência brasileiro pendente perante o Juízo de Falências Brasileiro e o representante estrangeiro autorizado das entidades que compõem o Grupo São Fernando.

6

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

i.      O endereço de Vinicius Coutinho Consultoria e Perícia S / S Ltda. é

o seguinte:

A/C: Vinicius Coutinho Consultoria e Perícia S/S Ltda.
Rua Treze de Maio, 2500 – 13º andar, sala 1307
Centro - Campo Grande, MS - CEP: 79002-923
Brasil

ii.      Para os fins deste Capítulo, a Vinicius Coutinho Consultoria e

Perícia S / S Ltda. solicita que qualquer correspondência seja enviada, além

do endereço fornecido acima, para:

A/C Leyza F. Blanco
Juan J. Mendoza
Sequor Law, P.A.
1001 Brickell Bay Drive, 9º andar
Miami, Flórida 33131

c.  As Devedoras, através da minha empresa, entraram com uma petição solicitando

assistência judicial de acordo com 28 U.S.C. 1782 no Tribunal Distrital dos Estados

Unidos para o Distrito do Kansas.

d.  Eu não busco tutela provisória, sob 11 U.S.C. § 1519, contra qualquer pessoa ou

entidade neste momento.

7

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

## VERIFICAÇÃO DO 28 U.S.C. § 1746

Eu, Vinicius Alexander Oliva Sales Coutinho, representante da Vinicius Coutinho Consultoria e Perícia S / S Ltda., declaro sob pena de perjúrio prevista nas leis dos Estados Unidos da América, 28 U.S.C. §1746, que Vinicius Coutinho Consultoria e Perícia S/S Ltda. é a Administradora Judicial do Grupo São Fernando nomeada pelo juízo e que, nessa qualidade, a Vinicius Coutinho Consultoria e Perícia S / S Ltda. tem autoridade para fazer esta declaração; que li a Declaração acima; e que os fatos e assuntos alegados e contidos neste documento são verdadeiros e corretos, segundo meu melhor conhecimento e crença, com base em meu próprio conhecimento pessoal dos fatos envolvidos e em minha análise dos documentos disponíveis pertencentes ao Grupo São Fernando.

Assinado no Estado de _MS_, Brasil, em _30_ de julho de 2019

Por: _____

Vinicius Coutinho Consultoria e Perícia S/S Ltda.

0 9 AGO 2019   I   - 5 0 8 5 7

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

Tradução nº I-50857
Livro nº 606
Folha 415



*Sandra Regina Mattos Rudzit*

*TRADUTORA PÚBLICA*

*I, Sandra Regina Mattos Rudzit, certified public translator, duly admitted and sworn by the Commercial Registry of the State of São Paulo, Brazil, hereby certify that a document was submitted to me, written in Portuguese, the translation of which is as follows:*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION
www.flsb.uscourts.gov

In re:

São Fernando Açúcar e Álcool Ltda., São
Fernando Energia I Ltda., São Fernando
Energia II Ltda., São Marcos Energia e
Participações Ltda., and São Pio
Empreendimentos e Participações Ltda.

Chapter 15

Case No.:

Debtors in a Foreign Proceeding.
_____/

### DECLARATION OF VINICIUS ALEXANDER OLIVA SALES
### COUTINHO IN SUPPORT OF CHAPTER 15 PETITION FOR
### RECOGNITION OF A FOREIGN PROCEEDING

I, Vinicius Alexander Oliva Sales Coutinho, representing Vinicius Coutinho Consultoria e

Perícia S/S Ltda., hereby declare under penalty of perjury under the laws of the United States as

follows:

1.      I am over the age of 18 and, if called upon, could completely testify to all matters set

forth in this Declaration based upon my own personal knowledge except as otherwise specified

herein. Because I have limited English skills, I have prepared this Declaration in Portuguese, my

native language.

2.      On April 4, 2013, São Fernando Açúcar e Álcool Ltda. ("SF A&A"), São Fernando

Energia I Ltda. ("SF Energia I"), São Fernando Energia II Ltda. ("SF Energia II"), São Marcos

Energia e Participações Ltda. ("São Marcos") and São Pio Empreendimentos e Participações Ltda.

("São Pio") (collectively, the "Debtors" or, the "São Fernando Group"), filed a petition for judicial

415

SANDRA REGINA MATTOS RUDZIT - Tradutora Pública e Intérprete Comercial - Português - Inglês - Matrícula na JUCESP nº 1688 - CPF 082.060.018-08 - RG 8.222.837-1
Rua Matias Aires, 402 - 9º andar - 01309-020 - São Paulo - SP - Brasil - Fone/Fax: 55-11-3155-7383 - e-mail: just@just.trd.br - www.just.trd.br

Tradução nº I-50857
Livro nº 606
Folha 416



*TRADUTORA PÚBLICA*

reorganization with the 5th Civil Court of the City of Dourados, in the state of Mato Grosso do Sul, Brazil (the "Brazilian Bankruptcy Court"). On April 13, 2013, the Brazilian Bankruptcy Court entered an order (the "Initial Order") approving the Debtors' request to process the judicial reorganization proceeding and appointing Vinicius Coutinho Consultoria e Perícia S/S Ltda. as Judicial Administrator. The Initial Order and its translation are attached as **Exhibit 1.**

### Factual Background

3.        Created in 2008, the São Fernando Group consists of a group of companies dedicated to, among other things, the cultivation of sugar cane, the manufacture and export of sugar and ethanol, and the generation of electric power. As part of its business, the São Fernando Group operated an industrial ethanol plant in the city of Dourados, in the state of Mato Grosso do Sul, in Brazil.

4.        SF A&A, the main operational company of the São Fernando Group, was created in 2008. At all relevant times hereto, SF A&A was controlled by its two shareholders, Heber Participações ("Heber") and São Marcos, each of which owned 50% of SF A&A. At the time, São Marcos was owned and controlled by Guilherme de Barros C. M. Bumlai ("Guilherme Bumlai") and his brother, Mauricio de Barros Bumlai ("Mauricio Bumlai" and together with Guilherme, the "Bumlai Brothers").

5.        In 2011, at a time when the São Fernando Group was facing financial difficulties, Heber sold its shares in SF A&A to São Pio, which was also owned and controlled by the Bumlai Brothers. As a result, since 2011, the Bumlai Brothers became the sole owners of the companies comprising the São Fernando Group.

6.        During 2008 and 2009, SF A&A obtained loans (the "2009 Loans") from the Banco Nacional de Desenvolvimento Econômico e Social ("BNDES") totalling approximately 395 million

416

SANDRA REGINA MATTOS RUDZIT - Tradutora Pública e Intérprete Comercial - Português - Inglês - Matrícula na JUCESP nº 1688 - CPF 082.060.018-08 - RG 8.222.837-1
Rua Matias Aires, 402 - 9º andar - 01309-020 - São Paulo - SP - Brasil - Fone/Fax: 55-11-3155-7383 - e-mail: just@just.trd.br - www.just.trd.br

Tradução nº I-50857
Livro nº 606
Folha 417



*TRADUTORA PÚBLICA*

Brazilian *Reais* (BRL) (approximately US$105 million under the current exchange rate)[1] to finance the construction of an ethanol plant. The construction of the ethanol plant was completed in 2009 and the plant began operating in 2010.

7.       Notwithstanding the development of the plant, the São Fernando Group struggled financially for a number of years. In an attempt to restructure its debts, in 2012, the São Fernando Group, through SF Energia I, obtained an additional loan from BNDES for approximately BRL100 million (approximately US$26 million under the current exchange rate) (the "2012 Loan," and together with the 2009 Loans, the "BNDES Loans").

8.       Despite the 2012 Loan, the São Fernando Group's financial struggles continued and, shortly after receiving the 2012 Loan, in April 2013, the São Fernando Group filed a request for judicial reorganization with the Brazilian Court under Brazilian Law 11.101/2005. On April 13, 2013, the Brazilian Bankruptcy Court entered the Initial Order approving the Debtors' request to process the judicial reorganization and appointing Vinicius Coutinho Consultoria e Perícia S/S Ltda. as Judicial Administrator. *See* Exh. 1.

9.       On September 24, 2013, the creditors of the São Fernando Group approved the reorganization plan proposed by the São Fernando Group. At that time, the São Fernando Group owed debts of approximately BRL1.3 billion (approximately US$338 million), including tax debts and post-petition debts. On September 27, 2013 the Brazilian Bankruptcy Court entered an order (the "Reorganization Order") approving the reorganization plan and granting the reorganization petition. The Reorganization Order and its translation are attached as **Exhibit 2.**

10.      The São Fernando Group's reorganization efforts were short-lived, however, as the group was unable to service the required plan payments to BNDES and other creditors. Consequently,

---

[1] Today's exchange rate for United States Dollars to Brazilian *Real* is approximately (1 USD / 3.74 BRL).

SANDRA REGINA MATTOS RUDZIT - Tradutora Pública e Intérprete Comercial - Português - Inglês - Matrícula na JUCESP nº 1688 - CPF 082.060.018-08 - RG 8.222.837-1
Rua Matias Aires, 402 - 9º andar - 01309-020 - São Paulo - SP - Brasil - Fone/Fax: 55-11-3155-7383 - e-mail: just@just.trd.br - www.just.trd.br

Tradução nº I-50857
Livro nº 606
Folha 418

*Sandra Regina Mattos Rudzit*

*TRADUTORA PÚBLICA*

on June 8, 2017, the Brazilian Court entered an order (the "Bankruptcy Order") declaring the companies of the São Fernando Group bankrupt. The Bankruptcy Order and its translation are attached hereto as **Exhibit 3**. Among other things, the Bankruptcy Order directed the continued operation of the São Fernando Group, thereby allowing its liquidation as a going concern. Exh. 3. This was an extraordinary step ordered by the Brazilian Bankruptcy Court to maximize value for the estate.

11.     The Bankruptcy Order also confirmed the continuation of my appointment as judicial administrator of the São Fernando Group. Exh. 3. Part of my duties as Judicial Administrator entail (i) carrying out the liquidation of the São Fernando Group under Brazilian law; (ii) investigating the causes for the insolvency of the São Fernando Group including conducting discovery of documents and information wherever located; and (iii) pursuing available claims for the benefit of the creditors.

12.     In addition to the entry of the Bankruptcy Order, given the evidence of fraudulent activity by the Bumlai Brothers, the Brazilian Bankruptcy Court also ordered the seizure of all assets of the Bumlai Brothers as a precautionary measure.

13.     Parallel to the proceedings undertaken in the Brazilian Bankruptcy Case, in 2016, the Brazilian Federal Public Prosecutor's Office filed a Civil Public Action against the former president of BNDES, Luciano Coutinho, the Bumlai Brothers, José Carlos Bumlai, father of the Bumlai Brothers, and other related parties (collectively, the "CPA Defendants") accusing them of engaging in fraudulent acts to obtain the BNDES Loans, totalling approximately BRL500 million (approximately US$133 million). Though the Civil Public Action is pending, the Judge overseeing the Civil Public Action issued an order seizing the assets of the CPA Defendants up to the amount of BRL665 million (approximately US$177 million). Consequently, the Bumlai Brothers are subject to two seizure orders issued by two distinct Brazilian courts.

SANDRA REGINA MATTOS RUDZIT - Tradutora Pública e Intérprete Comercial - Português - Inglês - Matrícula na JUCESP nº 1688 - CPF 082.060.018-08 - RG 8.222.837-1
Rua Matias Aires, 402 - 9º andar - 01309-020 - São Paulo - SP - Brasil - Fone/Fax: 55-11-3155-7383 - e-mail: just@just.trd.br - www.just.trd.br



Tradução nº I-50857
Livro nº 606
Folha 419

*TRADUTORA PÚBLICA*

## Basis for Recognition Under Chapter 15 of the Bankruptcy Code

14.     My investigations of the Debtors' affairs unveiled evidence of gross mismanagement of the Debtors' assets by the Bumlai Brothers, as well as the diversion of funds from the São Fernando Group. Further, my investigations uncovered evidence that the Bumlai Brothers together with their father, José Carlos Bumlai, and their siblings, Fernando Bumlai and Cristiane Bumlai (together "Bumlai Family"), may have used the São Fernando Group to obtain unlawful personal benefits.

15.     As an example of the above, the Bumlai Brothers caused the São Fernando Group to enter into a lease agreement with a company owned by their siblings (Fernando Bumlai and Cristiane Bumlai) to lease a Cessna Aircraft for approximately US$130,000.00 per month plus maintenance costs. There was no business purpose justifying such transaction and the São Fernando Group did not derive any benefit from it. The Brazilian Bankruptcy Court agreed, and noted that such transaction is "marked at least with eccentricity, or crowned with abuse of power, or even fraudulent mechanisms with the main purpose scope of bleeding even more the company accounting, which was already suffering from a devastating management." The order from the Brazilian Bankruptcy Court and its translation are attached hereto as **Exhibit 4**.

16.     Based on the foregoing, as the judicial representative for the São Fernando Group, I am duty bound under Brazilian law to continue investigating the São Fernando Group's business, affairs, and dealings worldwide. Part of this process entails investigating the principals of the São Fernando Group, the Bumlai Family, and transferees of funds diverted from the São Fernando Group. Further, I am duty bound to investigate the nature and extent of activities undertaken in the United States that could be related to the Debtors or to their assets, and the possibility that other assets may have been acquired in the United States using funds belonging to the São Fernando Group.

17.     Thereafter, I seek to make recoveries to the extent possible, including by filing and asserting such proprietary claims as may be available to me in the United States. I may also bring

419

SANDRA REGINA MATTOS RUDZIT - Tradutora Pública e Intérprete Comercial - Português - Inglês - Matrícula na JUCESP nº 1688 - CPF 082.060.018-08 - RG 8.222.837-Y
Rua Matias Aires, 402 - 9º andar - 01309-020 - São Paulo - SP - Brasil - Fone/Fax: 55-11-3155-7383 - e-mail: just@just.trd.br - www.just.trd.br

Tradução nº I-50857
Livro nº 606
Folha 420



*TRADUTORA PÚBLICA*

claims against any third parties that are subject to suit and may be responsible to the São Fernando

Group in the United States. Based on my investigations, I have reason to believe that the Bumlai

Brothers may have utilized family members and corporations, including in the United States, to divert

funds from the São Fernando Group, directly or indirectly through entities over which they own

and/or control.

### Rule 1007(a)94) Disclosures

18.    I hereby provide the following information in accordance with Rule 1007(a)(4) of the

Federal Rules of Bankruptcy Procedure.

    a.  I am not aware of any foreign proceedings, as that term is defined in 11 U.S.C. §

       101(23), of the Debtors other than this Chapter 15 filing.

    b.  Vinicius Coutinho Consultoria e Perícia S/S Ltda., represented by me, is the duly

       appointed "judicial administrator" in the Brazilian Bankruptcy Case pending before

       the Brazilian Bankruptcy Court and the authorized foreign representative of the

       entities comprising the São Fernando Group.

       i.  The address of Vinicius Coutinho Consultoria e Perícia S/S Ltda. is the

         following:

Attn: Vinicius Coutinho Consultoria e Perícia S/S Ltda.
Rua Treze de Maio, 2500 – 13th floor, suite 1307
Centro - Campo Grande, MS - CEP: 79002-923
Brazil

       ii.  For purposes of this Chapter 15 proceeding, Vinicius Coutinho Consultoria e

         Perícia S/S Ltda. requests that any correspondence be sent, in addition to the

         address provided above, to:

Attn: Leyza F. Blanco
Juan J. Mendoza
Sequor Law, P.A.

420

SANDRA REGINA MATTOS RUDZIT - Tradutora Pública e Intérprete Comercial - Português - Inglês - Matrícula na JUCESP nº 1688 - CPF 082.060.018-08 - RG 8.222.837-1
Rua Matias Aires, 402 - 9º andar - 01309-020 - São Paulo - SP - Brasil - Fone/Fax: 55-11-3155-7383 - e-mail: just@just.trd.br - www.just.trd.br

Tradução nº I-50857
Livro nº 606
Folha 421



*Sandra Regina Mattos Rudzit*

*TRADUTORA PÚBLICA*

1001 Brickell Bay Drive, 9th Floor
Miami, Florida 33131

c. The Debtors, through my firm, have filed an application seeking judicial assistance pursuant to 28 U.S.C. 1782 in the United States District Court for the District of Kansas.

d. I do not seek provisional relief, under 11 U.S.C. § 1519, against any person or entity at this time.

SANDRA REGINA MATTOS RUDZIT - Tradutora Pública e Intérprete Comercial - Português - Inglês - Matrícula na JUCESP nº 1688 - CPF 082.060.018-08 - RG 8.222.837-V
Rua Matias Aires, 402 - 9º andar - 01309-020 - São Paulo - SP - Brasil - Fone/Fax: 55-11-3155-7383 - e-mail: just@just.trd.br - www.just.trd.br



Tradução nº I-50857
Livro nº 606
Folha 422

*TRADUTORA PÚBLICA*

## 28 U.S.C. § 1746 VERIFICATION

I, Vinicius Alexander Oliva Sales Coutinho, representative of Vinicius Coutinho Consultoria e Perícia S/S Ltda., declare under penalty of perjury under the laws of the United States of America, 28 U.S.C. §1746, that Vinicius Coutinho Consultoria e Perícia S/S Ltda. is the court-appointed Judicial Administrator for the São Fernando Group and that, in such capacity, Vinicius Coutinho Consultoria e Perícia S/S Ltda. has the authority to make this Declaration; that I have read the foregoing Declaration; and that the facts and matters alleged and contained herein are true and correct to the best of my knowledge and belief, based upon my own personal knowledge of the facts involved and upon my review of the available documents pertaining to the São Fernando Group.

Executed in the State of Mato Grosso do Sul (MS), Brazil, on July 30, 2019.

By: (sgd)
Vinicius Coutinho Consultoria e Perícia S/S Ltda.
*IN WITNESS WHEREOF I set my hand and seal to this translation.*

*São Paulo, August 9, 2019*

*Fees: Pursuant to the Law*
*Receipt No. 22552*

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública

SANDRA REGINA MATTOS RUDZIT - Tradutora Pública e Intérprete Comercial - Português - Inglês - Matrícula na JUCESP nº 1688 - CPF 082.060.018-08 - RG 8.222.837-1
Rua Matias Aires, 402 - 9º andar - 01309-020 - São Paulo - SP - Brasil - Fone/Fax: 55-11-3155-7383 - e-mail: just@just.trd.br - www.just.trd.br

# EXHIBIT 1

Tradução nº I-48406
Livro nº 576
Folha 177

*Sandra Regina Mattos Rudzit*

*TRADUTORA PÚBLICA*

*I, Sandra Regina Mattos Rudzit, certified public translator, duly admitted and sworn by the Commercial Registry of the State of São Paulo, Brazil, hereby certify that a document was submitted to me, written in Portuguese, the translation of which is as follows:*

**State of Mato Grosso do Sul**

Judiciary

**Dourados**

**5th Lower Civil Court**

**Case Records No. 0802789-69.2013.8.12.0002**

**Court-Supervised Reorganization/PROC**

**Plaintiff: São Fernando Açúcar e Álcool Ltda., São Fernando Energia I Ltda., São Fernando Energia II Ltda., São Marcos Energia e Participações Ltda., São Pio Empreendimentos Participações Ltda.**

**SÃO FERNANDO AÇÚCAR E ÁLCOOL LTDA., SÃO FERNANDO ENERGIA I LTDA., SÃO FERNANDO ENERGIA II LTDA., MARCOS MILESTONES ENERGIA E PARTICIPAÇÕES LTDA. and SÃO PIO ENERGIA E PARTICIPAÇÕES LTDA.,** legal entities of private law identified in the case records, filed this petition for Court-Supervised Reorganization with grounds on articles 51 *et seq* of law 11.101/2005, **arguing,** in summary, the facts and legal grounds presented below:

1- The plaintiffs currently comprise one of the largest groups of the Brazilian sugar-ethanol industry, in the segment of sugar and ethanol production and cogeneration through sugarcane processing.

2- However, due to the recent global economic crisis and the crisis of the sugar and ethanol industry that began in 2007, which (sic) caused difficulty in the financings in reasonable terms and costs, resulting in the company's current situation.

3- Furthermore, according to their allegations, over the months of the global crisis, the plaintiffs ended up in a critical position and had no choice but to file a court petition for granting of processing of their court-supervised reorganization, aiming at enabling them to overcome this state of crisis which they believe to be temporary, as they envisage ways to preserve the company and its social function.

4- Then the plaintiff reported that the legal requirements set forth in article 51 of the Bankruptcy and Reorganization Law (LFR) were met and attached documents (pages 17/740).

This is the report. I shall decide.

The application and construal of the rules contained in law 11.101/05 shall be carried out with grounds on the principle of maintenance of the company, sought by the legislative branch at the time, which supported this new paradigm, given that, according to said principle, in the solution of the economic-financial crisis of the company, the interests of the community shall be taken into account, which generally correspond to the company's conservation.

The company currently represents one of the main cornerstones of the modern economy and, therefore, it is a significant source of employment, tax income, supply of products and services in general, in addition to being the engine of the free competition system, among many other functions.

Accordingly, based on a unit of distribution of goods and services, a point of employment allocation and job offering, it forms part, as a link, of a huge chain of the market, and its bankruptcy will certainly cause irreversible sequelae.

Accordingly, the definite liquidation of a company which, although experiencing financial difficulties, is shown to be feasible, represents a significant loss to the society, given that especially jobs and sources of

**Tradução nº I-48406**
**Livro nº 576**
**Folha 178**

Sandra Regina Mattos Rudzit

*TRADUTORA PÚBLICA*

tax income are lost.

Note that it is not the case of preserving every kind of companies no matter what. But rather to fight for the maintenance of those companies which, despite the state of crisis, are shown to be economically feasible and, consequently, capable of representing benefits to the community.

Therefore, it is necessary to set aside the ideal of exclusive defense of the interests of the creditors and the debtor, as it occurred in the past in association with Decree-Law 7661/45, and to adopt the purpose of meeting the interests of the entire society as much as possible. Accordingly, the interests of those directly involved, i.e., creditors and debtors, are pushed into the background in the search for a socially more appropriate solution.

In accordance with the lesson of distinguished jurist Fábio Ulhoa Coelho, the court-supervised reorganization proceeding is divided into three different phases: petition, resolution and execution (Comentários à Nova Lei de Falências e de Recuperação de Empresas, 4th ed., Ed. Saraiva, p. 144). In the first phase, the company shall petition for its reorganization, producing the required documents for the petition, and the judge shall only analyze whether all legal requirements are present; in other words, in this phase, the cognizance is restricted and limited to fulfillment of the documental requirements set forth in article 51 and the assumptions of article 48 of Law 11.101/2005.

All documental requirements have been met, as shown by the extensive documentation inserted in the case records. Likewise, the requirements of article 48 have also been met, although the company São Pio has been organized for less than two years. In fact, said company forms part of the same economic group comprised of the other Plaintiffs, and its exclusion from the reorganization proceeding could result in loss to the creditors and economic unbalance in the group to the point of impairing the success of such reorganization.

In view of the foregoing, considering the arguments present and the fulfillment of the requirements and assumptions, especially in view of the principle of maintenance of the company, *I grant the processing of the court-supervised reorganization claimed by* **SÃO FERNANDO AÇUCAR E ALCOOL LTDA., SÃO FERNANDO ENERGIA I LTDA., SÃO FERNANDO ENERGIA II LTDA., SÃO MARCOS ENERGIA E PARTICIPAÇÕES LTDA. and SÃO PIO ENERGIA E PARTICIPAÇÕES LTDA.**

**Article 3 of Law 11.101/2005 establishes that the jurisdiction to prosecute and judge the Court-Supervised Reorganization pertains to the Court of the place of location of its main establishment, in other words, where its greatest business volume is.**

**As inferred from the case records, the companies that belong to São Fernando Group has in the sugar and ethanol and cogeneration mills the Group's main asset, with the head offices in the City of Dourados, State of Mato Grosso do Sul.**

**The Superior Court of Justice has a well-established position for that purpose, in other words, the jurisdiction to prosecute the Court-Supervised Reorganization pertains to the place where its main establishment and greatest volume of economic activities are, i.e., in this Judicial District.**

For administration of the Court-Supervised Reorganization, I appoint as Trustee the company VINÍCIUS COUTINHO CONSULTORIA E PERÍCIAS S/S Ltda., a legal entity of private law with head offices at Rua 13 de Maio, 2500, in the City of Campo Grande, State of Mato Grosso do Sul, which shall be notified to immediately sign the instrument of commitment referred to by article 33 of the LFR, provided, by the way, that its obligations are established in article 22, I and II of the LFR.

The monthly amount of the trustee's fees shall comply with limits, subject to penalty of even exceeding the maximum limit of 5% of the amount due to the creditors, as provided for by paragraph one of article 24 of law 11.101/05.

Accordingly, note that the decision shall be appropriate to the other legal parameters, at risk of causing losses to the plaintiff companies and even preventing their court-supervised reorganization.

**Tradução nº I-48406**
**Livro nº 576**
**Folha 179**

Sandra Regina Mattos Rudzit

*TRADUTORA PÚBLICA*

In view of that, I shall now address the matter of the remuneration of the Trustee, with grounds on the aforementioned article 24 and on the updated case law on this matter.

To the extent that it is objectively set, in accordance with the legal criteria, given that any poor performance of the trustee results in its removal under article 31 of the Bankruptcy and Reorganization Law, I understand that there is no impediment for the monthly and total remuneration to be initially established, 'ex officio' in the court order granting the processing of the petition for reorganization.

The main criterion established by the legislation is the "debtor's payment capacity". It shall be estimated taking into account the accounting documentation, the list of creditors and the respective liabilities, and the list of employees with their positions and salaries, as provided for by article 51, I to IV of Law No. 11.101/2005. Based on said set of documents, the judge shall determine the debtor's payment capacity, without forgetting the debtor's economic-financial crisis and the applicability of the principle of maintenance of the company.

The second criterion to be observed consists of the "level of complexity of the work". The judge, with his or her experience in the exercise of the judicature, under article 335 of the Code of Civil Procedure, shall estimate the work to be performed by the trustee, analyzing the number of creditors, the amount of liabilities, etc.

Finally, the law establishes that the judge shall also observe "the amounts charged in the market for the performance of similar activities".

Finally, please note the maximum amount permitted by Law for the trustee's fee, set as five percent (5%) of the amount due to the creditors subjected to the court-supervised reorganization or the sale amount of the assets in the bankruptcy.

Evidently, respecting the cap of 5%, the judge shall consider the amount of liabilities presented, examining the principles presented above and the constitutional principle of proportionality, which shall guide the activities of the Judiciary, Legislative and Executive Branches.

The case law, in accordance with this parameter, has set the amount of fees as approximately a half of the maximum amount permitted by article 24 of the Bankruptcy and Court-Supervised Reorganization Law, whose understanding I share and adopt as a direction to set the fees in this reorganization.

In the relevant case, in view of the economic reality of the plaintiff company, and the complexity of the reorganization proceeding, which shall certainly require the hard work of the Trustee, demanding all efforts required to enable the reorganization to succeed, considering the criteria established by law, and in view of the current understanding of the case law, I deem to be appropriate to set the total amount of the Trustee's remuneration as one and a half percent (1.5%) on the amount due to the creditors submitted to the court-supervised reorganization which, in the relevant case, are only those listed in article 71, item I of Law 11.101/2005, namely, **the unsecured credits.**

Thus, I set the Trustee's fees as 1.5% of the liabilities presented by the Plaintiffs, provided that 60% of said remuneration shall be paid in 30 monthly and successive installments, and the remaining 40% shall be paid at the end, after compliance with the requirement of article 63, item I of the Bankruptcy and Reorganization Law (provision of accounts and approval of the detailed report). The payments shall be deposited in an account to be indicated by the Trustee hereby appointed.

As provided for by paragraph 1 of article 51 of the aforementioned law, I order the plaintiffs to enable the Trustee to examine the proper documents in their offices, granting free access to it to all accounting bookkeeping documentation and any other ancillary reports.

Article 71, sole paragraph of Law 11.101/2005 establishes that:

"The petition for court-supervised reorganization based on a special plan **does not result in suspension of the course of the statute of limitations or of the actions and executions for credits not covered by the plan.**"

SANDRA REGINA MATTOS RUDZIT - Tradutora Pública e Intérprete Comercial - Português - Inglês - Matrícula na JUCESP nº 1688 - CPF 082.060.018-08 - RG 8.222.837-
Rua Matias Aires, 402 - 9º andar - 01309-020 - São Paulo - SP - Brasil - Fone/Fax: 55-11-3155-7383 - e-mail: just@just.trd.br - www.just.trd.br

Tradução nº I-48406
Livro nº 576
Folha 180

*Sandra Regina Mattos Rudzit*

*TRADUTORA PÚBLICA*

Furthermore, by jointly applying the aforementioned article and article 71, item I of Law 11.101/2005 (Article 71. The court-supervised reorganization special plan shall be submitted within the term established in article 53 of this Law and be limited to the following conditions: 1 – it shall cover exclusively the unsecured credits, except those arising out of transfer of official funds and those established by paragraphs 3 and 4 of article 49 of this Law;), **note that there shall be suspension of only the course of the statute of limitations and the actions and executions of the credits covered by the reorganization, i.e., the unsecured credits.**

Therefore, I order the suspension, for one hundred and eighty (180) days as from the publication of the notice that shall disclose this decision, of all actions or executions against the debtor, **as provided for by article 6 combined with article 71, sole paragraph, of Law 11.101/2005**, precisely as set forth in item III of article 52, and the respective case records shall remain in the court where they are prosecuted, except for the actions provided for by paragraphs 1, 2 and 7 of article 6 and those relating to the credits exceptions of paragraphs 3 and 4 of article 49, provided that the plaintiffs shall make the required communication to the courts.

As provided for by article 7 of the LFR,

"The ascertainment of the credits shall be carried out by the trustee, based on the accounting books and commercial and tax documents of the debtor and on the documents to be submitted to it by the creditors, and may have the support of specialized professionals or companies".

I establish the term of 15 days for the Creditors to submit their proofs of claims or divergences in relation to the listed credits, as provided for by paragraph 1 of article 7 of the aforementioned law, as from the publication of the Notice containing this full decision and the list of creditors, as required by paragraph 1 of article 52 of the LFR.

The proofs of claims shall comply with the provisions of article 9 of the Bankruptcy Law, as follows:

"The proof of claim made by the creditor as provided for by article 7, paragraph 1 of this Law shall contain: I – the name and address of the creditor and the address where it shall receive communication of any act of the proceeding; II – the credit amount, restated until the date of adjudication of the bankruptcy or petition for court-supervised reorganization, its origin and classification; III – the supporting documents of the credit and indication of any other evidence to be produced; IV – indication of the guarantee provided by the debtor, if any, and the respective instrument; V – specification of the purpose of the guarantee under the creditor's possession. Sole paragraph. The instruments and documents demonstrating the credits shall be displayed as original or certified copies, in case they are inserted in another proceeding (in online proceedings, in compliance with the applicable law regarding the documents).

The proofs of claims or divergences established in article 7, paragraph 2 of law 11.101/05 shall be filed, when received in the court office shall be delivered to the Trustee (de-judicialization), which shall certify such receipt in a proper book, to prepare the list of creditors (It is a mere incident, and therefore, there are no court costs).

Upon expiration of the term of fifteen (15) days for submission of the proofs of claims, the term of 45 days starts for the Trustee to publish the notice containing the list of creditors, as provided or by Article 7, paragraph 2. The trustee, based on the information and documents obtained, in accordance with the main provision and paragraph 1 of this article, shall cause publication of the notice containing the list of creditors within forty-five (45) days as from expiration of the term set forth in paragraph 1 of this article, indicating the place, time and ordinary term for the persons listed in article 8 of this Law to have access to the documents that served as a basis for preparation of said list.

The Committee, any creditor, the debtor or its shareholders or the Public Prosecutors' Office may file an objection to the judge to the list of creditors, pointing out the absence of any credit or making a statement against the legitimacy, amount or classification of any listed credit, within ten (10) days as from publication of the list referred to by article 7, paragraph 2 (notice publishing the list of creditors prepared

Tradução nº I-48406
Livro nº 576
Folha 181

*Sandra Regina Mattos Rudzit*

*TRADUTORA PÚBLICA*

by the trustee), as provided for by article 8 of the same law.

**Any objections to the list of creditors shall comprise separate case records enclosed to the main case records** (Sole paragraph of article 8 of law 11.101/05).

Once the complaint of the Objection to the list of creditors has been filed, the creditors whose credits were objected to shall be notified to answer within five days.

Upon expiration of said term, the debtor and the committee, if any, shall be notified to file a response within five days.

Then, upon expiration of the term of five days, the Trustee shall be notified to submits its opinion within five days and then the case records shall be sent to be held under advisement. In case of several objections on the same credit, there shall be a single docketing (sole paragraph of article 13).

**General Directions**

Notify the Public Prosecutors' Office and communicate, by letter, the Federal, State and Municipal Finance Offices of the places where the debtor has any establishment and branches (article 52, V).

Publish the notice, in compliance with the requirements of the three items of paragraph 1 of article 52, i.e.:

I – summary of the debtor's petition and of the decision granting the processing of the court-supervised reorganization;

II – the nominal list of the creditors, indicating the updated amount and the classification of each credit;

III – a warning about the terms for proof of claim of the credits, as provided for by article 7, paragraph 1 of this Law (transcribe on the notice the content of the topic of the proofs of claims and divergences), and for the creditors to file any objection to the Court-Supervised Reorganization Plan submitted by the debtor, as provided for by article 55 of this Law.

Publish this decision granting the processing of the court-supervised reorganization by means of Notice (as established above), "urgently", and on the Judicial Gazette. Register. Notify.

Dourados/MS, April 13, 2013.

JONAS HASS SILVA JUNIOR – Judge

- signed by digital certificate –

This document is a copy of the original digitally signed by JONAS HASS SILVA JUNIOR. Released in the digital case records by Jonas Hass Silva Júnior, on April 13, 2013 at 10:29 a.m. To access the procedural case records, go to https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, enter case No. 0802789-69.2013.8.12.0002 and code 2D2209.

*IN WITNESS WHEREOF I set my hand and seal to this translation.*

*São Paulo, December 17, 2018*

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública

csi/194849.doc



**Estado de Mato Grosso do Sul**
Poder Judiciário
**Dourados**
**5ª Vara Cível**

**Autos nº 0802789-69.2013.8.12.0002**
**Recuperação Judicial/PROC**
**Requerente: São Fernando Açúcar e Álcool Ltda, São Fernando
Energia I Ltda, São Fernando Energia II Ltda, São Marcos Energia e
Participações Ltda., São Pio Empreendimentos Participações Ltda**

    **SÃO FERNANDO AÇUCAR E ALCOOL LTDA, SÃO
FERNANDO ENERGIA I LTDA, SÃO FERNANDO ENERGIA II LTDA,
SÃO MARCOS ENERGIA E PARTICIPAÇÕES LTDA e  SÃO PIO
ENERGIA E PARTICIPAÇÕES LTDA,** pessoas jurídicas de direito privado,
qualificadas nos autos, ajuizaram o presente pedido de Recuperação Judicial, com
base nos artigos 51 e seguintes da lei 11.101/2005, **alegando**, em síntese, os fatos
e fundamentos jurídicos a seguir expostos:

    1- As autoras formam atualmente um dos maiores grupos do
setor sucroenergético do país, do ramo de produção de açucar, álcool e
cogeração, através do processamento de cana-açúcar.

    2- Contudo, devido à recente crise econômica mundial, e a
crise do setor de açúcar e álcool que se iniciou em 2007, o que gerou uma
dificuldade nos financiamentos em prazos e custos razoáveis desencadeando a
atual situação da empresa.

    3- Ainda, segundo suas alegações, as requerentes se viram,
com o passar dos meses da crise mundial, em delicada posição, não lhes restando
outra opção senão a de requerer judicialmente o deferimento do processamento
de sua recuperação judicial, visando viabilizar a superação desse estado de crise
que considera passageiro, vez que vislumbra maneiras de preservar a empresa e
sua função social.

    4- Em seguida, a requerente relatou que os requisitos legais
exigidos pelo art. 51 da LFR foram preenchidos e juntaram documentos (f.
17/740).

    É o relatório. Decido.

    A aplicação e interpretação das normas contidas na lei
11.101/05 deve ser levada a efeito com fulcro no princípio da preservação da
empresa, buscada pelo poder legiferante à época, que prestigiou este novo
paradigma, haja vista que pelo referido princípio temos que, na solução da crise
econômico-financeira da empresa, devem ser considerados, antes de mais nada,
os interesses da coletividade, que em geral, correspondem à preservação da
empresa.

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

Este documento é copia do original assinado digitalmente por JONAS HASS SILVA JUNIOR. Liberado nos autos digitais por Jonas Hass Silva Júnior, em 13/04/2013 as 10:29. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0802789-69.2013.8.12.0002 e o código 2D2209.

fls. 1030

**Estado de Mato Grosso do Sul**
Poder Judiciário
**Dourados**
**5ª Vara Cível**

A empresa representa hoje um dos principais pilares da economia moderna, portanto, é ela uma grande fonte de postos de trabalho, de rendas tributárias, de fornecimento de produtos e serviços em geral, além de ser o motor do sistema da livre concorrência, dentre muitas outras funções.

Dessa forma, calcado numa unidade de distribuição de bens e serviços, um ponto de alocação de trabalho e oferta de empregos, integra como elo de uma imensa corrente do mercado cuja falência certamente causará sequelas irrecuperáveis.

Assim, a liquidação definitiva de uma empresa que, conquanto acometida de dificuldades financeiras se mostre viável, representa um grande prejuízo para a sociedade, eis que se perdem, principalmente, postos de trabalho e fontes de renda tributária.

Note-se que não se trata de preservar a qualquer custo, toda sorte de empresas. Mas sim de lutar pela manutenção daquelas que, não obstante o estado de crise, se mostrem viáveis economicamente e, consequentemente, capazes de representarem benefícios à coletividade.

Desta feita, cumpre deixar de lado o ideal de defesa exclusiva dos interesses dos credores e do devedor, como ocorria outrora sob a égide do Decreto-Lei 7661/45, adotando-se o intuito de atender, no máximo possível, aos interesses de toda a sociedade. Relega-se assim, a segundo plano, os interesses dos diretamente envolvidos, ou seja, credores e devedores, para buscar uma solução socialmente mais adequada.

De acordo com a lição do ilustre jurista Fábio Ulhoa Coelho, o processo de recuperação judicial divide-se em três fases distintas: postulatória, deliberativa e executiva (Comentários à Nova Lei de Falências e de Recuperação de Empresas, 4a ed., Ed. Saraiva, p. 144). Na primeira fase, a empresa deve requerer a sua recuperação, juntando os documentos necessários para o pedido, cabendo ao juiz apenas analisar se estão presentes todos os requisitos legais, ou seja, nessa fase a cognição é restrita e limitada ao preenchimento dos requisitos documentais do art. 51 e pressupostos do art. 48, da Lei 11.101/2005.

Os requisitos documentais estão todos preenchidos, conforme se pode ver da vasta documentação carreada aos autos. Igualmente, os requisitos do art. 48 também estão preenchidos, conquanto a empresa São Pio tenha sido constituída há menos de dois anos. Com efeito, tal empresa faz parte do mesmo conglomerado econômico formado pelas demais requerentes, e a exclusão dela desse processo de recuperação poderia importar em prejuízo aos credores e desequilíbrio econômico no grupo a ponto de comprometer o êxito da recuperação.

Diante do exposto, em face dos argumentos expendidos, preenchidos os requisitos e pressupostos, especialmente sob a égide do princípio da preservação da empresa, *defiro o processamento da recuperação judicial*

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

Este documento é cópia do original assinado digitalmente por JONAS HASS SILVA JUNIOR. Liberado nos autos digitais por Jonas Hass Silva Júnior, em 13/04/2013 às 10:29. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital, atbrinConferenciaDocumento.do, informe o processo 0802789-69.2013.8.12.0002 e o código 2D2209.

fls. 1031

**Estado de Mato Grosso do Sul**
Poder Judiciário
**Dourados**
**5ª Vara Cível**

*pleiteada por* **SÃO FERNANDO AÇUCAR E ALCOOL LTDA, SÃO FERNANDO ENERGIA I LTDA, SÃO FERNANDO ENERGIA II LTDA, SÃO MARCOS ENERGIA E PARTICIPAÇÕES LTDA e SÃO PIO ENERGIA E PARTICIPAÇÕES LTDA.**

**O artigo 3º da Lei 11.101/2005 preceitua que é competente para processar e julgar a Recuperação Judicial o Juízo do local onde se encontra seu principal estabelecimento, ou seja, onde encontra-se o seu maior volume de negócios.**

**Conforme se depreende dos autos as empresas que pertencem ao Grupo São Fernando tem nas usinas de açúcar e álcool e cogeração o principal ativo do Grupo, onde a sede é na cidade de Dourados/MS.**

**O entendimento do Superior Tribunal de Justiça é pacífico nesse sentido, ou seja, a competência para o processamento da Recuperação Judicial é no local onde se encontra o seu principal estabelecimento e maior volume de atividades econômicas, a saber, nesta Comarca.**

Para a administração da Recuperação Judicial, nomeio como Administradora a empresa VINÍCIUS COUTINHO CONSULTORIA E PERÍCIAS S/S Ltda, pessoa jurídica de direito privado, com sede na rua 13 de maio n. 2500, Campo Grande-MS, que deverá ser intimado para de imediato assinar o termo de compromisso de que trata o artigo 33 da LFR, esclarecendo, por oportuno, que suas obrigações estão contidas no art. 22, I e II da LFR.

O valor mensal dos honorários do administrador deve obedecer limites, sob pena de, até mesmo, ultrapassar o limite máximo de 5 % do valor devido aos credores, nos termos do parágrafo primeiro do artigo 24 da lei 11.101/05.

Assim, nota-se que a decisão deve ser adequada aos demais parâmetros legais, sob pena de causar prejuízos às empresas requerentes, impossibilitando, até mesmo, a recuperação judicial destas.

Diante disso, passa-se a tratar do tema da remuneração do Administrador Judicial, com base no art. 24 supra citado, bem como na jurisprudência atualizada sobre esse assunto.

Desde que fixada de forma objetiva e consoante os critérios legais, uma vez que, eventual mau desempenho do administrador acarreta sua destituição, nos termos do artigo 31 da Lei de Recuperações e Falências, entendo que não há óbice de que a remuneração mensal e a total seja estabelecida inicialmente e de ofício, no despacho que defere o processamento do pleito recuperatório.

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

Este documento é cópia do original assinado digitalmente por JONAS HASS SILVA JUNIOR. Liberado nos autos digitais por Jonas Hass Silva Junior, em 13/04/2013 as 10:29. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/atendrConferenciaDocumento.do, informe o processo 0802789-69.2013.8.12.0o02 e o código 2D2209.

fls. 1032

**Estado de Mato Grosso do Sul**
Poder Judiciário
**Dourados**
5ª Vara Cível

O primeiro critério instituído pelo legislador é a "capacidade de pagamento do devedor". Esta, será estimada, levando-se em conta a documentação contábil, a relação dos credores e respectivo passivo, bem como a relação dos empregados com suas funções e salários, a teor do artigo 51, I a IV, da Lei n. 11.101/2005. Do conjunto de tais documentos, o magistrado aferirá a capacidade de pagamento da devedora, não devendo se olvidar que a devedora está em crise econômico-financeira e da aplicabilidade do princípio da preservação da empresa.

O segundo critério a ser observado consiste no "grau de complexidade do trabalho". O juiz, com sua experiência no exercício da judicatura, sob o enfoque do artigo 335 do Código de Processo Civil, estimará o trabalho a ser realizado pelo administrador judicial, analisando-se o número de credores, o valor do passivo, etc.

Por fim, estabelece a legislação que o magistrado também observará "os valores praticados no mercado para o desempenho de atividades semelhantes".

Finalmente, cumpre atentar-se ao teto máximo que a Lei permite para a verba honorária do administrador, fixada em 5% (cinco por cento) do valor devido aos credores submetidos à recuperação judicial ou do valor de venda dos bens na falência.

Evidentemente, respeitando o teto máximo de 5%, o magistrado deve ponderar o valor do passivo apresentado, examinando-se os postulados acima explicitados e o princípio constitucional da proporcionalidade, norteador das atividades do Judiciário, Legislativo e Executivo.

A jurisprudência, dentro deste parâmetro, tem fixado o valor dos honorários em torno da metade do máximo permitido pelo art. 24 da Lei de Falências e Recuperação Judicial, de cujo entendimento comungo e adoto como norte para a fixação do honorários na presente recuperação

No caso em tela, diante da realidade econômica da empresa requerente, bem como da complexidade do processo de recuperação, que, com certeza exigira árduo trabalho da Administradora, impondo-se a ela a prática de todos os esforços necessários para a recuperação obter êxito, considerando-se os critérios estabelecidos pela lei, bem como diante do entendimento jurisprudencial atual, considero adequado fixar o valor total da remuneração da Administradora em 1,5% (um e meio por cento) sobre o valor devido aos credores submetidos à recuperação judicial, que no caso em tela, são somente aqueles relacionados no art. 71, inciso I, da Lei 11.101/2005, a saber, **os créditos quirografários.**

Assim, fixo os honorários da Administradora Judicial em 1,5% do passivo apresentado pelos Requerentes, sendo que 60% dessa remuneração deverá ser pago em 30 parcelas mensais e sucessivas, ficando os 40% restantes para o final, após o atendimento da exigência do artigo 63, inciso I, da Lei de

Este documento é cópia do original assinado digitalmente por JONAS HASS SILVA JUNIOR. Liberado nos autos digitais por Jonas Hass Silva Júnior, em 13/04/2013 as 10:29. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pnstadigital/og/abrirConfe encialDocumento.do, informe o processo 0380238-69.2013.8.12.0002 e o código 2D2209.

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

fls. 1033

**Estado de Mato Grosso do Sul**
Poder Judiciário
Dourados
5ª Vara Cível

Recuperações e Falências (prestação de contas e aprovação do relatório circunstanciado). Os pagamentos deverão ser depositados em conta indicada pela Administradora Judicial ora nomeada.

Com fulcro no disposto no § 1º do art. 51 da lei referida, determino que as autoras permitam que a Administradora examine os documentos pertinentes em seus escritórios, permitindo-lhe livre acesso a toda a documentação de escrituração contábil e demais relatórios auxiliares.

Aduz o artigo 71, parágrafo único da Lei 11.101/2005 que:

"O pedido de recuperação judicial com base em plano especial **não acarreta a suspensão do curso da prescrição nem das ações e execuções por créditos não abrangidos pelo plano."**

Ademais, aplicando-se conjuntamente com o artigo referido o artigo 71, inciso I da Lei 11.101/2005 (Art. 71. 0 plano especial de recuperação judicial será apresentado no prazo previsto no art. 53 desta Lei e limitar-se-á às seguintes condições: 1 - abrangerá exclusivamente os créditos quirografários, excetuados os decorrentes de repasse de recursos oficiais e os previstos nos §§ 3º e 4º do art. 49 desta Lei;), **verifica-se que deverá ocorrer apenas a suspensão do curso da prescrição e das ações e execuções dos créditos abrangidos pela recuperação, ou seja, dos créditos quirografários.**

Desta forma, ordeno a suspensão por 180 (cento e oitenta) dias, contados da publicação do edital que concederá publicidade a presente decisão, de todas as ações ou execuções contra a devedora, **na forma do art. 6º c/c o art. 71. parágrafo único, ambos da Lei 11.101/2005,** nos exatos termos do item III do art. 52, permanecendo os respectivos autos no juízo onde se processam ressalvadas as ações previstas nos § 1º, 2º e 7º do art. 6º e as relativas a créditos exceptuados na forma dos § 3º e 4º do art. 49, cabendo às autoras a comunicação necessária aos juízos.

Nos termos do art 7º da LFR,

"A verificação dos créditos será realizada pelo administrador judicial, com base nos livros contábeis e documentos comerciais e fiscais do devedor e nos documentos que lhe forem apresentados pelos credores, podendo contar com o auxílio de profissionais ou empresas especializadas".

Estabeleço o prazo de 15 dias, para que os credores apresentem suas habilitações ou divergências quanto aos créditos relacionados, nos termos do § 1º do art. 7º da lei referida, contados da publicação do edital que conterá a íntegra da presente decisão e da relação de credores, conforme determina o § 1º do art. 52 da LFR.

As habilitações deverão obedecer as determinações do art. 9º da Lei de Falências, senão vejamos:

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

Este documento é copia do original assinado digitalmente por JONAS HASS SILVA JUNIOR. Liberado nos autos digitais por Jonas Hass Silva Júnior, em 13/04/2013 as 10:29. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0802789-69.2013.8.12.0002 e o código 2D2209.

fls. 1034

**Estado de Mato Grosso do Sul**
Poder Judiciário
Dourados
5ª Vara Cível

"A habilitação de crédito realizada pelo credor nos termos do art. 7º, § 1º, desta Lei deverá conter: I - o nome, o endereço do credor e o endereço em que receberá comunicação de qualquer ato do processo; II - o valor do crédito, atualizado até a data da decretação da falência ou do pedido de recuperação judicial, sua origem e classificação; III - os documentos comprobatórios do crédito e a indicação das demais provas a serem produzidas; IV - a indicação da garantia prestada pelo devedor, se houver, e o respectivo instrumento; V - a especificação do objeto da garantia que estiver na posse do credor. Parágrafo único. Os títulos e documentos que legitimam os créditos deverão ser exibidos no original ou por cópias autenticadas se estiverem juntados em outro processo (nos processos virtuais, obedecendo-se, quanto aos documentos, a legislação pertinente).

As habilitações ou divergências previstas no art. 7º, § 2º da lei 11.101/05, devem ser protocoladas, quando recebidas em cartório devem ser entregues à Administradora Judicial (desjudicialização), que atestará o recebimento em livro próprio, para formular a relação de credores (Trata-se de mero incidente, portanto, não há custas).

Terminado o prazo de 15 (quinze ) dias para a apresentação das habilitações, inicia-se o prazo de 45 dias para a Administradora publicar o edital contendo a relação de credores, conforme o Art. 7º, § 2º, a administradora judicial, com base nas informações e documentos colhidos na forma do caput e do § 1º deste artigo, fará publicar edital contendo a relação de credores no prazo de 45 (quarenta e cinco) dias, contado do fim do prazo do § 1º deste artigo, devendo indicar o local, o horário e o prazo comum em que as pessoas indicadas no art. 8º desta Lei terão acesso aos documentos que fundamentaram a elaboração dessa relação.

O Comitê, qualquer credor, o devedor ou seus sócios ou o Ministério Público podem apresentar ao juiz impugnação contra a relação de credores, apontando a ausência de qualquer crédito ou manifestando-se contra a legitimidade, importância ou classificação de crédito relacionado, no prazo de 10 (dez) dias, contado da publicação da relação referida no art. 7º § 2º, (edital que publica a relação de credores elaborada pelo administrador), nos termos do art. 8º da mesma lei.

**As impugnações à relação de credores devem formar autos em separado em apenso aos autos principais** (Parágrafo único, do art. 8º da lei 11.101/05).

Apresentada a petição inicial da Impugnação a relação de credores, os credores cujos créditos foram impugnados deverão ser intimados para contestar em cinco dias.

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

Este documento é cópia do original assinado digitalmente por JONAS HASS SILVA JUNIOR. Liberado nos autos digitais por Joras Hass Silva Júnior, em 13/04/2013 as 10:29. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0802789-65.2013.8.12.0002 e o código 2D2209.

fls. 1035

**Estado de Mato Grosso do Sul**
Poder Judiciário
**Dourados**
**5ª Vara Cível**

Transcorrido esse prazo, o devedor e o comitê, se houver, deverão ser intimados para apresentar manifestação em cinco dias.

Na sequência, ultrapassado os cinco dias, a Administradora deverá ser intimado para apresentar seu parecer em cinco dias e em seguida os autos deverão ser remetidos a conclusão. Tratando-se de várias impugnações sobre o mesmo crédito, haverá apenas uma autuação (§ único do art. 13).

### Determinações Gerais

Intime-se o Ministério Público e comunique-se, por carta, às Fazendas Públicas Federal, Estadual e Municipal, nos quais o devedor tiver estabelecimento e filiais (art. 52, V).

Publique-se o edital, observando-se os requisitos dos três itens do § 1º do art. 52, ou seja:

I - resumo do pedido do devedor e da decisão que defere o processamento da recuperação judicial;

II - a relação nominal dos credores, em que se discrimine o valor atualizado e a classificação de cada crédito;

III - a advertência acerca dos prazos para habilitação dos créditos, na forma do art. 7º, § 1º, desta Lei (transcrever no edital o conteúdo do tópico das habilitações e divergências), e para que os credores apresentem objeção ao plano de recuperação judicial apresentado pelo devedor nos termos do art. 55 desta Lei.

Publique-se a presente decisão de deferimento do processamento da recuperação judicial por Edital (conforme acima determinado), "com urgência", e no Diário de Justiça. Registre-se. Intime-se.

Dourados/MS, 13 de abril de 2013.

JONAS HASS SILVA JUNIOR - Juiz de Direito
- assinado por certificado digital -

1 7 DEZ 2018   I   - 4 8 4 0 6

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

Este documento é cópia do original assinado digitalmente por JONAS HASS SILVA JUNIOR. Liberado nos autos digitais por Jonas Hass Silva Júnior, em 13/04/2013 às 10:29. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pas/adigital/pg/abrirConferenciaDocumento.do, informe o processo 0802789-69.2013.8.12.0002 e o código 2D2209.

# EXHIBIT 2



Tradução n° I-48407
Livro n° 576
Folha 182

*TRADUTORA PÚBLICA*

*I, Sandra Regina Mattos Rudzit, certified public translator, duly admitted and sworn by the Commercial Registry of the State of São Paulo, Brazil, hereby certify that a document was submitted to me, written in Portuguese, the translation of which is as follows:*

page

**State of Mato Grosso do Sul**

Judiciary

**Dourados**

**5th Lower Civil Court**

**Case Records No. 0802789-69.2013.8.12.0002**

**Court-Supervised Reorganization/PROC**

**Plaintiff: São Fernando Açúcar e Álcool Ltda., São Fernando Energia I Ltda., São Fernando Energia II Ltda., São Marcos Energia e Participações Ltda., São Pio Empreendimentos Participações Ltda.**

The initial court order of this court-supervised reorganization is on p. 1043/1050 and decisions were also rendered on p. 1828/1831, p. 4130/4143, p. 4164, p. 4924/4931, p. 6969/6970, p. 7803/7818 and p. 9687/9698. The following is stated in the case records:

**1 –** P. 9699/9700: Call Notice of creditors to attend the Creditors' Meeting.

**2 –** P. 9709/9715: **AGROFIELD CENTRO-OESTE COMÉRCIO DE PRODUTOS AGRÍCOLAS LTDA.** inserted power of attorney and articles of association.

**3 –** P. 9716/9725, p. 9775/9783, p. 9784/9790, p. 9791/9799, p. 10058/10060, p. 10061/10063, p. 10064/10066, p. 10067/10072, p. 10089/10091, p. 11803/11805, p. 11806/11812, p. 11813/11814, p. 11815/11817, p. 11818/11820 and p. 11821/11823: Official Notices from the Lower Labor Court of Dourados sending credit certificates.

**4 –** P. 9726/9733, p. 9734/9737, p. 9738/9745, p. 9746/9753, p. 9754/9760, p. 9761/9767, p. 9768/9774, p. 9814/9819, p. 9820/9827, p. 9892/9897, p. 9898/9902, p. 9903/9931, p. 9932/9937, p. 10028/10038, p. 10039/10048, p. 10049/10057, p. 10626/10630, p. 11677/11718, p. 11719/11757 and p. 11758/11802: Proofs of claims of labor credit were submitted.

**5 –** P. 9800/9801: Certificate of publication of the call notice on the judicial gazette No. 2958 of September 6, 2013.

**6 –** P. 9810/9813: **BRAY CONTROLS INDÚSTRIA DE ÁLVULAS LTDA.** filed objection to the claimed credit.

**7 –** P. 9828/9859: **CONCRELAJE INDÚSTRIA DE PRÉ MOLDADOS DE CONCRETO LTDA.** filed objection to the court-supervised reorganization plan.

**8 –** P. 9860/9891: **CONCREMAX TRANSPORTES E LOCAÇÕES DE MÁQUINAS LTDA.** filed objection to the court-supervised reorganization plan.

**9 –** P. 9938/9969: **CAMPO GRANDE DIESEL LTDA.** filed objection to the court-supervised reorganization plan.

**10 –** P. 9970/10000: **CAMPO GRANDE DIESEL LTDA.** claimed rectification of its name in this action.

**11 –** P. 10001/10027: **PETROFISA DO BRASIL LTDA.** petitioned for insertion of power of attorney.



Tradução nº I-48407
Livro nº 576
Folha 183

*TRADUTORA PÚBLICA*

**12** – P. 10073/10074: **BUNGE FERTILIZANTES S/A** petitioned for insertion of delegation of powers.

**13** – P. 10075/10078: **SONIA APARECIDA BRAGA DOS SANTOS** petitioned for confirmation of her inclusion in the list of creditors and the insertion of power of attorney.

**14** – P. 10079/10084: **ZAIRA BRAGA DOS SANTOS** petitioned for confirmation of her inclusion in the list of creditors and the insertion of power of attorney.

**15** – P. 10085/10088: **AIDA BRAGA DOS SANTOS** petitioned for confirmation of her inclusion in the list of creditors and the insertion of power of attorney.

**16** – P. 10092/10110: The reorganization companies informed that the frost and the fire did not impair the production of the reorganization companies or the feasibility of the court-supervised reorganization plan.

**17** – P. 10111/10162: **BANCO DAYCOVAL S/A** filed objection to the credit and inserted power of attorney and documents.

**18** – P. 10163/10391: **BANCO PINE S/A** filed objection to the list of creditors seeking exclusion of all its credits from the effects of this reorganization. It affirms that the trustee admitted its objection, but maintained the claimant as an unsecured creditor of the amount of R$20,107,864.58. It affirms that the provisions of article 49, paragraph 3 of Law No. 11.101/2005 do not apply, because the assignments were registered after the petition for court-supervised reorganization. It inserted power of attorney, articles of association and documents.

**19** – P. 10392/10592: **FUNDO DE INVESTIMENTO EM DIREITOS DE CRÉDITO MULTISETORIAL SILVERADO – FORNECEDORES DO SISTEMA PETROBRAS** filed objection to the list of creditors claiming that it is not a creditor of the reorganization companies and requesting its exclusion from the list of creditors.

It affirms that, on May 4, 2011, it entered into a transaction of purchase and sale of credit rights with the São Fernando Group, as a result of which there was the assignment of credit rights of São Fernando from the sale of fuel ethanol to Petrobrás; and that, because of said credit assignments, it became a creditor of Petrobrás rather than of São Fernando.

It argues that it filed objection to the trustee and that it dismissed said objection on the grounds that the supply agreement linked to the transaction with Silverado expired before its full performance and, therefore there is no further credit right to be demanded from Petrobrás under the supply agreement linked to the assignment agreement entered into with Silverado.

It affirms that Petrobrás shall continue to make the deposits relating to the assignment agreement directly in the account of Silverado, which supports the validity and effectiveness of the assignment agreement; and that, therefore, Petrobrás is the debtor of Silverado, rather than the São Fernando Group.

It claimed rectification of the list of creditors in order to exclude Fundo de Investimento em Direitos de Crédito Multisetorial Silverado – Fornecedores do Sistema Petrobras from this Court-Supervised Reorganization. It inserted power of attorney, articles of association and documents.

**20** – P. 10594/10605: **BANCO BONSUCESSO S/A** petitioned for insertion of power of attorney.

**21** – P. 10606/10625: **BANCO DO BRASIL S/A** petitioned for insertion of power of attorney and delegation of powers.

**22** – P. 10631/11057: **BANCO DO BRASIL S/A** filed objection to the list of creditors petitioning for the credits of Banco do Brasil S/A, with guarantee of disposal and fiduciary assignment, to be excluded from the scope of the court-supervised reorganization. It affirms that the agreements with guarantee of disposal and fiduciary assignment are not subject to the court-supervised reorganization proceeding, as provided for by paragraph 3 of article 49 of Law No. 11.101/2005. It argues that its objection had been

Tradução nº I-48407
Livro nº 576
Folha 184



*Sandra Regina Mattos Rudzit*

*TRADUTORA PÚBLICA*

admitted by the trustee, but, when preparing the list of creditors, the trustee classified the credits of Banco do Brasil S/A as "first-priority" credits. It affirmed that there are no "first-priority" credits in the court-supervised reorganization, given that they are excluded from the bankruptcy proceeding, as provided for by article 69 of Law No. 11.101/2005.

**23 –** P. 11058/11059: **RITMO LOGÍSTICA S/A** filed proof of claim and objection to the court-supervised reorganization plan.

**24 –** P. 11060/11093: **BUNGE FERTILIZANTES S/A** informed the filing of interlocutory appeal against the decision on p. 9687/9698 and petitioned for the performance of any opinion of retraction.

**25 –** P. 11094/11137: **IMBIL INDÚSTRIA E MANUTENÇÃO DE BOMBAS ITA LTDA.** filed proof of claim. It inserted power of attorney and documents.

**26 –** P. 11138/11140: **TRANSPORTADORA ESPECIALISTA LTDA.** filed objection to the court-supervised reorganization plan.

**27 –** P. 11141/11143: **M. C. E. INTERCAMBIADORES LTDA. ME** filed objection to the court-supervised reorganization plan.

**28 –** P. 11144/11146: **AGAPITO EQUIPAMENTOS INDUSTRIAIS LTDA. EPP** filed objection to the court-supervised reorganization plan.

**29 –** P. 11147/11149: **RGN ASSESSORIA TÉCNICA EM SOLDAGEM LTDA.** filed objection to the court-supervised reorganization plan.

**30 –** P. 11151/11162: **VALDIR MARTINEZ PERIN EQUIPAMENTOS INDUSTRIAIS ME** filed objection to the court-supervised reorganization plan.

**31 –** P. 11163/11172: **CONECTA TRANSPORTES DE QUÍMICOS E EQUIPAMENTOS INDUSTRIAIS LTDA.** filed objection to the court-supervised reorganization plan.

**32 –** P. 11173/11182: **FERROLETO COMERCIAL LTDA. EPP** filed objection to the court-supervised reorganization plan.

**33 –** P. 11183/11186: **HEBER PARTICIPAÇÕES S/A** petitioned for insertion of power of attorney and delegation of powers.

**34 –** P. 11187/11196: **RGN ASSESSORIA TÉCNICA EM SOLDAGEM LTDA.** filed objection to the court-supervised reorganization plan.

**35 –** P. 11197/11206: **M. C. E. INTERCAMBIADORES LTDA. ME** filed objection to the court-supervised reorganization plan.

**36 –** P. 11207/11216: **TRANSPORTADORA ESPECIALISTA LTDA.** filed objection to the court-supervised reorganization plan.

**37 –** P. 11217/11226: **AGAPITO EQUIPAMENTOS INDUSTRIAIS LTDA. EPP** filed objection to the court-supervised reorganization plan.

**38 –** P. 11228/11237: **BERNIFER PERFILADOS DE AÇO LTDA.** petitioned for insertion of power of attorney and articles of association.

**39 –** P. 11238: The case records were sent to the Public Prosecutors' Office.

**40 –** P. 11240/11285: **TGM TURBINAS INDÚSTRIA E COMÉRCIO LTDA.** informed that it filed proof of claim, case No. 0808091-79.2013, and inserted documents.

**41 –** P. 11286/11338: **TGM TURBINAS INDÚSTRIA E COMÉRCIO LTDA.** informed that it filed proof of claim, case No. 0808089-12.2013, and inserted documents.

**42 –** P. 11339/11360: **BANCO BONSUCESSO S/A** informed the filing of interlocutory appeal and objection to credit.



Tradução nº I-48407
Livro nº 576
Folha 185

*TRADUTORA PÚBLICA*

**43** – P. 11361: The Public Prosecutors' Office made a statement acknowledging the decision on p. 9687/9698.

**44** – P. 11363/11373: The reorganization companies claimed release of submission of the debt clearance certificates referred to by article 57 of Law No. 11.101/2005, immediate ratification of the court-supervised reorganization plan, and granting of the court-supervised reorganization. They also requested for the decision to expressly state that the terms and conditions established in Exhibit 6.2 shall be applied to the other creditors with collateral that wish so.

**45** – P. 11374/11584: The trustee submitted the Minutes of the Creditors' Meeting together with the attendance list, voting results table, statement of reasons of votes, court-supervised reorganization plan and exhibit to the reorganization plan.

**46** – P. 11586/11671: The reorganization companies reinforced the petition for ratification of the court-supervised reorganization plan without submission of the tax debt clearance certificates and for indication in the decision of adjudication that the provisions set forth in Exhibit 6.2 shall be extended to all creditors with collateral.

**47** – P. 11673/11674: **TOALHEIRO MS LTDA. E ELÉTRICA ZAN LTDA.** petitioned for insertion of delegation of powers.

**48** – P. 11675/11676: **TOALHEIRO MS LTDA. E ELÉTRICA ZAN LTDA.** petitioned for insertion of delegation of powers.

**This is the report.**

I shall now analyze each of the items above.

**a** – The court office shall arrange for inclusion in the SAJ of the name of all lawyers and interested parties and creditors contained in the case records.

**b** – Regarding items 24 and 42 (interlocutory appeals): I uphold the appealed judgment based on its own grounds.

**c** – Regarding items 2, 11, 12, 13, 14, 15, 20, 21, 33, 38, 40, 41, 47 and 48 above, there are no issues to be decided.

**d** – Regarding the proofs of claims and credit objections referred to in items 3, 4, 6, 17, and 25 above:

The court-supervised reorganization proceeding is regulated by Law No. 11.101/2005, which provides for the following in its article 7, paragraph 1:

*"Article 7 (…)*

*Paragraph 1 After publication of the notice set forth in article 52, paragraph 1, or in the sole paragraph of article 99 of this Law, the creditors shall have fifteen (15) days to submit to the trustee their proofs of claim or divergences to the listed credits.*

Article 10, main provision and paragraph 5, in turn, establish that:

*"Article 10. In case the term established in article 7, paragraph 1 of this Law is not complied with, the proofs of claims shall be received as delayed ones.*

*(...)*

*Paragraph 5 Delayed proofs of claims, if submitted before ratification of the general table of creditors, shall be received as objection and prosecuted as provided for by articles 13 to 15 of this Law."*

In this case, it appears that the notice referred to in article 7, paragraph 1 of Law No. 11.101/2005 was published by the Judicial Gazette No. 2894 of June 4, 2013, and therefore the term of fifteen (15) days for the creditors to file their proof of claim has already elapsed. This proof of claim is delayed.

SANDRA REGINA MATTOS RUDZIT - Tradutora Pública e Intérprete Comercial - Português - Inglês - Matrícula na JUCESP nº 1688 - CPF 082.060.018-08 - RG 8.222.837
Rua Matias Aires, 402 - 9º andar - 01309-020 - São Paulo - SP - Brasil - Fone/Fax: 55-11-3155-7383 - e-mail: just@just.trd.br - www.just.trd.br



Tradução nº I-48407
Livro nº 576
Folha 186

*Sandra Regina Mattos Rudzit*

*TRADUTORA PÚBLICA*

Considering that there has not been ratification of the general table of creditors yet, I receive this proof of claim as objection to credit, as provided for by article 10, paragraph 5 of the Court-Supervised Reorganization Law.

The court office shall arrange for striking out of said petitions and send them to the distributor office to be distributed as "Credit Objection" and docketed separately, as provided for by article 13, sole paragraph of the Court-Supervised Reorganization Law.

**e** – As regards item 10 (name rectification): Granted. The court office shall arrange for the required modifications.

**f** – In relation to item 16: Notify the creditors.

**g** – Regarding the objections referred to in items 7, 8, 9, 23, 26, 27, 28, 29, 30, 31, 32, 34, 35, 36 and 37 above, the following is provided for by article 56 of the Court-Supervised Reorganization Law:

*"Article 56. In case of objection of any creditor to the court-supervised reorganization plan, the judge shall call the creditors' meeting to resolve on the reorganization plan."*

In this case, the Creditors' Meeting has been already called and held on September 24, 2013, in accordance with documents on p. 11374/11584, and the court-supervised reorganization plan was approved at said meeting. Therefore, considering that article 56 of Law No. 11.101/2005 has been already complied with, there was loss of purpose of the aforementioned objections, the petitions are moot, and for that reason I shall not examine them.

**h** – Regarding items 18, 19 and 22 above: The reorganization companies shall answer within 05 days. After that, notify the trustee to issue an opinion within 05 days.

**i** – Regarding items 44 (p. 10392/10592) and 46 (p. 10631/11057), I grant the petition of the reorganization companies in relation to the ratification of the court-supervised reorganization plan regardless of submission of debt clearance certificates referred to by article 57 of Law No. 11.101/2005.

The Special Court of the Superior Court of Justice (STJ), in the judgment of Special Appeal (REsp) No. 1.187.404, followed the same line of construal, seconding the vote of Justice Luís Felipe Salomão. In accordance with the position of the STJ, any construal that prevents or fails to encourage the overcoming of the crisis of the company in court-supervised reorganization violates the law. With such construal, the Special Court of the Superior Court of Justice (STJ) ruled out the requirement of tax clearance certificates for ratification of the reorganization plan.

In accordance with justice Luis Felipe Salomão, the law needs to be construed at all times aiming at the maintenance of the economic activity of the company, rather than with *"the small-minded view that the legal procedure is intended to protect the interests of the businessperson. The primary value to be protected is the economic order,"* he said. *"In some instances, it is precisely the individual interest of the businessperson that is sacrificed, for benefit of the company maintenance as an economic unit of undeniable social usefulness",* the reporting justice completed.

For the Justice, the literal construal of article 57 of the Bankruptcy and Reorganization Law (LRF) – that requires the certificates – together with article 191-A of the Brazilian Tax Code (CTN) – that requires full settlement of the debt for granting of reorganization – *"prevents any and all court-supervised reorganization and leads to full burial of the new legal procedure. As a rule, with the strong tax burden that characterizes the Brazilian economic model, it is easy to assume that the company in crisis has significant tax liabilities"* – the Justice said, adding that this is frequently *"the true reason of the debacle".*

For Salomão, the requirement of tax regularity prevents the court-supervised reorganization, which would not meet the interests of the company or of the creditors, including the tax authorities and the workers.

The Court also understood that the payment in installments of the tax debt is a right of the taxpayer in reorganization. Said payment in installments also causes the staying of the credit enforceability, which



Tradução nº I-48407
Livro nº 576
Folha 187

*TRADUTORA PÚBLICA*

guarantees the issue of liability certificates with clearance effects. That would enable the company to fully comply with article 57 of the LRF.

For justice Salomão, the mentioned articles of the LRF and CTN *"shall be construed in the light of the new guidelines outlined by the legislation for the tax debts, especially aiming at the legal provision of payment in installments of the tax claim for benefit of the company in reorganization, which is the reason for staying of the tax enforceability".*

The court-supervised reorganization plan was approved at the Creditors' Meeting.

I shall now analyze the final petition of the reorganization companies, on p. 11363/11373 and 11586/11671, "for indication in the decision of adjudication that the provisions set forth in Exhibit 6.2 shall be extended to all creditors with collateral".

The court-supervised reorganization plan shall be ratified as it is on p. 11404/11431. This Court cannot amend or clarify it. If the petition of the reorganization companies on p. 11363/11373 and 11586/11671 requests any amendment to the provisions of the plan approved at the meeting, on p. 11404/11431, this Court has no reasons to do so, because the plan is formally perfect and there is no reason to amend it. It cannot be clarified by this court, because it is sufficiently clear, and any clarification could lead to extensive or restrictive construal, which could impair the other creditors. And if this petition is a mere repetition of what is already contained in exhibits 6.2 (p. 11417/11431) and section 6.3 (p. 11411), it changes nothing and, therefore, would be useless. Therefore, this court decided to ratify the plan on p. 11.404/11431 as approved at the Creditors' Meeting.

Furthermore, the Plan approved at the Creditors' Meeting expressly provides, in section 6.3 (p. 11411), for the optional adhesion by creditors with collateral, mentioned in item 6.1 (p. 11.411), under the conditions of exhibit 6.2.

In view of the foregoing, **I ratify the court-supervised reorganization plan on p. 11404/11431 and grant court-supervised reorganization to São Fernando Group,** i.e., to São Fernando Açúcar e Álcool Ltda., São Fernando Energia I Ltda., São Fernando Energia II Ltda., São Marcos Energia e Participações Ltda. and São Pio Empreendimentos e Participações Ltda., as provided for by article 58 of Law No. 11.101/2005.

Notify. Communicate to the Public Prosecutors' Office.

Dourados, September 27, 2013.

Jonas Hass Silva Júnior– Judge

- signed by digital certificate –

This document is a copy of the original digitally signed by JONAS HASS SILVA JUNIOR. Released in the digital case records by Jonas Hass Silva Júnior, on September 27, 2013 at 4:21 p.m. To access the procedural case records, go to https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, enter case No. 0802789-69.2013.8.12.0002 and code 396D19.

*IN WITNESS WHEREOF I set my hand and seal to this translation.*

*São Paulo, December 17, 2018*

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública

csi/194850.doc

SANDRA REGINA MATTOS RUDZIT - Tradutora Pública e Intérprete Comercial - Português - Inglês - Matrícula na JUCESP nº 1688 - CPF 082.060.018-08 - RG 8.222.837-1
Rua Matias Aires, 402 - 9º andar - 01309-020 - São Paulo - SP - Brasil - Fone/Fax: 55-11-3155-7383 - e-mail: just@just.trd.br - www.just.trd.br

**Estado de Mato Grosso do Sul**
Poder Judiciário
Dourados
5ª Vara Cível

**Autos nº  0802789-69.2013.8.12.0002**
**Recuperação Judicial/PROC**
**Requerente: São Fernando Açúcar e Álcool Ltda, São Fernando Energia I Ltda, São Fernando Energia II Ltda, São Marcos Energia e Participações Ltda., São Pio Empreendimentos Participações Ltda**

O despacho inicial da presente recuperação judicial consta à p. 1043/1050 e foram proferidas, ainda, as decisões de p. 1828/1831, p. 4130/4143, p. 4164, p. 4924/4931, p. 6969/6970, p. 7803/7818 e p. 9687/9698. Consta dos autos:

**1** – P. 9699/9700: Edital de convocação dos credores para participar da Assembleia-Geral.

**2** – P. 9709/9715: **AGROFIELD CENTRO-OESTE COMÉRCIO DE PRODUTOS AGRÍCOLAS LTDA** juntou procuração e contrato social.

**3** – P. 9716/9725, p. 9775/9783, p. 9784/9790, p. 9791/9799, p. 10058/10060, p. 10061/10063, p. 10064/10066, p. 10067/10072, p. 10089/10091, p. 11803/11805, p. 11806/11812, p. 11813/11814, p. 11815/11817, p. 11818/11820 e p. 11821/11823: Ofícios da Vara do Trabalho de Dourados remetendo certidões de crédito.

**4** – P. 9726/9733, p. 9734/9737, p. 9738/9745, p. 9746/9753, p. 9754/9760, p. 9761/9767, p. 9768/9774, p. 9814/9819, p. 9820/9827, p. 9892/9897, p. 9898/9902, p. 9903/9931, p. 9932/9937, p. 10028/10038, p. 10039/10048, p. 10049/10057, p. 10626/10630, p. 11677/11718, p. 11719/11757 e p. 11758/11802: Foram apresentadas habilitações de crédito trabalhistas.

**5** – P. 9800/9801: Foi certificada a publicação do edital de convocação no diário da justiça nº. 2958, de 06/09/2013.

**6** – P. 9810/9813: **BRAY CONTROLS INDÚSTRIA DE ÁLVULAS LTDA** apresentou impugnação ao crédito habilitado.

**7** – P. 9828/9859: **CONCRELAJE INDÚSTRIA DE PRÉ MOLDADOS DE CONCRETO LTDA** apresentou objeção ao plano de

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

Este documento é cópia do original assinado digitalmente por JONAS HASS SILVA JUNIOR. Liberado nos autos digitais por Jonas Hass Silva Júnior em ... de ... 16:21. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/... e informe o nrocesso 0802789-69.2013.8.1... Documento.do, informe o processo 0802789-69.2013.8.1..., Comr...ncie ... ...96D19.

fls. 11825

**Estado de Mato Grosso do Sul**
Poder Judiciário
Dourados
5ª Vara Cível

recuperação judicial.

**8 – P. 9860/9891: CONCREMAX TRANSPORTES E LOCAÇÕES DE MÁQUINAS LTDA** apresentou objeção ao plano de recuperação judicial.

**9 – P. 9938/9969: CAMPO GRANDE DIESEL LTDA** apresentou objeção ao plano de recuperação judicial.

**10 – P. 9970/10000: CAMPO GRANDE DIESEL LTDA** requereu a retificação de seu nome nesta ação.

**11 – P. 10001/10027: PETROFISA DO BRASIL LTDA** requereu a juntada de procuração.

**12 – P. 10073/10074: BUNGE FERTILIZANTES S/A** pediu a juntada de substabelecimento.

**13 – P. 10075/10078: SONIA APARECIDA BRAGA DOS SANTOS** pediu a confirmação de sua inclusão na relação de credores e a juntada de procuração.

**14 – P. 10079/10084: ZAIRA BRAGA DOS SANTOS** pediu a confirmação de sua inclusão na relação de credores e a juntada de procuração.

**15 – P. 10085/10088: AIDA BRAGA DOS SANTOS** pediu a confirmação de sua inclusão na relação de credores e a juntada de procuração.

**16 – P. 10092/10110:** As recuperandas informaram que a geada e o incêndio não prejudicaram a produção das recuperandas, nem tampouco a viabilidade do plano de recuperação judicial.

**17 – P. 10111/10162: BANCO DAYCOVAL S/A** apresentou impugnação ao crédito e juntou procuração e documentos.

**18 – P. 10163/10391: BANCO PINE S/A** apresentou impugnação à lista de credores objetivando a exclusão de todos os seus créditos dos

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

Este documento é cópia do original assinado digitalmente por JONAS HASS SILVA JUNIOR. Liberado nos autos digitais por Jonas Hass Silva Júnior, em 27/09/2013 às 16:21. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0802789-69.2013.8.12.0002 e o código 396D19.

fls. 11826

**Estado de Mato Grosso do Sul**
Poder Judiciário
Dourados
5ª Vara Cível

efeitos desta recuperação. Sustenta que a administradora judicial acolheu sua impugnação, entretanto manteve o requerente como credor quirografário da quantia de R$ 20.107.864,58. Afirma que não se aplica as disposições do art. 49, § 3º, da Lei nº. 11.101/2005, pois as cessões foram registradas após o pedido de recuperação judicial. Juntou procuração, contrato social e documentos.

**19** – P. 10392/10592: **FUNDO DE INVESTIMENTO EM DIREITOS DE CRÉDITO MULTISETORIAL SILVERADO – FORNECEDORES DO SISTEMA PETROBRAS** apresentou impugnação à relação de credores alegando que não é credor das recuperandas e pedindo sua exclusão da lista de credores.

Sustenta que em 04/05/2011 efetuou uma operação de compra e venda de direitos creditórios com o Grupo São Fernando, em razão do qual houve a cessão de direitos creditórios da São Fernando oriundos da venda de álcool combustível para a Petrobrás; e, que em razão dessas cessões de crédito passou a ser credor da Petrobrás e não da São Fernando.

Alega que apresentou impugnação perante a administradora judicial e esta indeferiu a impugnação sob o argumento de que o contrato de fornecimento vinculado à operação com a Silverado foi extinto antes de sua completa execução, de modo que não existe mais nenhum direito creditório a ser exigido da Petrobrás sob o contrato de fornecimento vinculado ao contrato de cessão firmado com a Silverado.

Sustenta que a Petrobrás continua efetuando os depósitos referentes ao contrato de cessão diretamente na conta da Silverado, o que coaduna a validade e vigência do contrato de cessão; e, que, portanto, a Petrobrás é a devedora da Silverado, e não o Grupo São Fernando.

Pediu a retificação da relação de credores para o fim de excluir o Fundo de Investimento em Direitos de Crédito Multisetorial Silverado – Fornecedores do Sistema Petrobras da presente Recuperação Judicial. Juntou procuração, contrato social e documentos.

**20** – P. 10594/10605: **BANCO BONSUCESSO S/A** requereu a juntada de procuração.

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

Este documento é cópia do original assinado digitalmente por JONAS HASS SILVA JUNIOR. Liberado nos autos digitais por Jonas Hass Silva Júnior, em 27/09/2013 às 16:21. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/nas.adigital/pg/abrirConferenciaDocumento do informe o processo 08/02:89-n9.2015.8.12.0002 e o código 396D19.

**Estado de Mato Grosso do Sul**
Poder Judiciário
Dourados
5ª Vara Cível

21 – P. 10606/10625: **BANCO DO BRASIL S/A** requereu a juntada de procuração e substabelecimento.

22 – P. 10631/11057: **BANCO DO BRASIL S/A** apresentou impugnação em face da relação de credores requerendo que os créditos do Banco do Brasil S/A, com garantia de alienação e cessão fiduciária, sejam excluídos da abrangência da recuperação judicial. Sustenta que os contratos com garantia de alienação e cessão fiduciária não se sujeitariam ao procedimento de recuperação judicial, nos termos do § 3º do art. 49 da Lei nº. 11.101/2005. Alega que sua impugnação foi acolhida integralmente pela administradora judicial, no entanto, ao elaborar a lista de credores a administradora classificou os créditos do Banco do Brasil S/A como créditos "extraconcursais". Afirmou que na recuperação judicial não existem créditos "extraconcursais", tendo em vista que estes são excluídos do processo de falência, conforme art. 69 da Lei nº. 11.101/2005.

23 – P. 11058/11059: **RITMO LOGÍSTICA S/A** apresentou habilitação de crédito e objeção ao plano de recuperação judicial.

24 – P. 11060/11093: **BUNGE FERTILIZANTES S/A** informou a interposição de agravo de instrumento contra a decisão de p. 9687/9698 e pediu a realização de eventual juízo de retratação.

25 – P. 11094/11137: **IMBIL INDÚSTRIA E MANUTENÇÃO DE BOMBAS ITA LTDA** apresentou habilitação de crédito. Juntou procuração e documentos.

26 – P. 11138/11140: **TRANSPORTADORA ESPECIALISTA LTDA** apresentou objeção ao plano de recuperação judicial.

27 – P. 11141/11143: **M. C. E. INTERCAMBIADORES LTDA ME** apresentou objeção ao plano de recuperação judicial.

28 – P. 11144/11146: **AGAPITO EQUIPAMENTOS INDUSTRIAIS LTDA EPP** apresentou objeção ao plano de recuperação judicial.

29 – P. 11147/11149: **RGN ASSESSORIA TÉCNICA EM SOLDAGEM LTDA** apresentou objeção ao plano de recuperação judicial.

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

Este documento é cópia do original assinado digitalmente por JONAS HASS SILVA JUNIOR. Liberado nos autos digitais por Jonas Hass Silva Júnior, em 27/09/2013 às 16:21. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferencia documento e informe o processo 08... 8.12.0002 e o código 396D19.

fls. 11828



**Estado de Mato Grosso do Sul**
Poder Judiciário
Dourados
5ª Vara Cível

**30** – P. 11151/11162: **VALDIR MARTINEZ PERIN EQUIPAMENTOS INDUSTRIAIS ME** apresentou objeção ao plano de recuperação judicial.

**31** – P. 11163/11172: **CONECTA TRANSPORTES DE QUÍMICOS E EQUIPAMENTOS INDUSTRIAIS LTDA** apresentou objeção ao plano de recuperação judicial.

**32** – P. 11173/11182: **FERROLETO COMERCIAL LTDA EPP** apresentou objeção ao plano de recuperação judicial.

**33** – P. 11183/11186: **HEBER PARTICIPAÇÕES S/A** requereu a juntada de procuração e substabelecimento.

**34** – P. 11187/11196: **RGN ASSESSORIA TÉCNICA EM SOLDAGEM LTDA** apresentou objeção ao plano de recuperação judicial.

**35** – P. 11197/11206: **M. C. E. INTERCAMBIADORES LTDA ME** apresentou objeção ao plano de recuperação judicial.

**36** – P. 11207/11216: **TRANSPORTADORA ESPECIALISTA LTDA** apresentou objeção ao plano de recuperação judicial.

**37** – P. 11217/11226: **AGAPITO EQUIPAMENTOS INDUSTRIAIS LTDA EPP** apresentou objeção ao plano de recuperação judicial.

**38** – P. 11228/11237: **BERNIFER PERFILADOS DE AÇO LTDA** pediu a juntada de procuração e contrato social.

**39** – P. 11238: Os autos foram encaminhados ao MP.

**40** – P. 11240/11285: **TGM TURBINAS INDÚSTRIA E COMÉRCIO LTDA** informou que apresentou habilitação de crédito, processo nº. 0808091-79.2013, e juntou documentos.

**41** – P. 11286/11338: **TGM TURBINAS INDÚSTRIA E COMÉRCIO LTDA** informou que apresentou habilitação de crédito,

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

Este documento é cópia do original assinado digitalmente por JONAS HASS SILVA JUNIOR. Liberado nos autos digitais por Jonas Hass Silva Júnior, em 27/09/2013 às 16:21. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0802789-F3.2013.8.12.0002 e o código 396D019.

fls. 11829

**Estado de Mato Grosso do Sul**
Poder Judiciário
Dourados
5ª Vara Cível

processo nº. 0808089-12.2013, e juntou documentos.

**42** – P. 11339/11360: **BANCO BONSUCESSO S/A** informou a interposição de agravo de instrumento e de impugnação de crédito.

**43** – P. 11361: O Ministério Público manifestou ciência da decisão de p. 9687/9698.

**44** – P. 11363/11373: As recuperandas pediram a dispensa da apresentação das certidões negativas de débito que trata o art. 57 da Lei nº. 11.101/2005, a imediata homologação do plano de recuperação judicial e a concessão da recuperação judicial. Pediu ainda que conste expressamente na decisão que os termos e condições previstos no Anexo 6.2 sejam aplicados aos demais credores com garantia real que assim desejarem.

**45** – P. 11374/11584: A administradora judicial apresentou Ata da Assembleia Geral de Credores acompanhada da lista de presença, quadro de resultado de votação, fundamentação de votos, plano de recuperação judicial e anexo ao plano de recuperação.

**46** – P. 11586/11671: As recuperandas reiteraram o pedido de homologação do plano de recuperação judicial sem a apresentação das certidões negativas de débitos tributários e para que conste na decisão homologatória que as disposições constantes no Anexo 6.2 serão estendidas para todos os credores com garantia real.

**47** – P. 11673/11674: **TOALHEIRO MS LTDA E ELÉTRICA ZAN LTDA** requereram a juntada de substabelecimento.

**48** – P. 11675/11676: **TOALHEIRO MS LTDA E ELÉTRICA ZAN LTDA** requereram a juntada de substabelecimento.

**É o relatório.**

Passo a analisar cada um dos itens supra.

**a** – O cartório judicial providencie a inclusão no SAJ do nome de todos os advogados e interessados e credores que constam dos autos.

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

Este documento é cópia do original assinado digitalmente por JONAS HASS SILVA JUNIOR. Liberado nos autos digitais por Jonas Hass Silva Júnior, em 27/09/2013 às 16:21. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0802789-69.2013.8.12.0002 e o código 396D19.

fls. 11830



**Estado de Mato Grosso do Sul**
Poder Judiciário
Dourados
5ª Vara Cível

**b** – Quanto aos itens 24 e 42 (agravos de instrumento): Mantenho a decisão agravada por seus próprios fundamentos.

**c** – Quanto aos itens 2, 11, 12, 13, 14, 15, 20, 21, 33, 38, 40, 41, 47 e 48 supra, não há questões a serem decididas.

**d** – Quanto às habilitações e impugnações de crédito que tratam os itens 3, 4, 6, 17, e 25 supra:

O procedimento de recuperação judicial é regulado pela Lei nº. 11.101/2005, que assim dispõe no seu art. 7º, § 1º:

*"Art. 7º. (...)*
*§ 1º Publicado o edital previsto no art. 52, § 1º, ou no parágrafo único do art. 99 desta Lei, os credores terão o prazo de 15 (quinze) dias para apresentar ao administrador judicial suas habilitações ou suas divergências quanto aos créditos relacionados."*

O art. 10, *caput* e § 5º, por sua vez, estabelecem que:

*"Art. 10. Não observado o prazo estipulado no art. 7º, § 1º, desta Lei, as habilitações de crédito serão recebidas como retardatárias.*
*(...)*
*§ 5º As habilitações de crédito retardatárias, se apresentadas antes da homologação do quadro-geral de credores. serão recebidas como impugnação e processadas na forma dos arts. 13 a 15 desta Lei."*

No caso, verifica-se que o edital que trata o art. 7º, § 1º, da Lei nº. 11.101/2005 foi publicado no Diário da Justiça nº. 2894, de 04/06/2013, de forma que já decorreu o prazo de 15 (quinze) dias para os credores apresentarem habilitação de crédito. A presente habilitação de crédito é retardatária.

Considerando que ainda não houve homologação do quadro-geral de credores, recebo a presente habilitação de crédito como impugnação de crédito, nos termos do art. 10, § 5º, da Lei de Recuperação Judicial.

O cartório judicial providencie o desentranhamento das referidas petições e remetam-nas ao cartório distribuidor para serem distribuídas

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

Este documento é cópia do original assinado digitalmente por JONAS HASS SILVA JUNIOR. Liberado nos autos digitais por Jonas Hass Silva Júnior, em 27/09/2013 às 16:21. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0802789-69.2013.8.12.0002 e o código 396D19.

fls. 11831



**Estado de Mato Grosso do Sul**
Poder Judiciário
**Dourados**
**5ª Vara Cível**

como "Impugnação de Crédito" e autuadas em separado, conforme dispõe o art. 13, parágrafo único, da Lei de Recuperação Judicial.

**e** – Quanto ao item 10 (retificação de nome): Defiro. O cartório judicial providencie as alterações necessárias.

**f** – Quanto ao item 16: Ciência aos credores.

**g** – Quanto às objeções que tratam os itens 7, 8, 9, 23, 26, 27, 28, 29, 30, 31, 32, 34, 35, 36 e 37 supra, assim dispõe o art. 56 da Lei de Recuperação Judicial:

*"Art. 56. Havendo objeção de qualquer credor ao plano de recuperação judicial, o juiz convocará a assembleia-geral de credores para deliberar sobre o plano de recuperação."*

No caso, já houve a convocação da Assembleia Geral, a qual foi realizada em 24/09/2013, conforme documentos de p. 11374/11584, sendo que na referida assembleia houve a aprovação do plano de recuperação judicial. Assim, considerando que já foi cumprido o art. 56 da Lei nº. 11.101/2005, houve a perda do objeto das objeções supramencionadas e os pedidos restaram prejudicados, motivo pelo qual deixo de apreciá-los.

**h** – Quanto aos itens 18, 19 e 22 supra: Digam as recuperandas, em 05 dias. Após, intime-se a administradora judicial para emitir parecer, em 05 dias.

**i** – Quanto aos itens 44 (p. 10392/10592) e 46 (p. 10631/11057), defiro o pedido das recuperandas com relação à homologação do plano de recuperação judicial independentemente da apresentação de certidões negativas de débito que trata o art. 57 da Lei nº. 11.101/2005.

A Corte Especial do STJ, no julgamento do REsp nº 1.187.404, seguiu essa mesma linha de entendimento, acompanhando voto do Ministro Luís Felipe Salomão. De acordo com o entendimento do STJ, qualquer interpretação que inviabilize ou não fomente a superação da crise da empresa em recuperação judicial contraria a lei. Com esse entendimento, a Corte Especial do Superior Tribunal de Justiça (STJ) afastou a exigência de certidões negativas tributárias para homologação do

Este documento é cópia do original assinado digitalmente por JONAS HASS SILVA JUNIOR. Liberado nos autos digitais por Jonas Hass Silva Júnior, em 27/09/2013 às 16:21. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0802789-69.2013.8.12.0002 e o código 396D19.

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

fls. 11832

**Estado de Mato Grosso do Sul**
Poder Judiciário
Dourados
5ª Vara Cível

plano de recuperação.

Conforme o ministro Luis Felipe Salomão, a lei precisa ser interpretada sempre com vistas à preservação da atividade econômica da empresa e não com *"amesquinhada visão de que o instituto visa a proteger os interesses do empresário. O valor primordial a ser protegido é a ordem econômica"*, afirmou. *"Em alguns casos, é exatamente o interesse individual do empresário que é sacrificado, em deferência à preservação da empresa como unidade econômica de inegável utilidade social"*, completou o relator.

Para o ministro, a interpretação literal do artigo 57 da Lei de Recuperação e Falências (LRF) – que exige as certidões – em conjunto com o artigo 191-A do Código Tributário Nacional (CTN) – que exige a quitação integral do débito para concessão da recuperação – *"inviabiliza toda e qualquer recuperação judicial, e conduz ao sepultamento por completo do novo instituto. Em regra, com a forte carga de tributos que caracteriza o modelo econômico brasileiro, é de se presumir que a empresa em crise possua elevado passivo tributário"* – disse o ministro, acrescentando que muitas vezes essa é *"a verdadeira causa da debacle"*.

Para Salomão, a exigência de regularidade fiscal impede a recuperação judicial, o que não satisfaria os interesses nem da empresa, nem dos credores, incluindo o fisco e os trabalhadores.

A Corte entendeu ainda que o parcelamento da dívida tributária é direito do contribuinte em recuperação. Esse parcelamento também causa a suspensão da exigibilidade do crédito, o que garante a emissão de certidões positivas com efeito de negativas. Isso permitiria à empresa cumprir plenamente o artigo 57 da LRF.

Para o ministro Salomão, os artigos da LRF e do CTN apontados *"devem ser interpretados à luz das novas diretrizes traçadas pelo legislador para as dívidas tributárias, com vistas, notadamente, à previsão legal de parcelamento do crédito tributário em benefício da empresa em recuperação, que é causa de suspensão da exigibilidade do tributo"*.

O plano de recuperação judicial foi aprovado na Assembleia Geral de Credores.

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

Este documento é cópia do original assinado digitalmente por JONAS HASS SILVA JUNIOR. Liberado nos autos digitais por Jonas Hass Silva Júnior, em 27/09/2013 às 16:21. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0900789-69.2013.8.12.0002 e o código 396D19.

fls. 11833

**Estado de Mato Grosso do Sul**
Poder Judiciário
Dourados
5ª Vara Cível

Passo a analisar o pedido final das recuperandas, de p. 11363/11373 e 11586/11671, "para que conste na decisão homologatória que as disposições constantes no Anexo 6.2 serão estendidas para todos os credores de garantia real".

O plano de recuperação judicial deve ser homologado como se encontra a p. 11404/11431. Este juízo não pode alterá-lo ou esclarecê-lo. Se o pedido das recuperandas, de p. 11363/11373 e 11586/11671, pede modificação do contido no plano aprovado pela assembleia, de p. 11404/11431, este juízo não tem motivos para fazê-lo, pois o plano encontra-se formalmente perfeito e não há qualquer razão para alterá-lo. Não pode ser esclarecido por este juízo, pois o mesmo é suficientemente claro, e qualquer esclarecimento poderia levar a interpretação extensiva ou restritiva, o que poderia prejudicar os demais credores. E se esse pedido é mera repetição do já contido nos anexos 6.2 (p. 11417/11431) e cláusula 6.3 (p. 11411), em nada altera, e portanto seria inócuo. Daí conclui este juízo em homologar o plano de 11.404/11431 como aprovado pela assembleia de credores.

Ademais, o Plano aprovado na Assembleia Geral de Credores prevê expressamente, na cláusula 6.3 (p. 11411), a adesão optativa pelos credores com garantia real, mencionados no item 6.1 (p. 11411), às condições do anexo 6.2.

Ante o exposto, **homologo o plano de recuperação judicial de p. 11404/11431 e concedo recuperação judicial ao Grupo São Fernando**, ou seja, a São Fernando Açúcar e Álcool Ltda, São Fernando Energia I Ltda, São Fernando Energia II Ltda, São Marcos Energia e Participações Ltda e São Pio Empreendimentos e Participações Ltda, nos termos do art. 58 da Lei nº. 11.101/2005.

Intimem-se. Ciência ao MP.

Dourados, 27 de setembro de 2013.

Jonas Hass Silva Júnior - Juiz de Direito
  - assinado por certificado digital -

1 7 DEZ 2018    |    - 4 8 4 0 7

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

Este documento é cópia do original assinado digitalmente por JONAS HASS SILVA JUNIOR. Liberado nos autos digitais por Jonas Hass Silva Júnior, em 27/09/2013 às 18:21. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/posstdigital/pg/abrirConferenciaDocumento.do, informe o processo 0802789-69.2013.8.12.0002 e o código 38607A.

# EXHIBIT 3

Tradução nº I-48027
Livro nº 570
Folha 175

Sandra Regina Mattos Rudzit

*TRADUTORA PÚBLICA*

*I, Sandra Regina Mattos Rudzit, certified public translator, duly admitted and sworn by the Commercial Registry of the State of São Paulo, Brazil, hereby certify that a document was submitted to me, written in Portuguese, the translation of which is as follows:*

### Judiciary of the State of Mato Grosso do Sul

### Judicial District Court of Dourados

### 5th Civil Court

## Case # 0802789-69.2013.8.12.0002

SÃO FERNANDO AÇUCAR E ALCOOL LTDA., CNPJ 05894060/0001-19, SÃO FERNANDO ENERGIA I LTDA., CNPJ 11.618.210/0001-64, SÃO FERNANDO ENERGIA II LTDA., CNPJ 11.618.211/0001-09, SÃO MARCOS ENERGIA E PARTICIPAÇÕES LTDA., CNPJ 04.576.052/0001-61; SÃO PIO EMPREENDIMENTOS E PARTICIPAÇÕES CNPJ 14.474.637/0001-24, identified in the complaint (p. 1), entered before this Court on 4/12/2013 with this request for Judicial Reorganization, attaching documents to justify its claim, the request for which was granted on 4/13/2013.

The judicial reorganization plan was presented by the plaintiffs, approved by the Creditors' Meeting, in the three classes, that is, collateral creditors, labor creditors and unsecured creditors, and ratified by this court on 9/27/2013 (p. 11824/11833).

The creditor National Bank for Economic and Social Development – BNDES filed three requests for conversion from reorganization into bankruptcy, on p. 19167/19168 (6/15/2015), p. 19485/19487 (8/3/2015, p. 19987/19988 (11/10/2015). It stated in the first bankruptcy petition that the default was nine months. In the second bankruptcy petition, it reports the debit of R$18,076,395.57 on 7/15/2015 related to a ten-month default, it reports that the debit of the reorganization companies on 4/12/2013 was R$332,883,485.13 and on 7/15/2015, it was R$288,821,675.53, and that payments made by the reorganization companies from 4/12/2013 were R$16,115,853.43, and the payments made by Heber Participações S.A. from 4/12/2013 was R$89,792,296.94, in the period from 5/13/2013 to 5/7/2014.

The reorganization companies manifested on p. 19173/19281.

The labor creditor Antônio Nunes Penzo, on 11/4/2015, stated that the reorganization company São Fernando Açucar e Alcool Ltda. did not pay him his claim of R$56,593.87, despite the fact that more than thirty days had elapsed since the decision handed down in case file No. 0805079-86.2015.8.12.0002, which established that his claim was registered in the general list of creditors, and requested the conversion from reorganization into bankruptcy (p. 19955/19959).

The labor creditor Edvaldo Gonçalves, on 10/5/2015, stated that the reorganization company São Fernando Açucar e Alcool Ltda. did not pay him his claim, despite the fact that more than thirty days had elapsed since the decision handed down in case file No. 0811018-81.2014.8.12.0002 which determined that his claim was registered in the general list of creditors, and requested the conversion from reorganization into bankruptcy (p. 19960/19961). According to said action, the creditor Edvaldo Gonçalves has a receivable of R$72,437.16.

The labor creditor Mauro Riese, on 10/9/2015, states that the reorganization company São Fernando Açucar e Alcool Ltda. did not pay him his claim, despite the fact that more than thirty days had already elapsed since the decision rendered in case file No. 0804075-14.2015.8.12.0002 which established that his claim be registered in the general list of creditors, and requested the conversion from reorganization into bankruptcy (p. 19972/19973). According to said action, the creditor Mauro Riese has a receivable of R$34,622.37.

The reorganization companies manifested again on p. 19993/19995. And, on the same day, they requested that the judicial reorganization plan be amended and be submitted to a new general meeting of creditors (19997/20004).



The trustee stated in the case file that in the light of what was stated in the Consolidated Report of the reorganization companies for the period from April/2013 to September/2015, together with the national economic situation and the failure to comply with the current plan, to date, it is believed that, as the results are being presented by the reorganization companies, it would be illusory and utopian to state that the group will be able to fulfill the plan that was approved in the Meeting, a fact that would lead to the adjudication of its bankruptcy; for which the trustee issued an opinion towards holding a new General Meeting of Creditors, for approval or rejection of the new reorganization plan, where a petition for conversion from reorganization into bankruptcy could even be made (p. 20299/20366).

This court has allowed the holding of a new General Meeting of Creditors to present the amendment and consolidation of the judicial reorganization plan as per p. 20262/20285 (p. 20367/20369 and 20390)

The Meeting was instated on 3/16/2017 and closed on 6/1/2017, which decided for the rejection of the new judicial reorganization plan. The trustee attached to the records the minutes of said Meeting (p. 26555/27013).

The Public Prosecutors' Office expressed its approval of the Meeting and against the proposed amendment to the new judicial reorganization plan.

That is the background of the case. Substantiated and decided.

Since the action has been properly supported, the trial of the proceedings is required in the state in which it is found, hence the matter discussed has become primarily of law, waiving the production of other evidence, according to what is established in Art. 330, item I, of the Code of Civil Procedure.

The trustee said that in the 30 months as from 4/12/2013 the reorganization companies have not been profitable in a single month, and their debt has increased considerably in recent months.

The trustee expresses that the reorganization should be converted into bankruptcy, due to the impossibility of reorganization of the debtor (p. 20299/20366).

In this case, they are right, because the judicial reorganization petition was granted on 4/13/2013 and since then, as noted by the trustee, the reorganization companies have not made a profit in any month and their debt has increased considerably in recent months, not being successful in fulfilling the reorganization plan. Please note that the reorganization companies have not been making any payment to collateral creditors for more than two (2) years (BNDS, Banco do Brasil S/A, BNP Paribas). Thus, there is no alternative but to convert the reorganization into bankruptcy (73, item III, combined with Art. 56, § 4 of the Bankruptcy Law).

This court has jurisdiction to only ratify the minutes on p. 26555/27013, as there is no possibility for this court or grounds for contradicting the decision of that Meeting of Creditors, since it is sovereign in its decision.

In view of the foregoing, in compliance with the legal formalities regarding the meeting of creditors held on June 1, 2017, I ratify the minutes on p. 26555/27013; and, considering that the reorganization companies are not complying with the reorganization plan and that there was no approval of a new judicial reorganization plan at the aforementioned meeting, I CONVERT THE JUDICIAL REORGANIZATION INTO BANKRUPTCY, being opened today, 6/8/2017, at 3:40 p.m., the bankruptcy of the companies SÃO FERNANDO AÇUCAR E ALCOOL LTDA., CNPJ 05894060/0001-19, SÃO FERNANDO ENERGIA I LTDA., CNPJ 11.618.210/0001-64, SÃO FERNANDO ENERGIA II LTDA., CNPJ 11.618.211/0001-09, SÃO MARCOS ENERGIA E PARTICIPAÇÕES LTDA., CNPJ 04.576.052/0001-61; SÃO PIO EMPREENDIMENTOS E PARTICIPAÇÕES 14.474.637/0001-24, whose directors are Maurício de Barros Bumlai and Guilherme de Barros Costa Marques Bumlai, based on Art. 73, item III, combined with Art. 56, paragraph 4 of Law No. 11.101/2005, with the managers being removed from the management of the bankrupt companies, and therefore determining the following:



Tradução nº I-48027
Livro nº 570
Folha 177

*TRADUTORA PÚBLICA*

a) I keep as trustee Vinícius Coutinho Consultoria e Perícia S/S Ltda., in compliance with the provisions of Art. 99, item IX, of the Judicial Reorganization Law, which will be responsible for the management of the bankrupt companies. The fees of the trustee for this phase (administration of bankruptcy, as of this date) will be determined in a timely manner;

b) I declare as legal term the ninetieth (90th) day prior to today, 6/8/2017, pursuant to Art. 99, item II, of the Judicial Reorganization Law, subject to the provisions of articles 74, 130 and 131;

c) The members of the bankrupt parties are to be notified to comply with the provisions of Art. 99, item III, of the Bankruptcy Law, within five days, presenting the list of creditors, as well as to comply with the provisions of Art. 104 of the aforementioned law, under penalty of being liable for an offense of breach;

d) I set the period of fifteen (15) days to qualify the creditors, pursuant to Article 7, paragraph 1, combined with Art. 99, item IV, both of the current Bankruptcy Law, and that must be submitted directly to the trustee, and it must present the list of creditors for publication of the notice referred to in paragraph 2 of the same law;

e) The existing foreclosures against the debtors shall be suspended, including those related to any existing joint partners, except for those with dates of auctions already designated, the proceeds of which shall go to the benefit of the bankruptcy estate, or those in which there was a proceeding of co-defendants, which will continue, as well as the tax foreclosures and actions that demand for illiquid amounts, in compliance with the provisions of Art. 6, combined with Art. 99, item V, both of the current Bankruptcy Law;

f) The head of the office is to comply with the procedures established by law, especially those set out in Art. 99, items VIII, X and sole paragraph of Law 11.101/05, proceeding to communications and notices as usual, in particular, notifying the Commercial Registry of the States of MS and SP, the Federal Treasuries and of all States and Municipalities in which the debtor has an establishment, so that they become aware of the bankruptcy;

g) Considering that: 1) there is sugarcane to be harvested soon, and if this does not occur it will surely perish and harm the bankruptcy estate and the creditors; and, 2) there are boilers, labs, computers and other sectors of the bankrupt parties which cannot be stopped immediately because that would be dangerous and cause serious losses to the bankrupt parties and the creditors, the establishments of the bankrupt parties will not be sealed immediately; therefore, I decided for the provisional continuation of the activities of the bankrupt parties with the trustee, until further resolution; the employees shall continue their normal activities, except for the management board, which will be freely chosen by the trustee, under the supervision of this court and the Committee to be constituted (article 99, item XI, of Law 11.101/2005;

h) The assets of the bankrupt companies will be collected, which will remain in provisional operation, and the assets will be evaluated, according to what is established in Art. 109 of Law 11.101/05, and therefore, as many marshals as necessary to comply with this decision must be requested;

i) Notify the banks, including those indicated on p. 15924/15925, in the sense that bank accounts held by the bankrupt parties, as of this date, are only handled by the trustee in the persons of Vinícius Alexander Oliva Sales Coutinho and/or Erika Pinto Nogueira, otherwise they will be liable with their assets, incur a crime of breach and bankruptcy crime, given that the bankrupt parties will continue in provisional operation under the management of the trustee;

j) Notify the Real Estate Registries, DETRAN, Federal Revenue Service, commercial banks, Cooperatives and others to report on the existence of assets and rights of the bankrupt parties;

k) Notify also the Labor Court of Dourados informing about the adjudication of bankruptcy of the present debtors;



Tradução nº I-48027
Livro nº 570
Folha 178

*TRADUTORA PÚBLICA*

l) Also, due to general precautionary power, based on a principle of public order, to guarantee the interests of the collectivity of creditors, and the effectiveness of the jurisdiction, allowing the practical result to be preserved, avoiding that it becomes ineffective, in the event of liability, I determine the inalienability of the movable property, real estate and livestock of the managing members or directors of the defendants for the term referred to in Art. 82, paragraph 1, of the Fiscal Responsibility Law (LRF), notify the Real Estate Registries and the Department of Motor Vehicles to that effect, based on Art. 99, item VII, of the same law;

m) Notify the bankrupt parties so that they enter in the docket an updated list of creditors, according to Art. 104 of the Fiscal Responsibility Law (LRF);

n) Notify the Disciplinary Boards of the States and of the Federal District, requesting measures to notify the Real Estate Registries of the states, the adjudication of bankruptcy of the companies and the inalienability of the assets of the managing members or directors of the bankrupt parties, as well as report on the existence of real estate;

o) I hereby order that the Trustee, as soon as possible, shall arrange for the General Meeting of Creditors to be held for the possible formation of a Committee of Creditors, pursuant to Article 99, item XII, of Law 11.101/2005.

p) Publish a notice containing the entire decision declaring the bankruptcy and the list of creditors, pursuant to article 99, sole paragraph, of Law 11.101/2005.

The practice of any act of disposal of assets of the bankrupt parties is prohibited, submitting them preliminarily to judicial authorization and authorization of the committee, except for the assets whose sale is part of the normal activities of the bankrupt parties.

I determine that all correspondence addressed to the bankrupt parties in the State of São Paulo and the management of the existing Offices therein shall be the responsibility of Mr. Pedro Mévio Oliva Sales Coutinho, Esq., OAB/SP 328491.

Publish. Record. Notify, including the Public Prosecutors' Office.

Dourados, June 8, 2017.

Jonas Hass Silva Júnior - Judge

- signed by digital certificate -

This document is a copy of the original digitally signed by JONAS HASS SILVA JUNIOR. Released on digital records by Jonas Hass Silva Júnior, on 6/8/2017 at 3:44 p.m. To access the procedural documents, go to https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, enter case 0802789-69.2013.8.12.0002 and code B05407.
*IN WITNESS WHEREOF I set my hand and seal to this translation.*

*São Paulo, November 12, 2018*

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública

all/194008.doc

fls. 27028



Poder Judiciário do Estado de Mato Grosso do Sul

Comarca de Dourados

5ª Vara Cível

**Autos n.º 0802789-69.2013.8.12.0002**

SÃO FERNANDO AÇUCAR E ALCOOL LTDA., CNPJ. 05894060/0001-19, SÃO FERNANDO ENERGIA I LTDA, CNPJ 11.618.210/0001-64, SÃO FERNANDO ENERGIA II LTDA, CNPJ 11.618.211/0001-09, SÃO MARCOS ENERGIA E PARTICIPAÇÕES LTDA, CNPJ 04.576.052/0001-61; SÃO PIO EMPREENDIMENTOS E PARTICIPAÇÕES CNPJ 14.474.637/0001-24, qualificadas na inicial (p. 1), ingressou perante este Juízo em 12-04-2013 com o presente pedido de Recuperação Judicial, juntando documentos de molde a justificar a sua pretensão, cujo pedido foi deferido em 13-04-2013.

O plano de recuperação judicial foi apresentado pelas autoras, aprovado pela Assembleia de Credores, nas três classes, ou seja, credores de crédito real, credores trabalhistas e credores quirografários, e homologado por este juízo em 27/09/2013 (p. 11824/11833).

O credor Banco Nacional de Desenvolvimento Econômico e Social – BNDES apresentou três pedidos de convolação da recuperação judicial em falência, às p. 19167/19168 (15-06-2015), p. 19485/19487 (03/08-2015, p. 19987/19988 (10-11-2015). Afirmou no primeiro pedido de falência que o inadimplemento era de nove meses. No segundo pedido de falência informa o débito de R$ 18.076.395,57 na data de 15-7-2015 relativo a inadimplemento de dez meses, informa que o débito das recuperandas em 12-4-2013 era de R$ 332.883.485,13 e em 15-7-2015 era de R$ 288.821.675,53, e que os pagamentos efetuados pelas recuperandas a partir de 12-4-2013 foi de R$

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

Este documento é cópia do original assinado digitalmente por JONAS HASS SILVA JUNIOR. Liberado nos autos digitais por Jonas Hass Silva Júnior. em 08/06/2017 às 15.44. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do. informe o processo 0802789-69.2013.8.12.0002 e o código B05407.



# Poder Judiciário do Estado de Mato Grosso do Sul

## Comarca de Dourados

### 5ª Vara Cível

16.115853,43, e os pagamentos efetuados pela Heber Participações SA a partir de 12-4-2013 foi de R$ 89.792.296,94, no período de 13-5-2013 a 7-5-2014.

As recuperandas manifestaram-se às p. 19173/19281.

O credor trabalhista Antônio Nunes Penzo, em 4-11-2015, afirma que a recuperanda São Fernando Açúcar e Alcool Ltda não lhe pagou seu crédito de R$ 56.593,87, apesar de já ter decorrido mais de trinta dias da decisão proferida nos autos do processo n$^{\circ}$. 0805079-86.2015.8.12.0002, que determinou a inscrição de seu crédito no quadro geral de credores, e pediu a convolação da recuperação judicial em falência (p. 19955/19959).

O credor trabalhista Edvaldo Gonçalves, em 5-10-2015, afirma que a recuperanda São Fernando Açúcar e Alcool Ltda não lhe pagou seu crédito, apesar de já ter decorrido mais de trinta dias da decisão proferida nos autos do processo n$^{\circ}$. 0811018-81.2014.8.12.0002 que determinou a inscrição de seu crédito no quadro geral de credores, e pediu a convolação da recuperação judicial em falência (p. 19960/19961). Segundo o referido processo o credor Edvaldo Gonçalves tem a receber R$ 72.437,16.

O credor trabalhista Mauro Riese, em 9-10-2015, afirma que a recuperanda São Fernando Açúcar e Alcool Ltda não lhe pagou seu crédito, apesar de já ter decorrido mais de trinta dias da decisão proferida nos autos do processo n$^{\circ}$. 0804075-14.2015.8.12.0002 que determinou a inscrição de seu crédito no quadro geral de credores, e pediu a convolação da recuperação judicial em falência (p. 19972/19973). Segundo o referido processo o credor Mauro Riese tem a receber R$

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

Este documento é cópia do original assinado digitalmente por JONAS HASS SILVA JUNIOR. Liberado nos autos digitais por Jonas Hass Silva Júnior, em 08/06/2017 às 15:44. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0802789-69.2013.8.12.0002 e o código B05407.

fls. 27030



# Poder Judiciário do Estado de Mato Grosso do Sul
## Comarca de Dourados
### 5ª Vara Cível

34.622,37.

As recuperandas manifestaram-se novamente às p. 19993/19995. E, no mesmo dia, pediram a alteração do plano de recuperação judicial e seja este submetido a nova assembleia geral de credores (p. 19997/20004).

A administradora-judicial manifestou-se nos autos dizendo que diante do exposto no Relatório Consolidado das recuperandas referente ao período de abril/2013 a setembro/2015 aliado à situação econômica nacional e ao insucesso no cumprimento do plano vigente, até o presente momento, tem-se que, da forma como os resultados vêm sendo apresentados pelas recuperandas, seria ilusório e utópico afirmar que o grupo conseguirá cumprir o plano que foi aprovado em Assembleia, fato este que ensejaria a decretação de sua falência; pelo que opinou pela realização de nova Assembleia Geral de Credores, para aprovação ou rejeição do novo plano de recuperação, podendo inclusive ser pedida a convolação da recuperação judicial em falência (p. 20299/20366).

Este juízo deferiu a realização de nova Assembleia Geral de Credores para apresentação de alteração e consolidação do plano de recuperação judicial de p. 20262/20285 (p. 20367/20369 e 20390)

Foi instalada a Assembleia no dia 16/03/2017 e encerrada 1º/06/2017, qual deliberou pela rejeição do novo plano de recuperação judicial. A administradora juntou a ata da referida Assembleia (p. 26555/27013).

O Ministério Público manifestou-se pela homologação da Assembleia e contra a proposta de alteração do novo plano de

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

Este documento é cópia do original assinado digitalmente por JONAS HASS SILVA JUNIOR. Liberado nos autos digitais por Jonas Hass Silva Júnior, em 08/06/2017 às 15.44. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento do, informe o processo 0802789-69.2013.8.12.0002 e o código B05407.

fls. 27031



# Poder Judiciário do Estado de Mato Grosso do Sul
## Comarca de Dourados
### 5ª Vara Cível

recuperação judicial.

É o relatório. Fundamento e decido.

Estando o feito regularmente instruído, impõe-se o julgamento da lide no estado em que se encontra, eis que a matéria discutida tornou-se primordialmente de direito, dispensando-se a produção de outras provas, a teor do que estabelece o art. 330, inciso I, do CPC.

A administradora-judicial informou que nos 30 meses que se passaram a contar de 12-4-2013 as recuperandas não obtiveram lucro num mês sequer, e seu débito vem aumentando consideravelmente nos últimos meses.

Manifesta-se a administradora-judicial no sentido de que seja convolada a recuperação judicial em falência, em razão da impossibilidade de recuperação da devedora (p. 20299/20366).

No caso, assiste-lhes razão, porquanto o pedido de recuperação judicial foi deferido em 13-04-2013 e desde então, conforme destacou a administradora judicial, as recuperandas não obtiveram lucro em nenhum mês e seu débito vem aumentando consideravelmente nos últimos meses, não obtendo sucesso quanto ao cumprimento do plano de recuperação. Registro que as recuperandas não vêm realizando qualquer pagamento aos credores detentores de crédito real há mais de 2 (dois) anos (BNDS, Banco do Brasil S/A BNP Paribas). Assim, não resta outra alternativa senão convolar a recuperação judicial em falência (73, inciso III, c/c o art. 56, § 4º da Lei de Falência).

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

Este documento é cópia do original assinado digitalmente por JONAS HASS SILVA JUNIOR. Liberado nos autos digitais por Jonas Hass Silva Júnior. em 08/06/2017 às 15:44. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento do, informe o processo 0802789-69.2013.8.12.0002 e o código B05407.

fls. 27032



$P$oder $J$udiciário do $E$stado de $M$ato $G$rosso do $S$ul

$C$omarca de $D$ourados

$5^a$ $V$ara $C$ível

A este juízo cabe tão-somente a homologação da ata de p. 26555/27013, por não existir possibilidade deste juízo nem fundamento para contrariar a decisão daquela $A$ssembleia de $C$redores, pois esta é soberana em sua decisão.

$A$nte o exposto, atendidas as formalidades legais quanto à assembleia de credores realizada em $1^o$ de junho de 2017, homologo a ata de p. 26555/27013; e, considerando que as recuperandas não vêm cumprindo o plano de recuperação e que não houve aprovação de novo plano de recuperação judicial na assembleia supracitada, CONVOLO A RECUPERAÇÃO JUDICIAL EM FALÊNCIA, ficando aberta hoje, 08-06-2017, às 15:40 horas, a falência das empresas SÃO FERNANDO AÇUCAR E ALCOOL LTDA., CNPJ. 05894060/0001-19, SÃO FERNANDO ENERGIA I LTDA, CNPJ 11.618.210/0001-64, SÃO FERNANDO ENERGIA II LTDA, CNPJ 11.618.211/0001-09, SÃO MARCOS ENERGIA E PARTICIPAÇÕES LTDA, CNPJ 04.576.052/0001-61; SÃO PIO EMPREENDIMENTOS E PARTICIPAÇÕES 14.474.637/0001-24, cujos administradores são $M$aurício de $B$arros $B$umlai e $G$uilherme de $B$arros $C$osta $M$arques $B$umlai, com fulcro no art. 73, inciso III, c/c o art. 56, § $4^o$ da Lei n$^o$ 11.101/2005, ficando os administradores afastados da administração das empresas-falidas, e por conseguinte, determinando o que segue:

a) $M$antenho como administradora-judicial $V$inícius $C$outinho $C$onsultoria e $P$erícia S/S $L$tda., atendendo ao disposto no art. IX, da Lei de $R$ecuperação $J$udicial, a quem incumbirá a administração das falidas. $O$s honorários da administradora-judicial para a presente fase (administração da falência, a contar desta data) serão arbitrados oportunamente;

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

Este documento é cópia do original assinado digitalmente por JONAS HASS SILVA JUNIOR. Liberado nos autos digitais por Jonas Hass Silva Júnior, em 08/06/2017 às 15.44. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do. informe o processo 0802789-69.2013.8.12.0002 e o código B05407.



# Poder Judiciário do Estado de Mato Grosso do Sul
## Comarca de Dourados
### 5ª Vara Cível

b) Declaro como termo legal o nonagésimo (90º) dia anterior à data de hoje, 08-06-2017, na forma do art. 99, inciso II, da Lei de Recuperação Judicial, observando-se o disposto nos artigos 74, 130 e 131;

c) Intimem-se os sócios das falidas para que cumpram o disposto no art. 99, inciso III, da Lei de Quebras, no prazo de cinco dias, apresentando a relação de credores, bem como atendam o disposto no art. 104 do diploma legal precitado, sob pena de responderem por delito de desobediência;

d) Fixo o prazo de quinze (15) dias para habilitação dos credores, na forma do artigo 7º, §1º c/c art. 99, inciso IV, ambos da atual Lei de Falências, e que devem ser apresentadas diretamente à administradora-judicial, devendo a mesma apresentar a lista de credores para publicação do edital a que alude o § 2º do mesmo diploma legal;

e) As execuções existentes contra as devedoras deverão ficar suspensas, inclusive as atinentes aos eventuais sócios solidários porventura existentes, exceto as com datas de leilões já designadas, vindo o produto em benefício da massa, ou aquelas onde houve concurso de litisconsortes passivos, que prosseguirão quanto a estes, bem como os executivos fiscais e ações que demandarem por quantias ilíquidas, atendendo ao disposto no art. 6º c/c o art. 99, inciso V, ambos da atual Lei de Quebras;

f) Cumpra a chefe de cartório as diligências estabelecidas em lei, em especial, as dispostas no art. 99, incisos VIII, X e parágrafo único da Lei 11.101/05, procedendo-se as comunicações e intimações de praxe, em especial, comunicar a

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

Este documento é cópia do original assinado digitalmente por JONAS HASS SILVA JUNIOR. Liberado nos autos digitais por Jonas Hass Silva Júnior, em 08/06/2017 às 15:44. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento do, informe o processo 0802789-69.2013.8.12.0002 e o código B05407.



# Poder Judiciário do Estado de Mato Grosso do Sul
## Comarca de Dourados
### 5ª Vara Cível

Junta Comercial de MS e SP, as Fazendas Públicas Federal e de todos os Estados e Municípios em que o devedor tiver estabelecimento, para que tomem conhecimento da falência;

g) Considerando: 1) que há cana-de-açúcar a ser colhida em breve, e se isso não vier a ocorrer certamente perecerá e prejudicará a massa falida e os credores; e, 2) que há caldeiras, laboratório, informática e outros setores das falidas que não podem parar de imediato, por ser perigoso e causar sérios prejuízos às falidas e aos credores, não serão lacrados os estabelecimentos das falidas de imediato; portanto, decido pela continuação provisória das atividades das falidas com a administradora-judicial, até ulterior deliberação; os trabalhadores deverão continuar suas atividades normais, à exceção do quadro de direção, que será de livre escolha da administradora-judicial, sob a supervisão deste juízo e do Comitê a ser constituído (artigo 99, inciso XI, da Lei nº 11.101/2005;

h) Arrecadem-se os bens das empresas falidas, as quais continuarão em funcionamento provisório, e proceda-se à avaliação dos seus bens, a teor do que estabelece o art. 109 da Lei nº 11.101/05, devendo, para tanto, serem requisitados tantos quantos oficiais de justiça forem necessários para o cumprimento desta decisão;

i) Oficiem-se aos estabelecimentos bancários, inclusive os indicados às p. 15924/15925, no sentido de que as contas bancárias de titularidade das falidas, a partir desta data, somente sejam movimentadas pela administradora-judicial nas pessoas de Vinicius Alexander Oliva Sales Coutinho e/ou Erika Pinto Nogueira, sob pena de responderem com seu patrimônio, incorrerem em crime de desobediência e crime falimentar, eis que

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

Este documento é cópia do original assinado digitalmente por JONAS HASS SILVA JUNIOR. Liberado nos autos digitais por Jonas Hass Silva Junior, em 08/06/2017 às 15:44. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento do. informe o processo 0802789-69.2013.8.12.0002 e o código B05407.

fls. 27035



# Poder Judiciário do Estado de Mato Grosso do Sul
## Comarca de Dourados
### 5ª Vara Cível

as falidas continuarão em funcionamento provisório sob a gestão da administradora-judicial;

j) Oficie-se aos Registros Imobiliários, DETRAN, Receita Federal, bancos comerciais, Cooperativas e outros para que informem sobre a existência de bens e direitos das falidas;

k) Oficie-se, também, à Justiça do Trabalho de Dourados informando sobre a decretação da falência das presentes devedoras;

l) Ainda, pelo poder de cautela geral, com base em princípio de ordem pública, para garantia dos interesses da coletividade de credores, e no da efetividade da jurisdição, permitindo que se preserve o resultado prático, evitando que se torne sem efeito, na hipótese de responsabilidade, determino a indisponibilidade dos bens móveis, imóveis e semoventes dos sócios-gerentes ou administradores das requeridas pelo prazo a que alude o art. 82, § 1º, da LRF, oficiem-se aos Registros Imobiliários e Departamento de Trânsito para tanto, com base no art. 99, inciso VII, do mesmo diploma legal;

m) Intimem-se as falidas para que tragam aos autos relação atualizada de credores, conforme art. 104 da LRF;

n) Oficiem-se às Corregedorias-Gerais das Unidades Federativas e do Distrito Federal, solicitando providências no sentido de serem comunicados os Registros Imobiliários dos estados, a decretação da falência das empresas e de indisponibilidade dos bens dos sócios-gerentes ou administradores das falidas, bem como que informem acerca da existência de imóveis;

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

Este documento é cópia do original assinado digitalmente por JONAS HASS SILVA JUNIOR. Liberado nos autos digitais por Jonas Hass Silva Júnior, em 08/06/2017 às 15:44. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento do. informe o processo 0802789-69.2013.8.12.0002 e o código B05407.

fls. 27036



# Poder Judiciário do Estado de Mato Grosso do Sul
## Comarca de Dourados
### 5ª Vara Cível

o) Determino que a Administradora-Judicial providencie, o quanto antes, a realização da Assembleia-Geral de Credores para eventual formação de Comitê de Credores na forma artigo 99, inciso XII, da Lei 11.101/2005.

p) Publique-se edital contendo a íntegra da decisão que decreta a falência e a relação de credores, na forma do artigo 99, parágrafo único, da Lei nº 11.101/2005.

Fica proibida a prática de qualquer ato de disposição de bens das falidas, submetendo-os preliminarmente à autorização judicial e do comitê, ressalvados os bens cuja venda faça parte das atividades normais das falidas.

Determino que todas as correspondência dirigidas às falidas no Estado de São Paulo e o gerenciamento dos Escritórios lá existentes a cargo d Dr. Pedro Mévio Oliva Sales Coutinho, OAB/SP 328491.

Publique-se. Registre-se. Intimem-se, inclusive o MP.

Dourados, 08 de junho de 2017.

Jonas Hass Silva Júnior - Juiz de Direito
- assinado por certificado digital -

1 2 NOV 2018   I   - 4 8 0 2 7

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

Este documento é cópia do original assinado digitalmente por JONAS HASS SILVA JUNIOR. Liberado nos autos digitais por Jonas Hass Silva Júnior, em 08/06/2017 às 15.44. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0802789-69.2013.8.12.0002 e o código B05407.

# EXHIBIT 4

Sandra Regina Mattos Rudzit

*TRADUTORA PÚBLICA*

*I, Sandra Regina Mattos Rudzit, certified public translator, duly admitted and sworn by the Commercial Registry of the State of São Paulo, Brazil, hereby certify that a document was submitted to me, written in Portuguese, the translation of which is as follows:*

**State of Mato Grosso do Sul**

**Judicial Branch**

**City of Dourados**

**5th Civil Court**

**Case No. 0802789-69.2013.8.12.0002**

**Action:** Bankruptcy of Entrepreneurs, Business Companies, Micro and Small-Sized Companies

**Plaintiff: São Fernando Açúcar e Álcool Ltda, Bankrupt Estate and Vinicius Coutinho Consultoria e Perícia S/A Ltda**

**Full Qualification of Main Defendant «Information unavailable»: Name of Defendant Selected «Information unavailable»**

**Decision**

This is the case of a request for international judicial cooperation made by *Duarte and Fossell (DFA)* seeking information on the purchase of a **Cessna Aircraft model 560 XL**, with the use of non-declared funds credited to the account of the bankrupt estate, despite of the aircraft being used by the controlling family core of the economic group.

It was observed that the purchase of such means of transportation was made by the company AGROPECUÁRIA JB, but the installments thereof were attributed and paid by the bankrupt estate São Fernando Açúcar e Álcool Ltda., which at that time was already facing pre-bankruptcy difficulties.

It should be noted, finally, that the legal business for acquisition and financing of the aircraft was carried out at the sovereign United States of America, and negotiated directly with the **Cessna** group, the reason why the information needed to disclose potential deviations in such agreement depends on the obtainment of particularities and details provided for in the agreement.

*That is the decision.*

Firstly, the Trustee is authorized to analyze the Income Tax returns of the former controlling parties of the bankrupt estate, Maurício and Guilherme de Barros C. M. Bumlai. At the time such documents were requested from the Brazilian Internal Revenue Office, sufficient reasons therefor were provided, so that it is not necessary to reiterate them herein.

In relation to the international procedure to be filed in the United States of America, the claim is appropriate.

In fact, since the beginning these creditors claim is characterized by the complete insolvency of the bankrupt estate, in view of insufficiency of the total assets existing to satisfy the billions of dollars in debt inherited by the managers due to the reckless management conducted by them. It is crystal clear that such organizational and operational structure had resisted a few years, collapsing based on financial aids needs, especially those obtained from the National Bank for Economic and Social Development (BNDES).

It should be emphasized that this confidential procedure was filed in order to recover misappropriated funds, particularly fraudulent remittances abroad, misled with legality.

Indeed, as we can see from the articles of association, on **April 17, 2013** the family patriarch, **Jose Carlos Costa Marques Bumlai**, and his sons, **Guilherme and Maurício**, assigned all their shares in the company to **Fernando Barros Bumlai and Cristiane de Barros Costa Marques Bumlai Pagnoceli**. Just after that, on **September 05, 2013**, the company JB Agropecuária made the acquisition of a luxury



Tradução nº I-47911
Livro nº 569
Folha 135

*TRADUTORA PÚBLICA*

aircraft for the amount of **six million and four hundred thousand US dollars (US$6,400,000.00),** that is, several times higher than the share capital amount of the company itself, according to an evaluation of the shares made five months before (date of withdrawal of the partners).

In a short time after that, the aircraft was "leased" to the bankrupt estate *SÃO FERNANDO AÇÚCAR E ÁLCOOL LTDA.,* which lease consideration was agreed to in a non-modest amount of **one hundred and thirty thousand US dollars (US$130,000.00)** per month, in addition to maintenance costs.

It does not seem reasonable that the company, heading to bankruptcy at that time of facts, leased a property of such proportion, with no material connection with the corporate purpose of the core business of the company. It is quite clear that such transaction is marked at least with eccentricity, or crowned with abuse of power, or even fraudulent mechanisms with the main purpose scope of bleeding even more the company accounting, which was already suffering from a devastating management. It is very usual that less ethical managers, by foreseeing the verge of bankruptcy of the company, start to deviate, cover up, conceal, evade, anyway, defraud the company's assets, in order to illegally segregate and shield corporate assets, which they may enjoy in the future, and which are not available to be reached by creditors claims.

It should be noted that this is not by itself a request for international cooperation, as provided for in the international reciprocity agreement, not requiring the issue of Letter of Request for the claim mentioned in the petition on pages 29/33, but to request an authorization so that the law firm may file with the Judiciary Branch of the United States of America petitions, actions, demands and other proper measures to reveal a potential fraud committed by the former managers of the bankrupt estate, thus allowing, in an Anglican say, "*to unveil the bride*".

Accordingly, the Bankrupt Estate is authorized to file any reasonable measures with the Judicial Branch of the State of Kansas, specifically those provided for in the United States Code, Section 1782, Title 28 (**Judiciary and Judicial Procedure**). It is also authorized to hire Redmon Law Firm, in compliance with the provisions of the agreement with the DFA.

City of Dourados, September 19, 2018.

(sgd)

**Rubens Witzel Filho**
**Legal Deputy Judge**

Pages initialed.
*IN WITNESS WHEREOF I set my hand and seal to this translation.*

*São Paulo, October 29, 2018*

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública

bee/189457.doc

SANDRA REGINA MATTOS RUDZIT - Tradutora Pública e Intérprete Comercial - Português - Inglês - Matrícula na JUCESP nº 1688 - CPF 082.060.018-08 - RG 8.222.837
Rua Matias Aires, 402 - 9º andar - 01309-020 - São Paulo - SP - Brasil - Fone/Fax: 55-11-3155-7383 - e-mail: just@just.trd.br - www.just.trd.br



**Estado de Mato Grosso do Sul**
Poder Judiciário
**Dourados**
5ª Vara Cível

**Autos nº 0802789-69.2013.8.12.0002**
**Ação:** Falência de Empresários, Sociedades Empresáriais, Microempresas e Empresas de Pequeno Porte
**Autor: São Fernando Açúcar e Álcool Ltda, Massa Falida e Vinicius Coutinho Consultoria e Perícia S/A Ltda**
**Tipo Completo da Parte Passiva Principal << Informação indisponível >>: Nome da Parte Passiva Selecionada << Informação indisponível >>**

**Decisão,**

Cuida-se de pedido de cooperação judicial internacional, postulado por *Duarte e Fossell (DFA)*, na qual se busca informações acerca de aquisição de uma aeronave **Cessna Aircaft, modelo 560 XL**, utilizando-se de recursos lançados à socapa à conta da falida, malgrado o avião ser utilizado pelo núcleo familiar controlador do grupo econômico.

Observou-se que, a compra do transporte foi efetuado pela empresa AGROPECUÁRIA JB, sendo todavia as prestações do avião atribuídos e pagos pela falida São Fernando Açúcar e Álcool Ltda., que à época já se ressentia de estado pré-falencial.

Salienta, por fim, que o negócio jurídico de

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo



**Estado de Mato Grosso do Sul**
Poder Judiciário
Dourados
5ª Vara Cível

aquisição e financiamento da aeronave foi realizado no Estado Soberano dos Estados Unidos da América, e entabulado diretamente com o grupo *Cessna*, motivo pelo qual, as informações necessárias a revelar prováveis desvios em semelhante convenção, depende da obtenção das particularidades e minúcias caracterizadoras do contrato.

### *Decide-se*.

De logo, autoriza-se que o Sr. Administrador Judicial examine as declarações de IR dos ex- controladores da falida, Maurício e Guilherme de Barros C. M. Bumlai. Quando da requisição desses documentos junto à Receita Federal, já foram expedidas as razões suficientes à medida, donde ociosa a sua repetição nesta sede.

Sobre o procedimento internacional a ser intentado nos Estados Unidos da América, tem-se que oportuna a pretensão.

Com efeito, o presente concurso de credores vem de início marcado pela absoluta insolvência da massa falida, diante da tibieza do acervo dos bens que guarnecem a universalidade a fazer frente à bilionária dívida herdada pelos administradores, em vista gestão temerária praticada pelos então controladores. Salta aos olhos que tamanha estrutura organizacional e operativa tenha resistido poucos anos, desmantelando-se ao termo de socorros financeiros, mormente aqueles advindos do Banco Nacional de Desenvolvimento Econômico e

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo



**Estado de Mato Grosso do Sul**
Poder Judiciário
**Dourados**
5ª Vara Cível

Social – BNDES.

Sublinhe-se que o presente procedimento sigiloso foi intentado com o fito de recuperar verbas malversadas, em especial a remessas fraudulentas ao exterior, com o enganoso colorido de legalidade.

Com efeito, como se depreende dos contatos sociais, em **17 de abril de 2013** o patriarca da família **Jose Carlos Costa Marques Bumlai**, e seus filhos, **Guilherme e Maurício**, cederam toas as suas cotas sociais a **Fernando Barros Bumlai e Cristiane de Barros Costa Marques Bumlai Pagnoceli**. Ato contínuo, em **05 de setembro de 2013**, foi efetuada a aquisição de aeronave de luxo pela empresa JB Agropecuária, pelo valor de **US$ 6,400,000.00 (seis milhões e quatrocentos mil dólares americanos)**, ou seja, valor várias vezes superior ao do capital social da própria empresa, segundo avaliação das cotas calculadas cinco meses antes (data da retirada dos sócios).

Em átimo após, o avião foi "locado" à falida *SÃO FERNANDO AÇÚCAR E ÁLCOOL LTDA.*, cuja contraprestação locativa foi pactuada em nada modestos **US$ 130,000.00 (cento e trinta mil dólares americanos)** mensais, além dos custos de manutenção.

Não se afigura plausível que empresa já tangenciando a bancarrota àquela altura dos fatos, arrende bem dessa

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo



**Estado de Mato Grosso do Sul**
Poder Judiciário
**Dourados**
5ª Vara Cível

magnitude, que não possui liame material com o objeto da atividade principal da companhia. De meridiana clareza que semelhante negócio vem marcado, no mínimo, pela excentricidade, senão por rematado abuso de poder ou mesmo de mecanismos fraudulentos, com o escopo precípuo de sangrar ainda mais a contabilidade de companhia, que já se compadecia da ruinosa administração. Não raro se verifica que os gestores menos éticos, ao anteverem a iminência da quebra da empresa, passem a desviar, acobertar, esconder, sonegar, enfim, defraudar os ativos da empresa, com o fito de destacar e resguardar ilegalmente quinhão patrimonial, com o que possam fruir futuramente, e que fiquem infensos à arrecadação pelo concurso de credores.

Sublinhe-se que não se trata o presente propriamente de pleito de cooperação internacional, previsto nos acordo de reciprocidade  internacionais, despicienda a expedição de Carta Rogatória para a postulação sugerida na petição de fls. 29/33, mas apenar autorização para que a empresa advocatícia porfie junto a Justiça dos Estados Unidos da América os requerimentos, ações, demandas e outras providências cabíveis a descortinar-se possível fraude cometida pelos antigos gestores da falida, propiciando assim, no aforismo anglicano, possibilite-se "***descerrar o véu da noiva***".

De tal arte, fica a Massa Falida autorizada a ajuizar as medidas cabíveis junto ao Poder Judiciário do Estado do Kansas, especificamente aquela preconizada no Código dos Estados Unidos da América, Seção 1782, Título 28 (***Judiciary and Judicial***

Mod. 712310. Endereço: Av. Presidente Vargas, nº 210, prédio anexo, Centro - CEP 79804-030, Fone: (67) 3902-1732, Dourados-MS - E-mail: dou-5vciv@tjms.jus.br

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo



**Estado de Mato Grosso do Sul**
Poder Judiciário
**Dourados**
**5ª Vara Cível**

*Procedure*). Fica, outrossim, autorizada, a contratação de *Redmon Law Firm*, em consonância com o disposto no contrato havia com a DFA.

Dourados, 19 de setembro de 2018.

**Rubens Witzel Filho**
**Juiz(a) de Direito em Substituição Legal**

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

2 9 OUT 2018    I    - 4 7 9 1 1

Mod. 712310. Endereço: Av. Presidente Vargas, nº 210, prédio anexo, Centro - CEP 79804-030, Fone: (67) 3902-1732, Dourados-MS - E-mail: dou-5vciv@tjms.jus.br

# EXHIBIT "B"

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:

| | |
|---|---|
| São Fernando Açúcar e Álcool Ltda., São Fernando Energia I Ltda., São Fernando Energia II Ltda., São Marcos Energia e Participações Ltda., and São Pio Empreendimentos e Participações Ltda. | Chapter 15 |
| | Case No.: |

_____ Debtors in a Foreign Proceeding.
_____/

**ORDER GRANTING RECOGNITION OF FOREIGN**
**MAIN PROCEEDING PURSUANT TO §§ 1515 AND 1517 OF**
**THE BANKRUPTCY CODE AND GRANTING RELATED RELIEF**

This matter came on for hearing on _____ __, 2019 ("Hearing"), upon the *Verified Petition for Recognition of Foreign Main Proceeding Pursuant To §§1515 and 1517* (the "Chapter 15 Petition") (DE __) of Vinicius Coutinho Consultoria e Perícia S/S Ltda. as judicial administrator (the "Foreign Representative") of São Fernando Açúcar e Álcool Ltda. ("SF A&A"), São Fernando Energia I Ltda. ("SF Energia I"), São Fernando Energia II Ltda. ("SF Energia II"), São Marcos Energia e Participações Ltda. ("São Marcos") and São Pio Empreendimentos e Participações Ltda. ("São Pio") (collectively, the "Debtors"). The Chapter 15 Petition seeks recognition and related relief, pursuant to Chapter 15 of the Bankruptcy Code, of the Debtors' bankruptcy case pending in the 5th Civil Court of the City of Dourados, in the state of Mato Grosso do Sul, Brazil (the "Brazilian Bankruptcy Court") as case no. 0802789-69.2013.8.12.0002 (the "Brazilian Bankruptcy Case"). The Court, having considered the Chapter 15 Petition, its attachments, the argument of counsel at the Hearing, and being otherwise duly informed, makes the following order.

The Court finds:

A.      Due and timely notice of the filing of the Chapter 15 Petition and the Hearing was given by the Foreign Representative as directed by this Court.

B.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

C.      Venue of this proceeding is proper in this judicial district pursuant to 28 U.S.C. § 1410.

D.      This is a core proceeding under 28 U.S.C. § 157(b)(2)(P).

E.      Vinicius Coutinho Consultoria e Perícia S/S Ltda. qualifies as a "foreign representative" as defined in 11 U.S.C. §101(24).

F.      This Chapter 15 case was properly commenced pursuant to 11 U.S.C. §§ 1504, 1515, 1517.

G.      The Foreign Representative has met the requirements of 11 U.S.C. §§ 1515(b), 1515(c), 1515(d), and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure.

H.      The Brazilian Bankruptcy Case is a foreign proceeding under 11 U.S.C. §§ 101(23) and 1502(4).

I.      The Brazilian Bankruptcy Case is entitled to recognition by this Court under 11 U.S.C. § 1517.

J.      The Brazilian Bankruptcy Case is pending in Dourados, in the state of Mato Grosso do Sul, Brazil.  Brazil is the country where the Debtors have their center of main interests and, accordingly, the Brazilian Bankruptcy Case is a foreign main proceeding, under 11 U.S.C. § 1502(4), entitled to recognition as a foreign main proceeding under 11 U.S.C. § 1517(b)(1).

K.      The Foreign Representative is entitled to all relief provided under 11 U.S.C. § 1520.

L.      The Foreign Representative is further entitled to the relief expressly set forth in 11 U.S.C. § 1521.

2

M.     The relief granted by this Order is necessary and appropriate, in the interests of public and international comity, consistent with the public policy of the United States, warranted pursuant to 11 U.S.C. § 1521 and will not cause any hardship to the creditors of the Debtors or other parties that is not outweighed by the benefits of the relief being granted.

Accordingly, it is **ORDERED AND ADJUDGED** that:

1.     The Brazilian Bankruptcy Case is granted recognition as a "foreign main proceeding" under 11 U.S.C. § 1517.

2.     The Brazilian Bankruptcy Case and the orders of the Brazilian Bankruptcy Court shall be given full force and effect and be binding on and enforceable in the United States against all persons and entities.  This includes, without limitation, Orders of the Brazilian Bankruptcy Court commencing the Brazilian Bankruptcy Case and appointing Vinicius Coutinho Consultoria e Perícia S/S Ltda. as judicial administrator.

3.     The Foreign Representative is entrusted with the full administration and realization of all or a part of the Debtors' bankruptcy estate and assets within the territorial jurisdiction of the United States.

4.     The Foreign Representative shall have the authority to act independently to carry out any of the duties and powers granted by this Order.

5.     The provisions of 11 U.S.C. § 1520 apply to this proceeding.

6.     All persons and entities are stayed from commencing or continuing any action or proceeding concerning the assets, rights, obligations or liabilities, of the Debtors or the Debtors' bankruptcy estate, located in the United States.

7.     All persons and entities are stayed from executing against the assets of the Debtors or the Debtors' bankruptcy estate located in the United States territory.

8.      All persons and entities are prohibited from transferring, encumbering or otherwise disposing of, or exercising control over any assets of the Debtors or the Debtors' bankruptcy estate, located in the United States territory.

9.      All persons and entities provided notice of this Order who are in possession, custody or control of property, or the proceeds thereof, of the Debtors or the Debtors' bankruptcy estate, located within the territorial jurisdiction of the United States, shall immediately advise the Foreign Representative by written notice sent to the following addresses:

Attn: Vinicius Coutinho Consultoria e Perícia S/S Ltda.
Rua Treze de Maio, 2500 - AN1 S 107
CENTRO - Campo Grande, MS - CEP: 79002-923
Brazil

With a copy to:

Attn: Leyza F. Blanco
Juan J. Mendoza
Sequor Law, P.A.
1001 Brickell Bay Drive, 9th Floor
Miami, Florida 33131

which written notice shall set forth: (i) the nature of such property or proceeds; (ii) when and how such property or proceeds came into the custody, possession or control of such person or entity; and (iii) the full identity and contact information for such person or entity.  The Foreign Representative shall file with the Court a Certificate of Service listing all persons or entities whom he has provided notice of this Order.

10.      The Foreign Representative is authorized to examine witnesses, take evidence or seek the delivery of information concerning the assets, affairs, rights, obligations or liabilities of the Debtors or the Debtors' bankruptcy estate pursuant to §1521(a)(4), the Federal Rules of Bankruptcy Procedure, including without limitation the procedure of Fed. R. Bankr. P. 2004 and Local Rule 2004-1, without further order of this Court.

4

11.     The Foreign Representative is further authorized to operate and may exercise the powers of a trustee under, and to the extent provided by 11 U.S.C. §§ 363 and 552.

12.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, (i) this Order shall be effective immediately and enforceable upon entry and shall constitute a final order within the meaning of 28 U.S.C. § 158(a); (ii) the Foreign Representative is not subject to any stay in the implementation, enforcement, or realization of the relief granted in this Order; and (iii) the Foreign Representative is authorized and empowered, and may in its discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of this Order.

13.     No action taken by Foreign Representative in preparing, disseminating, applying for, implementing, or otherwise acting in furtherance of the Brazilian Bankruptcy Case or any order entered in or in respect of this Chapter 15 case (including any adversary proceedings or contested matters) will be deemed to constitute a waiver of immunity afforded the Foreign Representatives, including pursuant to 11 U.S.C. §§ 306 and 1510.

14.     This Court shall retain jurisdiction with respect to the enforcement, amendment or modification of this Order, any requests for additional relief or any adversary proceeding brought in and through this Chapter 15 case, and any request by any person or entity for relief from the provisions of this Order.

15.     This Court shall retain jurisdiction with respect to the administration, realization, and distribution of the assets of the Debtors within the territorial jurisdiction of the United States.

### #

Submitted by:

Leyza F. Blanco, Esq.
Juan J. Mendoza, Esq.
SEQUOR LAW, P.A.
1001 Brickell Bay Drive, 9th Floor
Miami, Florida 33131
Telephone: 305-372-8282
Facsimile: 305-372-8202
E-Mail: lblanco@sequorlaw.com
jmendoza@sequorlaw.com
Juan J. Mendoza shall serve a copy of this Order on all interested parties entitled to service and
file a certificate of service thereafter.

F:\WDOX\CLIENTS\70129\1001\00295958.DOCX