*EXHIBIT "A"*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
([www.flsb.uscourts.gov](www.flsb.uscourts.gov))

In re:

São Fernando Açúcar e Álcool Ltda., São        Chapter 15
Fernando Energia I Ltda., São Fernando
Energia II Ltda., São Marcos Energia e
Participações Ltda., and São Pio        Case No.: 19-21256-AJC
Empreendimentos e Participações Ltda.

       Debtors in a Foreign Proceeding.
_____/

**DECLARATION OF MARCELO LUCIDI IN SUPPORT OF MOTION**
**FOR ORDER RECOGNIZING THE BRAZILIAN BANKRUPTCY**
**COURT'S PRELIMINARY FREEZE ORDERS**

I, Marcelo Lucidi, under oath and penalty of perjury, pursuant to 28 U.S.C. § 1746, and

duly authorized, declare the following:

1. I am over the age of 18 and provide this Declaration based upon my personal

knowledge, my analysis of Brazilian law, and my review of relevant documents in the Brazilian

Bankruptcy Case (as defined below) and the Veil Piercing Action (as defined below) and its

appeals.

2. I am a Partner with the law firm of Duarte Forssell Advogados, located at Alameda

Santos 2326, 10th andar, CEP 01418-200, Sao Paulo, Brazil, a Brazilian law firm specialized in

international asset recovery, international fraud, and cross-border insolvency cases. I have been

practicing law in Brazil for 10 years, and the focus of my practice is bankruptcy fraud. I am counsel

in Brazil to Vinicius Coutinho Consultoria e Perícia S/S Ltda. ("Coutinho Consultoria," or the

"Foreign Representative").

1

3.     I can read and understand English and make this Declaration without the aid of a translator but, as English is not my native language, if called upon to testify, I could testify as to all matters set forth in this Declaration with the aid of a translator.

## I.      Scope of Declaration

4.     I have been instructed by the Foreign Representative to provide an opinion in support of the Foreign Representative's Motion for Order Recognizing the Brazilian Bankruptcy Court's Preliminary Freeze Orders.  This Declaration will describe the Brazilian proceeding to pierce the Debtors' corporate veil and to extend the effects of their bankruptcy upon the Respondents (as defined below), that the Respondents were afforded due process, and explain other relevant points of Brazilian Bankruptcy Law.

## II.     Background of Proceedings

5.     On April 4, 2013, São Fernando Açúcar e Álcool Ltda., São Fernando Energia I Ltda., São Fernando Energia II Ltda., São Marcos Energia e Participações Ltda. and São Pio Empreendimentos e Participações Ltda. (collectively, the "Debtors" or the "São Fernando Group") filed a petition for judicial reaorganization with the 5th Civil Court of the City of Dourados, in the state of Mato Grosso do Sul, Brazil (the "Brazilian Bankruptcy Court").

6.     On April 13, 2013, the Brazilian Bankruptcy Court entered an order approving the Debtors' application to process the reorganization proceeding, and appointing Coutinho Consultoria as judicial administrator. On September 27, 2013, the reorganization plan was approved by the Brazilian Bankruptcy Court.

7.     The Debtors' reorganization efforts were not successful, and on June 8, 2017, the Brazilian Bankruptcy Court entered an order placing the Debtors into bankruptcy (liquidation).

The order also confirmed the continued appointment of Coutinho Consultoria as judicial administrator of the Debtors' bankruptcy estate.

      **A.**      **The Veil Piercing Action**

      8.      On August 25, 2020, the Bankruptcy Estate (represented by the Foreign Representative) filed a procedural incident motion (the "Veil Piercing Action") under Case No. 0810455-77.2020.8.12.0002 in the Brazilian Bankruptcy Court seeking to pierce the Debtors' corporate veil to extend the effects of the Debtors' bankruptcy, under Article 50 of the Civil Code, to Jose Carlos da Costa Marques Bumlai ("Jose Bumlai"), Guilherme de Barros da Costa Marques Bumlai ("Guilherme Bumlai"), Cristiane de Barros Costa Marques Bumlai Pagnonceli ("Cristiane Bumlai"), Fernando de Barros Bumlai ("Fernando Bumlai"), Mauricio de Barros Bumlai ("Mauricio Bumlai"), Agropecuaria CF Ltda. ("Agropecuaria"), and Donex Participacoes e Empreendimentos OSJC Ltda. ("Donex", and collectively, the "Respondents").

      9.      The Foreign Representative alleged in the Veil Piercing Action, based on documentary evidence, that the Bumlai family systematically misappropriated the assets of the São Fernando Group since it started its operations, particularly after the BNDES (a financial institution owned by Brazilian Federal Government) extended around 395 million Brazilian Reais (approximately 197 million USD with the average exchange rate of the period) in loans to finance the construction and operation of the Sao Fernando Group's ethanol plant. Among other things, the Bankrupty Estate argued that (i) the Bumlai family used cash from the Sao Fernando Group to finance the acquisition of a luxurious airplane for the family's benefit; (ii) José Carlos Bumlai continuously withdrew cash from the São Fernando Group for his personal benefit; (iii) the cash generated by the Sao Fernando Group was used to pay the private debts of the Bumlai family; (iv) the Bumlai family misappropriated equipment and machinery owned by the São Fernando Group;

(v) the Bumlai family entered into contracts with the Sao Fernando Group and used them for the acquisition of sugar cane but used it as a ruse to misappropriate millions in cash; and (vi) the Bumlai family misappropriated the sugar cane plantations of the São Fernando Group just before the Sao Fernando Group was placed into bankruptcy.

10.     The Bankruptcy Estate further alleged that, while the Bumlais engaged in the actions above, the members of the Bumlai family developed an illegal asset protection strategy to transfer and concentrate their valuable assets under the ownership of Cristiane Bumlai and Fernando Bumlai. Cristiane and Fernando were the two family members who, on paper, were not formally involved in the business of the São Fernando Group. Valuable real estate belonging to the Bumlai family was also transferred to Agropecuária, one of the Respondents, as part of their asset protection strategy. Just a few days after the filing of the judicial reorganization of the Sao Fernando Group, Jose Bumlai, Guilherme Bumlai, and Mauricio Bumlai, transferred their shares in Agropecuária to Cristiane Bumlai and Fernando Bumlai. Although neither of them was formally a partner or officer of the São Fernando Group, like the Mauricio and Guilherme Bumlai, both Cristiane and Fernando equally benefited from the acts of dissipation and missapropriation of the Debtors' assets. Based on this, the Bankruptcy Estate applied to the Brazilian Bankruptcy Court to characterize them and José Bumlai as "hidden/dormant partners" for the purpose of the Veil Piercing Action.

11.     The Veil Piercing Action was accompanied by a request for urgent provisional relief to attach the Respondents' assets in Brazil and abroad, up to the limit of the Debtors' liabilities totaling 2,202,722,644.51 Brazilian Reais (approximately US$ 398 million with the exchange rate as at 1 USD / 5.54 BRL). As permitted by Brazilian law, and to prevent the

dissipation of the Respondents' assets, the request for urgent provisional relief was made on an *ex parte* basis.

**B.**    **The Freeze Order**

12.    On September 15, 2020, the Brazilian Bankruptcy Court entered an order (the "Freeze Order") granting the urgent provisional relief to attach all the assets of the Respondents based on the Foreign Representative's showing that the Bumlai Brothers and the rest of the Bumlai family, as "dormant/hidden partners", used the Sao Fernando Group for their own benefit, thereby misusing the Sao Fernando Group to defraud its creditors. *See* Freeze Order (defined below), attached hereto with a translation thereof as **Exhibit 1**. In so doing, the Brazilian Bankruptcy Court made detailed factual findings and relied on the significant evidence presented by the Foreign Representative showing various transactions between the Respondents and the São Fernando Group.

13.    Though the Freeze Order did not initially grant the Foreign Representative's request to also freeze the Respondents' bank accounts, the Brazilian Bankruptcy Court reconsidered its decision in part. On September 21, 2020, the Brazilian Bankruptcy Court entered an order (the "Reconsideration Order") granting the Foreign Representative's request for reconsideration of the Freeze Order to permit the freezing of the cash held by the Respondents and the Respondents' bank accounts held abroad. The Reconsideration Order, and a translation thereof, are attached hereto as **Exhibit 2**.

14.    Following the Freeze Order and the Reconsideration Order, the Brazilian Bankruptcy Court mailed service letters to all Respondents, to notify them of the Freeze Order and to appear in the Veil Piercing Action. Shortly thereafter, Cristiane Bumlai, Fernando Bumlai, Agropecuaria and Donex appeared in the Veil Piercing Action represented by a law firm, and filed

a defense to the Veil Piercing Action, denying their participation in any fraud involving the São Fernando Group, and maintaining that they never held a position of partner or officer of the Debtors.

15.     More recently, on April 14, 2021, Mauricio Bumlai and Guilherme Bumlai presented a defense to the Veil Piercing Action. Similarly, on May 28, Jose Bumlai also filed a defense to the Veil Piercing Action. Accordingly, all Respondents have appeared in the Veil Piercing Action and received appropriate service of the Freeze Order and Reconsideration Order.

   **C.**     **The Respondents Fail to Stay the Freeze Order**

16.     Parallel to the presentation of their defense, three of the Respondents—Fernando Bumlai, Cristiane Bumlai, and Agropecuaria—also filed separate interlocutory appeals (the "Interlocutory Appeals") against the Freeze Order and Reconsideration Order to the 3rd Civil Chamber of the Appellate Court of the Mato Grosso do Sul State Court of Appeals (the "Appellate Court"). See **Exhibits 3, 4** and **5**. The Interlocutory Appeals contained an application to the Judge Rapporteur[1] to stay the Freeze Order pending the final resolution of the appeals by the Appellate Court.

17.     The Judge Rapporteur rejected the appellants' arguments for a stay, but he provisionally modified the asset freeze entered in the Freeze Order to permit Fernando Bumlai and Cristiane Bumlai to continue the "management and use" of their assets and "disposal of the proceeds from the assets," to avoid the risk to their family and their family's proper support. The decision denying the applications for a stay by Fernando Bumlai and Cristiane Bumlai and

---

[1] The appeals are composed by a panel of three judges, including the Judge Rapporteur. The powers of the Repporteur Judge are set forth in Article 932 of Brazilian Civil Procedure Code which include the power to decide interlocutory relief requested in appeals. However, the final decision in Appeals is always adjudicated by the full appellate panel.

translations thereof, are attached hereto as **Exhibits 3**, and **4**, respectively. The Judge Rapporteur also provisionally modified the asset freeze as to Agropecuaria to avoid any risk to its business activity. The decision denying the application of Agropecuaria for a stay, and a translation thereof, is attached hereto as **Exhibit 5**.

18.    In April 2021, parallel to the presentation of their defense in the Veil Piercing Action, Guilherme Bumlai and Mauricio Bumlai jointly filed an interlocutory appeal against the Freeze and Reconsideration Orders before the Appellate Court, which was docketed as Interlocutory Appeal No. 1405509-82.2021.8.12.0000. On May 6, 2021, the Judge Rapporteur entered an order rejecting their arguments to stay the Freeze Order, but provisionally modified the Freeze Order to permit Mauricio Bumlai and Guilherme Bumlai to continue the "management and use" of their assets and "disposal of the proceeds from the assets," to avoid the risk to their family and their family's proper support. The appellate order, and translation thereof, is attached to the Declaration as **Exhibit 6**.

19.    The Interlocutory Appeals are expected to be resolved by a panel of three judges composing the Appellate Court, including the Judge Rapporteur.

20.    Despite the pendency of the Interlocutory Appeals, the Freeze Order (as modified by the Reconsideration Order) remains fully valid with respect to the attachment of all the assets of the Respondents in Brazil and abroad, including all cash in bank accounts held by the Respondents abroad.

III.    **Nature of the Incident Files**

A.    **Bankruptcy Law in Brazil**

21.    Bankruptcy law in Brazil is governed by Law No. 11, 101 (the "Brazilian Bankruptcy Law") which came into effect on June 9, 2005. Insolvency proceedings fall under the exclusive authority of the state courts.

22.    The purpose of bankruptcy is to liquidate the assets of bankrupt party and to use the proceeds to pay its creditors according to their respective priorities. When a bankruptcy order is entered against a company and/or individual, they lose the ability to manage their assets, and a judicial administrator is assigned to manage their assets pursuant to art. 103 of the Brazilian Bankruptcy Law. Whether the debtor is a legal entity or an individual, the judicial administrator effectively becomes the legal agent of the debtor's estate.

23.    All assets of the debtor are part of the bankruptcy estate, including those assets that are located outside of Brazil. Under Article 108 of the Brazilian Bankruptcy Law, "[a]fter executing the term of agreement, the judicial administrator shall collect the assets and documents, and evaluate the assets, separately or in block, **in the place where they are**, and shall request the court to take the necessary measures for these purposes" (emphasis added).

24.    The duties of the judicial administrator are set forth in Article 22 of the Brazilian Bankruptcy Law. Under Article 22, a judicial admininstrator has different duties depending on whether he is the judicial administrator of a debtor in a bankruptcy (liquidation) or a judicial reorganization. These duties include the duty to inform the court regarding the reasons for the debtor's bankruptcy, and if necessary, pursue causes of action to liquidate claims of the estate for the benefit of the debtor's creditors.

25.     The judicial administrator is entitled to take any action or steps to manage the assets (and liabilities) of the bankrupt without leave of the Bankruptcy Judge unless the Brazilian Bankruptcy Law expressly requires approval from the Bankruptcy Judge, the Committee of Creditors or the General Creditors Meeting before taking a specific action or step.  Further, Article 22(III)(o) of the Brazilian Bankruptcy Law requires the judicial administrator to file all necessary measures and to take all steps necessary to protect the bankruptcy estate and the efficiency of the administration thereof, whether in Brazil or abroad.

### B.     Legal Requirements to Commence Incident File

26.     Under Brazilian Law, an application to pierce the corporate veil can be made under Article 50 of the Civil Code, so that "the effects of certain liabilities can be extended to encompass the personal assets of the directors (administrators) or the shareholders of the legal entity". As a result, a creditor can hold a third party liable for the performance of liabilities that were originally contracted by the debtor; in this case, the bankrupt companies.

27.     To pierce the corporate veil,  Article 50 provides that the creditor must prove that there was an "abuse of legal personality", characterized by a deviation from the objectives of the company or by the commingling of assets.

28.     Under Article 50, "deviation from the objectives of the company" is "the willful utilization of the corporate entity with the purpose of harming creditors and for the performance of illicit acts of any nature". The law further defines "commingling of assets" as the "lack of separation of patrimony",[2] characterized, for example, by a transfer of assets and liabilities without

---

[2]  Under Brazilian law, "patrimony" is the net worth of an individual or legal entity at any point in time, similar to the concept of "estate" in common law countries.

due consideration or by the repetitive payment of obligations of the company by shareholders/managers or vice-versa.

29.     In addition to the elements set forth in Article 50, the judicial precedents of the Superior Court of Justice in Brazil also authorize the extension of the effects of the bankruptcy when it is proven that, among other things, the defendants and the debtors have created an economic group with the intention to defraud creditors. When such an order is entered, the individual or company against whom it is made becomes bankrupt and all of its assets are required to be collected by the judicial administrator, liquidated and the proceeds of such liquidation distributed to creditors.

30.     Further, under article 76 of the Brazilian Bankruptcy Law, an action to pierce the debtor's corporate veil to extend the effects of the debtor's bankruptcy to a third party must be brought before the same court were the bankruptcy is pending.

### C.     Requirements to Obtain Provisional Relief on an *Ex Parte* Basis

31.     Provisional relief, such as the Freeze Order, may be obtained under Articles 300 and 301 of the Brazilian Civil Procedure Code (Law 13.105/2015, hereinafter "BCPC"). Pursuant to these sections, provisional relief will be granted upon a showing of the likely probability of success on the merits of a claim and the danger of damage or risk to the plaintiff as a result of the process:

> Art. 300. Interlocutory relief shall be granted when there are elements that prove the probability of the alleged claim (the "smoke of good law" or fumus boni iuris) and the risk of loss or injury to the useful outcome of the lawsuit (periculum in mora).
> § 1 In order to grant interlocutory relief, a judge may, as the case may be, demand suitable security interest or personal guarantees in order to compensate for losses that the other party may incur, with the possibility of waiving security interests if the economically disadvantaged party cannot provide them.
> § 2 Interlocutory relief may be granted on a preliminary basis or upon prior justification.
> § 3 Interlocutory relief of a preliminary nature shall not be granted when there is a risk of the effects of the decision being irreversible.

Art. 301. Interlocutory relief of a preliminary nature may be enforced by means of a provisional attachment, sequestration, attachment lien on assets, the lodging of a protest against the alienation of property and any other suitable measure to assure the right.

32.    In addition to the likelihood of success on the merits of a claim and the risk of damage, Paragraph 3 of Article 300 BCPC requires the Court must be satisfied that there is no risk that the effects of the decision are irreversible. Therefore, when a party commences a lawsuit under Brazilian law, such as the Veil Piercing Action, the party is able to request provisional relief on an *ex parte* basis, so long as the the requirements of Articles 300 of the BCPC are satisfied.

33.    Further, when moving for urgent interlocutory relief on an *ex parte* basis, the moving party bears a higher burden of proof relative to non *ex parte* relief.

34.    As discussed below, Brazilian law provides a procedure to inform defendants of any *ex parte* relief granted against them and to afford defendants the right to challenge such relief on an *ex parte* basis by filing an interlocutory appeal to the Appellate Court.

### D.    Notification Procedures for Defendants

35.    Brazilian law provides that the parties in a case must be notified about any order entered in the case file. If the party is not represented by a lawyer in the case, the notifications are normally made by the court via postal service or personally by an officer of the Court. The notification via postal service is normally sent to the addresses indicated by the plaintiff, or any other address the judge identifies. A defendant may also obtain access to a case file even before receiving the notification by voluntarily appearing in the proceedings. Once the defendant is represented by counsel in a proceeding, all subsequent notifications are, as a rule, directed to the lawyers by means of a publication in the Official Gazette.

36.    Brazilian law affords due process to defendants when *ex parte* relief is granted. If a judge grants interlocutory relief on an *ex parte* basis against a defendant, the defendant must be

served with the order granting such relief via postal service pursuant to Article 246 of the BCPC According to Article 249 of the BCPC, if such service is ineffective, then the Court may order service by personal service by an officer of the Court.

      **E.**    **Recent Developments in the Veil Piercing Action**

37.    As discussed above, in the Veil Piercing Action, Judge César de Souza Lima from the Brazilian Bankruptcy Court granted most of the precautionary requests made by the Bankruptcy Estate, thereby freezing all the assets of the defendants, excluding money deposited in bank accounts in Brazil, *but including money deposited abroad*. Complying with the Freeze Order, the Bankruptcy Court notified real estate registries and other public departments to prohibit any transfer of assets involving the Respondents.

38.    As all parties have appeared and submitted their written defenses, the trial judge will approve or reject any application to depose witnesses or produce additional evidence, after which the trial judge will be in position to issue his final decision. After the decision by the Bankruptcy Court, the parties have the ability to file an appeal with the Appellate Court.

I, Marcelo Lucidi, declare under penalty of perjury under the laws of the United States of America that the foregoing is a true and correct.

Dated this 20 th of June, 2021.

_____
Marcelo Lucidi
Counsel for the Foreign Representative

*EXHIBIT "1"*

**State of Mato Grosso do Sul**

Judiciary Branch

**Dourados**

**5th Civil Court**

| ORDER |
| --- |

Case No. 0810455-77.2020.8.12.0002

Action: Bankruptcy of Sole Proprietorships, Business Companies, Microcompanies, and Small Companies

Claimants: Bankruptcy Estate of São Fernando Açúcar e Álcool Ltda., Bankruptcy Estate of São Fernando Energia I Ltda., Bankruptcy Estate of São Fernando Energia Ii Ltda., Bankruptcy Estate of São Maricos (sic) Energia e Participações Ltda., and Bankruptcy Estate of São Pio Empreendimentos e Participações Ltda. Respondents: Agropecuária Cf Ltda., Cristiane de Barros Costa Marques Bumlai Pagnonceli, Donex Participações e Empreendimentos Osjc Ltda., Fernando de Barros Bumlai, Guilherme de Barros Costa Marques Bumlai, José Carlos da Costa Marques Bumlai, and Maurício de Barros Bumlai.

**The Bankruptcy Estate of São Fernando Açúcar e Álcool Ltda., Bankruptcy Estate of São Fernando Energia I Ltda., Bankruptcy Estate of São Fernando Energia II Ltda., Bankruptcy Estate of São Marcos Energia e Participações Ltda., and Bankruptcy Estate of São Pio Empreendimentos e Participações Ltda.** filed a procedural incident motion for piercing the corporate veil with request to extend the effects of bankruptcy, combined with request for urgent provisional relief, against **José Carlos da Costa Marques Bumlai, Guilherme de Barros Costa Marques Bumlai, Cristiane de Barros Costa Marques Bumlai Pagnonceli, Fernando de Barros Bumlai, Maurício de Barros Bumlai, Agropecuária CF Ltda., and Donex Participações e Empreendimentos OSJC Ltda.** in order to hold the respondents liable for the bankruptcy liabilities of the claimants, adjudicate them bankrupt for all effects, and collect their assets for the collective benefit of the creditors (p. 1-8).

For such purposes, they stated that the respondents perpetrated several acts that qualify as deviation from purpose and commingling of assets, namely:

**I)** On October 28, 2013, Agropecuária JB, currently named Agropecuária CF Ltda., which is owned by Fernando Bumlai and Cristiane Bumlai, purchased a Cessna Aircraft model 560XL for a price of US$6,400,000.00, in monthly installments of US$131,305.80, and transferred the burden of payment to São Fernando Açúcar e Álcool Ltda. (a bankruptcy debtor) under a lease agreement entered into on March 1, 2014, in monthly installments of US$130,000.00, without any commercial reason and solely for the benefit of the Bumlai family;

**II)** José Carlos da Costa Marques Bumlai withdrew over R$1,500,000.00 directly from the bank account of São Fernando Açúcar e Álcool Ltda. to meet his personal needs;

**III)** In July or August 2011, São Fernando Açúcar e Álcool Ltda. (a bankruptcy debtor) paid, by order of José Carlos da Costa Marques Bumlai, an amount of R$2,000,000.00 to Legend Engenheiros Associados Ltda., a company owned by Adir Assad (referred to as dollar exchanger), without any evidence of a business relationship, in deviation from purpose;

**IV)** São Fernando Açúcar e Álcool Ltda. (a bankruptcy debtor) ultimately discharged certain individual debts of José Carlos da Costa Marques Bumlai by absorbing TSF Logística Ltda., known as Transportadora São Fernando, while knowing that the former had declared a debt of R$18,000,000.00 with such company, whose partners were Cristiane Bumlai and Fernando Bumlai. Such debt was never paid. In addition, the equipment and machinery owned by Transportadora were appropriated by the

Bumlai family, and the commingling did not result in any relevant asset increase to the now-bankrupt company;

**V)** São Fernando Açúcar e Álcool Ltda. (a bankruptcy debtor) paid R$27,385,141.10 to Banco do Brasil S/A and R$4,297,920.61 to Banco Daycoval in order to repay debts of Immbrax Indústria e Comércio Ltda., owned by the Bumlai family and to the Bertin group, without, however, receiving any consideration;

**VI)** Simulation of a lease agreement under which São Fernando Açúcar e Álcool Ltda. (a bankruptcy debtor) agreed to pay to B9 Logística Eirelli for the use of equipment owned by the latter, which was also owned by the respondents (i.e. the Bumlai family);

**VII)** On November 5, 2007, José Carlos da Costa Marques Bumlai entered into an agricultural partnership agreement with São Fernando Açúcar e Álcool Ltda. for the planting, growing, and harvesting of sugarcane at Fazenda São Marcos, under which the costs would be borne by the now-bankrupt claimant and only 10% of the profits would be transferred to José Carlos da Costa Marques Bumlai. Later on, a fixed amount of agricultural interest payable to the first respondent was established. However, all the sugarcane grown at Fazenda São Marcos was sold by José Carlos da Costa Marques Bumlai to São Fernando Açúcar e Álcool Ltda. itself. In other words, the now-bankrupt company not only purchased its own production, while certainly bearing the costs of planting, growing, and harvesting, but also did it for an overcharged price, as it paid between R$80.96 and R$93.60 per metric ton of product while the average market price at the time was between R$69.89 and R$75.11;

**VIII)** Respondents José Carlos da Costa Marques Bumlai, Guilherme de Barros Costa Marques Bumlai, Cristiane de Barros Costa Marques Bumlai Pagnonceli, Fernando de Barros Bumlai, and Maurício de Barros Bumlai appropriated biological assets owned by the first claimant with a net appraisal value of R$79,000,000.00; and

**IX)** Guilherme de Barros Costa Marques Bumlai and Maurício de Barros Bumlai, as managers of São Fernando Açúcar e Álcool Ltda. (a bankruptcy debtor), favored certain creditors and paid individual debts of the other respondents by discharging a debt of over R$15,000,000.00 with Faccilytho Capital e Rentabilidade Ltda.

They also mentioned that José Carlos da Costa Marques Bumlai, Cristiane de Barros Costa Marques Bumlai Pagnonceli, and Fernando de Barros Bumlai were managers or dormant partners and benefitted from the corporate claimants. In other words, despite the fact that they did not appear as partners of the companies belonging to the São Fernando Group, they had a *de facto* corporate relationship with them and exercised significant influence on their decisions and participation in the fraudulent acts. Moreover, they used Agropecuária CF Ltda. and Donex Participações e Empreendimentos OSJC Ltda. to deviate funds from the claimants as part of a strategy to shield the assets of the Bumlai family. Also, Maurício de Barros Bumlai illegally sent money abroad and operated bank accounts in the United States of America in violation of the order of freezing of his assets. Thus, given the evidence of deviation from purpose and commingling of assets, it is possible to pierce the corporate veil, extend the effects of bankruptcy to the respondents, and consequently hold them liable.

Accordingly, they seek urgent relief attaching all the assets of the respondents, whether in Brazil or abroad, up to the limit of the bankruptcy liabilities of R$2,202,722,644.51. Finally, they seek the piercing of the corporate veil in order to hold the respondents liable for the bankruptcy liabilities and extend the effects of bankruptcy to them, as well as the issuance of an award of costs of loss of suit against them.

They supported the complaint with the documents on p. 64-1.039.

This is my report.

I proceed to rule.

Article 50 of the Civil Code provides that piercing the corporate veil is admissible in the event of deviation from purpose or commingling of assets, viz.: "*Art. 50. In the event of abuse of the corporate entity consisting of deviation from purpose or commingling of assets, the court may, upon request from the party or, when it may intervene in the case, from the Public Prosecutors' Office, pierce the corporate veil so that the effects of certain obligational relationships be extended to the individual assets of the managers or partners of the legal entity who directly or indirectly benefitted from such abuse.*"

Carlos Roberto Gonçalves teaches the following on this subject:

"(…) *A commingling of assets occurs when the company pays debts of a partner, or the latter receives credits from it, or vice versa, and there is no sufficient separation between the persons with respect to assets, which may be demonstrated by accounting records or by the operation of bank accounts. Likewise, such commingling occurs, for purposes of piercing of the corporate veil, when assets of a partner are registered in the name of the company or vice versa. However, as stressed by FÁBIO ULHOA COELHO, 'it does not exhaust the events in which piercing is possible, as not all frauds consist of commingling of assets.' Later on, the author correctly argues that the subjective formulation of the piercing doctrine should be adopted 'as a standard to circumscribe the set of situations in which its application is acceptable, i.e. it is more appropriate for the piercing doctrine. Objective formulation, in turn, should help in facilitating evidence by the claimant. In other words, one should presume fraud in the manipulation of the separation of assets of the legal entity when commingling between its assets and those of one or more of its members is demonstrated; however, when fraud is established, one should fail to pierce the corporate veil of the company merely because the respondent demonstrated that there is no commingling of assets.'* **Accordingly, when the promiscuity of assets is demonstrated, courts have been ordering the piercing of the corporate veil and authorizing the levy of assets of partners because this is clear evidence of fraud.(…)** *Indeed, the piercing of the corporate veil depends on proof of fraud, abuse of right, deviation from purpose, or commingling of assets so that such doctrine may be applied, and the mere insolvency of the legal entity or unlawful dissolution of the company are not acceptable as such proof*" (Gonçalves, Carlos Roberto. *Direito civil brasileiro, volume 1: parte geral* / Carlos Roberto Gonçalves. 15th Ed. São Paulo: Saraiva, 2017, p. 276-7).

In this regard, proof of insolvency of the legal entity is not sufficient for piercing the corporate veil. It is also necessary to demonstrate deviation from purpose or commingling of assets of the corporate debtor with those of its partners and, as in the case at hand, examine the use of other companies in the purported fraud.

The following decision of the Mato Grosso do Sul State Court of Appeals (TJMS) fits perfectly:

"*INTERLOCUTORY APPEAL – ENFORCEMENT OF JUDGMENT – PIERCING OF THE CORPORATE VEIL – ARTICLE 50 OF THE CIVIL CODE – UNDERLYING REQUIREMENTS NOT SATISFIED – LACK OF STANDING TO BE SUED OF THE PARTNERS.* **01. The piercing of the corporate veil under article 50 of the Civil Code requires, in addition to proof of insolvency of the legal entity, demonstration of deviation from purpose or commingling of assets (major doctrine).** *02. The partners of the corporate debtor lack standing to be sued in the enforcement of judgment when there is no piercing of the corporate veil. Appeal entertained and granted.*" Emphasis added (Mato Grosso do Sul State Court of Appeals (TJMS), Civil Appeal No. 1403952-65.2018.8.12.0000, 2nd Civil Chamber, reporting Judge: Vilson Bertelli, trial date: June 27, 2018).

"*INTERLOCUTORY APPEAL – REQUEST FOR PIERCING OF THE CORPORATE VEIL – INADMISSIBILITY – DEVIATION FROM PURPOSE OR COMMINGLING OF ASSETS NOT DEMONSTRATED – THE CONCRETE CASE DOES NOT SUBSUME TO THE PROVISIONS OF ART. 50 OF THE CIVIL CODE – A MERE DEFAULT OR UNLAWFUL DISSOLUTION OF THE COMPANY ARE NOT SUFFICIENT FOR SUCH PURPOSE – AWARD AGAINST THE RESPONDENTS FOR MALICIOUS PROSECUTION – INADMISSIBILITY – APPEAL ENTERTAINED AND GRANTED IN PART.* **The piercing of the corporate veil under article 50 of the Civil Code requires, in addition to proof of insolvency of the legal entity, demonstration of deviation from purpose or commingling of assets, which did not occur in the**

**case at hand**. *The event of malicious prosecution under article 80 of the 2015 Code of Civil Procedure (CPC/2015) did not occur, as the claimants are merely using their constitutional right of action.*" Emphasis added (Mato Grosso do Sul State Court of Appeals (TJMS), Civil Appeal No. 1413116-88.2017.8.12.0000, 1st Civil Chamber, reporting Judge: José Eduardo Neder Meneghelli, trial date: July 2, 2019).

The first point is unquestionably the bankruptcy of the respondents, which are, therefore, insolvent, as demonstrated by the main bankruptcy proceedings.

The disputed issue is the use of the company with deviation from purpose, both by the ostensible partners (i.e. those appearing in the contracts of the company) and by the dormant partners, who used it for their own benefit, including with other legal entities belonging to the family group. As in the report, the facts will be stated below by chapters:

**I) Purchase and lease of private jet (Cessna aircraft)**

The first fact demonstrated is the purchase of a Cessna Aircraft model 560XL for a price of US$6,400,000.00 (business jet). Until April 17, 2013 (shortly before the judicial reorganization of the claimants), the partners of "Agropecuária JB Ltda. EPP" included respondents José Carlos Costa Marques Bumlai, Maurício de Barros Bumlai, Fernando de Barros Bumlai, Guilherme de Barros Costa Marques Bumlai, and Cristiane de Barros Costa Marques Bumlai Pagnoncelli, as seen from the fifth amendment to its articles:

## 5TH AMENDMENT TO THE ARTICLES OF ASSOCIATION

By this private instrument, the parties:

**1-) JOSÉ CARLOS COSTA MARQUES BUMLAI**, a Brazilian citizen, civil engineer, widower, bearer of Identity Card (RG) No. 200.974 SSP-MS, enrolled with the Individual Taxpayers Register of the Ministry of Finance (the "CPF/MF") under No. 219.220.128-15, resident and domiciled in the City of Campo Grande, State of Mato Grosso do Sul, at Rua Doutor Zerbini, No. 890, Chácara Cachoeira II, Postal Code (CEP) 79.040-040 ("JOSÉ CARLOS"):

**2-) MAURÍCIO DE BARROS BUMLAI**, a Brazilian citizen, married, economist, bearer of Identity Card (RG) No. 27.311.898-5 SSP/SP, enrolled with the CPF/MF under No. 132.012.318-00, resident and domiciled in the City of Campo Grande, State of Mato Grosso do Sul, at Rua Doutor Zerbini, No. 890, Chácara Cachoeira II, Postal Code (CEP) 79.040-040 ("MAURÍCIO");

**3-) FERNANDO DE BARROS BUMLAI**, a Brazilian citizen, married, veterinarian, bearer of Identity Card (RG) No. 000272974 SSP-MS, enrolled with the CPF/MF under No. 780.188.541-49, resident and domiciled in the City of Campo Grande, State of Mato Grosso do Sul, at Rua Doutor Zerbini, No. 890, Chácara Cachoeira II, Postal Code (CEP) 79.040-040 ("FERNANDO");

**4-) GUILHERME DE BARROS COSTA MARQUES BUMLAI**, a Brazilian citizen, married, attorney-at-law, bearer of Identity Card (RG) No. 811555 SSP-MS, enrolled with the CPF/MF under No. 843.415.131-68, resident and domiciled in the City of Campo Grande, State of Mato Grosso do Sul, at Rua Doutor Zerbini, No. 890, Chácara Cachoeira II, Postal Code (CEP) 79.040-040 ("GUILHERME"); and

**5-) CRISTIANE DE BARROS COSTA MARQUES BUMLAI PAGNONCELLI**, a Brazilian citizen, married, business administrator, bearer of Identity Card (RG) No. 000803762 SSP-MS, enrolled with the CPF/MF under No. 692.806.731-49, resident and domiciled in the City of Campo Grande, State of Mato Grosso do Sul, at Rua Doutor Zerbini, No. 890, Chácara Cachoeira II, Postal Code (CEP) 79.040-040 ("CRISTIANE");

In the fifth amendment to the articles, partners José Carlos Costa Marques Bumlai, Maurício de Barros Bumlai, and Guilherme de Barros Costa Marques Bumlai all retired from the company, which had a share capital of R$8,982,330.00, as seen on p. 195-203. On September 5, 2013, a little less than 4 months later, the two remaining partners resolved to purchase the Cessna aircraft (p. 204-5). After the

purchase of the aircraft in the United States of America, on April 1, 2014, now-bankrupt São Fernando Açúcar e Álcool Ltda. entered into an agreement for the lease of the Cessna aircraft with Agropecuária JB Ltda. EPP providing for the payment of a monthly rent of one hundred and thirty thousand dollars (US$130,000.00) and maintenance, according to the contract on p. 223-31. Images of the two relevant clauses of the agreement at issue are reproduced below, merely for viewing purposes:

## SECTION ONE – SUBJECT MATTER OF THE AGREEMENT

– The subject matter hereof is the lease by the **LESSOR** to the **LESSEE** of a *Cessna aircraft model 560 XL, serial number 560-6046, with Pratt & Whitney Canada engines model PW 545 C, serial numbers PCE-DF 0091 and PCE-DF 0092*, owned by the **LESSOR**.

(P. 224.)

Letterhead of SÃO FERNANDO AÇÚCAR E ÁLCOOL

4.1 – The **LESSEE** shall pay to the **LESSOR**, by way of rent, an amount of one hundred and thirty thousand dollars (US$130,000.00) for thirty (30) hours per month, as well as bear the expenses with maintenance of the aircraft, which shall be presented in a separate description by the **LESSOR**, containing any replaced parts and services performed.

## SECTION FIVE – PAYMENT

5.1 – The collection shall be made by the **LESSOR** by issuance of the respective collection documents, which shall be sent to the address of the **LESSEE** contained in the preamble to this agreement.

5.2 – The **LESSOR** shall deliver to the **LESSEE**, at least fifteen (15) days in advance of the due date, an invoice for payment of the rent, so that the **LESSEE** may timely make the payment after fiscal procedures.

5.3 – The payment shall be made by the fifteenth (15th) business day of the month following the month when each Invoice is sent by deposit in a checking account to be informed by the **LESSOR**.

(P. 226.)

Proof of payment of the expenses with maintenance of the aircraft and rent is on p. 233-6, totaling R$6,538,639.94 in almost two years. Below is an image of the last portion of the statements of invoices paid (p. 236):

| 001 | 101 | ND | 3.355 | AGRO | 10022016 | 09/20/2016 | R$17,571.97 | 02/10/2016 |
|-----|-----|-----|-------|------|----------|------------|-------------|------------|
| 001 | 101 | NF | 3.355 | AGRO | 042016 | 09/20/2016 | R$3,558.34 | 04/10/2016 |
| 001 | 102 | DP | 3.355 | AGRO | 24032015 | 09/20/2016 | R$6,000.00 | 03/24/2015 |
| 001 | 102 | DP | 3.355 | AGRO | 22072015 | 09/20/2016 | R$7,511.61 | 07/22/2015 |
| 001 | 102 | DP | 3.355 | AGRO | 22062015 | 09/20/2016 | R$7,511.61 | 06/22/2015 |
| 001 | 102 | JF | 3.355 | AGRO | 22052015 | 09/20/2016 | R$1,919.61 | 05/22/2015 |
| 001 | 102 | DP | 3.355 | AGRO | 22052015 | 09/20/2016 | R$7,511.61 | 05/22/2015 |
| 001 | 102 | DP | 3.355 | AGRO | 20032015 | 09/20/2016 | R$6,000.00 | 03/20/2015 |
| 001 | 102 | DP | 3.355 | AGRO | 20032015 | 09/20/2016 | R$6,000.00 | 03/20/2015 |
| 001 | 102 | DP | 3.355 | AGRO | 11022015 | 09/20/2016 | R$15,505.39 | 05/22/2015 |
| 001 | 102 | DP | 3.355 | AGRO | 10022015 | 09/20/2016 | R$34,299.88 | 02/10/2015 |
| 001 | 102 | JF | 3.355 | AGRO | 20092016 | 09/20/2016 | R$62,501.28 | 09/20/2016 |
| | | | **TOTAL:** | | | | **R$6,538,639.94** | |

On the other hand, the aircraft sale agreement, translated into Portuguese, is on p. 260-7, again with a partial image for viewing purposes:

## AIRCRAFT SALE AGREEMENT

**DATE**: October 28, 2013

**CESSNA FINANCE EXPORT CORPORATION**, a Delaware corporation, with principal place of business at Two Cessna Boulevard, Suite 100, Wichita, Kansas 67215, United States of America (hereinafter referred to as the "Seller"); and

**AGROPECUÁRIA JB LTDA. EPP.**, a Brazilian Company enrolled with the Ministry of Finance under National Corporate Taxpayers Register of the Ministry of Finance (CNPJ/MF) under No. 11.407.813/0001-17, with principal place of business at Rua Dr. Zerbini, No. 850, suite 11, Chácara Cachoeira, in the city of Campo Grande, State of Mato Grosso do Sul, Postal Code 79040-040, Brazil (hereinafter referred to as the "Buyer").

**PREAMBLE:**

A. The Seller is the owner or is otherwise authorized to sell an aircraft (the "Aircraft") described as follows:

| Manufacturer: | Cessna |
| --- | --- |
| Model: | 560XL |
| Serial No. | 560-6046 |
| Registration No. | PR-RTS |
| Engine Manufacturer and Model: | Pratt & Whitney Canada PW545C |
| LH Engine Serial Number (N/S): | PCE-DF0091 |
| RH Engine Serial Number (N/S): | PCE-DF0092 |

B. The Seller wishes to sell the Aircraft to the Buyer, and the Buyer wishes to purchase the Aircraft, in accordance with the terms of this Aircraft Sale Agreement (the "Agreement").

C. The Aircraft is currently the subject of a lease registered with the Brazilian Aeronautical Registry (the "RAB"), which lease shall be terminated prior to the sale of the Aircraft under this Agreement.

On the other hand, the financing agreement is on p. 351-6 (Exhibit 14).

**STRUCTURE**

Transaction Type: Chattel Mortgage

Term/Amort: 60 months, 60 months

Interest Rate: 8.50% (Fixed)

Fee: 1.50% structuring ($96,000.00)

ROB: 15.20%

Monthly Payment Amount; $131,305.80

Balloon Amount: $0 (0% of Equipment Cost)

Accrual Status: Accruing

Pre-pay Premium: None

(P. 352.)

This is the first instance of use of São Fernando Açúcar e Álcool Ltda. for the benefit of its potential dormant partners Fernando de Barros Bumlai and Cristiane Barros Costa Marques Bumlai and other members of the family.

**II) Withdrawal of R$1,500,000.00 by José Carlos da Costa Marques Bumlai:**

The use of legal entity São Fernando Açúcar e Álcool Ltda. by its purported dormant partner José Carlos da Costa Marques Bumlai was evidenced by statements from the Council for Financial Activities Control (COAF) in which purported contracts with legal entities B9 Logística Eireli and MB Logística Eireli, owned by partners Fernando de Barros Bumlai and Cristiane Barbosa Dodero Bumlai (wife of Maurício Bumlai), issued invoices for services that were never provided to São Fernando Açúcar e Álcool Ltda., which wrote checks to the company, and in turn endorsed them to José Carlos da Costa Marques Bumlai, who in turn cashed them at Branch No. 2936 of Banco do Brasil in Campo Grande, MS. The withdrawals in cash made by such purported dormant partner are detailed on p. 358-61. Below is only one of the images for illustration purposes (p. 361):

| 1 – JOSÉ CARLOS COSTA MARQUES BUMLAI | | |
|---|---|---|
| **Related Parties** | **Individual Taxpayers Register (CPF)/National Corporate Taxpayers Register (CNPJ) No.** | **Type of Relationship** |
| SÃO FERNANDO ACUCAR E ALCOOL LTDA | 05.894.060/0001-19 | Person in Charge |
| SÃO FERNANDO ACUCAR E ALCOOL LTDA | 05.894.060/0001-19 | Owner |
| JOSÉ CARLOS COSTA MARQUES BUMLAI | 219.220.128-15 | Drawer |

| **Institution** | **Location** | **Branch / National Corporate Taxpayers Register (CNPJ) Suffix** | **Account No.** | **Date** | **Amount in R$** |
|---|---|---|---|---|---|
| Banco do Brasil S.A. | CAMPO GRANDE-MS | GUAICURUS - 2268 | 9999981 | 5/14/2013 | 100,000,00 |
| **Additional Information:** | | | | | |
| **Events:** | | | | | |
| Withdrawal in cash of an amount equal to or greater than one hundred thousand *Reais* (R$100,000.00) | | | | | |

Based on such documents, José Carlos Costa Marques Bumlai directly benefitted from bankruptcy debtor São Fernando Açúcar e Álcool Ltda., which is evidence of his direct involvement with the company and use of other legal entities as partners his (sic) other family members, i.e. B9 Logística Eiteli and MB Logística Eireli.

**III) Payment of R$2,000,000.00 to Legend Engenheiros Associados Ltda., a company owned by Adir Assad (referred to as a dollar exchanger), by order of José Carlos da Costa Marques Bumlai:**

Such fact, i.e. the payment of two million *Reais* (R$2,000,000.00) to Legend Engenheiros Associados, a company owned by Assir Assad. (sic) This purported business transaction was described in a portion of the decision rendered by judge Sérgio Fernando Moro in Case No. 5056156-95.2015.4.04.7000, on p. 369-76:

It was also found, due to a lifting of bank secrecy, previously ordered by this Court in Car Wash Operation, of the companies belonging to the Adir Assad Group, that São Fernando Açúcar e Álcool, managed by defendant José Carlos Bumlai, carried out two transfers, in the amount of one million *Reais* each, on July 27, 2011 and August 28, 2011, to Legend Engenheiros Associados Ltda. (p. 29 of the complaint, event 1). Adir Assad was convicted of money laundering crime in criminal case No. 5012331-04.2015.4.04.7000. In summary, he purportedly laundered illegal funds from the Petrobrás criminal scheme using shell corporations, including Legend Engenheiros. He used such company for fraudulent transfers to Petrobrás managers. Given the nature of the activities of Adir Assad and Legend, there is evidence, in summary cognizance, that such transfers by São Fernando were also fraudulent. In regard to such fact, i.e. the transfer of at least two million *Reais* to a professional money launderer, the defendant, although assuming his responsibility for the transactions, never gave a convincing explanation with respect to the purpose of the transaction ("[T]hat, in regard to the payments made by Usina São Fernando e Álcool to Adir Assad's company, he clarifies that his children did not manage, at that time, the financial affairs of the company"; "he later learned from an email received from the financial department of the company, that the sums had been unduly transferred by some company owned by Natalino Bertin to São Fernando e Álcool"; "thus, it was necessary to forward such sums to Legend, and invoices were issued to support the expenditure of such funds made by the company"). If this was a mere reversal of an undue payment, the transaction should be recorded as such from an accounting point of view, without need for engaging professional money laundering services for such purpose. I further note that the same fact was the subject of a notice of violation from the Federal Revenue (event 1, exhibit 123 of criminal case No. 5061578- 51.2015.4.04.7000), which revealed that the transfers amounted to three million *Reais*, not just two. At that time, São Fernando Açúcar e Álcool, a company managed by the defendant, submitted in its defense fraudulent explanations to the Revenue with respect to the transactions ("The role of Legend Engenheiros Associados Ltda. was solely to lease machinery and equipment to the taxpayer…" – p. 8 of exhibit 123).

**IV) São Fernando Açúcar e Álcool Ltda. (a bankruptcy debtor) absorbed TSF Logística Ltda., known as Transportadora São Fernando, whose partners were Cristiane Bumlai and Fernando Bumlai, who declared a debt in the amount of R$18,000,000.00, owed by José Carlos Costa Marques Bumlai, which was never discharged:**

Transportadora São Fernando (TSF Logística Ltda. – National Corporate Taxpayers Register (CNPJ) No. 00.199.249/0001-78), whose partners are Cristiane Bumlai and Fernando Bumlai, declared a debt owed by José Carlos Costa Marques Bumlai in the amount of eighteen million *Reais* (R$18,000,000.00), according to case No. 5056156-95.2015.4.04.7000, in the income tax return of José Carlos Costa Marques Bumlai on p. 378-412, more specifically on p. 389:

| 11 | CDC-PERSONAL CREDIT BCO BRASIL BRANCH CG/MS BRANCH NO. 1881-3 | 224,329.37 | 109,152.23 |
|----|--------------------------------------------------------------|------------|------------|
| 13 | LOAN CONTRACT WITH TRANSPORTADORA SAO FERNANDO – NATIONAL CORPORATE TAXPAYERS REGISTER (CNPJ) NO. | 18,000,000.00 | 0.00 |

According to the document on p. 414-25, R$18,000,000.00 held by the company against the patriarch of the family does not appear in the merger of TSF Logística Limitada (Transportadora São Fernando), but merely the book value of its equity, i.e. seven million two hundred and nineteen thousand *Reais* (R$7,219,000.00) – p. 425:

(figure)

Key:

**III – APPRAISED ASSETS**

After our examinations and reviews, we concluded that the book value of the Equity to be merged into SFAA is seven million two hundred and nineteen thousand *Reais* (R$7,219,000.00).

Campo Grande, MS, November 1, 2012.

(sgd)

The payment of such debt does not appear in the documentation of São Fernando Açúcar e Álcool Ltda., which purportedly benefitted José Carlos da Costa Marques Bumlai, demonstrating once again the use of the corporate entity by such dormant partner, including with other companies of the family group, for such purpose. At least in this superficial review, this is what is shown by the documents referred to above.

**V) Payment by São Fernando Açúcar e Álcool Ltda. (a bankruptcy debtor) of R$27,385,141.10 to Banco do Brasil S/A and R$4,297,920.61 to Banco Daycoval in connection with a debt owed by Immbrax Indústria e Comércio Ltda., owned by the Bumlai family and to the Bertin group, without consideration:**

The document on p. 427 shows the payment of certain debts owed by IMMBRAX by São Fernando Açúcar e Álcool Ltda. (a bankruptcy debtor):

(figure)

Key:

| LEDGER | | | | | | |
|---|---|---|---|---|---|---|
| Entity: | | SAO FERNANDO ACUCAR E ALCOOL LTDA | | | | |
| Bookkeeping Period: January 1, 2012 to November 30, 2012 | | National Corporate Taxpayers Register (CNPJ) No. 05.894.060/0001-19 | | Book Order Number: 16 | | |
| Period Selected: | | January 1, 2012 to November 30, 2012 | | | | |
| Selected Account: 9110500000102013 – ACTUAL GAINS/LOSSES FROM EQUITY INTERESTS | | | | | | |
| Date | History | Entry No. | Debit | Credit | End-of-Day Balance | D/C |
| | | | | Initial Balance --> | 0.00 | |
| 01/01/2012 | GAINS/LOSSES WITH RELATED PARTIES | 1578385 | | R$42,301.73 | R$42,391.79 | C |
| 06/30/2012 | ASSUMED DEBT OF IMBRAX – SEE CONTRACT | 1568343 | R$5,487,732 7,31 | | R$5,445,340.52 | D |
| 08/31/2012 | TRADE DISCOUNTS – SEE INVOICE (NF) NO. 30052012 | 1613637 | R$5,318.61 | | | |
| 08/31/2012 | TRADE DISCOUNTS – SEE INVOICE (NF) NO. 30042012 | 1613638 | R$11,165.28 | | | |

| 08/31/2012 | TRADE DISCOUNTS – SEE INVOICE (NF) NO. 21082012 | 1613674 | R$318.30 | | | |
| 08/31/2012 | TRADE DISCOUNTS – SEE INVOICE (NF) NO. 19072012 | 1513685 | R$6,500.00 | | R$5,463,642.71 | D |
| 09/21/2012 | 21744 REMISSION OF DEBT – REF. APPEAL SUBMITTED TO DAYCOVAL FOR SETTLEMENT IM (sic) | 1642619 | R$500,000.00 | | R$5,968,542.71 | D |
| 09/27/2012 | 22076 REMISSION OF DEBT – REF. APPEAL SENT TO BB FOR SETTLEMENT IMMBRAX | 1647515 | R$27,385,141.10 | | R$33,353,783.81 | D |
| 11/30/2012 | BALANCE TRANSFERRED FOR CLOSING OF BALANCE SHEET | 1787391 | | R$5,457,732.31 | | |
| 11/30/2012 | BALANCE TRANSFERRED FOR CLOSING OF BALANCE SHEET | 1787758 | | R$27,866,051.50 | R$0.00 | |

The bank statement of São Fernando Energia II Ltda. (owned by São Fernando Açúcar e Álcool Ltda.) issued by Banco Daycoval shows the payment of an amount of R$3,797,920.61 to settle a debt owed by IMMBRAX Indústria e Comércio Ltda. (p. 430):

(FIGURE)

Key:

**SÃO FERNANDO ENERGIA II LTDA.**

Branch No.: **00019** Account No.: **0007108550**

Period Searched: **September 1, 2012 to September 29, 2012**

Account No.: 0007108550

Checking Account Statement for: last 5 days

| Date | Doc. No. | Entry | Debit (R$) | Credit (R$) | Balance (R$) |
|---|---|---|---|---|---|
| | | PREVIOUS BALANCE | | | 0.00 |
| September | 0099336 | RELEASE OF CONTRACT | - | 3,797,920.61 | 3,797,920.61 |

| 19 | | | | | |
|----|----|----|----|----|----|
| September 21 | 7071061 | TRANSFER – SEE AUTHENTICATION NO. 00019 0007071061 IMMBRAX INDUSTRIA E COMERCIO LTDA. | (3,797,920.61) | - | 0.00 |

*The balances above are based on the information available as of this time and may be changed at any time as a result of new entries.*

The payment to Banco do Brasil is on p. 432, as seen in the image below:

| September 27, 2012 | Loan | **1,688,980** | 145,050,70 | D |
|----|----|----|----|----|
| September 27, 2012 | Loan | **1,688,981** | 481,950.05 | D |
| September 27, 2012 | Loan | **1,688,981** | (illegible).16 | D |
| September 27, 2012 | Loan | **1,688,982** | 46,525.49 | D |
| September 27, 2012 | Loan | **1,688,983** | (illegible) | D |
| September 27, 2012 | Loan | **1,688,984** | 792,450.35 | D |
| September 27, 2012 | Loan | **1,688,985** | 64,(illegible) | D |
| September 27, 2012 | Loan | **1,688,** (illegible) | 530,(illegible)8 | D |
| September 27, 2012 | Loan | **1,688,987** | (illegible) | D |
| September 27, 2012 | Loan | **1,688,988** | 8,(illegible)740.15 | D |
| September 27, 2012 | Loan | **1,688,989** | (illegible) 131.71 | D |
| September 27, 2012 | Loan | **1,688,989** | 7,(illegible),57 | D |
| September 27, 2012 | Loan | **1,688,990** | 32,264.61 | D |
| September 27, 2012 | Foreign Exchange | **11,013,243** | 11,000,000.00 | D |
| September 27, 2012 | Foreign Exchange | **11,013,243** | (illegible) | D |
| September 27, 2012 | Transfer from Checking Account | **1.277.976.010.100** | (illegible) | D |
| September 27, 2012 | End-of-Day Transactions | **112.450.008.331.238** | 208,451.00 | D |

And so on and so forth on p. 430-7. Now, there is no reason for the payments to a third-party company that belonged to the family group, with subsequent remission of such debt with IMMBRAX, in the amounts of R$27,385,141.10 (payment to Banco do Brasil) and R$4,297,920.61 (payment to Banco Daycoval), on March 31, 203 (sic) (p. 428):

**São Fernando Açúcar e Álcool Ltda.**

**(Under judicial reorganization)**

*Financial statements as of March 31, 2013 and December 31, 2011*

**23 Other operating revenues (expenses)**

| | March 31, 2013 | December 31, 2011 |
|----|----|----|
| Merger of Company TSF Logística Limitada (note No. 20.c) | (98,469) | - |

| | | |
|---|---:|---:|
| Remission of debts | (33,373) 1 | (12,911) |
| Non-deductible expenses | (16,597) | - |
| Property, plant, and equipment selling costs | (7,294) | 642 |
| Provision for contingencies/losses | (5,862) | (624) |
| Insurance | - | (4,351) |
| Inventory losses | (1,760) | - |
| Non-recurring revenues | - | 9,533 |
| Recovery of expenses | 3.927 | - |
| Other | (299) | (49) |
| | (159,727) | (7,760) |

Again, such actions again, in a superficial review, the repeated use of the corporate entity by other companies belonging to the Bumlai family group.

**VI) Payment to B9 Logística Eirelli (owned by the Bumlai family) for the use of equipment owned by São Fernando Açúcar e Álcool Ltda. (a bankruptcy debtor):**

Such fact, i.e. the lease of agricultural machinery and vehicles owned by a family company, revealed once again the misuse of the corporate entity to the detriment of creditors of the bankruptcy estate and of the funds arising from bank loans, including from the Brazilian Development Bank (BNDES). Of the 68 equipment items Leased, 39 were owned by São Fernando Açúcar e Álcool Ltda. Even so, it paid for such lease to another Bumlai family group company, B9 Logística Eireli, an amount of R$100,000.00 per month for the 39 Overflow Wagons Model Teston of the bankruptcy debtor, which had been purchased from Metalcana Indústria e Comércio Ltda., according to the invoices on p. 528-45. The leased assets are listed on p. 505-525, including the Overflow Wagons that were owned by São Fernando (a bankruptcy debtor) itself. The assets were subsequently written off as unserviceable (p. 623):

(figure)

Key:

| ASSET NUMBER | ASSET CODE | ASSET DESCRIPTION PAT | FLEET | CHASSIS | INVOICE | ASSET ACQUISITION | ORIGINAL PRICE | ASSET TRANSPORTATION | INDICATION OF ORIGIN - CA |
|---|---|---|---|---|---|---|---|---|---|
| 99 | | AGRICULTURAL TRACTOR JOHN DEERE 7185J CH1BM71 | | CH1BM7185JCBH000416 | 33993 – MAURÍCIO | 12/30/2011 | 196,300.00 | 01/31/2016 | Disposal |
| 100 | TRA-0036*00 | AGRICULTURAL TRACTOR JOHN DEERE 7715 CH1BM771 | | CH1BM7715XPAH090669 | TSF – No invoice | 12/30/2011 | 184,000.00 | 01/31/2016 | Disposal |
| 101 | TRA-0037*00 | AGRICULTURAL TRACTOR JOHN DEERE 7715 CH1BM771 | | CH1BM7715XTAH090654 | TSF – No invoice | 12/30/2011 | 184,000.00 | 01/31/2016 | Disposal |
| 135 | TRA-0071*00 | TRACTOR JD CH 1BM7715XCAH090717 NF 316 AD | | 1BM7715XCAH090717 | TSF – No invoice | 08/01/2012 | 72,833.43 | 01/31/2016 | Disposal |
| 138 | TRA-0074*00 | TRACTOR VALTRA CH BH185219672 NF 316 ADQU | | BH185219672 | TSF – No invoice | 08/01/2012 | 120,000.00 | 01/31/2016 | Disposal |
| 139 | | TRACTOR JD CH 1BM7185JTBH000426 NF 316 AD | | 1BM7185JTBH000426 | 34085 – JOSÉ CARLOS | 08/01/2012 | 118,597.98 | 01/31/2016 | Disposal |
| 140 | | TRACTOR JD CH 1BM7185JVBH000417 NF 316 AD | | CH1BM7185JVBH000417 | 34086 – JOSÉ CARLOS | 08/01/2012 | 118,597.98 | 01/31/2016 | Disposal |
| 144 | TRA-0080*00 | TRACTOR JD 7715 CH 1BM715XCAH090594 NF 31 | | 1BM7715XCAH090594 | TSF – No invoice | 08/01/2012 | 72,833.43 | 01/31/2016 | Disposal |
| 145 | TRA-0081*00 | TRACTOR JD 7715 CH 1BM7715XJAH090660 NF 3 | | 1BM7715XJAH090660 | TSF – No invoice | 08/01/2012 | 72,833.43 | 01/31/2016 | Disposal |
| 148 | | TRACTOR JD CH 1BM7185JKBH000428 NF 314 AD | | CH1BM71855KBH000428 | 34095 – GUILHERME | 08/01/2012 | 118,597.58 | 01/31/2016 | Disposal |
| 149 | TRA-0085*00 | TRACTOR JD CH 1BM7715XEAH090666NF 313 ADQ | | 1BM7715XEAH090666 | TSF – No invoice | 08/01/2012 | 72,833,43 | 01/31/2018 | Disposal |
| 151 | TRA-0087*00 | TRACTOR JD CH 1BM7185JLBH000419 NF 313 AD | | 1BM7185JLBH000419 | TSF – No invoice | 08/01/2012 | 118,597.98 | 01/31/2016 | Disposal |
| 153 | TRA-0089*00 | AGRICULTURAL TRACTOR JD CH | | 1BM7715XHAH090665 | TSF – No invoice | 08/01/2012 | 72,833.43 | 01/31/2016 | Disposal |

| | | | | 1BM7715XHAH090665 | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 156 | TRA-0092*00 | AGRICULTURAL TRACTOR JD CH1BM7185VBH000420N | | 1BM 7185JVBH000420 | 33999 – CRISTIANE B.B.M. | 08/01/2012 | 118,597.98 | 01/31/2016 | | Disposal |
| 240 | | SUGARCANE HARVESTER JD ESTEIRA CH 1NW3520T | | CH 1NW3520THB0091541 | 9833 – JOSÉ CARLOS | 08/01/2012 | 529,900.00 | 01/31/2016 | | Disposal |
| 248 | AGR-0152*00 | SUGARCANE HARVESTER JD CH 1NW3520TAB0091536 | | 1NW3520TAB0091536 | 9836 – GUILHERME B. B. | 08/01/2012 | 529,900.00 | 01/31/2016 | | Disposal |
| 249 | AGR-0153*00 | SUGARCANE HARVESTER 3520JD CH 1NW3520TJA00 | | CH 1NW3520T JA0990848 | TSF – No invoice | 08/01/2012 | 403,733.24 | 01/31/2016 | | Disposal |
| 250 | AGR-0154*00 | SUGARCANE HARVESTER 3520JD CH 1NW3520TTB00 | | CH 1NW3520TTB0091544 | 9835 – FERNANDO B.B. | 08/01/2012 | 529,900.00 | 01/31/2016 | | Disposal |
| 252 | AGR-0156*00 | SUGARCANE HARVESTER 3520 JD 1NW3520TCB0091 | | CH 1NW3520TCB0091543 | 9825 – CRISTIANE B.B.M. | 08/01/2012 | 529,900.00 | 01/31/2016 | | Disposal |
| 311 | REB-0057*00 | TOW WAGON/OVERFLOW WAGON S-3059 | | | TSF – No invoice | 04/17/2009 | 66,000.00 | 01/31/2016 | | Disposal |
| 1380266 | | OVERFLOW WAGON TESTON MODEL TESTON | 5623 | CHASS.MCG22000143 | 175 | 05/17/2011 | 129,359.51 | 02/17/2017 | | Disposal |
| 1380330 | | OVERFLOW WAGON TESTON | 5624 | CHASS.MCG22000145 | 174 | 05/24/2011 | 129,359.51 | 02/17/2017 | | Disposal |
| 1380334 | | OVERFLOW WAGON TESTON | 5622 | CHASS.MCG22000144 | 173 | 05/24/2011 | 129,359.51 | 02/17/2017 | | Disposal |
| 1454405 | | OVERFLOW WAGON 20,000KG TESTON | 5644 | CHASS.MCG22000161 | 565 | 08/02/2012 | 136,335.25 | 02/17/2017 | | Disposal |
| 1454520 | | OVERFLOW WAGON 20,000KG TESTON | 5651 | CHASS.MCG22000220 | 764 | 08/07/2012 | 136,335.25 | 02/17/2017 | | Disposal |
| 1454538 | | OVERFLOW WAGON 20,000KG TESTON | 5643 | CHASS.MCG22000164 | 553 | 08/17/2012 | 136,335.25 | 02/17/2017 | | Disposal |
| 1454541 | | OVERFLOW WAGON 20,000KG TESTON | 5654 | CHASS.MCG22000203 | 820 | 08/17/2012 | 136,335.25 | 02/17/2017 | | Disposal |
| 1454709 | | OVERFLOW WAGON 20,000KG TESTON | 5656 | CHASS.MCG22000202 | 819 | 09/26/2012 | 136,335.25 | 02/17/2017 | | Disposal |

| 1454710 | | OVERFLOW WAGON 20,000KG TESTON | 5652 | CHASS.MCG22000206 | 701 | 09/26/2012 | 136,335.25 | 02/17/2017 | Disposal |
|---|---|---|---|---|---|---|---|---|---|
| 1454801 | | OVERFLOW WAGON 20,000KG TESTON | 5650 | CHASS.MCG22000209 | 763 | 10/29/2012 | 136,335.20 | 02/17/2017 | Disposal |
| 1454802 | | OVERFLOW WAGON 20,000KG TESTON | 5647 | CHASS.MCG22000210 | 566 | 10/29/2012 | 136,335.20 | 02/17/2017 | Disposal |
| 1454930 | | OVERFLOW WAGON 20,000KG TESTON | 5655 | CHASS.MCG22000227 | 1422 | 11/29/2012 | 136,335.25 | 02/17/2017 | Disposal |
| 1454931 | | OVERFLOW WAGON 20,000KG TESTON | 5646 | CHASS.MCG22000154 | 609 | 11/29/2012 | 136,335.25 | 02/17/2017 | Disposal |
| 1455948 | | OVERFLOW WAGON 20,000KG TESTON | 5653 | CHASS.MCG22000226 | 1366 | 01/03/2013 | 136,335.25 | 02/17/2017 | Disposal |
| 1455949 | | OVERFLOW WAGON 20,000KG TESTON | 5648 | CHASS.MCG22000215 | 610 | 01/03/2013 | 136,335.25 | 02/17/2017 | Disposal |
| 1488331 | | OVERFLOW WAGON 20,000KG TESTON | 5660 | CHASS.MCG22000233 | 1517 | 07/30/2013 | 136,335.25 | 02/17/2017 | Disposal |
| 1488337 | | OVERFLOW WAGON 20,000KG TESTON | 5662 | CHASS.MCG22000234 | 1681 | 09/18/2013 | 136,335.25 | 02/17/2017 | Disposal |
| 1488338 | | OVERFLOW WAGON 20,000KG TESTON | 5658 | CHASS.MCG22000232 | 1516 | 10/31/2013 | 136,335.25 | 02/17/2017 | Disposal |
| 1488339 | | OVERFLOW WAGON 20,000KG TESTON | 5665 | CHASS.MCG22000238 | 1824 | 10/31/2013 | 136,335.25 | 02/17/2017 | Disposal |

In addition to the lease, São Fernando Açúcar e Álcool Ltda. and B9 Logística also executed an admission of debt stating that the Overflow Wagons should be paid for by São Fernando to B9 Logística. Note that the Overflow Wagons were owned by São Fernando itself. The following is from the debt admission agreement (p. 625 and 627):

**SÃO FERNANDO AÇUCAR E ALCOOL LTDA.** (under judicial reorganization), a legal entity organized under the provisions of private law, enrolled with the National Corporate Taxpayers Register (CNPJ) under No. 05.894.060/0002-08, through its branch located at Rodovia MS 379 (towards Laguna Carapã), Block B, No Number, Rural Zone, Postal Code (CEP) 79.804-970, in the city of Dourados, State of Mato Grosso do Sul, represented herein by its Officers, in accordance with the provisions of the last amendment to its articles, duly filed with the Commercial Registry of the State of São Paulo (JUCESP) under No. 2.081/155 and with the Commercial Registry of the State of Mato Grosso do Sul (JUCEMS) under No. 54404944, hereinafter referred to as SÃO FERNANDO; and, on the other hand,

**B9 LOGÍSTICA – EIRELI**, a limited liability sole proprietorship, enrolled with the National Corporate Taxpayers Register (CNPJ) under No. 09.248.125/0001-00, with principal place of business at Rua Dr Zerbini No. 850, suite 10, Postal Code (CEP) 79.040-040, District of Chácara Cachoeira, Campo Grande, MS, represented herein by its officer, in accordance with the provisions of its Restated Articles of Association, duly filed with the Commercial Registry of the State of Mato Grosso do Sul (JUCEMS) under No. 54600006811, hereinafter referred to as B9 Logística.

WHEREAS, SÃO FERNANDO has entered into a lease agreement with B9 LOGÍSTICA on July 1, 2016, the subject matter of which is the lease of equipment owned by B9 LOGÍSTICA.

WHEREAS, such agreement provides that SÃO FERNANDO is responsible for the maintenance and conservation of the leased equipment.

WHEREAS, some equipment items have deteriorated as a result of misuse and some had parts scrapped by sole and exclusive fault of SÃO FERNANDO, which led the same to be regarded as scrap.

Again, the conduct of the Bumlai family group caused actual losses to the bankruptcy estate.

(figure)

Key:

| ITEM | FLEET | EQUIPMENT DESCRIPTION | MODEL | STATUS | CHASSIS NO. |
|---|---|---|---|---|---|
| 1 | 5624 | OVERFLOW WAGON | TESTON PT 22000 | IN USE | MCG 22000145 |
| 2 | 5647 | OVERFLOW WAGON | TESTON    MCG 22000 | IN USE | MCG 22000210 |
| 3 | 5654 | OVERFLOW WAGON | TESTON    MCG 22000 | IN USE | MCG 22000203 |
| 4 | 5650 | OVERFLOW WAGON | TESTON    MCG 22000 | IN USE | MCG 22000209 |
| 5 | 5656 | OVERFLOW WAGON | TESTON    MCG 22000 | IN USE | MCG 22000202 |
| 6 | 5658 | OVERFLOW WAGON | TESTON    MCG 22000 | IN USE | MCG 22000232 |
| 7 | 5652 | OVERFLOW WAGON | TESTON    MCG 22000 | IN USE | MCG 22000206 |

| 8 | 5655 | OVERFLOW WAGON | TESTON        MCG 22000 | IN USE | MCG 22000227 |
| 9 | 5651 | OVERFLOW WAGON | TESTON        MCG 22000 | IN USE | MCG 22000220 |
| 10 | 5643 | OVERFLOW WAGON | TESTON        MCG 22000 | IN USE | MCG 2200164 |
| 11 | 5662 | OVERFLOW WAGON | TESTON        MCG 22000 | IN USE | MCG 2200234 |
| 12 | 5644 | OVERFLOW WAGON | TESTON        MCG 22000 | IN USE | MCG 22000161 |
| 13 | 5622 | OVERFLOW WAGON | TESTON PT 22000 | IN USE | MCG 22000144 |
| 14 | 5667 | OVERFLOW WAGON | TESTON        MCG 22000 | IN USE | MCG 22000208 |
| 15 | 5653 | OVERFLOW WAGON | TESTON        MCG 22000 | IN USE | MCG 22000226 |
| 16 | 5646 | OVERFLOW WAGON | TESTON        MCG 22000 | IN USE | MCG 22000154 |
| 17 | 5660 | OVERFLOW WAGON | TESTON        MCG 22000 | IN USE | MCG 22000233 |
| 18 | 5665 | OVERFLOW WAGON | TESTON        MCG 22000 | IN USE | MCG 22000238 |
| 19 | 5648 | OVERFLOW WAGON | TESTON        MCG 22000 | IN USE | MCG 22000215 |
| 20 | 5623 | OVERFLOW WAGON | TESTON PT 22000 | IN USE | MCG 22000143 |

Paragraph One – The price of each Overflow Wagon, as adjusted after the market survey conducted, is Sixty-one thousand *Reais* (R$61,000.00), totaling One million two hundred and twenty thousand *Reais* (R$1,220,000.00).

**VII) Agricultural partnership agreement between José Carlos da Costa Marques Bumlai and São Fernando Açúcar e Álcool Ltda.:**

On November 5, 2007, José Carlos da Costa Marques Bumlai entered into an agricultural partnership agreement with São Fernando Açúcar e Álcool Ltda. providing for the planting, growing, and harvesting of sugarcane at Fazenda São Marcos, under which the costs would be borne by the now-bankrupt claimant and only 10% of the profits would be transferred to José Carlos da Costa Marques Bumlai. Later on, a fixed amount of agricultural interest payable to the first respondent was established. However, all the sugarcane grown at Fazenda São Marcos was sold by José Carlos da Costa Marques Bumlai to São Fernando Açúcar e Álcool Ltda. itself. In other words, the now-bankrupt company not only purchased its own production, while certainly bearing the costs of planting, growing, and harvesting, but also did it for an overcharged price, as it paid between R$80.96 and R$93.60 per metric ton of product while the average market price at the time was between R$69.89 and R$75.11

The first agricultural partnership agreement between São Fernando (a bankruptcy debtor) and José Carlos Costa Marques Bumlai was dated November 5, 2007 (p. 675-83), with the following main

obligations provided for in section 6: payment of 90% of the area production to São Fernando and 10% to José Carlos. All expenses with planting and growing were borne by São Fernando. On December 5, 2017, one month after the execution of the first agreement, there was an amendment changing the planting area to 4,060ha, with alteration of the agreement to the 2014 harvest and in a fixed sum (p. 687-91). In this regard, an interesting fact is that the signatory was Maurício de Barros Bumlai, a partner of São Fernando, as attorney-in-fact for José Carlos Costa Marques Bumlai:

Campo Grande, MS, December 20, 2010.

Partner/Owner

(ass)

**JOSÉ CARLOS COSTA MARQUES BUMLAI**

By: Maurício de Barros Bumlai

Partner/Grower:

| (ass) | (ass) |
|-------|-------|
| **SÃO FERNANDO AÇÚCAR E ÁLCOOL LTDA** | |
| Guilherme de B. C. M. Bumlai | Natalino Bertin |
| Chief Operating Officer | Chief Executive Officer |

Therefore, all the planting of sugarcane at Fazenda São Marcos (the location of the partnership) was carried out by São Fernando Açúcar e Álcool Ltda. Now, in May 2013, while the partnership agreement was still in force (to expire in 2014), José Carlos Costa Marques Bumlai began to sell the production from Fazenda São Marcos planted by São Fernando, according to the invoices on p. 720-22. Thus, the partnership agreement was breached without the respective indemnification of São Fernando Açúcar e Álcool for the planting and growing of the crop in the partnership area. Some of the invoices began to be issued by Fernando de Barros Bumlai (p. 751) and Cristiane de Barros Costa Marques Bumlai Pagnocelli (p. 753), which is further evidence of the Bumlai Family Group. The invoices were filed on p. 720-847.

The amendment to the partnership agreement to the detriment of São Fernando is evidenced by the sugarcane sale agreement executed on May 10, 2013 (p. 849-55). Its section one provides the following:

**I – SUBJECT MATTER**

**SECTION ONE** – By this lawful private instrument, the **SELLER** sells to the **BUYER** the harvests from the 2013-2014 to 2018-2019 sugarcane agricultural cycles, which shall be grown in the Agricultural Land described in "*TABLE I*" below, in an area of approximately four thousand hectares (4,000ha), located in the property described in "*TABLE I.*"

**PARAGRAPH ONE** – The **PARTIES** agree that the subject matter of the sale described in Section One is all the sugarcane grown in the Agricultural Land described in "*TABLE I*" with respect to the abovementioned harvest. The SELLER may use a portion of the sugarcane field as sugarcane seedlings to be planted solely at Fazenda São Marcos.

One should bear in mind that the partnership agreement was still in force on that date, as this agreement had been entered into on May 10, 2013. São Fernando's sugarcane planting and growing statement shows Fazenda São Marcos, with a significant planting area, remodeling, and loads, with expenses made by São Fernando Açúcar e Álcool Ltda. in the area, which later purchased, to its own detriment, the sugarcane it had planted and grown itself. See the chart for the period between January 1, 2013 and June 8, 2017, particularly with respect to Fazenda São Marcos:

| São Fernando Açúcar e Álcool | Planting Monitoring | **08/23/20** |
|---|---|---|

| ATRC_620 Period: January 1, 2013 to June 8, 2017 Vision: Seedlings *Data retrieved from the Planting Notes* | | | Farm | | | | | |
|---|---|---|---|---|---|---|---|---|
| | **Area** | | | | | | | |
| **Farm** | **Remodeling** | **Planted** | **Compartment** | **Loads** | **Loads/ha** | **Average Weight** | **Seedling Sugarcane Metric Tons per Hectare (TCH)** | **Metric Tons** |
| 2001 Fazenda Rancharia | 367.14 | 172.79 | 367.14 | 520 | 3.009 | 7.71 | 23.190 | 4,007.034 |
| 2002 Fazenda Barretos | 375.37 | 360.89 | 462.37 | 481 | 1.334 | 9.71 | 12.949 | 4,673.310 |
| 2004 Fazenda Caçula | 732.71 | 412.82 | 730.90 | 723 | 1.751 | 8.65 | 15.142 | 6,251.000 |
| 2009 Fazenda Estancia | 706.65 | 629.62 | 704.75 | 1.296 | 2.058 | 8.58 | 17.657 | 11,117.200 |
| 2009 Fazenda Ipê Florido | 214.61 | 149.59 | 189.66 | 227 | 1.519 | 8.40 | 12.759 | 1,908.600 |
| 2042 Fazenda Giralu | 113.07 | 72.20 | 119.60 | 118 | 1.634 | 8.86 | 14.483 | 1,045.640 |
| 2083 FAZ RECREIO | 79.51 | 56.70 | 77.44 | 80 | 1.411 | 7.69 | 10.848 | 615.080 |
| 2118 Fazenda Dourados – DP II | 122.79 | 122.79 | 122.79 | 244 | 1.987 | 9.85 | 19.573 | 2,403.400 |
| 2121 Fazenda São Francisco | 141.21 | 101.40 | 157.32 | 144 | 1.420 | 9.54 | 13.540 | 1,372.910 |
| 2122 Fazenda Flor de Maio | 160.84 | 137.83 | 137.83 | 151 | 1.099 | 11.00 | 12.087 | 1,665.950 |
| 2158 Fazenda Recreio | 57.56 | 61.70 | 70.82 | 155 | 2.512 | 6.11 | 15.348 | 947.000 |
| 2160 FAZ SOSSEGO | 155.61 | 155.61 | 155.61 | 196 | 1.260 | 9.53 | 12.007 | 1,868.380 |
| 2164 Fazenda Paraíso | 558.99 | 504.99 | 677.57 | 1.165 | 2.307 | 7.84 | 18.075 | 9,127.715 |
| 2165 Fazenda Dois Irmãos | 682.65 | 714.04 | 511.04 | 1.281 | 1.794 | 8.67 | 15.560 | 11,110.332 |
| 2166 Fazenda Santa Lucia | 242.32 | 234.85 | 242.32 | 433 | 1.844 | 8.04 | 14.831 | 3,483.120 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 2167 Fazenda Senta Lucia II | 66.42 | 34.50 | 66.42 | 86 | 2.493 | 7.00 | 17.449 | 602.000 |
| 2168 Fazenda Santo Antonio | 168.02 | 116.80 | 167.32 | 288 | 2.466 | 8.87 | 21.880 | 2.555.630 |
| 2173 Fazenda Boa Sorte (ESH) | 863.08 | 861.80 | 802.25 | 1.669 | 1.937 | 7.28 | 14.090 | 12,142.590 |
| 2174 Fazenda Santa Ana (ESH) | 814.94 | 626.82 | 686.85 | 1.118 | 1.784 | 9.71 | 17.310 | 10,850.240 |
| 2175 Fazenda Santa Maria (Maisa) | 293.33 | 510.20 | 524.24 | 918 | 1.799 | 10.26 | 18.468 | 9,422.330 |
| 2184 Fazenda Nova Lagoa Grande | 469.60 | 457.15 | 439.46 | 962 | 2.104 | 7.87 | 16.555 | 7,567.935 |
| 2185 Fazenda Santa Ana II | 217.09 | 214.18 | 217.09 | 354 | 1.653 | 10.03 | 16.572 | 3,549.380 |
| 3001 Fazenda São Marcos | 1,809.35 | 1,819.20 | 2,237.09 | 3.806 | 2.092 | 8.84 | 18.498 | 33,652.358 |
| 5000 Fazenda Santa Inês | 845.16 | 833.32 | 846.49 | 1.546 | 1.855 | 8.14 | 15.096 | 12,579.680 |
| 5025 Fazenda Figueira II | 398.59 | 398.59 | 372.33 | 825 | 2.070 | 9.83 | 20.347 | 8,109.940 |
| 5028 Fazenda Jacutinga | 826.82 | 739.59 | 816.75 | 1.522 | 2.058 | 9.53 | 19.601 | 14,496.470 |
| 5032 Fazenda Nossa Senhora Aparecida | 517.18 | 381.68 | 504.23 | 793 | 2.078 | 8.38 | 17.409 | 6,644.480 |
| 5051 Fazenda São José Desterro | 366.08 | 368.03 | 368.10 | 747 | 2.030 | 9.21 | 18.702 | 6,882.970 |
| 5058 Fazenda Nova Esperança | 105.44 | 25.78 | 105.44 | 64 | 2.483 | 7.93 | 19.687 | 507.520 |
| 5065 Fazenda Três Irmãs | 132.40 | 89.37 | 134.70 | 211 | 2.361 | 8.83 | 20.847 | 1,863.080 |
| **Grand Total** | **12,604.53** | **11,364.83** | **13,015.92** | **22.124** | **1.947** | **8.73** | **16.984** | **193,023.274** |

The sugarcane purchased from Fazenda São Marcos was also overcharged, according to the invoices and to the comparison with Sugarcane Metric Ton prices measured by the São Paulo State Council of Sugarcane, Sugar, and Ethanol Producers (CONSECANA) (p. 859-72).

**VIII) Appropriation of biological assets of São Fernando:**

The complaint stated that respondents José Carlos da Costa Marques Bumlai, Guilherme de Barros Costa Marques Bumlai, Cristiane de Barros Costa Marques Bumlai Pagnonceli, Fernando de Barros Bumlai, and Maurício de Barros Bumlai purportedly appropriated biological assets of São Fernando Açúcar e Álcool Ltda. with a net value of seventy-nine million *Reais* (R$79,000,000.00).

As demonstrated in the preceding item, São Fernando planted sugarcane at Fazenda São Marcos under a partnership agreement, as expected. However, between April 2015 and March 2016, the Bumlai Family charged São Fernando for its sugarcane an amount of R$16,433,330.00 for 220,000 metric tons; between April 2016 and March 2017, R$25,555,034.00 for 295,000 metric tons; and, shortly before the adjudication of bankruptcy, between April and May 2017, R$4,710,255.00 for 58,000 metric tons. Thus, forty-seven million *Reais* (R$47,000,000.00) were charged from São Fernando over a period of 3 years for sugarcane that was part of its biological assets, planted in connection with an agricultural partnership agreement turned into a sugarcane sale.

The sugarcane crops planted at Fazenda São Marcos were supposed to produce until 2026, according to the cutting spreadsheet on p. 997-1.015, as in p. 1.006:

(illegible) in the current cutting, i.e. the rest of their productive life, which for sugarcane amounts to up to eight (8) cycles, was not taken into account.

| Farm | Area (ha) | Cutting | AMOUNTS (in R$) | | |
| --- | --- | --- | --- | --- | --- |
| | | | EXPENSES | REVENUES | BALANCE |
| Partnerships – Formation 18 M | 2,509.63 | 0 | 105,654,092.90 | 157,379,725.80 | 51,725,632.91 |
| Partnerships – 18 M – 1st Cutting | 277.38 | 1 | 11,677,550.99 | 17,394,591,37 | 5,717,040.38 |
| Partnerships – 18 M – Nursery | 192.13 | 0 | 2,122,652.24 | 0.00 | -2,122,652.24 |
| Partnerships – 18 M – 2nd Cutting | 2,517.83 | 2 | 75,856,426,89 | 121,399,188.19 | 45,542,761.30 |
| Partnerships -18 M – 3rd Cutting | 2,920.69 | 3 | 74,362,023.30 | 118,321,857.13 | 43,959,833.84 |
| Partnerships – 18 M – 4th Cutting | 4,533.58 | 4 | 91,763,830.09 | 143,110,435.63 | 51,346,605.53 |
| Partnerships – 18 M – 5th Cutting | 3,913.34 | 5 | 59,687,396,55 | 90,557,055.57 | 30,869,659.03 |
| Partnerships -18 M – 6th Cutting | 4,397.80 | 6 | 32,699,943,18 | 45,616,717.10 | 12,916,773.92 |
| Partnerships – 18 M – 7th Cutting | 2,648.21 | 7 | 16,884,986.96 | 23,202,901,00 | 6,317,914.04 |
| Partnerships – 18 M – 8th Cutting and Others | 1,062.41 | 8 | 3,386,963.08 | 4,654,274.78 | 1,267,311.70 |
| São Marcos – Formation 18 M | 1,535.74 | 0 | 68,226,508,81 | 104,333,110,84 | 36,106,602.04 |
| São Marcos -18 M – 1st Cutting | 251.30 | 1 | 11,164,208.57 | 17,072,493.23 | 5,908,284.67 |
| São Marcos -18 M – 2nd Cutting | 718.37 | 2 | 24,077,463,62 | 40,106,412.88 | 16,028,949.27 |
| São Marcos -18 M – 3rd Cutting | 849.43 | 3 | 23,968,655.12 | 39,672,864.24 | 15,704,209.12 |
| São Marcos – 18 M – 4th Cutting | 130.86 | 4 | 3,114,475.85 | 5,177,176.97 | 2,062,701.12 |
| São Marcos -18 M – 5th Cutting | 72.15 | S | 1,397,735.98 | 2,337,470,45 | 939,734.47 |
| São Marcos -18 M – 6th Cutting | 75.96 | 6 | 1,081,974.24 | 1,796,960.73 | 714,986.49 |
| São Marcos -18 M – 7th Cutting | 185.33 | 7 | 1,832,172.38 | 3,085,241.70 | 1,253,069.32 |

Again, losses were incurred after the bankruptcy due to the use of the corporate entity for the benefit

of the dormant partners and other companies.

**IX) Payment of R$15,000,000.00 to Faccilytho Capital e Rentabilidade Ltda.:**

Finally, Guilherme de Barros Costa Marques Bumlai and Maurício de Barros Bumlai, as managers of São Fernando Açúcar e Álcool Ltda. (a bankruptcy debtor), favored certain creditors and paid individual debts of the other respondents by discharging a debt of over R$15,000,000.00 with Faccilytho Capital e Rentabilidade Ltda.

The documents in the case records show that the partners of São Fernando Açúcar e Álcool Ltda. advanced certain credits to Faccilytho Capital e Rentabilidade Ltda., which purportedly acquired credits from the now-bankrupt company and from the Bumlai family. On p. 1.020-3, there is information provided by Faccilytho Capital e Rentabilidade Ltda. that it had acquired several credits from the Bumlai family, and São Fernando Açúcar e Álcool Ltda. made advance payments. Here, this court would reproduce the document in its entirety, step by step, with the images, as they clearly indicate the use of the claimant company for the individual benefit of its ostensible and dormant partners, as there was no business or legal reason for the payments, much less to Cristiane Barros Costa Marques Bumlai, José Carlos Costa Marques Bumlai, Fernando de Barros Bumlai, Guilherme de Barros Costa Marques Bumlai, Cristiane Barbosa Dódero Bumlai, and Maurício de Barros Bumlai.

Below are images of the information provided by Faccilytho Capital e Rentabilidade Ltda.:

(i) Transactions No. 0214000300767010309, INV.PEC, with a debit balance of forty thousand nine hundred and fifteen *Reais* (R$40,915.10), and No. 0600012130386000386, FINAGRI, with a debit balance of five hundred and four thousand four hundred and sixteen *Reais* and fifty-seven cents (R$504,416.57), base date: December 11, 2015, debtors: CRISTIANE BARROS COSTA MARQUES BUMLAI (Individual Taxpayers Register (CPF) No. 692.806.731-49) and JOSÉ CARLOS COSTA MARQUES BUMLAI (Individual Taxpayers Register (CPF) No. 219.220.128-15), subject to action for execution No. 0836747-78.2015.8.12.0001, pending before the 3RD CIVIL COURT OF THE JUDICIAL DISTRICT OF CAMPO GRANDE, MS:

(ii) Transaction No. 006000126038000386, FINAGRI, with a debit balance of six hundred and twenty-seven thousand three hundred and eighty-eight *Reais* and seventy-one cents (R$627,388.71), base date: December 11, 2015, debtors: GUILHERME DE BARROS COSTA MARQUES BUMLAI (Individual Taxpayers Register (CPF) No. 843-415.131-68) and JOSÉ CARLOS COSTA MARQUES BUMLAI (Individual Taxpayers Register (CPF) No. 219.220.128-15), subject to action for execution No. 0821837-46.2015.8.12.0001, pending before the 3RD CIVIL COURT OF THE JUDICIAL DISTRICT OF CAMPO GRANDE, MS;

(iii) Transaction No. 0214000300775010309, INV.PEC, with a debit balance of thirty-seven thousand one hundred and ninety-one *Reais* and seventy-seven cents (R$37,191.77), base date: December 11, 2015, debtors: GUILHERME DE BARROS COSTA MARQUES BUMLAI (Individual Taxpayers Register (CPF) No. 843.415.131-68) and JOSÉ CARLOS COSTA MARQUES BUMLAI (Individual Taxpayers Register (CPF) No. 219.220.128-15), subject to action No. 0043442-86.2012.8.12.0001, pending before the 10TH CIVIL COURT OF THE JUDICIAL DISTRICT OF CAMPO GRANDE, MS;

(iv) Transaction No. 0600078490386000386, FINAGRI, with a debit balance of six hundred and eighteen thousand six hundred and forty-one *Reais* and forty-seven cents (R$618,641.47), base date: December 11, 2015, debtors: FERNANDO DE BARROS BUMLAI (Individual Taxpayers Register (CPF) No. 780.188.541-49) and JOSÉ CARLOS COSTA MARQUES BUMLAI (Individual Taxpayers Register (CPF) No. 219.220.128-15), subject to action for execution No. 0823433-65.2015.8.12.0001, pending before the 3RD CIVIL COURT OF THE JUDICIAL DISTRICT OF CAMPO GRANDE, MS;

(v) Transaction No. 0600011770386000386, FINAGRI, with a debit balance of five hundred and ninety-eight thousand two hundred and seventy-four *Reais* and thirty-two cents (R$598,274.32), base

date: December 11, 2015, debtors: MAURÍCIO DE BARROS BUMLAI (Individual Taxpayers Register (CPF) No. 132.012.318-00) and JOSÉ CARLOS COSTA MARQUES BUMLAI (Individual Taxpayers Register (CPF) No. 219.220.128-15), subject to action for execution No. 0812835-52.2015.8.12.0001, pending before the 3RD CIVIL COURT OF THE JUDICIAL DISTRICT OF CAMPO GRANDE, MS;

(vi) Transaction No. 0214000300791010309, INV.PEC, with a debit balance of forty-three thousand and twenty-eight *Reais* and nineteen cents (R$43,028.19), base date: December 11, 2015, debtors: MAURÍCIO DE BARROS BUMLAI (Individual Taxpayers Register (CPF) No. 132.012.318-00) and JOSÉ CARLOS COSTA MARQUES BUMLAI (Individual Taxpayers Register (CPF) No. 219.220.128-15), subject to action No. 0043444-56.2012.8.12.0001, pending before the 10TH CIVIL COURT OF THE JUDICIAL DISTRICT OF CAMPO GRANDE, MS;

(vii) Transaction No. 2140000126680001308, BLACKMASTER, with a debit balance of fifty-two thousand eight hundred and fifty-three *Reais* and fifty-eight cents (R$52,853.58), base date: December 11, 2015, debtor: MAURÍCIO DE BARROS BUMLAI (Individual Taxpayers Register (CPF) No. 132.012.318-00);

(viii) Transaction No. 0600016110386000386, FINAGRI, with a debit balance of six hundred and eight thousand three hundred and forty *Reais* and ninety-two cents (R$608,340.92), base date: December 11, 2015, debtors: JOSÉ CARLOS COSTA MARQUES BUMLAI (Individual Taxpayers Register (CPF) No. 219.220.128-15), CRISTIANE BARBOSA DONDERO BUMLAI (Individual Taxpayers Register (CPF) No. 562.768.501-87), and MAURÍCIO DE BARROS BUMLAI (Individual Taxpayers Register (CPF) No. 132.012.318-00), subject to action No. 0812828-60.2015.8.12.0001, pending before the 3RD CIVIL COURT OF THE JUDICIAL DISTRICT OF CAMPO GRANDE, MS;

(ix) Transactions No. 0214000300805010309. INV.PEC., with a debit balance of fifty-seven thousand and thirty-three *Reais* and twenty-four cents (R$57,033.24); No. 2140000000430700470, CPRF, with a debit balance of two hundred and fifteen thousand three hundred and ninety-two *Reais* and forty-nine cents (R$215,392.49), No. 2140000000440700470, CPRF, with a debit balance of two hundred and nineteen thousand eight hundred and eleven *Reais* and forty-five cents (R$219,811.45), and transaction No. 2140000000450700470, CPRF, with a debit balance of two hundred and twenty-two thousand four hundred and eighty-five *Reais* and thirty-three cents (R$222,485.33), base date: December 11, 2015, debtors: JOSÉ CARLOS COSTA MARQUES BUMLAI (Individual Taxpayers Register (CPF) No. 219.220.128-15), CRISTIANE BARBOSA DONDERO BUMLAI (Individual Taxpayers Register (CPF) No. 562.768.501-87), and MAURÍCIO DE BARROS BUMLAI (Individual Taxpayers Register (CPF) No. 132.012.318-00), all subject to action No. 0043443-71.2012.8.12.0001, pending before the 10TH CIVIL COURT OF THE JUDICIAL DISTRICT OF CAMPO GRANDE, MS;

Such transaction demonstrates the use of the corporate entity for purposes other than those set forth in its articles of association and for the specific purpose of benefitting dormant partners Cristiane Barros Costa Marques Bumlai, José Carlos Costa Marques Bumlai, Fernando de Barros Bumlai, Guilherme de Barros Costa Marques Bumlai, and Cristiane Barbosa Dódero Bumlai and ostensible partners Guilherme de Barros Costa Marques Bumlai and Maurício de Barros Bumlai.

Having reviewed the facts, we find that the allegations are verisimilar and supported by detailed evidence and, at this first stage, a demonstration of acts that led to the misuse of the corporate entity to, in principle, defraud creditors and, above all, given the amount of the credit, the Brazilian Development Bank (BNDES), which released one hundred and three million *Reais* (R$103,000,000.00) to São Fernando at a single time.

The danger of delay is clear, because, as the company is under judicial reorganization, the respondents consummated several actions that are harmful to the debtor, such as bankruptcy, receipt of assets by irregular means, payment of debts, and receipt of amounts without a contract, and may conceal assets once again to the detriment of the community of creditors.

To reinforce the argument, by extension of the provisions of article 50, of the Civil Code, including the so-called reverse piercing of the corporate veil to assess the assets of Agropecuária CF Ltad, Agropecuária JB, and Donex Participações e Empreendimentos OSJC Ltda., we have the extension to the dormant partners who benefitted from such actions, who are referred to in this order and in the complaint as the "Bumlai Family group", namely: Cristiane Barros Costa Marques Bumlai, José Carlos Costa Marques Bumlai, Fernando de Barros Bumlai, Guilherme de Barros Costa Marques Bumlai, Cristiane Barbosa Dódero Bumlai, and dormant partners Guilherme de Barros Costa Marques Bumlai and Maurício de Barros Bumlai. The following two precedents are cited:

"*INTERNAL INTERLOCUTORY APPEAL ON INTERLOCUTORY APPEAL ON SPECIAL APPEAL. LACK OF SPECIFIC CHALLENGE TO THE GROUNDS OF THE DECISION RENDERED BY THE LOWER COURT. INSUFFICIENCY OF GENERIC ALLEGATIONS. EXECUTION OF EXTRAJUDICIAL ENFORCEABLE INSTRUMENT.* **REVERSE PIERCING OF THE CORPORATE VEIL. ADMISSIBILITY.** *REVIEW. ABRIDGMENT NO. 7 OF THE SUPERIOR COURT OF JUSTICE (STJ). LEVY OF EXECUTION. 30% ON CREDIT CARD RECEIVABLES. REVIEW. EXCESSIVE BURDEN. INADMISSIBILITY. ABRIDGMENT NO. 7 OF THE SUPERIOR COURT OF JUSTICE (STJ). INTERLOCUTORY APPEAL NOT GRANTED. 1. An interlocutory appeal intended to cause a special appeal dismissed at the lower court to be entertained requires, as an objective requirement for admissibility, specific challenge to the grounds for dismissal of the special appeal, according to the express provisions of art. 932, III of the 2015 Code of Civil Procedure (CPC/2015) (art. 544, paragraph 4, item I of the 1973 Code of Civil Procedure (CPC/1973)) and art. 253, sole paragraph, I of the Internal Regulations of the Superior Court of Justice (RISTJ). However, the appellant failed to meet such burden, as generic allegations of inapplicability of the obstacle relied upon are insufficient. Precedents. 2. (…omitted…)* **6. The lower Court reviewed in detail the proof in the case records and decided to uphold the reverse piercing of the corporate veil to assess the appellant companies because one of its partners, son of the debtor, was also a partner of the company, which went through several amendments to its articles under which the debtors were retained as managers, and was an attorney-in-fact of the two Offshores, of which the debtor was also an attorney-in-fact. The lower Court also found that the other partner is son-in-law of the individual debtors and had been chief commercial officer of the corporate debtor, and the latter company has the same business purpose, i.e. vehicle parking. Accordingly, it should be noted that the lower Court reviewed the evidence in the case records to conclude that there is an intrinsic relationship between the companies evidenced by their common partners and officers, as well as by the same activities, which qualify them as members of a family business group, with deviation from purpose and commingling of assets for the misuse of the companies incorporated.** *In this context, granting the appellate relief would require a change of the factual and evidentiary premises established in the decision under appeal, with a reexamination of the evidence in the case records, which is prohibited by Abridgment No. 7 of the Superior Court of Justice (STJ). 7. In order to rule out the understanding reached by the lower Court so as to review the particulars of the case and verify the existence of excessive burden on the appellants would require a reexamination of the facts and evidence in the case records, which is inadmissible on special appeal under Abridgment No. 7 of the Superior Court of Justice (STJ): 'A special appeal cannot be filed for a mere reexamination of evidence.' 8. Internal interlocutory appeal not granted.*" Emphasis added (Internal Interlocutory Appeal (AgInt) on Interlocutory Appeal on Special Appeal No. 1.043.928/SP (2017/0009902-3), 4th Panel of the Superior Court of Justice (STJ), Reporting Justice: Luis Felipe Salomão. *Electronic Court Register (DJe)*, September 29, 2017).

"*CIVIL LAW AND CIVIL PROCEDURE. SPECIAL APPEAL. MONITORY ACTION. CONVERSION. ENFORCEMENT OF JUDGMENT. COLLECTION. RETAINER ATTORNEY'S FEES. THIRD PARTIES. PROOF OF EXISTENCE OF PARTNERSHIP. MEANS OF EVIDENCE. REVERSE PIERCING OF THE CORPORATE VEIL. CONCEALMENT OF ASSETS OF THE PARTNER. EVIDENCE OF ABUSE OF THE CORPORATE ENTITY. EXISTENCE. PROCEDURAL INCIDENT MOTION. PROCESSING. GRANTING. 1. The purpose of the appeal is to demonstrate a) whether there is sufficient evidence of a* de facto *partnership between the appellees and b) whether there are sufficient elements to institute a procedural incident motion of reverse piercing of the corporate veil. 2.*

*The existence of a partnership may* **be demonstrated by third parties by any means of evidence, including indications and presumptions, in accordance with the provisions of art. 987 of the 2002 Civil Code (CC/02). 3. The corporate entity and the segregation of assets arising therefrom are veils to mutually protect the assets of the partners and of the company, to the fair extent of the purpose for which the company is intended to exist.** *4. The reverse piercing of the corporate veil is intended to prevent transfers of assets by a partner to a corporate entity he controls, thereby temporarily piercing the fictional veil that separates the partner from the company in order assess assets that, although registered in the name of the company, are actually owned by its fraudster partner. 5. Under the current Code of Civil Procedure (CPC), the examination by the court of the satisfaction of the requirements for piercing of the corporate veil, which is demonstrated in the complaint, allows it to institute such procedural incident motion to be instituted and to stay the proceedings in which it is sought, it being understood that the piercing order should be preceded by effective adversarial testing. 6. In the case at hand, the appellant successfully demonstrated indications that the appellee is a partner of and transferred his assets to the company in order to conceal his assets from his creditors, which allows the procedural incident motion of reverse piercing of the corporate veil to be entertained, which, in accordance with the principle of* tempus regit actum, *should follow the rite established in the 2015 Code of Civil Procedure (CPC/15). 7. Special appeal entertained and granted*” (Special Appeal No. 1.647.362/SP (2017/0004072-0), 3rd Panel of the Superior Court of Justice (STJ), Reporting Justice: Nancy Andrighi. *Electronic Court Register (DJe)*, August 10, 2017).

To further demonstrate comprehensive reverse extension of the piercing of the corporate veil, we have the following commentary on article 50 of the 2002 Civil Code, from *Comentários ao Novo Código Civil*, coordinated by Sálvio de Figueiredo Teixeira:

“Finally, the note that the solution set forth in the commented article, whatever the civil liability of the partners and managers for obligations to which the legal entity is a partner, does not satisfy or does not apply to all the events of deviation from purpose of the formal structure of the entity. Indeed, legal literature reports cases of abuse of the corporate entity characterized by a clear intention of harming third parties, which do not materialize in obligations of the legal entity or obligations that should be settled by civil liability of the partners or managers” (MONTEIRO FILHO, Raphael de Barros. MONTEIRO, Ralpho Waldo de Barros. MONTEIRO, Ronaldo de Barros. MONTEIRO, Ruy Carlos de Barros. *Comentários ao novo código civil, vol. I: arts. 1º a 78*, Org. Sálvio de Figueiredo Teixeira. Rio de Janeiro: Forense, 2010, p. 792).

Based on all the arguments stated above, the urgent relief for attachment of assets and rights should be granted, not least because there is no danger that the attachment of the assets of the respondents will be irreversible. The satisfaction of the requirements for a comprehensive reverse disregard of the ostensible and dormant partners of other legal entities has been evidenced, as well as the need to ensure the amount stated in the complaint as that deviated from the corporate respondents, i.e. currently Bankruptcy Estate of São Fernando.

Wherefore, based on article 50 of the Civil Code, together with article 300 of the Code of Civil Procedure (CPC), I grant the request for urgent relief for piercing the corporate veil sought by the **Bankruptcy Estate of São Fernando Açúcar e Álcool Ltda., Bankruptcy Estate of São Fernando Energia I Ltda., Bankruptcy Estate of São Fernando Energia Ii Ltda., Bankruptcy Estate of São Marcos Energia e Participações Ltda., and Bankruptcy Estate of São Pio Empreendimentos e Participações Ltda.** against **Agropecuária Cf Ltda., Cristiane de Barros Costa Marques Bumlai Pagnonceli, Donex Participações e Empreendimentos Osjc Ltda., Fernando de Barros Bumlai, Guilherme de Barros Costa Marques Bumlai, José Carlos da Costa Marques Bumlai, and Maurício de Barros Bumlai** and order the attachment of assets and rights of the respondents, in Brazil and abroad, by enjoining any transfer, receipt of income and proceeds, or any other manner disposal of their assets/property rights until the limit of the bankruptcy liabilities, i.e. two billion two hundred and two million seven hundred and twenty-two thousand six hundred and forty-four *Reais* and fifty-one cents (R$2,202,722,644.51).

For such purposes, I order:

a) That official letters be sent to the Commercial Registries of Mato Grosso do Sul, Rio de Janeiro, and São Paulo for annotation on the records of the companies of which the respondents are partners;

b) That official letters be sent to the Real Estate Registers of the State of Mato Grosso do Sul for recordation of the attachment on the title records of the properties of the respondents, enjoining any sale, pledging, or any other type of disposal or limitation on ownership;

c) The freezing of the assets of the respondents in the National Asset Freezing Center (CNIB), with notification to the Brazilian Real Estate Registers;

e) (sic) As for the request for freezing of cash, with freezing of assets, I understand that such measure would assess monies that are necessary for the support of individuals and hinder the business activities of the companies, and will only be granted if sufficient real properties to cover the liabilities of the bankruptcy estate are not found.

Summon the respondents so that they may submit an answer, if they wish to do so, without a pretrial conference, due to the Coronavirus pandemic.

I hereby unseal the case records.

The court office should comply with such orders urgently by using the systems provided by the National Council of Justice.

Publish, notify, and comply with.

Dourados, September 15, 2020.

César de Souza Lima

Judge

This document is a copy of the original digitally signed by CESAR DE SOUZA LIMA. Entered in the digital case records by César de Souza Lima on September 15, 2020 at 5:18 P.M. To view the case records, access https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do and enter case number 0810455-77.2020.8.12.0002 and code 1269B42.

pas/250295.doc



**Estado de Mato Grosso do Sul**
Poder Judiciário
**Dourados**
**5ª Vara Cível**

| DECISÃO |
| --- |

Autos n.° 0810455-77.2020.8.12.0002
Ação:    Falência    de    Empresários,    Sociedades    Empresáriais,
Microempresas e Empresas de Pequeno Porte
Parte Ativa: Massa Falida de São Fernando Açúcar e Álcool Ltda., Massa
Falida de São Fernando Energia I Ltda., Massa Falida de São Fernando
Energia Ii Ltda., Massa Falida de São Maricos Energia e Participações
Ltda. e Massa Falida de São Pio Empreendimentos e Participações Ltda.
Parte Passiva: Agropecuária Cf Ltda, Cristiane de Barros Costa Marques
Bumlai Pagnonceli, Donex Participações e Empreendimentos Osjc Ltda.,
Fernando de Barros Bumlai, Guilherme de Barros Costa Marques Bumlai,
José Carlos da Costa Marques Bumlai e Maurício de Barros Bumlai

        **Massa   Falida  de  São  Fernando   Açúcar  e  Álcool  Ltda,
Massa Falida de São Fernando   Energia  I Ltda, Massa Falida de São
Fernando    Energia    Ii   Ltda,   Massa   Falida   de   São   Marcos   Energia    e
Participações  Ltda e Massa  Falida de São Pio Empreendimentos    e
Participações  Ltda** ingressaram com incidente de desconsideração de
personalidade jurídica com pedido de extensão dos efeitos da falência
c.c. tutela de urgência cautelar em desfavor de **José Carlos da Costa
Marques Bumlai,  Guilherme de Barros  Costa Marques Bumlai, Cristiane
de Barros  Costa Marques Bumlai Pagnonceli,  Fernando  de Barros Bumlai,
Maurício  de Barros  Bumlai** , Agropecuária   CF Ltda e Donex  Participações
e Empreendimentos    OSJC Ltda para responsabilizar os requeridos pelo
passivo falimentar das autoras, considerá-los como falidos para todos os
efeitos e arrecadar seus patrimônios em benefício da coletividade de
credores (f. 1-8).

        Narraram para tanto que os requeridos praticaram várias
condutas a configurar o desvio de finalidade e confusão patrimonial,
quais sejam:

        **I)** Em 28.10.2013 a empresa Agropecuária JB, atualmente
Agropecuária CF Ltda, pertencente a Fernando Bumlai e Cristiane
Bumlai, comprou uma aeronave Cessna Aircraft, modelo 560XL, no valor
de US$ 6.400.000,00, com parcelas mensais de US$ 131.305,80, transferiu

**1**

Este documento é cópia do original assinado digitalmente por CESAR DE SOUZA LIMA. Liberado nos autos digitais por César de Souza Lima, em 15/09/2020 às 17:18. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0810455-77.2020.8.12.0002 e o código 1269B42.



**Estado de Mato Grosso do Sul**
Poder Judiciário
**Dourados**
**5ª Vara Cível**

o ônus de pagamento para a empresa São Fernando Açúcar e Álcool Ltda (falida), através de um contrato de locação celebrado em 1º.3.2014, com parcelas mensais de US$ 130,000,00, sem qualquer justificativa comercial e para atender exclusivamente aos interesses da família Bumlai;

**II)** José Carlos da Costa Marques Bumlai sacou mais de R$ 1.500.000,00 diretamente da conta bancária de São Fernando Açúcar e Álcool Ltda para satisfazer suas necessidades pessoas;

**III)** Em julho ou agosto de 2011 a São Fernando Açúcar e Álcool Ltda (falida) pagou, por ordem de José Carlos da Costa Marques Bumlai, a quantia de R$ 2.000.000,00 a Legend Engenheiros Associados Ltda, empresa pertencente a Adir Assad (denominado de doleiro), sem qualquer comprovação de relação comercial, em desvio de finalidade;

**IV)** São Fernando Açúcar e Álcool Ltda (falida) acabou por quitar dívidas particulares de José Carlos da Costa Marques Bumlai ao incorporar ao seu patrimônio a TSF Logística Ltda, conhecida como Transportadora São Fernando, certo que aquele declarou um débito de R$ 18.000.000,00 com a mencionada empresa, cujo sócios eram Cristiane Bumlai e Fernando Bumlai. A dívida jamais chegou a ser paga, além disso os equipamentos e máquinas pertencentes à Transportadora foram apropriadas pela família Bumlai e a incorporação não representou qualquer acréscimo patrimonial relevante para a hoje massa falida;

**V)** São Fernando Açúcar e Álcool Ltda (falida) pagou R$ 27.385.141,10 para o Banco do Brasil S/A e R$ 4.297.920,61 para o Banco Daycoval para amortizar dívidas de Immbrax Indústria e Comércio Ltda, pertencente à família Bumlai e ao grupo Bertin, sem, contudo, receber contraprestação;

**VI)** Simulação de contrato de locação, no qual São Fernando Açúcar e Álcool Ltda (falida) foi obrigada a pagar à empresa B9 Logística Eirelli por utilização de equipamentos que lhe pertenciam, empresa esta também dos requeridos (família Bumlai);

**VII)** Em 5.11.2007, José Carlos da Costa Marques Bumlai celebrou contrato de parceria agrícola com a São Fernando Açúcar e Álcool Ltda para o plantio, cultivo e colheita de cana de açúcar na Fazenda São Marcos, em que os custos eram de responsabilidade da massa falida autora e apenas 10% dos lucros seriam repassados para José Carlos da Costa Marques Bumlai. Posteriormente, estabeleceu-se um valor fixo de participação agrícola a ser pago ao primeiro requerido. Entretanto, toda a cana de açúcar produzida na Fazenda São Marcos foi vendida por José Carlos da Costa Marques Bumlai para a própria São Fernando Açúcar e Álcool Ltda, em outras palavras, a mencionada massa falida comprou uma produção que era sua, certo que arcou

2

Este documento é cópia do original assinado digitalmente por CESAR DE SOUZA LIMA. Liberado nos autos digitais por César de Souza Lima, em 15/09/2020 às 17:18. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0810455-77.2020.8.12.0002 e o código 1269B42.



**Estado de Mato Grosso do Sul**
Poder Judiciário
**Dourados**
**5ª Vara Cível**

com os custos do plantio, cultivo e colheita e ainda por um preço superfaturado, pois pagou entre R$ 80,96 e R$ 93,60 por tonelada do produto, enquanto a média de mercado, à época, era de R$ 69,89 a R$ 75,11;

VIII) Os requeridos José Carlos da Costa Marques Bumlai, Guilherme de Barros Costa Marques Bumlai, Cristiane de Barros Costa Marques Bumlai Pagnonceli, Fernando de Barros Bumlai e Maurício de Barros Bumlai se apropriaram dos ativos biológicos pertencente à primeira autora no valor liquido avaliado em R$ 79.000.000,00;

IX) Guilherme de Barros Costa Marques Bumlai e Maurício de Barros Bumlai, na administração da São Fernando Açúcar e Álcool Ltda (falida), favoreceram credores e pagaram dívidas particulares dos demais requeridos ao quitarem um débito de mais de R$ 15.000.000,00 com Faccilytho Capital e Rentabilidade Ltda.

Mencionaram também que José Carlos da Costa Marques Bumlai, Cristiane de Barros Costa Marques Bumlai Pagnonceli e Fernando de Barros Bumlai atuavam como administradores ou sócios ocultos e se beneficiavam das pessoas jurídicas autoras, isto é, apesar de não constarem como sócios nas empresas do Grupo São Fernando, tinham uma relação societária de fato, com influência significativa em suas decisões e participação direta nos atos fraudulentos. Além disso, utilizaram Agropecuária CF Ltda e Donex Participações e Empreendimentos OSJC Ltda para desviar recursos das requerentes, como parte de uma estratégia de proteção do patrimônio da família Bumlai, inclusive Maurício de Barros Bumlai enviara dinheiro de forma ilegal ao exterior e movimenta contas bancárias nos Estados Unidos da América, em descumprimento à ordem de indisponibilidade de seus bens. Assim, como os elementos indicam o desvio de finalidade e confusão patrimonial, possível a desconsideração da personalidade jurídica, com extensão dos efeitos da falência aos requeridos e consequente responsabilização.

Desse modo, pretendem a concessão de tutela de urgência para arresto de todos os bens dos requeridos, seja no Brasil ou no exterior, até o limite do passivo falimentar de R$ 2.202.722.644,51. Ao final, pugnam pela desconsideração da personalidade jurídica para responsabilizar os réus pelo passivo falimentar e estender aos mesmos os efeitos do decreto de falência, além da condenação nos ônus sucumbenciais.

Instruíram a exordial com os documentos de f. 64-1.039.

3

Este documento é cópia do original assinado digitalmente por CESAR DE SOUZA LIMA. Liberado nos autos digitais por César de Souza Lima, em 15/09/2020 às 17:18. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0810455-77.2020.8.12.0002 e o código 1269B42.



**Estado de Mato Grosso do Sul**
Poder Judiciário
**Dourados**
**5ª Vara Cível**

É o relatório.

Decido.

O artigo 50, do Código Civil, dispõe que em caso de desvio de finalidade ou da confusão patrimonial é cabível a desconsideração da personalidade jurídica, **in verbis**: "*Art. 50. Em caso de abuso da personalidade jurídica, caracterizado pelo desvio de finalidade ou pela confusão patrimonial, pode o juiz, a requerimento da parte, ou do Ministério Público quando lhe couber intervir no processo, desconsiderá-la para que os efeitos de certas e determinadas relações de obrigações sejam estendidos aos bens particulares de administradores ou de sócios da pessoa jurídica beneficiados direta ou indiretamente pelo abuso.*"

> Sobre o assunto leciona Carlos Roberto Gonçalves:
> "*(...) Configura-se a confusão patrimonial quando a sociedade paga dívidas do sócio, ou este recebe créditos dela, ou o inverso, não havendo suficiente distinção, no plano patrimonial, entre pessoas – o que se pode verificar pela escrituração contábil ou pela movimentação de contas de depósito bancário. Igualmente constitui confusão, a ensejar a desconsideração da personalidade jurídica da sociedade, a existência de bens de sócio registrados em nome da sociedade, e vice-versa. Mas, como ressalta FÁBIO ULHOA COELHO, "ela não exaure as hipóteses em que cabe a desconsideração, na medida em que nem todas as fraudes se traduzem em confusão patrimonial". Assiste razão ao mencionado autor quando, na sequência, sustenta que a formulação subjetiva da teoria da desconsideração deve ser adotada "como o critério para circunscrever a moldura de situações em que cabe aplicá-la, ou seja, ela é a mais ajustada à teoria da desconsideração. A formulação objetiva, por sua vez, deve auxiliar na facilitação da prova pelo demandante. Quer dizer, deve-se presumir a fraude na manipulação da autonomia patrimonial da pessoa jurídica se demonstrada a confusão entre os patrimônios dela e de um ou mais de seus integrantes, mas não se deve deixar de desconsiderar a personalidadejurídica da sociedade, somente porque o demandado demonstrou ser inexistente qualquer tipo de confusão patrimonial, se caracterizada, por outro modo, a fraude". **Nessa linha, têm os tribunais determinado a***

**4**

Este documento é cópia do original assinado digitalmente por CESAR DE SOUZA LIMA. Liberado nos autos digitais por César de Souza Lima, em 15/09/2020 às 17:18. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0810455-77.2020.8.12.0002 e o código 1269B42.



**Estado de Mato Grosso do Sul**
Poder Judiciário
**Dourados**
**5ª Vara Cível**

*desconsideração da personalidade jurídica nos casos em que a promiscuidade patrimonial é demonstrada, autorizando a penhora de bens dos sócios, pois se trata de eloquente indicativo de fraude. (...) Efetivamente, a desconsideração da pessoa jurídica exige comprovação de fraude, abuso de direito, desvio de finalidade ou confusão patrimonial para que se aplique a mencionada teoria, não se podendo aceitar como tal a mera insolvência da pessoa jurídica ou dissolução irregular da empresa.* " (Gonçalves, Carlos Roberto Direito civil brasileiro, volume 1 : parte geral / Carlos Roberto Gonçalves. – 15. Ed. – São Paulo: Saraiva, ano 2017, p. 276-7).

Neste diapasão, não basta a prova da insolvência da pessoa jurídica para a desconsideração da personalidade, é necessária também a demonstração do desvio de finalidade ou confusão patrimonial entre os bens da empresa executada e seus sócios e, como no caso em tela, a análise de utilização de outras empresas para a suposta fraude.

Calha à fiveleta decisão do TJMS:
"*AGRAVO DE INSTRUMENTO – CUMPRIMENTO DE SENTENÇA – DESCONSIDERAÇÃO DA PERSONALIDADE JURÍDICA – ARTIGO 50 DO CÓDIGO CIVIL – AUSÊNCIA DE PREENCHIMENTO DOS REQUISITOS AUTORIZADORES – ILEGITIMIDADE PASSIVA DOS SÓCIOS. 01. Para a aplicação da desconsideração da personalidade jurídica com base no artigo 50 do Código Civil, exige-se, além da prova de insolvência da pessoa jurídica, a comprovação do desvio de finalidade ou da confusão patrimonial (teoria maior). 02. Os sócios da empresa executada são partes ilegítimas para figurarem no polo passivo do cumprimento de sentença quando não houver desconsideração da personalidade jurídica. Recurso conhecido e provido.*" Destaquei (TJMS, Apelação Cível n.º 1403952-65.2018.8.12.0000, 2.ª Câmara Cível, relator Desembargador Vilson Bertelli, julgado em 27.6.2018).
"*AGRAVO DE INSTRUMENTO – PEDIDO DE DESCONSIDERAÇÃO DA PERSONALIDADE JURÍDICA – IMPOSSIBILIDADE – DESVIO DE FINALIDADE OU CONFUSÃO PATRIMONIAL NÃO DEMONSTRADAS – AUSÊNCIA DE SUBSUNÇÃO DO CASO CONCRETO À PREVISÃO DO ART. 50 DO CÓDIGO CIVIL – MERO INADIMPLEMENTO OU*

5

Mod. 990039563 - Endereço: Av. Presidente Vargas, nº 210, prédio anexo, Centro - CEP 79804-030, Fone: (67) 3902-1732, Dourados-MS - E-mail: dou-5vciv@tjms.jus.br

Este documento é cópia do original assinado digitalmente por CESAR DE SOUZA LIMA. Liberado nos autos digitais por César de Souza Lima, em 15/09/2020 às 17:18. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0810455-77.2020.8.12.0002 e o código 1269B42.



**Estado de Mato Grosso do Sul**
Poder Judiciário
**Dourados**
**5ª Vara Cível**

*DISSOLUÇÃO IRREGULAR DA EMPRESA NÃO SE MOSTRAM SUFICIENTES PARA TANTO – CONDENAÇÃO POR LITIGÂNCIA DE MÁ-FÉ DOS REQUERENTES – IMPOSSIBILIDADE – RECURSO CONHECIDO E PARCIALMENTE PROVIDO.* **Para a aplicação da desconsideração da personalidade jurídica com base no artigo 50 do Código Civil, exige-se, além da prova de insolvência da pessoa jurídica, a comprovação do desvio de finalidade ou da confusão patrimonial, o que não ocorreu na hipótese.** *Não restou caracterizada hipótese de condenação por litigância de má-fé, nos termos do artigo 80 do CPC/2015, uma vez que a parte requerente do pedido, apenas se utilizaram de seu direito constitucional de ação.* " Destaquei (TJMS, Apelação Cível n.º 1413116-88.2017.8.12.0000, 1.ª Câmara Cível, relator Juiz José Eduardo Neder Meneghelli, julgado em 2.7.2019).

O primeiro ponto é, indubitavelmente a falência das requerentes, portanto, insolventes, conforme se verifica no processo principal de falência.

A questão, oscila na prova da utilização da empresa, com desvio de finalidade, tanto pelos sócios escriturais (aqueles que constam nos contratos das empresa) como os sócios ocultos, que a utilizaram em benefício próprio, inclusive com outras pessoas jurídicas do grupo familiar. Assim como no relatório, os fatos serão expostos por capítulos:

### I) Aquisição e locação do jato privado (aeronave Cessna):

O primeiro fato que veio demonstrado é a aquisição da aeronave Cessna Aircraft, modelo 560XL, no valor de US$ 6.400.000,00 (jato executivo). A empresa "Agropecuária JB Ltda EPP" tinha em seu quadro societário os requeridos José Carlos Costa Marques Bumlai, Mauricio de Barros Bumlai, Fernando de Barros Bumlai, Guilherme de Barros Costa Marques Bumlai, Cristiane de Barros Costa Marques Bumlai Pagnoncelli, até 17 de abril de 2013 (pouco antes da recuperação judicial das requerentes), conforme se verifica na quinta alteração contratual:

**6**

Mod. 990039563 - Endereço: Av. Presidente Vargas, nº 210, prédio anexo, Centro - CEP 79804-030, Fone: (67) 3902-1732, Dourados-MS - E-mail: dou-5vciv@tjms.jus.br

Este documento é cópia do original assinado digitalmente por CESAR DE SOUZA LIMA. Liberado nos autos digitais por César de Souza Lima, em 15/09/2020 às 17:18. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0810455-77.2020.8.12.0002 e o código 1269B42.



**Estado de Mato Grosso do Sul**
Poder Judiciário
**Dourados**
**5ª Vara Cível**

## 5ª ALTERAÇÃO DO CONTRATO SOCIAL



Pelo presente instrumento particular, as partes,

**1-) JOSÉ CARLOS COSTA MARQUES BUMLAI**, brasileiro, engenheiro civil, viúvo, portador do RG nº 200.974 SSP – MS e inscrito no Cadastro de Pessoas Físicas do Ministério da Fazenda ("CPF/MF") sob o nº 219.220.128-15, residente e domiciliado na Cidade de Campo Grande, Estado do Mato Grosso do Sul, na Rua Doutor Zerbini, nº 890, Chácara Cachoeira II, CEP 79.040-040 ("JOSÉ CARLOS");

**2-) MAURÍCIO DE BARROS BUMLAI**, brasileiro, casado, economista, portador do RG nº 27.311.898-5 SSP/SP e inscrito no CPF/MF sob o nº 132.012.318-00, residente e domiciliado na Cidade de Campo Grande, Estado do Mato Grosso do Sul, na Rua Doutor Zerbini, nº 890, Chácara Cachoeira II, CEP 79.040-040 ("MAURÍCIO");

**3-) FERNANDO DE BARROS BUMLAI**, brasileiro, casado, veterinário, portador da Cédula de Identidade RG nº 000272974 SSP-MS e inscrito no CPF/MF sob o nº 780.188.541-49, residente e domiciliado na Cidade de Campo Grande, Estado do Mato Grosso do Sul, na Rua Doutor Zerbini, nº 890, Chácara Cachoeira II, CEP 79.040-040 ("FERNANDO");

**4-) GUILHERME DE BARROS COSTA MARQUES BUMLAI**, brasileiro, casado, advogado, portador da Cédula de Identidade RG 811555 SSP-MS e inscrito no CPF/MF sob o nº 843.415.131-68, residente e domiciliado na Cidade de Campo Grande, Estado do Mato Grosso do Sul, na Rua Doutor Zerbini, nº 890, Chácara Cachoeira II, CEP 79.040-040 ("GUILHERME"); e

**5-) CRISTIANE DE BARROS COSTA MARQUES BUMLAI PAGNONCELLI**, brasileira, casada, administradora de empresas, portadora da Cédula de Identidade RG nº 000803762 SSP-MS e inscrita no CPF/MF sob o nº 692.806.731-49, residente e domiciliada Cidade de Campo Grande, Estado do Mato Grosso do Sul, na Rua Doutor Zerbini, nº 890, Chácara Cachoeira II, CEP 79.040-040 ("CRISTIANE");

Na quinta alteração contratual, retiram-se da sociedade, com capital social de R$ 8.982.330,00, José Carlos Costa Marques Bumlai, Maurício de Barros Bumlai e Guilherme de Barros Costa Marques Bumlai, conforme se verifica às f. 195-203. Em 5.9.2013, pouco menos de 4 meses, os dois sócios remanescentes decidiram pela aquisição da aeronave Cessna (f. 204-5). Após a aquisição da aeronave nos Estados Unidos da América, em 1.4.2014, a, agora falida, São Fernando Açúcar e Álcool Ltda firma com a Agropecuária JB Ltda EPP um contrato de locação da aeronave Cessna, com pagamento de aluguel mensal de U$ 130.000,00 (cento e trinta mil dólares) e manutenção, consoante contrato de f. 223-31. Apenas para visualização serão reproduzidas as

**7**

Este documento é cópia do original assinado digitalmente por CESAR DE SOUZA LIMA. Liberado nos autos digitais por César de Souza Lima, em 15/09/2020 às 17:18. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0810455-77.2020.8.12.0002 e o código 1269B42.



**Estado de Mato Grosso do Sul**
Poder Judiciário
**Dourados**
**5ª Vara Cível**

imagens das duas cláusulas que interessa no contrato em apreço:

CLÁUSULA PRIMEIRA - DO OBJETO DO CONTRATO

– Constitui objeto do presente instrumento a locação pela **LOCADORA** à **LOCATÁRIA** da aeronave Cessna, modelo 560 XL, número de série 560-6046, com motores Pratt & Whitney Canada, modelo PW 545 C, número de série PCE-DF 0091 e PCE-DF 0092 de propriedade da **LOCADORA**.

(f. 224).



SÃO FERNANDO
AÇÚCAR E ÁLCOOL
4.1 - A **LOCATÁRIA** pagará à **LOCADORA**, a título de locação, o valor de U$ 130.000,00 (cento e trinta mil dólares) por 30 (trinta) horas/mês, além de arcar com a manutenção da aeronave, que será apresentada em descritivo separado pela **LOCADORA**, contendo eventuais peças trocadas e os serviços realizados.

CLÁUSULA QUINTA – DO PAGAMENTO

5.1 – A cobrança será feita pela **LOCADORA** mediante a respectiva emissão dos documentos de cobrança, os quais deverão ser encaminhados ao endereço da **LOCATÁRIA** constante do preâmbulo do presente contrato.

5.2 - A **LOCADORA** entregará à **LOCATÁRIA,** com prazo mínimo de 15 (quinze dias) de antecedência ao vencimento, nota fiscal referente ao pagamento da locação, para que, mediante procedimentos fiscais, possa a **LOCATÁRIA** efetuar o pagamento no tempo aprazado.

5.3 - O pagamento será efetuado até o 15º (décimo quinto) dia útil do mês subseqüente ao mês de envio da nota Fiscal, mediante depósito em conta corrente a ser informada pela **LOCADORA**.

(f. 226).

A prova do pagamento da manutenção da aeronave e aluguel está às f. 233-6, com gastos, em quase dois anos de R$ 6.538.639,94, com imagem da última parte do demonstrativos das notas pagas (f. 236):

**8**

Este documento é cópia do original assinado digitalmente por CESAR DE SOUZA LIMA. Liberado nos autos digitais por César de Souza Lima, em 15/09/2020 às 17:18. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0810455-77.2020.8.12.0002 e o código 1269B42.



**Estado de Mato Grosso do Sul**
Poder Judiciário
**Dourados**
**5ª Vara Cível**

| 001 | 101 | ND | 3.355 | AGRO | 10022016 | 20/09/2016 | R$ | 17.571,97 | 10/02/2016 |
| 001 | 101 | NF | 3.355 | AGRO | 042016 | 20/09/2016 | R$ | 3.558,34 | 10/04/2016 |
| 001 | 102 | DP | 3.355 | AGRO | 24032015 | 20/09/2016 | R$ | 6.000,00 | 24/03/2015 |
| 001 | 102 | DP | 3.355 | AGRO | 22072015 | 20/09/2016 | R$ | 7.511,61 | 22/07/2015 |
| 001 | 102 | DP | 3.355 | AGRO | 22062015 | 20/09/2016 | R$ | 7.511,61 | 22/06/2015 |
| 001 | 102 | JF | 3.355 | AGRO | 22052015 | 20/09/2016 | R$ | 1.919,61 | 22/05/2015 |
| 001 | 102 | DP | 3.355 | AGRO | 22052015 | 20/09/2016 | R$ | 7.511,61 | 22/05/2015 |
| 001 | 102 | DP | 3.355 | AGRO | 20032015 | 20/09/2016 | R$ | 6.000,00 | 20/03/2015 |
| 001 | 102 | DP | 3.355 | AGRO | 20032015 | 20/09/2016 | R$ | 6.000,00 | 20/03/2015 |
| 001 | 102 | DP | 3.355 | AGRO | 11022015 | 20/09/2016 | R$ | 15.505,39 | 22/05/2015 |
| 001 | 102 | DP | 3.355 | AGRO | 10022015 | 20/09/2016 | R$ | 54.299,88 | 10/02/2015 |
| 001 | 102 | JF | 3.355 | AGRO | 20092016 | 20/09/2016 | R$ | 62.501,28 | 20/09/2016 |
| | | | **TOTAL:** | | | | **R$** | **6.538.639,94** | |

Já o contrato de compra da aeronave, traduzido ao português, está às f. 260-7, novamente com apenas parte de imagem para visualização:

**CONTRATO DE VENDA DE AERONAVE**

**DATA:** 28 de outubro de 2013.

**CESSNA FINANCE EXPORT CORPORATION**, uma corporação do Delaware, com sede social em Two Cessna Boulevard, Suite 100, Wichita, Kansas 67215, Estados Unidos da América (doravante referida como "Vendedora"); e

**AGROPECUÁRIA JB LTDA EPP.**, uma Empresa Brasileira registrada no Ministério da Fazenda sob o CNPJ/MF no. 11.407.813/0001-17, com sede social na Rua Dr. Zerbini, nº 850, sala 11, Chácara Cachoeira, na cidade de Campo Grande, no Estado do Mato Grosso do Sul, ZEP 79040-040, Brasil (doravante referida como "Compradora");

**PREÂMBULO:-**

A. A Vendedora é a proprietária de, ou de outro modo, é autorizada a vender uma aeronave (a "Aeronave") descrita como:

| | |
| --- | --- |
| Fabricante: | Cessna. |
| Modelo: | 560XL. |
| Nº Serial: | 560-6046. |
| Nº de Reg.: | PR-RTS. |
| Fabricante e Modelo do Motor: | Pratt & Whitney Canada PW545C. |
| N/S LH Motor: | PCE-DF0091. |
| N/S RH Motor: | PCE-DF0092. |

B. A Vendedora deseja vender a Aeronave à Compradora e a Compradora deseja comprar a Aeronave de acordo com os termos deste Contrato de Venda de Aeronave ("Contrato").

C. A Aeronave é atualmente sujeita a um arrendamento registrado no Registro Aeronáutico Brasileiro ("RAB"), tal arrendamento que será rescindido antes da venda da Aeronave de acordo com este Contrato.

Já o contrato de financiamento está às f. 351-6 (Anexo 14).

**9**

Este documento é cópia do original assinado digitalmente por CÉSAR DE SOUZA LIMA. Liberado nos autos digitais por César de Souza Lima, em 15/09/2020 às 17:18. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0810455-77.2020.8.12.0002 e o código 1269B42.

Mod. 990039563 - Endereço: Av. Presidente Vargas, nº 210, prédio anexo, Centro - CEP 79804-030, Fone: (67) 3902-1732, Dourados-MS - E-mail: dou-5vciv@tjms.jus.br



**Estado de Mato Grosso do Sul**
Poder Judiciário
**Dourados**
**5ª Vara Cível**

## STRUCTURE

| | |
|---|---|
| Transaction Type: | Chattel Mortgage |
| Term/Amort: | 60 months / 60 months |
| Interest Rate: | 8.50% (Fixed) |
| Fee: | 1.50% structuring fee ($ 96,000.00) |
| ROE: | 15.20% |
| Monthly Payment Amount: | $ 131,305.80 |
| Balloon Amount: | $0 (0% of Equipment Cost) |
| Accrual Status: | Accruing |
| Pre-pay Premium: | None |

(f. 352).

Este é o primeiro ponto da utilização da empresa São Fernando Açúcar e Álcool Ltda para atender interesses dos possíveis sócios ocultos Fernando de Barros Bumlai e Cristiane Barros Costa Marques Bumlai e demais integrantes da família.

**II) Saque de R$ 1.500.000,00 por José Carlos da Costa Marques Bumlai:**

A utilização da pessoa jurídica São Fernando Açúcar e Álcool Ltda pelo suposto sócio oculto José Carlos da Costa Marques Bumlai veio evidenciada pelos demonstrativos do COAF em que supostos contratos com as pessoas jurídicas B9 Logística Eireli e MB Logística Eireli, dos sócios Fernando de Barros Bumlai e Cristiane Barbosa Dodero Bumlai (esposa de Maurício Bumlai) emitiram notas fiscais por serviços não prestados à São Fernando Açúcar e Álcool Ltda, que emitia cheques às empresas que os endossavam a José Carlos da Costa Marques Bumlai que os sacavam em espécie na Agência 2936 do Banco do Brasil em Campo Grande-MS. Às f. 358-61 constam as retiradas em espécie levadas a termo por este suposto sócio oculto, apenas uma das imagens como exemplo (f. 361):

**10**

Este documento é cópia do original assinado digitalmente por CESAR DE SOUZA LIMA. Liberado nos autos digitais por César de Souza Lima, em 15/09/2020 às 17:18. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0810455-77.2020.8.12.0002 e o código 1269B42.



**Estado de Mato Grosso do Sul**
Poder Judiciário
**Dourados**
**5ª Vara Cível**

| 1 - JOSE CARLOS COSTA MARQUES BUMLAI | | | | | |
|---|---|---|---|---|---|

| Relacionados | | CPF/CNPJ | | Tipo do Envolvimento | |
|---|---|---|---|---|---|
| SAO FERNANDO ACUCAR E ALCOOL LTDA | | 05.894.060/0001-19 | | Responsável | |
| SAO FERNANDO ACUCAR E ALCOOL LTDA | | 05.894.060/0001-19 | | Titular | |
| JOSE CARLOS COSTA MARQUES BUMLAI | | 219.220.128-15 | | Sacador | |

| Instituição | Local | Agência - Sufixo CNPJ | Conta | Data | Valor em R$ |
|---|---|---|---|---|---|
| Banco do Brasil S.A. | CAMPO GRANDE-MS | GUAICURUS - 2268 | 9999981 | 14/5/2013 | 100.000,00 |

| Informações Adicionais: |
|---|

**Ocorrências:**
Saque em espécie de valor igual ou superior a R$ 100.000,00 (cem mil reais). Banco Central do Brasil - Circular 3.461/09, art. 12 - II

José Carlos Costa Marques Bumlai, por estes documentos e beneficiou diretamente da falida São Fernando Açúcar e Álcool Ltda, a demonstrar gerência direta na empresa e utilização de outras pessoas jurídicas como sócios seus demais familiares, B9 Logística Eiteli e MB Logística Eireli.

**III) Pagamento de R$ 2.000.000,00 a Legend Engenheiros Associados Ltda, empresa pertencente a Adir Assad (denominado doleiro) por ordem de José Carlos da Costa Marques Bumlai** :

Este fato, qual seja, do pagamento de R$ 2.000.000,00 (dois milhões de reais) à empresa Legend Engenheiros Associados, empresa de Assir Assad. Esta suposta transação comercial veio descrita em parte de decisão do Processo 5056156-95.2015.4.04.7000, de lavara do juiz Sérgio Fernando Moro, às f. 369-76:

**11**

Este documento é cópia do original assinado digitalmente por CESAR DE SOUZA LIMA. Liberado nos autos digitais por César de Souza Lima, em 15/09/2020 às 17:18. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0810455-77.2020.8.12.0002 e o código 1269B42.



**Estado de Mato Grosso do Sul**
Poder Judiciário
Dourados
**5ª Vara Cível**

Constatado ainda, por quebra de sigilo bancário anteriormente decretada por este Juízo na Operação Lavajato das empresas do Grupo de Adir Assad, que a empresa São Fernando Açúcar e Álcool, dirigida pelo acusado José Carlos bumlai, realizou duas transferências, cada uma de um milhão de reais, em 27/07/2011 e em 28/08/2011, para a empresa Legend Engenheiros Associados Ltda. (fl. 29 da representação, evento 1)**.** Adir Assad foi condenado na ação penal 5012331-04.2015.4.04.7000 por crime de lavagem de dinheiro. Em síntese, utilizando empresas de fachada, entre elas a Legend Engenheiros, teria lavado recursos criminosos advindos do esquema criminoso da Petrobrás. Utilizou a referida empresa para repasses fraudulentos a dirigentes da Petrobrás. Considerando a natureza das atividades de Adir Assad e da Legend, há prova, em cognição sumária, de que também esses repasses da São Fernando foram fraudulentos. Sobre esse fato, transferência de pelo menos dois milhões de reais a profissional da lavagem de dinheiro, o acusado, apesar de assumir a responsabilidade sobre as operações, não apresentou uma explicação convincente a respeito do propósito da transação ("que, em relação aos pagamentos da Usina São Fernando e Álcool para a empresa de Adir Assad, esclarece que seus filhos não administravam, à época, a parte financeira da empresa"; "soube posteriormente através de um email recebido do departamento financeiro da empresa, que os valores tinham sido transferidos de alguma empresa de Natalino Bertin para São Fernando e Alcool indevidamente"; "haveria assim a necessidade de se encaminhar os valores à Legend, tendo sido emitidas notas fiscais para amparar a saída dos valores da empresa"). Caso se tratasse de mero estorno de pagamento indevido, a operação deveria ter sido procedida contabilmente dessa forma, sem que exista necessidade de recorrer ao serviço de profissional da lavagem para tanto. Observo ainda que o mesmo fato foi objeto de auto de infração pela Receita Federal (evento 1, anexo123, da ação penal 5061578-51.2015.4.04.7000), sendo ali revelado que as transferências somariam três milhões de reais e não apenas dois. Na ocasião, a São Fernando Açúcar e Álcool, empresa dirigida pelo acusado, apresentou, em sua defesa, explicações fraudulentas à Receita a respeito das operações ("À Legend Engenheiros Associados Ltda. coube exclusivamente locar máquinas e equipamentos para a contribuinte..." - fl. 8 do anexo123).

**IV) São Fernando  Açúcar e Álcool  Ltda (falida)  incorporou ao seu patrimônio  a TSF Logística  Ltda, conhecida  como Transportadora São Fernando,  cujos sócios eram Cristiane Bumlai e Fernando  Bumlai, que declararam  dívida  de R$  18.000.000,00   de José Carlos Costa Marques Bumlai  que não foi quitada:**

A Transportadora São Fernando (TSF Logística Ltda – CNPJ 00.199.249/0001-78), sócios Cristiane Bumlai e Fernando Bumlai, declarou uma dívida de José Carlos Costa Marques Bunlai de R$ 18.000.000,00 (dezoito milhões de reais), conforme consta nos autos n.º 5056156-95.2015.4.04.7000, na declaração de imposto de rendas de José Carlos da Costa Marques Bumlai, f. 378-412, especificamente às f. 389:

**12**

Este documento é cópia do original assinado digitalmente por CESAR DE SOUZA LIMA. Liberado nos autos digitais por César de Souza Lima, em 15/09/2020 às 17:18. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0810455-77.2020.8.12.0002 e o código 1269B42.



**Estado de Mato Grosso do Sul**
Poder Judiciário
**Dourados**
**5ª Vara Cível**

| 11 | CDC-CREDITO PESSOAL AG,BCO BRASIL CG/MS AG 1881-3 | 224,329,37 | 109,152,23 |
| 13 | CONTRATO DE MUTUO TRANSPORTADORA SAO FERNANDO CNPJ | 18,000,000,00 | 0,00 |

Na incorporação da TSF Logística Limitada (Transportadora São Fernando), conforme documento de f. 414-25, não consta o crédito de R$ 18.000.000,00 que a empresa tinha com o patriarca da família, apenas o valor contábil do patrimônio de R$ 7.219.000,00 (sete milhões e duzentos e dezenove mil reais) – f. 425:

III - ACERVO AVALIADO

Após os exames e verificações, concluimos que o valor contábil do Patrimônio a ser incorporado pela SFAA é de **R$ 7.219.000,00 (sete milhões duzentos e dezenove mil reais)**.

Campo Grande/MS, 01 de novembro de 2012.

Não há nos documentos da São Fernando Açúcar e Álcool Ltda o pagamento deste débito a, supostamente, beneficiar José Carlos da Costa Marques Bumlai, a demonstrar, mais uma vez a utilização da pessoa jurídica por este sócio oculto, inclusive com outras empresas do grupo familiar para tanto. Pelos menos, nesta análise superficial é o que se demonstrou pelos documentos acima apontados.

**V) Pagamento, por São Fernando Açúcar e Álcool Ltda (falida), de R$ 27.385.141,10 para o Banco do Brasil S/A e R$ 4.297.920,61 para o Banco Daycoval relativo a dívida de Immbrax Indústria e Comércio Ltda, pertencente à família Bumlai e ao grupo Bertin, sem contraprestação:**

No documento de f. 427, tem-se o pagamento de dívidas da empresa IMMBRAX pela São Fernado Açúcar e Álcool Ltda (falida):

**13**

Este documento é cópia do original assinado digitalmente por CESAR DE SOUZA LIMA. Liberado nos autos digitais por César de Souza Lima, em 15/09/2020 às 17:18. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0810455-77.2020.8.12.0002 e o código 1269B42.



**Estado de Mato Grosso do Sul**
Poder Judiciário
**Dourados**
**5ª Vara Cível**



No extrato da São Fernando Energia II Ltda (pertencente à São Fernando Açúcar e Álcool Ltda, do Banco Daycoval consta o pagamento de R$ 3.797.920,61 do débito de IMMBRAX Indústria e Comércio Ltda (f. 430):



O pagamento ao Banco do Brasil está às f. 432, conofmre imagem a seguir:

**14**

Este documento é cópia do original assinado digitalmente por CESAR DE SOUZA LIMA. Liberado nos autos digitais por César de Souza Lima, em 15/09/2020 às 17:18. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0810455-77.2020.8.12.0002 e o código 1269B42.



**Estado de Mato Grosso do Sul**
Poder Judiciário
**Dourados**
**5ª Vara Cível**

| 27/09/2012 | Empréstimo | | 1.668.980 | 145.650.73 D |
| 27/09/2012 | Empréstimo | | 1.669.981 | 481.980,05 D |
| 27/09/2012 | Empréstimo | | 1.668.981 | 155.047,16 D |
| 27/09/2012 | Empréstimo | | 1.668.982 | 46.525,40 D |
| 27/09/2013 | Empréstimo | | 1.668.983 | 5.079.954,50 D |
| 27/09/2012 | Empréstimo | | 1.668.984 | 792.450,35 D |
| 27/09/2012 | Empréstimo | | 1.668.985 | 64.509,63 D |
| 37/09/2012 | Empréstimo | | 1.668.986 | 530.487,58 D |
| 27/09/2012 | Empréstimo | | 1.668.987 | 529.000,51 D |
| 27/09/2012 | Empréstimo | | 1.668.988 | 8.985.740,15 D |
| 37/09/2012 | Empréstimo | | 1.668.989 | 44.896.131,71 D |
| 27/09/2012 | Empréstimo | | 1.668.989 | 7.850.844,57 D |
| 27/09/2012 | Empréstimo | | 1.668.990 | 32.264,81 D |
| 27/09/2012 | Câmbio | | 11.013.243 | 11.000.000,00 D |
| 27/09/2012 | Câmbio | | 11.013.243 | 1.025.003,40 D |
| 27/09/2012 | Transfer da Conta Corrent | 1.277.376.010,100 | | 27.385.141,16 D |
| 27/09/2012 | Movimento do Dia | 112.456.008.331.238 | | 206.415,00 D |

E assim sucessivamente às f. 430-7. Ora, ausente razão para os pagamentos a terceira empresa, que fazia parte do grupo familiar, com posterior perdão desta dívida com a IMMBRAX no valor de R$ 27.385.141,10 (pagamento ao Banco do Brasil) e R$ 4.297.920,61 (pagamento ao Banco Daycoval), em 31.3.203 (f. 428):

*São Fernando Açúcar e Álcool Ltda.*
*(Em recuperação judicial)*
*Demonstrações financeiras em*
*31 de março de 2013 e 31 de dezembro 2011*

**23    Outras receitas e (despesas) operacionais**

| | 31/03/2013 | 31/12/2011 |
|---|---|---|
| Incorporação da Empresa TSF Logística Limitada (nota explicativa nº 20.c) | (98.469) | - |
| Perdão de dívidas | (33.373) | (12.911) |
| Despesas indedutíveis | (16.597) | - |
| Custo na venda de imobilizado | (7.294) | 642 |
| Provisão para contingências / perdas | (5.862) | (624) |
| Seguros | - | (4.351) |
| Perdas no estoque | (1.760) | - |
| Receitas eventuais | - | 9.533 |
| Recuperação de despesas | 3.927 | - |
| Outras | ( 299) | ( 49) |
| | (159.727) | (7.760) |

Estas ações demonstram, novamente se repte, em análise superficial a utilização da pessoa jurídica por outras empresas do grupo familiar Bumlai.

**VI) Pagamento à empresa B9 Logística Eirelli (pertencente à família Bumlai) por utilização de equipamentos da São Fernando Açúcar e Álcool Ltda (falida):**

Este fato, qual seja, a locação de máquinas e veículos

**15**

Este documento é cópia do original assinado digitalmente por CESAR DE SOUZA LIMA. Liberado nos autos digitais por César de Souza Lima, em 15/09/2020 às 17:18. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0810455-77.2020.8.12.0002 e o código 1269B42.



**Estado de Mato Grosso do Sul**
Poder Judiciário
**Dourados**
**5ª Vara Cível**

agrícolas de empresa da família revelou mais uma vez a má utilização da pessoa jurídica em detrimento dos credores da massa falida e dos recursos oriundos de empréstimos bancários, inclusive do BNDES. Da Locação de 68 equipamentos, 39 eram da São Fernando Açúcar e Álcool Ltda e, mesmo assim, pagou por esta locação a outra empresa da família Bumlai, B9 Logística Eireli, o valor de R$ 100.000,00 por mês dos 39 Transbordos Modelo Teston da falida, adquiridos de Metalcana Indústria e Comércio Ltda, conforme notas fiscais de f. 528-45. Às f. 505-525 estão elencados os bens alugados, inclusive os Tranbordos que eram de propriedade da própria São Fernando (falida). Posteriormente os bens foram baixados como inservíveis (f. 623):

| NUM BEM | P.CÓD. BEM | DES_BEM_PAT | FROTA | CHASSIS | NOTA FISCAL | T_AQUIS_BEM | VAL_ORIGINAL | MOVTO_BEM | IND_ORIG_CA |
|---|---|---|---|---|---|---|---|---|---|
| 99 | | TRATOR AGRICOLA JOHN DEERE 7185J CH1BM771 | | CH1BM7185JCBH000416 | 33993 - MAURICIO | 30/12/2011 | 196.300,00 | 31/01/2016 | Inutilização |
| 100 | TRA-003600 | TRATOR AGRICOLA JOHN DEERE 7715 CH1BM771 | | CH1BM7715XPAH090669 | TSF-não há nota fiscal | 30/12/2011 | 184.000,00 | 31/01/2016 | Inutilização |
| 101 | TRA-003700 | TRATOR AGRICOLA JOHN DEERE 7715 CH1BM771 | | CH1BM7715XTAH090654 | TSF-não há nota fiscal | 30/12/2011 | 184.000,00 | 31/01/2016 | Inutilização |
| 135 | TRA-007100 | TRATOR JD CH 1BM7715XCAH090717 NF 316 AD | | 1BM7715XCAH090717 | TSF-não há nota fiscal | 01/08/2012 | 72.833,43 | 31/01/2016 | Inutilização |
| 138 | TRA-007400 | TRATOR VALTRA CH BH18S219672 NF 316 ADQU | | BH18S219672 | TSF-não há nota fiscal | 01/08/2012 | 120.000,00 | 31/01/2016 | Inutilização |
| 139 | | TRATOR JD CH 1BM7185JTBH000426 NF 316 AD | | 1BM7185JTBH000426 | 34086 - JOSE CARLOS | 01/08/2012 | 118.597,98 | 31/01/2016 | Inutilização |
| 140 | | TRATOR JD CH 1BM7185JVBH000417 NF 316 AD | | CH 1BM7185JVBH000417 | 34086 - JOSE CARLOS | 01/08/2012 | 118.597,98 | 31/01/2016 | Inutilização |
| 144 | TRA-008000 | TRATOR JD 7715 CH 1BM715XCAH090594 NF 31 | | 1BM7715XCAH090594 | TSF-não há nota fiscal | 01/08/2012 | 72.833,43 | 31/01/2016 | Inutilização |
| 145 | TRA-008100 | TRATOR JD 7715 CH 1BM7715XJAH090660 NF 3 | | 1BM7715XJAH090660 | TSF-não há nota fiscal | 01/08/2012 | 72.833,43 | 31/01/2016 | Inutilização |
| 148 | | TRATOR JD CH 1BM7185JKBH000428 NF 314 AD | | CH 1BM7185KBH000428 | 34095 - GUILHERME | 01/08/2012 | 118.597,98 | 31/01/2016 | Inutilização |
| 149 | TRA-008500 | TRATOR JD CH 1BM7715XEAH090856 NF 313 ADQ | | 1BM7715XEAH090856 | TSF-não há nota fiscal | 01/08/2012 | 72.833,43 | 31/01/2016 | Inutilização |
| 351 | TRA-008700 | TRATOR JD CH 1BM7185JLBH000419 NF 313 AD | | 1BM7185JLBH000419 | TSF-não há nota fiscal | 01/08/2012 | 118.597,98 | 31/01/2016 | Inutilização |
| 153 | TRA-008900 | TRATOR AGRICOLA JD CH 1BM7715XHAH090665 | | 1BM7715XHAH090665 | TSF-não há nota fiscal | 01/08/2012 | 72.833,43 | 31/01/2016 | Inutilização |
| 155 | TRA-009200 | TRATOR AGRICOLA JD CH1BM7185VBH000420 N | | 1BM7185JVBH000420 | 33999-CRISTIANE B.B.N | 01/08/2012 | 118.597,98 | 31/01/2016 | Inutilização |
| 240 | | COLHEDORA DE CANA JD ESTERRA CH 1NW3520T | | CH 1NW3520TH80091541 | 9833 - JOSE CARLOS | 01/08/2012 | 529.900,00 | 31/01/2016 | Inutilização |
| 248 | AGR-015200 | COLHEDORA DE CANA JD CH 1NW3520TAB0091536 | | 1NW3520TAB0091536 | 9836-GUILHERME B. B. | 01/08/2012 | 529.900,00 | 31/01/2016 | Inutilização |
| 249 | AGR-015300 | COLHEDORA DE CANA 3520JD CH 1NW3520TJA00 | | CH 1NW3520TJA0090848 | TSF-não há nota fiscal | 01/08/2012 | 403.733,24 | 31/01/2016 | Inutilização |
| 250 | AGR-015400 | COLHEDORA DE CANA 3520JD CH 1NW3520TTB00 | | CH 1NW3520TTB0091544 | 9835-FERNANDO B.B. | 01/08/2012 | 529.900,00 | 31/01/2016 | Inutilização |
| 252 | AGR-015600 | COLHEDORA DE CANA 3520 JD 1NW3520TCB0091 | | CH 1NW3520TC50091543 | 9825-CRISTIANE D.B M. | 01/08/2012 | 529.900,00 | 31/01/2016 | Inutilização |
| 311 | REB-005700 | REBOQUE / TRANSBORDO S-3659 | | | TSF-não há nota fiscal | 17/04/2009 | 66.000,00 | 31/01/2016 | Inutilização |
| 1380266 | | TRANSBORDO MARCA TESTON MOD. TESTON | 5623 | CHASS.MCG22000143 | 175 | 17/05/2011 | 129.359,51 | 17/02/2017 | Inutilização |
| 1380330 | | TRANSBORDO MARCA TESTON | 5624 | CHASS.MCG22000145 | 174 | 24/05/2011 | 129.359,51 | 17/02/2017 | Inutilização |
| 1380334 | | TRANSBORDO MARCA TESTON | 5622 | CHASS.MCG22000144 | 173 | 24/05/2011 | 129.359,51 | 17/02/2017 | Inutilização |
| 1454416 | | TRANSBORDO 22.000KG TESTON | 5644 | CHASS.MCG22000161 | 565 | 02/08/2012 | 136.335,25 | 17/02/2017 | Inutilização |
| 1454520 | | TRANSBORDO 22.000KG TESTON | 5651 | CHASS.MCG22000220 | 764 | 07/08/2012 | 136.335,25 | 17/02/2017 | Inutilização |
| 1454538 | | TRANSBORDO 22.000KG TESTON | 5653 | CHASS.MCG22000164 | 593 | 17/08/2012 | 136.335,25 | 17/02/2017 | Inutilização |
| 1454541 | | TRANSBORDO 22.000KG TESTON | 5654 | CHASS.MCG22000203 | 820 | 17/08/2012 | 136.335,25 | 17/02/2017 | Inutilização |
| 1454709 | | TRANSBORDO 22.000KG TESTON | 5656 | CHASS.MCG22000202 | 819 | 26/09/2012 | 136.335,25 | 17/02/2017 | Inutilização |
| 1454710 | | TRANSBORDO 22.000KG TESTON | 5652 | CHASS.MCG22000206 | 701 | 26/09/2012 | 136.335,25 | 17/02/2017 | Inutilização |
| 1454801 | | TRANSBORDO 22.000KG TESTON | 5650 | CHASS.MCG22000209 | 763 | 29/10/2012 | 136.335,20 | 17/02/2017 | Inutilização |
| 1454802 | | TRANSBORDO 22.000KG TESTON | 5647 | CHASS.MCG22000199 | 566 | 29/10/2012 | 136.335,20 | 17/02/2017 | Inutilização |
| 1454930 | | TRANSBORDO 22.000KG TESTON | 5655 | CHASS.MCG22000227 | 1422 | 29/11/2012 | 136.335,25 | 17/02/2017 | Inutilização |
| 1454931 | | TRANSBORDO 22.000KG TESTON | 5646 | CHASS.MCG22000154 | 609 | 29/11/2012 | 136.335,25 | 17/02/2017 | Inutilização |
| 1455948 | | TRANSBORDO 22.000KG TESTON | 5653 | CHASS.MCG22000226 | 1365 | 03/01/2013 | 136.335,25 | 17/02/2017 | Inutilização |
| 1455949 | | TRANSBORDO 22.000KG TESTON | 5648 | CHASS.MCG22000215 | 610 | 03/01/2013 | 136.335,25 | 17/02/2017 | Inutilização |
| 1488331 | | TRANSBORDO 22.000KG TESTON | 5649 | CHASS.MCG22000233 | 1517 | 30/07/2013 | 136.335,25 | 17/02/2017 | Inutilização |
| 1488337 | | TRANSBORDO 22.000KG TESTON | 5662 | CHASS.MCG22000234 | 1681 | 16/09/2013 | 136.335,25 | 17/02/2017 | Inutilização |
| 1488338 | | TRANSBORDO 22.000KG TESTON | 5658 | CHASS.MCG22000232 | 1516 | 31/10/2013 | 136.335,25 | 17/02/2017 | Inutilização |
| 1488339 | | TRANSBORDO 22.000KG TESTON | 5665 | CHASS.MCG22000238 | 1824 | 31/10/2013 | 136.335,25 | 17/02/2017 | Inutilização |

Ainda não bastasse a locação, São Fernando Açúcar e Álcool Ltda e B9 Logística ainda firmam uma reconhecimento de dívida de que os Transbordos deveriam ser pagos pela São Fernando à B9 Logísitica. Veja-se, os Transbordos da própria São Fernando. Consta no contrato de confissão de dívidas (f. 625 e 627):

**16**

Este documento é cópia do original assinado digitalmente por CESAR DE SOUZA LIMA. Liberado nos autos digitais por César de Souza Lima, em 15/09/2020 às 17:18. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0810455-77.2020.8.12.0002 e o código 1269B42.



**Estado de Mato Grosso do Sul**
Poder Judiciário
**Dourados**
**5ª Vara Cível**

**SÃO FERNANDO AÇUCAR E ALCOOL LTDA** (em recuperação judicial), pessoa jurídica de direito privado, inscrita no CNPJ so o n. 05.894.060/0002-08, com filial à Rodovia MS 379 (sentido laguna carapã), bloco B, S/N, Zona Rural, Cep 79.804-970, na cidade de Dourados, Estado do Mato Grosso do Sul, neste ato representada por seus Diretores conforme determina a última alteração contratual, devidamente registrada na Jucesp sob o n. 2.081/155 e na Jucems sob o n. 54404944, doravante denominada SÃO FERNANDO, e de outro lado;

**B9 LOGISTICA – EIRELI**, empresa individual de responsabilidade limitada, inscrita no CNPJ sob o n. 09.248.125/0001-00, com sede à Rua Dr Zerbini n.850, sala 10, CEP 79.040-040, Bairro Chácara Cachoeira, Campo Grande, MS, neste ato representada por seu diretor conforme determina o Contrato Social Consolidado devidamente registrado na JUCEMS sob o n.54600006811, doravante denominada B9 Logística.

CONSIDERANDO que a empresa SÃO FERNANDO possui um contrato de locação firmado com a B9 LOGISTICA em 01/07/2016, cujo objeto é a locação de equipamentos de propriedade da B9 LOGISTICA.

CONSIDERANDO que referido contrato prevê a responsabilidade da SÃO FERNANDO pela manutenção e conservação dos equipamentos locados.

CONSIDERANDO que alguns equipamentos se deterioraram por mau uso e alguns sofreram sucateamento de peças por única e exclusiva culpa da SÃO FERNANDO, levando os mesmos a serem considerados como sucata.

Novamente conduta da grupo familiar Bumlai que causou prejuízo efetivo à massa falida.

**17**

Este documento é cópia do original assinado digitalmente por CESAR DE SOUZA LIMA. Liberado nos autos digitais por César de Souza Lima, em 15/09/2020 às 17:18. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0810455-77.2020.8.12.0002 e o código 1269B42.



**Estado de Mato Grosso do Sul**
Poder Judiciário
**Dourados**
**5ª Vara Cível**

| ITEM | FROTA | EQUIPAMENTO DECRIÇÃO | MODELO | STAUS | N ° CHASSIS |
|---|---|---|---|---|---|
| 1 | 5624 | TRANSBORDO | TESTON PT 22000 | RODANDO | MCG 22000145 |
| 2 | 5647 | TRANSBORDO | TESTON MCG 22000 | RODANDO | MCG 22000210 |
| 3 | 5654 | TRANSBORDO | TESTON MCG 22000 | RODANDO | MCG 22000203 |
| 4 | 5650 | TRANSBORDO | TESTON MCG 22000 | RODANDO | MCG 22000209 |
| 5 | 5656 | TRANSBORDO | TESTON MCG 22000 | RODANDO | MCG 22000202 |
| 6 | 5658 | TRANSBORDO | TESTON MCG 22000 | RODANDO | MCG 22000232 |
| 7 | 5652 | TRANSBORDO | TESTON MCG 22000 | RODANDO | MCG 22000206 |
| 8 | 5655 | TRANSBORDO | TESTON MCG 22000 | RODANDO | MCG 22000227 |
| 9 | 5651 | TRANSBORDO | TESTON MCG 22000 | RODANDO | MCG 22000220 |
| 10 | 5643 | TRANSBORDO | TESTON MCG 22000 | RODANDO | MCG 2200164 |
| 11 | 5662 | TRANSBORDO | TESTON MCG 22000 | RODANDO | MCG 2200234 |
| 12 | 5644 | TRANSBORDO | TESTON MCG 22000 | RODANDO | MCG 22000161 |
| 13 | 5622 | TRANSBORDO | TESTON PT 22000 | RODANDO | MCG 22000144 |
| 14 | 5667 | TRANSBORDO | TESTON MCG 22000 | RODANDO | MCG 22000208 |
| 15 | 5653 | TRANSBORDO | TESTON MCG 22000 | RODANDO | MCG 22000226 |
| 16 | 5646 | TRANSBORDO | TESTON MCG 22000 | RODANDO | MCG 22000154 |
| 17 | 5660 | TRANSBORDO | TESTON MCG 22000 | RODANDO | MCG 22000233 |
| 18 | 5665 | TRANSBORDO | TESTON MCG 22000 | RODANDO | MCG 22000238 |
| 19 | 5648 | TRANSBORDO | TESTON MCG 22000 | RODANDO | MCG 22000215 |
| 20 | 5623 | TRANSBORDO | TESTON PT 22000 | RODANDO | MCG 22000143 |

Parágrafo Primeiro – O preço ajustado para cada Transbordo após pesquisa de mercado realizada, é de R$61.000,00 (Sessenta e um mil reais), totalizando R$1.220.000,00 (Um milhão duzentos e vinte mil reais).

**VII) Contrato de parceria agrícola entre José Carlos da Costa Marques Bumlai e São Fernando Açúcar e Álcool Ltda:**

Em 5.11.2007, José Carlos da Costa Marques Bumlai celebrou contrato de parceria agrícola com a São Fernando Açúcar e Álcool Ltda para o plantio, cultivo e colheita de cana de açúcar na Fazenda São Marcos, em que os custos eram de responsabilidade da massa falida autora e apenas 10% dos lucros seriam repassados para José Carlos da Costa Marques Bumlai. Posteriormente, estabeleceu-se um valor fixo de participação agrícola a ser pago ao primeiro requerido. Entretanto, toda a cana de açúcar produzida na Fazenda São Marcos foi vendida por José Carlos da Costa Marques Bumlai para a própria São Fernando Açúcar e Álcool Ltda, em outras palavras, a mencionada massa falida comprou uma produção que era sua, certo que arcou

**18**

Este documento é cópia do original assinado digitalmente por CESAR DE SOUZA LIMA. Liberado nos autos digitais por César de Souza Lima, em 15/09/2020 às 17:18. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0810455-77.2020.8.12.0002 e o código 1269B42.

fls. 1058



**Estado de Mato Grosso do Sul**
Poder Judiciário
**Dourados**
**5ª Vara Cível**

com os custos do plantio, cultivo e colheita e ainda por um preço superfaturado, pois pagou entre R$ 80,96 e R$ 93,60 por tonelada do produto, enquanto a média de mercado, à época, era de R$ 69,89 a R$ 75,11.

O primeiro contrato de parceria agrícola entre São Fernando (falida) e José Carlos Costa Marques Bumlai data de 5.11.2007 (f. 675-83), com as seguintes principais obrigações estavam ana cláusula 6ª, pagamento de 90% da área produzida à São Fernando e 10% a José Carlos. Todas as despesas com plantio e cultivo eram obrigações da São Fernando. Em 5.12.2007, um mês após a celebração do primeiro contrato houve um aditivo, com alteração da área plantada para 4.060 ha, com alteração do contrato para safra de 2014 e em valor certo (f. 687- 91. Neste tópico um fato interessante, quem assina como procurador de José Carlos Costa Marques Bumlai é Maurício de Barros Bumlai, sócio da São Fernando:



Campo Grande/MS, 20 de dezembro de 2010.

Parceiro-Proprietário:

**JOSÉ CARLOS COSTA MARQUES BUMLAI**

p.p. Maurício de Barros Bumlai

Parceira-Agricultora:

**SÃO FERNANDO AÇÚCAR E ÁLCOOL LTDA**

Guilherme de B. C. M. Bumlai                    Natalino Bertin

Diretor Operacional                                        Diretor Presidente

Portanto, temos que todo o plantio de cana de açúcar na Fazenda São Marcos (local da parceria) foi levado a termo por São Fernando Açúcar e Álcool Ltda. Já em maio de 2013, ainda na vigência do contrato de parceria (fim em 2014), José Carlos Costa Marques

**19**

Este documento é cópia do original assinado digitalmente por CESAR DE SOUZA LIMA. Liberado nos autos digitais por César de Souza Lima, em 15/09/2020 às 17:18. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0810455-77.2020.8.12.0002 e o código 1269B42.



**Estado de Mato Grosso do Sul**
Poder Judiciário
**Dourados**
**5ª Vara Cível**

Bumlai passa a vender a produção da Fazenda São Marcos, o plantio da São Feranndo, conforme notas fiscais de f. 720-22. Assim, deixou-se de observar o contrato de parceria sem a respectiva indenização à São Fernando Açúcar e Álcool do plantio e cultivo da lavoura na área de parceria. Algumas das notas fiscais passaram a ser emitidas por Fernando de Barros Bumlai (f. 751) e Cristiane de Barros Costa Marques Bumlai Pagnocelli (f. 753). Mias uma vez a evidenciar o Grupo da Família Bumlai. As notas estão acostadas de f. 720 à 847.

A prova da alteração do contrato de parceria, com prejuízo à São Fernando, está evidenciada no contrato de compra e venda de cana de açúcar levado a termo em 10.5.2013 (f. 849-55). Neste temos a cláusula primeira:

**I - OBJETO**

**CLÁUSULA PRIMEIRA -** Pelo presente instrumento particular e na melhor forma de direito, o **VENDEDOR** vende à **COMPRADORA**, as safras do ciclo agrícola de 2013/2014 á 2018/2019 de cana-de-açúcar, que será produzida no Fundo Agrícola descrito no "*QUADRO I*" abaixo enunciado, em área aproximada de 4.000/ha (quatro mil hectares) localizada na propriedade descrita no "*QUADRO I*".

**PARÁGRAFO PRIMEIRO –** As **PARTES** estabelecem que o objeto de compra e venda descrito na Cláusula Primeira é sobre a totalidade de cana-de-açúcar produzida no fundo agrícola descrito no "*QUADRO I*" tocante as safras enunciadas. Podendo o **VENDEDOR** utilizar-se de parte do canavial como muda de cana para plantio exclusivo na Fazenda São Marcos.

Sempre bom lembrar que nesta data, ainda vigente o contrato de parceria, pois este contrato foi firmado em 10.5.2013. No demonstrativo de plantio e cultivo de cana de açúcar da São Fernando, temos a Fazenda São Marcos, com a expressiva área de plantio, reforma e cargas, com gastos da São Fernando Açúcar e Álcool Ltda na área e depois, em prejuízo próprio comprar a a cana de açúcar que por si fora plantada e cultivada. Veja o gráfico do período de 1.1.2013 à 8.6.2017, principalmente quanto à Fazenda São Marcos:

**20**

Mod. 990039563 - Endereço: Av. Presidente Vargas, nº 210, prédio anexo, Centro - CEP 79804-030, Fone: (67) 3902-1732, Dourados-MS - E-mail: dou-5vciv@tjms.jus.br

Este documento é cópia do original assinado digitalmente por CESAR DE SOUZA LIMA. Liberado nos autos digitais por César de Souza Lima, em 15/09/2020 às 17:18. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0810455-77.2020.8.12.0002 e o código 1269B42.



**Estado de Mato Grosso do Sul**
Poder Judiciário
**Dourados**
**5ª Vara Cível**

| São Fernando Açúcar e Alcool | Acompanhamento de Plantio | | | | | | 23/08/20 | |
| ATRC_620 | Fazenda | | | | | | | |

Período : 01/01/2013 a 08/06/2017
Visão: Mudas
*Dados recuperados dos Apontamentos de Plantio*

| Fazenda | Área | | | | | Peso Médio | TCH Muda | Toneladas |
| | Reforma | Plantada | Talhão | Cargas | Cargas/Ha | | | |
|---|---|---|---|---|---|---|---|---|
| 2001 Fazenda Rancharia | 367,14 | 172,79 | 367,14 | 520 | 3,009 | 7,71 | 23,190 | 4.007,034 |
| 2002 Fazenda Barreiros | 375,37 | 360,89 | 462,37 | 481 | 1,334 | 9,71 | 12,949 | 4.673,340 |
| 2004 Fazenda Caçula | 732,71 | 412,82 | 730,90 | 723 | 1,751 | 8,65 | 15,142 | 6.251,000 |
| 2008 Fazenda Estancia | 706,65 | 629,62 | 704,75 | 1.296 | 2,058 | 8,58 | 17,657 | 11.117,200 |
| 2009 Fazenda Ipe Florido | 214,61 | 149,59 | 189,66 | 227 | 1,519 | 8,40 | 12,759 | 1.908,600 |
| 2042 Fazenda Grulu | 113,07 | 72,20 | 119,60 | 118 | 1,634 | 8,86 | 14,483 | 1.045,640 |
| 2083 FAZ RECREIO | 79,51 | 56,70 | 77,44 | 80 | 1,411 | 7,69 | 10,848 | 615,080 |
| 2118 Fazenda Dourados - DP II. | 122,79 | 122,79 | 122,79 | 244 | 1,987 | 9,85 | 19,573 | 2.403,400 |
| 2121 Fazenda Sao Francisco | 141,21 | 101,40 | 157,32 | 144 | 1,420 | 9,54 | 13,540 | 1.372,910 |
| 2122 Fazenda Flor de Maio | 160,84 | 137,83 | 137,83 | 151 | 1,099 | 11,00 | 12,087 | 1.665,950 |
| 2158 Fazenda Recreio | 57,56 | 61,70 | 70,82 | 155 | 2,512 | 6,11 | 15,348 | 947,000 |
| 2160 FAZ SOSSEGO | 155,61 | 155,61 | 155,61 | 196 | 1,260 | 9,53 | 12,007 | 1.868,380 |
| 2164 Fazenda Paraiso | 558,99 | 504,99 | 677,57 | 1.165 | 2,307 | 7,84 | 18,075 | 9.127,715 |
| 2165 Fazenda Dois Irmãos | 682,65 | 714,04 | 51,04 | 1.281 | 1,794 | 8,67 | 15,560 | 11.110,332 |
| 2166 Fazenda Santa Lucia | 242,32 | 234,85 | 242,32 | 433 | 1,844 | 8,04 | 14,831 | 3.483,120 |
| 2167 Fazenda Santa Lucia II | 66,42 | 34,50 | 66,42 | 86 | 2,495 | 7,00 | 17,449 | 602,000 |
| 2168 Fazenda Santo Antonio | 168,02 | 116,80 | 167,32 | 288 | 2,466 | 8,87 | 21,880 | 2.555,630 |
| 2173 Fazenda Boa Sorte (ESH) | 883,08 | 861,80 | 802,25 | 1.669 | 1,937 | 7,28 | 14,090 | 12.142,590 |
| 2174 Fazenda Santa Ana (ESH) | 814,94 | 626,82 | 686,85 | 1.118 | 1,784 | 9,71 | 17,310 | 10.850,240 |
| 2175 Fazenda Santa Maria (Maisa) | 293,33 | 510,20 | 524,24 | 918 | 1,799 | 10,26 | 18,468 | 9.422,330 |
| 2184 Fazenda Nova Lagos Grande | 469,60 | 457,15 | 439,46 | 962 | 2,104 | 7,87 | 16,555 | 7.567,935 |
| 2185 Fazenda Santa Ana II | 217,09 | 214,18 | 217,09 | 354 | 1,653 | 10,03 | 16,572 | 3.549,380 |
| 3001 Fazenda Sao Marcos | 1.809,35 | 1.819,20 | 2.237,00 | 3.800 | 2,092 | 8,84 | 18,498 | 33.652,358 |
| 5000 Fazenda Sorriso Isies | 845,16 | 833,32 | 846,49 | 1.546 | 1,855 | 8,14 | 15,096 | 12.579,680 |
| 5025 Fazenda Figueira II | 398,59 | 398,59 | 372,33 | 825 | 2,070 | 9,83 | 20,347 | 8.109,940 |
| 5028 Fazenda Jacutinga | 826,82 | 739,59 | 816,75 | 1.522 | 2,058 | 9,53 | 39,601 | 14.496,470 |
| 5032 Fazenda Nossa Senhora Aparecida | 517,18 | 381,68 | 504,23 | 793 | 2,078 | 8,38 | 17,409 | 6.644,480 |
| 5051 Fazenda São José Destorro | 366,08 | 368,03 | 368,10 | 747 | 2,030 | 9,21 | 18,702 | 6.882,970 |
| 5058 Fazenda Nova Esperança | 105,44 | 25,78 | 105,44 | 64 | 2,483 | 7,93 | 19,637 | 507,520 |
| 5065 Fazenda Três Irmãs | 152,40 | 89,37 | 134,70 | 211 | 2,361 | 8,83 | 20,847 | 1.863,080 |
| **Total Geral** | **12.604,53** | **11.364,83** | **13.015,92** | **22.124** | **1,947** | **8,73** | **16,984** | **193.023,274** |

Também se tem o sobrepreço da cana de açúcar adquirida da Fazenda São Marcos, conforme as notas fiscais e o comparativo com os valores da Tonelada de Cana de Açúcar – Consecana do Estado de São Paulo (f. 859-72).

## VIII) Apropriação dos ativos biológicos da São Fernando:

Na inicial veio revelado que os requeridos José Carlos da Costa Marques Bumlai, Guilherme de Barros Costa Marques Bumlai, Cristiane de Barros Costa Marques Bumlai Pagnonceli, Fernando de Barros Bumlai e Maurício de Barros Bumlai teriam se apropriado dos ativos biológicos da São Fernando Açúcar e Álcool Ltda, no valor líquido avaliado em R$ 79.000.000,00 (setenta e nove milhões de reais).

Como demonstrado no item anterior a emrpesa São Fernando fez o plantio da cana de açúcar na Fazenda São marcos, por força de contrato de parceria, o que seria esperado, entreanto, entre abril de 2015 e março de 2016 a Familia Bumlai cobrou da São Fernando, por cana de açúcar desta, o valor de R$ 16.433.330,00 por 220.000 toneladas, entre abril de 2016 a março de 2017, R$ 25.555.034,00 por 295.000 toneladas e, um pouco antes do decreto de falência, entre abril e maio de 2017, a cobrança foi de R$ 4.710.255,00 por 58.000 toneladas, assim, no período de 3 anos foram cobrados R$ 47.000.000,00 (quarenta e sete milhões de reais) da São Fernando por cana de

**21**

Este documento é cópia do original assinado digitalmente por CESAR DE SOUZA LIMA. Liberado nos autos digitais por CESAR DE SOUZA LIMA, em 15/09/2020 às 17:18. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0810455-77.2020.8.12.0002 e o código 1269B42.



**Estado de Mato Grosso do Sul**
Poder Judiciário
**Dourados**
**5ª Vara Cível**

açúcar que fazia parte de seu ativo biológico, plantado em função de um contrato de parceria agrícola, transmudado em compra e venda de cana.

As lavouras de cana de açúcar plantadas na Fazenda São Marcos iriam produzir até 2026, conforme a planilha de cortes de f. 997-1.015, como às f. 1.006:

Abaixo seguem os valores das Benfeitorias Reprodutivas (Cultura da Cana-de-açúcar), as quais estão no corte atual, ou seja, não foi considerado o restante de sua vida produtiva, que para a cana de açúcar representada por até oito (08) ciclos.

| Fazenda | Área (ha) | Corte | VALORES (em R$) | | |
|---|---|---|---|---|---|
| | | | DESPESAS | RECEITAS | SALDO |
| Parcerias - Formação 18 M | 2.509,63 | 0 | 105.654.092,90 | 157.379.725,80 | 51.725.632,91 |
| Parcerias - 18 M - 1º Corte | 277,38 | 1 | 11.677.550,99 | 17.394.591,37 | 5.717.040,38 |
| Parcerias - 18 M - Viveiro | 192,13 | 0 | 2.122.652,24 | 0,00 | -2.122.652,24 |
| Parcerias - 18 M - 2º Corte | 2.517,83 | 2 | 75.856.426,89 | 121.399.188,19 | 45.542.761,30 |
| Parcerias - 18 M - 3º Corte | 2.920,69 | 3 | 74.362.023,30 | 118.321.857,13 | 43.959.833,84 |
| Parcerias - 18 M - 4º Corte | 4.533,58 | 4 | 91.763.830,09 | 143.110.435,63 | 51.346.605,53 |
| Parcerias - 18 M - 5º Corte | 3.913,34 | 5 | 59.687.396,55 | 90.557.055,57 | 30.869.659,03 |
| Parcerias - 18 M - 6º Corte | 4.397,80 | 6 | 32.699.943,18 | 45.616.717,10 | 12.916.773,92 |
| Parcerias - 18 M - 7º Corte | 2.648,21 | 7 | 16.884.986,96 | 23.202.901,00 | 6.317.914,04 |
| Parcerias - 18 M - 8º Corte e Demais | 1.062,41 | 8 | 3.386.963,08 | 4.654.274,78 | 1.267.311,70 |
| São Marcos - Formação 18 M | 1.535,74 | 0 | 68.226.508,81 | 104.333.110,84 | 36.106.602,04 |
| São Marcos - 18 M - 1º Corte | 251,30 | 1 | 11.164.208,57 | 17.072.493,23 | 5.908.284,67 |
| São Marcos - 18 M - 2º Corte | 718,37 | 2 | 24.077.463,62 | 40.106.412,88 | 16.028.949,27 |
| São Marcos - 18 M - 3º Corte | 849,43 | 3 | 23.968.655,12 | 39.672.864,24 | 15.704.209,12 |
| São Marcos - 18 M - 4º Corte | 130,86 | 4 | 3.114.475,85 | 5.177.176,97 | 2.062.701,12 |
| São Marcos - 18 M - 5º Corte | 72,15 | 5 | 1.397.735,98 | 2.337.470,45 | 939.734,47 |
| São Marcos - 18 M - 6º Corte | 75,96 | 6 | 1.081.974,24 | 1.796.960,73 | 714.986,49 |
| São Marcos - 18 M - 7º Corte | 185,33 | 7 | 1.832.172,38 | 3.085.241,70 | 1.253.069,32 |

Novamente e após a falência se tem prejuízos com utilização da pessoa jurídica para benefício dos sócios ocultos e demais empresas.

**IX) Pagamento de R$ 15.000.000,00 a Faccllytho Capital e Rentabilidade Ltda:**

Neste último tópicao temos que Guilherme de Barros Costa

**22**

Mod. 990039563 - Endereço: Av. Presidente Vargas, nº 210, prédio anexo, Centro - CEP 79804-030, Fone: (67) 3902-1732, Dourados-MS - E-mail: dou-5vciv@tjms.jus.br

Este documento é copia do original assinado digitalmente por CESAR DE SOUZA LIMA. Liberado nos autos digitais por César de Souza Lima, em 15/09/2020 às 17:18. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0810455-77.2020.8.12.0002 e o código 1269B42.



**Estado de Mato Grosso do Sul**
Poder Judiciário
**Dourados**
**5ª Vara Cível**

Marques Bumlai e Maurício de Barros Bumlai, na administração da São Fernando Açúcar e Álcool Ltda (falida), teriam favorecido credores e pagaram dívidas particulares dos demais requeridos ao quitarem um débito de R$ 15.000.000,00 com Faccilytho Capital e Rentabilidade Ltda.

Pelos documentos acostados tem-se que os sócios da São Fernando Açúcar e Álcool Ltda adiantou créditos para a empresa Faccilytho Capital e Rentabilidade Ltda que teria adquirido créditos da falida e da família Bumlai. Às f. 1.020-3 temos a informação prestada por Faccilytho Capital e Rentabilidade Ltda de que adquirira os créditos, vários deles da família Bumlai e a São Fernando Açúcar e Álcool Ltda fez pagamentos adiantados. Aqui, este juízo ira reproduzir o documento na integra, passo a passo, com as imagens, pois indica claramente a utilização da empresa autora em benefício próprio dos sócios aparentes e ocultos, eis que não havia razão comercial ou jurídica para os pagamentos, muitos menos a Cristiane Barros Costa Marques Bumlai, José Carlos Costa marques Bumlai, Fernando de Barros Bumlai, Guilherme de Barros Costa Marques Bumlai, Cristiane Barbosa Dódero Bumlai, Maurício de Barros Bumlai.

Seguem as imagens das informações de Faccilytho Capital e Rentabilidade Ltda:

(i)     operações nº 0214000300767010309, INV.PEC, com saldo devedor de R$ 40.915,10 (quarenta mil novecentos e quinze reais e dez centavos) e nº 0600012130386000386, FINAGRI, com saldo devedor de R$ 504.416,57 (quinhentos e quatro mil, quatrocentos e dezesseis reais e cinquenta e sete centavos), data base 11/12/2015, devedores CRISTIANE BARROS COSTA MARQUES BUMLAI (CPF nº 692.806.731-49) e JOSÉ CARLOS COSTA MARQUES BUMLAI (CPF nº 219.220.128-15), objeto da ação de execução nº 0836747-78.2015.8.12.0001, em trâmite perante a 3ª VARA CÍVEL DA COMARCA DE CAMPO GRANDE – MS;

**23**

Este documento é cópia do original assinado digitalmente por CESAR DE SOUZA LIMA. Liberado nos autos digitais por César de Souza Lima, em 15/09/2020 às 17:18. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0810455-77.2020.8.12.0002 e o código 1269B42.



**Estado de Mato Grosso do Sul**
Poder Judiciário
**Dourados**
**5ª Vara Cível**

(ii)  operação nº 0060001260386000386, FINAGRI, com saldo
devedor de R$ 627.388,71 (seiscentos e vinte e sete mil,
trezentos e oitenta e oito reais e setenta e um centavos),
data base 11/12/2015, devedores GUILHERME DE BARROS
COSTA MARQUES BUMLAI (CPF nº 843.415.131-68) e JOSÉ
CARLOS COSTA MARQUES BUMLAI (CPF nº 219.220.128-15),
objeto da ação de execução nº0821837-46.2015.8.12.0001,
em trâmite perante a 3ª VARA CÍVEL DA COMARCA DE
CAMPO GRANDE – MS;

(iii)  operação nº0214000300775010309, INV.PEC. com saldo
devedor de R$ 37.191,77 (trinta e sete mil cento e noventa e
um reais e setenta e sete centavos), data base 11/12/2015,

devedores GUILHERME DE BARROS COSTA MARQUES BUMLAI
(CPF nº 843.415.131-68) e JOSÉ CARLOS COSTA MARQUES
BUMLAI (CPF nº 219.220.128-15), objeto da ação nº 0043442-
86.2012.8.12.0001, em trâmite perante a 10ª VARA CÍVEL DA
COMARCA DE CAMPO GRANDE – MS;

(iv)  operação nº 0600078490386000386, FINAGRI, com saldo
devedor de R$ 618.641,47 (seiscentos e dezoito mil, seiscentos
e quarenta e um reais e quarenta e sete centavos), data
base 11/12/2015, devedores FERNANDO DE BARROS BUMLAI
(CPF nº 780.188.541-49) e JOSÉ CARLOS COSTA MARQUES
BUMLAI (CPF nº 219.220.128-15), objeto da ação de
execução nº 0823433-65.2015.8.12.0001, em trâmite perante
a 3ª VARA CÍVEL DA COMARCA DE CAMPO GRANDE – MS;

(v)  operação nº 0600011770386000386, FINAGRI, com saldo
devedor de R$ 598.274,32 (quinhentos e noventa e oito mil,
duzentos e setenta e quatro reais e trinta e dois centavos),
data base 11/12/2015, devedores MAURICIO DE BARROS
BUMLAI (CPF nº 132.012.318-00) e JOSÉ CARLOS COSTA
MARQUES BUMLAI (CPF nº 219.220.128-15), objeto da ação
de execução nº 0812835-52.2015.8.12.0001, em trâmite
perante a 3ª VARA CÍVEL DA COMARCA DE CAMPO GRANDE
– MS;

**24**

Este documento é cópia do original assinado digitalmente por CESAR DE SOUZA LIMA. Liberado nos autos digitais por César de Souza Lima, em 15/09/2020 às 17:18. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0810455-77.2020.8.12.0002 e o código 1269B42.



**Estado de Mato Grosso do Sul**
Poder Judiciário
**Dourados**
**5ª Vara Cível**

(vi)   operação nº 0214000300791010309, INV.PEC, com saldo devedor de R$ 43.028,19 (quarenta e três mil, vinte e oito reais e dezenove centavos), data base 11/12/2015, devedores MAURICIO DE BARROS BUMLAI (CPF nº 132.012.318-00) e JOSÉ CARLOS COSTA MARQUES BUMLAI (CPF nº 219.220.128-15), objeto da ação nº 0043444-56.2012.8.12.0001, em trâmite perante 10º VARA CÍVEL DA COMARCA DE CAMPO GRANDE – MS:

(vii)  operação nº 2140000126680001308, BLACKMASTER, com saldo devedor de R$ 52.853,58 (cinquenta e dois mil oitocentos e cinquenta e três reais e cinquenta e oito centavos), data base 11/12/2015, devedor MAURICIO DE BARROS BUMLAI (CPF nº 132.012.318-00);

(viii) operação nº 0600016110386000386, FINAGRI, com saldo devedor de R$ 608.340,92 (seiscentos e oito mil, trezentos e 

25

Este documento é cópia do original assinado digitalmente por CESAR DE SOUZA LIMA. Liberado nos autos digitais por César de Souza Lima, em 15/09/2020 às 17:18. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0810455-77.2020.8.12.0002 e o código 1269B42.



**Estado de Mato Grosso do Sul**
Poder Judiciário
**Dourados**
**5ª Vara Cível**

quarenta reais e noventa e dois centavos), data base 11/12/2015, devedores JOSÉ CARLOS COSTA MARQUES BUMLAI (CPF nº 219.220.128-15), CRISTIANE BARBOSA DONDERO BUMLAI (CPF nº 562.768.501-87) e MAURÍCIO DE BARROS BUMLAI (CPF nº 132.012.318-00), objeto da ação nº 0812828-60.2015.8.12.0001, em trâmite perante 3ª VARA CÍVEL DA COMARCA DE CAMPO GRANDE – MS;

(ix)   operações nº 0214000300805010309, INV.PEC., com saldo devedor de R$ 57.033,24 (cinquenta e sete mil, trinta e três reais e vinte e quatro centavos); nº 2140000000430700470, CPRF, com saldo devedor de R$ 215.392,49 (duzentos e quinze mil trezentos e noventa e dois reais e quarenta e nove centavos); nº 2140000000440700470, CPRF, com saldo devedor de R$ 219.811,45 (duzentos e dezenove mil oitocentos e onze reais e quarenta e cinco centavos); e operação nº 2140000000450700470, CPRF, com saldo devedor de R$ 222.485,33 (duzentos e vinte dois mil quatrocentos e oitenta e cinco reais e trinta e três centavos), data base 11/12/2015, devedores JOSÉ CARLOS COSTA MARQUES BUMLAI (CPF nº 219.220.128-15), CRISTIANE BARBOSA DONDERO BUMLAI (CPF nº 562.768.501-87) e MAURÍCIO DE BARROS BUMLAI (CPF nº 132.012.318-00), todas objeto da ação nº 0043443-71.2012.8.12.0001, em trâmite perante a 10ª VARA CÍVEL DA COMARCA DE CAMPO GRANDE – MS;

Esta operação demonstra a utilização da pessoa jurídica para outros fins que não os do contrato social e com a finalidade específica de beneficiar os sócios ocultos Cristiane Barros Costa Marques Bumlai, José Carlos Costa Marques Bumlai, Fernando de Barros Bumlai, Guilherme de Barros Costa Marques Bumlai, Cristiane Barbosa Dódero Bumlai e os sócios aparentes Guilherme de Barros Costa Marques Bumlai e Maurício de Barros Bumlai.

Vencidos os capítulos dos fatos, temos a verossimilhança do alegado, com provas detalhadas e, nesta primeira fase, uma demonstração de atos que induzem à má utilização da pessoa jurídica para, em tese, lesar credores e, principalmente pelo valor do crédito o BNDES, que, em uma única oportunidade liberou à empresa São Fernando R$ 103.000.000,00 (cento e três milhões de reais).

**26**

Este documento é cópia do original assinado digitalmente por CESAR DE SOUZA LIMA. Liberado nos autos digitais por César de Souza Lima, em 15/09/2020 às 17:18. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0810455-77.2020.8.12.0002 e o código 1269B42.



**Estado de Mato Grosso do Sul**
Poder Judiciário
**Dourados**
**5ª Vara Cível**

O perigo na demora é evidente, pois com a empresa em recuperação judicial as partes requeridas levaram a termo vários atos nocivos à recuperanda, com a falência e o recebimento de bens por vias transversas, pagamentos de dívidas, recebimento de valores sem contrato, podem, em continuidade ocultarem, mais uma vez, o patrimônio, em detrimento da massa de credores.

Para reforço de argumento, com extensão da norma do artigo 50, do Códiog Civil, inclusive com a chamada desconsideração inversa da personalidade jurídica para atingir os bens das empresas Agropecuária CF Ltad – Agropecuária JB e Donex Participações e Empreendimentos OSJC Ltda, temos a extensão para os sócios ocultos, que se beneficiaram, nesta decisão e na inicial denominados de "grupo da Família Bumlai", quais sejam, Cristiane Barros Costa Marques Bumlai, José Carlos Costa Marques Bumlai, Fernando de Barros Bumlai, Guilherme de Barros Costa Marques Bumlai, Cristiane Barbosa Dódero Bumlai e os sócios aparentes Guilherme de Barros Costa Marques Bumlai e Maurício de Barros Bumlai. Colaciona-se dois arestos:

> "AGRAVO INTERNO NO AGRAVO EM RECURSO ESPECIAL. AUSÊNCIA DE IMPUGNAÇÃO ESPECÍFICA AOS FUNDAMENTOS DA DECISÃO PROFERIDA PELO TRIBUNAL DE ORIGEM. INSUFICIÊNCIA DE ALEGAÇÃO GENÉRICA. EXECUÇÃO DE TÍTULO EXTRAJUDICIAL. **DESCONSIDERAÇÃO INVERSA DA PERSONALIDADE JURÍDICA. POSSIBILIDADE.** REVISÃO. SÚMULA 7/STJ. PENHORA. 30% SOBRE RECEBÍVEIS DE CARTÃO DE CRÉDITO. REVISÃO. ONEROSIDADE EXCESSIVA. INVIABILIDADE. SÚMULA 7/STJ. AGRAVO NÃO PROVIDO. 1. O agravo que objetiva conferir trânsito ao recurso especial obstado na origem reclama, como requisito objetivo de admissibilidade, a impugnação específica aos fundamentos utilizados para a negativa de seguimento do apelo extremo, consoante expressa previsão contida no art. 932, III, do CPC/2015 (art. 544, § 4º, inc. I, do CPC/1973) e art. 253, parágrafo único, I, do Regimento Interno do Superior Tribunal de Justiça - RISTJ, ônus da qual não se desincumbiu a parte insurgente, sendo insuficiente alegações genéricas de não aplicabilidade do óbice invocado. Precedentes. 2. (... *omissis* ...) **6. O Tribunal de origem, analisando pormenorizadamente a prova dos autos concluiu por manter a desconsideração inversa da personalidade jurídica para atingir as empresas ora recorrente em virtude de que um dos seus sócios, filho do executado, era sócio**

27

Este documento é cópia do original assinado digitalmente por CESAR DE SOUZA LIMA. Liberado nos autos digitais por César de Souza Lima, em 15/09/2020 às 17:18. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0810455-77.2020.8.12.0002 e o código 1269B42.



**Estado de Mato Grosso do Sul**
Poder Judiciário
**Dourados**
**5ª Vara Cível**

*também da sociedade empresária que passou por diversas alterações contratuais na qual os executados mantinham a administração e foi procurador das duas Ofhores em que o executado também foi procurador. Assentou, também, o Tribunal de origem, que o outro sócio é genro dos executados pessoas físicas e foi antigo diretor comercial da executada pessoa jurídica, tendo essa empresa o mesmo objeto, qual seja, o estacionamento de veículos. Dessa forma, observa-se que o Tribunal de origem analisou a prova dos autos para concluir acerca da intrínseca relação entre as empresas, caracterizada pelos sócios e diretores em comum, bem como mesmas atividades a se caracterizarem como componentes de um grupo econômico familiar, com desvio de finalidade e confusão patrimonial para o mau uso das empresas criadas. Nesse contexto, o acolhimento da pretensão recursal exigiria a alteração das premissas fático-probatórias estabelecidas pelo acórdão recorrido, com o revolvimento das provas carreadas aos autos, atraindo o óbice da Súmula 7 do STJ. 7. Para afastar o entendimento a que chegou a Corte a quo, de modo a analisar as peculiaridades do caso e verificar a existência de onerosidade excessiva para as recorrentes enseja o revolvimento do acervo fático-probatório dos autos, o que se mostra inviável em recurso especial, por óbice da Súmula 7/STJ: "A pretensão de simples reexame de prova não enseja recurso especial." 8. Agravo interno não provido."* Sem negrito no original (AgInt no Agravo em Recurso Especial nº 1.043.928/SP (2017/0009902-3), 4ª Turma do STJ, Rel. Luis Felipe Salomão. DJe 29.09.2017).

*"CIVIL E PROCESSUAL CIVIL. RECURSO ESPECIAL. AÇÃO MONITÓRIA. CONVERSÃO. CUMPRIMENTO DE SENTENÇA. COBRANÇA. HONORÁRIOS ADVOCATÍCIOS CONTRATUAIS. TERCEIROS. COMPROVAÇÃO DA EXISTÊNCIA DA SOCIEDADE. MEIO DE PROVA. DESCONSIDERAÇÃO INVERSA DA PERSONALIDADE JURÍDICA. OCULTAÇÃO DO PATRIMÔNIO DO SÓCIO. INDÍCIOS DO ABUSO DA PERSONALIDADE JURÍDICA. EXISTÊNCIA. INCIDENTE PROCESSUAL. PROCESSAMENTO. PROVIMENTO. 1. O propósito recursal é determinar se: a) há provas suficientes da sociedade de fato supostamente existente entre os recorridos; e b) existem elementos aptos a ensejar a*

**28**

Este documento é cópia do original assinado digitalmente por CESAR DE SOUZA LIMA. Liberado nos autos digitais por César de Souza Lima, em 15/09/2020 às 17:18. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0810455-77.2020.8.12.0002 e o código 1269B42.



**Estado de Mato Grosso do Sul**
Poder Judiciário
**Dourados**
**5ª Vara Cível**

instauração de incidente de desconsideração inversa da personalidade jurídica. 2. A existência da sociedade pode **ser demonstrada por terceiros por qualquer meio de prova, inclusive indícios e presunções, nos termos do art. 987 do CC/02. 3. A personalidade jurídica e a separação patrimonial dela decorrente são véus que devem proteger o patrimônio dos sócios ou da sociedade, reciprocamente, na justa medida da finalidade para a qual a sociedade se propõe a existir.** 4. Com a desconsideração inversa da personalidade jurídica, busca-se impedir a prática de transferência de bens pelo sócio para a pessoa jurídica sobre a qual detém controle, afastando-se momentaneamente o manto fictício que separa o sócio da sociedade para buscar o patrimônio que, embora conste no nome da sociedade, na realidade, pertence ao sócio fraudador. 5. No atual CPC, o exame do juiz a respeito da presença dos pressupostos que autorizariam a medida de desconsideração, demonstrados no requerimento inicial, permite a instauração de incidente e a suspensão do processo em que formulado, devendo a decisão de desconsideração ser precedida do efetivo contraditório. 6. Na hipótese em exame, a recorrente conseguiu demonstrar indícios de que o recorrido seria sócio e de que teria transferido seu patrimônio para a sociedade de modo a ocultar seus bens do alcance de seus credores, o que possibilita o recebimento do incidente de desconsideração inversa da personalidade jurídica, que, pelo princípio do tempus regit actum, deve seguir o rito estabelecido no CPC/15. 7. Recurso especial conhecido e provido." (Recurso Especial nº 1.647.362/SP (2017/0004072-0), 3ª Turma do STJ, Rel. Nancy Andrighi. DJe 10.08.2017).

Também, a demonstrar uma extensão inversa e abrangente da desconsideração da personalidade jurídica temos comentários ao artigo 50, do Código Civil de 2002, da obra Comentários ao Novo Código Civil, coordenação Sálvio de Figueiredo Teixeira:

"*Por derradeiro, a nota de que a solução do artigo em comentário, qualquer que seja a responsabilidade patrimonial dos sócios e administradores por relações obrigacionais de que seja parte a pessoa jurídica, não atende – ou não se aplica – a todas as hipóteses de desvio de finalidade da estrutura formal da entidade.*

**29**

Este documento é cópia do original assinado digitalmente por CESAR DE SOUZA LIMA. Liberado nos autos digitais por César de Souza Lima, em 15/09/2020 às 17:18. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0810455-77.2020.8.12.0002 e o código 1269B42.

fls. 1069



**Estado de Mato Grosso do Sul**
Poder Judiciário
Dourados
**5ª Vara Cível**

*Realmente, a literatura jurídica dá notícia de casos de abuso da personalidade jurídica caracterizados pela intenção clara de lesar terceiros, que não se materializam em obrigações do ser abstrato ou obrigações que devam ser resolvidas através da responsabilidade patrimonial dos sócios ou administradores."* (MONTEIRO FILHO, Raphael de Barros. MONTEIRO, Ralpho Waldo de Barros. MONTEIRO, Ronaldo de Barros. MONTEIRO, Ruy Carlos de Barros. Comentários ao novo código civil, vol. I : arts. 1º a 78, Org. Sálvio de Figueiredo Teixeira. - Rio de Janeiro : Forense – 2010, p. 792).

Por todos os argumentos expostos, há que se deferir a tutela de urgência para o arresto de bens e direitos, até mesmo porque não haverá perigo de irreversibilidade em arresto de patrimônio dos requeridos. Os requisitos para a desconsideração inversa e abrangente de sócios aparentes e ocultos, de outras pessoas jurídicas estão evidenciados assim como a necessidade de garantir o valor apontado na inicial como aquele desviado das empresas requerentes, agora Massa Falida São Fernando.

Diante do exposto, com fundamento no artigo 50, do Código Civil c.c. artigo 300, do CPC, defiro o pedido de tutela de urgência para a desconsideração da personalidade jurídica formulado por **Massa Falida de São Fernando Açúcar e Álcool Ltda., Massa Falida de São Fernando Energia I Ltda., Massa Falida de São Fernando Energia II Ltda., Massa Falida de São Marcos Energia e Participações Ltda. e Massa Falida de São Pio Empreendimentos e Participações Ltda.** em desfavor de **Agropecuária Cf Ltda, Cristiane de Barros Costa Marques Bumlai Pagnoncell, Donex Participações e Empreendimentos Osjc Ltda., Fernando de Barros Bumlai, Guilherme de Barros Costa Marques Bumlai, José Carlos da Costa Marques Bumlai e Maurício de Barros Bumlai** e determinar o arresto de bens e direitos dos requeridos, no Brasil e no exterior, para vedar a transferência, percepção de rendimentos e frutos ou qualquer outra forma de disposição dos bens/direitos patrimoniais até o limite do passivo falimentar de R$ 2.202.722.644,51 (dois bilhões, duzentos e dois milhões, setecentos e vinte e dois mil e seiscentos e quarenta e quatro reais e cinquenta e um centavos).

Para tanto determino:
a) Oficie-se a todas as Juntas Coemrciais de Mato Grosso do Sul, Rio de Janeiro e São Paulo para anotação nos registros das empresas que os requeridos façam partes como sócios;

**30**

Este documento é cópia do original assinado digitalmente por CESAR DE SOUZA LIMA. Liberado nos autos digitais por César de Souza Lima, em 15/09/2020 às 17:18. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0810455-77.2020.8.12.0002 e o código 1269B42.



**Estado de Mato Grosso do Sul**
Poder Judiciário
**Dourados**
**5ª Vara Cível**

b) Oficie-se aos Cartórios de Registro de Imóveis do Estado de Mato Grosso do Sul para registro do arresto nas matrículas dos imóveis dos requeridos, com vedação de alienação ou entrega em garantia ou qualquer outra forma de disposição ou limitação da propriedade;

c) Decreto a indisponibilidade dos bens dos requeridos na Central Nacional de Indisponibilidade de Bens – CNIB, com intimação dos Oficiais de Registro de Imóveis do Brasil;

e) Quanto ao pedido de bloqueio de dinheiro em espécie, com bloqueio de bens, entendo que a medida atinge valores para manutenção das pessoas físicas e inviabiliza a atividade comercial das empresas e somente será deferido no caso de não localização de bens imóveis suficientes a cobrir o passivo da massa falida.

Citem-se os requeridos para, querendo, apresentem contestação, sem audiência de mediação, por força da pandemia do vírus Corona.

Neste ato retiro o segredo absoluto.

Cumpra o Cartório as determinações com urgência, com utilização dos sistemas fornecidos pelo Conselho Nacional de Justiça.

P.I.C.

Dourados,  15 de setembro de 2020.

César de Souza Lima
    Juiz de Direito

Este documento é cópia do original assinado digitalmente por CESAR DE SOUZA LIMA. Liberado nos autos digitais por César de Souza Lima, em 15/09/2020 às 17:18. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0810455-77.2020.8.12.0002 e o código 1269B42.

**31**

*EXHIBIT "2"*

**State of Mato Grosso do Sul**

Judiciary Branch

**Dourados**

**5th Civil Court**

### ORDER

Case No. 0810455-77.2020.8.12.0002

Action: Bankruptcy of Sole Proprietorships, Business Companies, Microcompanies, and Small Companies

Claimants: Bankruptcy Estate of São Fernando Açúcar e Álcool Ltda. *et al.*

Respondents: Agropecuária Cf Ltda, Cristiane de Barros Costa Marques Bumlai Pagnonceli, Donex Participações e Empreendimentos Osjc Ltda., Fernando de Barros Bumlai, Guilherme de Barros Costa Marques Bumlai, José Carlos da Costa Marques Bumlai and Maurício de Barros Bumlai

**The Bankruptcy Estate of São Fernando Açúcar e Álcool Ltda, Bankruptcy Estate of São Fernando Energia I Ltda, Bankruptcy Estate of São Fernando Energia II Ltda, Bankruptcy Estate of São Marcos Energia e Participações Ltda and Bankruptcy Estate of São Pio Empreendimentos e Participações Ltda** filed a procedural incident motion for piercing the corporate veil with request to extend the effects of bankruptcy, combined with request for urgent provisional relief, against **José Carlos da Costa Marques Bumlai, Guilherme de Barros Costa Marques Bumlai, Cristiane de Barros Costa Marques Bumlai Pagnonceli, Fernando de Barros Bumlai, Maurício de Barros Bumlai, Agropecuária CF Ltda and Donex Participações e Empreendimentos OSJC Ltda** in order to hold the respondents liable for the bankruptcy liabilities of the claimants, adjudicate them bankrupt for all effects, and collect their assets for the collective benefit of the creditors (p. 1-8).

Preliminary injunction granted, with limitation only with respect to the blocking of financial assets of the respondents in Brazil (p. 1.040-70).

Claim for reconsideration by plaintiff for the blocking of financial assets, under penalty of dissipation of capital or, at least abroad, and also to prevent an execution procedure brought by Banco do Brasil S/A against José Carlos Bumlai, Heber Participações S/A, Maurício Bumlai, Cristiane Barbosa Dódero Bumlai, Guilherme Bumlai, Eva Elise Bumlai, Cristiane Bumlai and André Pagnocenlli due to the fact that they are sureties of São Fernando Açúcar e Álcool Ltda, because the piercing of the corporate veil will also reach the assets of the dormant partners and, as a consequence, Fazenda São Marcos, which will be subject to an auction in this case No. 1128168-72.2015.8.12.0100 of the 16th Civil Court of the judicial district of São Paulo- SP and, since the inalienability does not reach the levy of execution of assets, plaintiffs claim the blocking, by Bacenjud, of amounts of up to R$2,202,722,644.51 or the blocking of financial assets of the respondents abroad. They also include in the claim the suspension of the auction of Fazenda São Marcos, where bankruptcy debtor São Fernando has a sugarcane plantation (p. 1.081- 92).

This is the required summary.

I decide.

The issue is simple, because since the early effects of the final grant of the inverse piercing of the corporate veil was granted and to reach dormant partners, the assets of these partners and companies are encompassed by the bankruptcy effects of inalienability of assets. Thus, any execution procedure in progress on the assets of the partners of São Fernando, or at least those who have used the legal entity

for their own enrichment, shall be liable for these acts with their personal assets.

In this case, Fazenda São Marcos, which is owned by the respondents, cannot be conveyed in the execution and shall be included, pursuant to the initial decision, in the bankruptcy estate to cover the debts to the creditors, subject to the rules of the claims of the general list. Therefore, for these reasons, the inalienability of the assets of the dormant partners, the sugarcane planted on the property, which is supposedly owned by the bankruptcy estate, I grant suspension of the auction, due to the decision on p. 1.040-70.

On the other hand, since there is the narrative of money in accounts abroad, especially in the Bahamas, with the offshore company Doex Investment Management Ltd ("Donex Bahamas"), headquartered in Nassau, with an investment of R$1,5000,000.00, with the possible intention of concealing assets, it is necessary to block court financial assets, accounts, money of any kind, shares, debentures in any foreign country, especially in the Bahamas and in the United States of America, as noted in the document on p. 992-5:

(figure)

Legend:

**Management Ltd.**, with its principal place of business at Bahamas Financial Centre. PC) Box N-4801, Shirley and Charlotte Street, Nassau, Bahamas ("**Donex Investment Management Ltd**"), in the total amount of one million five hundred thousand *Reais* (R$1.500.000,00), upon the subscription and payment of new shares issued by Donex Investment Management Ltd.

**6. RESOLUTIONS:** The items of the agenda were voted and the partners unanimously approved the Company's investment, in the total amount of one million five hundred thousand *Reais* (R$1.500.000,00), upon the subscription and payment of new shares issued by **Donex Investment Management Ltd.**

**7. CLOSING:** The floor was given to whoever might want to speak, and as nobody took the floor, the Meeting was adjourned for the time required for these minutes to be drawn up; which minutes were and found in order, approved and signed by all those present.

São Paulo, May 29, 2013

**Board:**

<table>
<tr><td>(sgd)</td><td>(sgd)</td></tr>
<tr><td>**FERNANDO DE BARROS BUMLAI**</td><td>**CRISTIANE DE BARROS COSTA MARQUES BUMLAI PAGNONCELLI**</td></tr>
<tr><td>(Chairman)</td><td>(Secretary)</td></tr>
</table>

NOT VALID AS A CERTIFICATE

Please note that the blocking of financial assets, in any amount, does not prevent subsistence of the individuals and legal entities, since these amounts are supposedly hidden abroad.

In view of the above, I grant the claim for reconsideration, in part, to order:

a) suspension of the auction of any assets of the execution debtors in case No. 1128168-72.2015.8.26.0100, of the 16th civil court of São Paulo-SP, including of the rural property named Fazenda São Marcos, because, due to the decision of the interlocutory relief, it may be included in the list of assets of Bankruptcy Debtor São Fernando Açúcar e Álcool Ltda;

b) I order the blocking of all financial assets of the defendants abroad, especially in the Bahamas and in the United States of America, up to the amount of R$2,202,722,644.51. For that purpose, a letter rogatory or other instrument shall be issued, as soon as possible, for compliance with the order.

Please send an official letter for compliance or other means to implement the measures hereby adopted.

Publish, notify, comply with.

Dourados, September 21, 2020.

César de Souza Lima

Judge

Mod. 990016092 - Address: Av. Presidente Vargas, n° 210, prédio anexo, Centro - CEP 79804-030, Phone: (67) 3902-1732, Dourados-MS - E-mail: dou-5vclv@tjms.jus.br

This document is a copy of the original digitally signed by CESAR DE SOUZA LIMA. Released in the digital records by César de Souza Lima, on September 21, 2020 at 09:48 a.m. To access the case records, access the website https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, inform case 0810455-77.2020.8.12.0002 and code 127B4A2.

pgi/250294.doc

fls. 1111

 **Estado de Mato Grosso do Sul**
Poder Judiciário
**Dourados**
**5ª Vara Cível**

---

DECISÃO

---

Autos n.° 0810455-77.2020.8.12.0002

Ação: Falência de Empresários, Sociedades Empresáriais, Microempresas e Empresas de Pequeno Porte

Parte Ativa: Massa Falida de São Fernando Açúcar e Álcool Ltda. e outros

Parte Passiva: Agropecuária Cf Ltda, Cristiane de Barros Costa Marques Bumlai Pagnonceli, Donex Participações e Empreendimentos Osjc Ltda., Fernando de Barros Bumlai, Guilherme de Barros Costa Marques Bumlai, José Carlos da Costa Marques Bumlai e Maurício de Barros Bumlai

 

 

**Massa Falida de São Fernando Açúcar e Álcool Ltda, Massa Falida de São Fernando Energia I Ltda, Massa Falida de São Fernando Energia II Ltda, Massa Falida de São Marcos Energia e Participações Ltda e Massa Falida de São Pio Empreendimentos e Participações Ltda** ingressaram com incidente de desconsideração de personalidade jurídica com pedido de extensão dos efeitos da falência c.c. tutela de urgência cautelar em desfavor de **José Carlos da Costa Marques Bumlai, Guilherme de Barros Costa Marques Bumlai, Cristiane de Barros Costa Marques Bumlai Pagnonceli, Fernando de Barros Bumlai, Maurício de Barros Bumlai**, **Agropecuária CF Ltda e Donex Participações e Empreendimentos OSJC Ltda** para responsabilizar os requeridos pelo passivo falimentar das autoras, considerá-los como falidos para todos os efeitos e arrecadar seus patrimônios em benefício da coletividade de credores (f. 1-8).

Liminar deferida, com limitação apenas quanto ao bloqueio de ativos financeiros dos requeridos no Brasil (f. 1.040-70).

Pedido de reconsideração pela parte autora para bloqueio

**1**

---

Este documento é cópia do original assinado digitalmente por CESAR DE SOUZA LIMA. Liberado nos autos digitais por César de Souza Lima, em 21/09/2020 às 09:48. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0810455-77.2020.8.12.0002 e o código 127B4A2.

fls. 1112



**Estado de Mato Grosso do Sul**
Poder Judiciário
**Dourados**
**5ª Vara Cível**

de ativos financeiros, sob pena de dissipação de capitais ou, ao menos o exterior, como também obstar execução promovida pelo Banco do Brasil S/A em desfavor de José Carlos Bumlai, Heber Participações S/A, Maurício Bumlai, Cristiane Barbosa Dódero Bumlai, Guilherme Bumlai, Eva Elise Bumlai, Cristiane Bumlai e Adnré Pagnocenlli, por serem fiador da São Fernando Açúcar e Álcool Ltda, pois a desconsideração também atingirá o patrimônio dos sócios ocultos e por consequência a Fazneda São Marcos que irá a leilão neste processo de n.º 1128168-72.2015.8.12.0100 da 16ª Vara Cível da comarca de São Paulo-SP e como a indisponibilidade não atinge a penhora de bens, pedem, as autoras o bloqueio pelo Bacenjud de valores até R$ 2.202.722.644,51 ou o bloqueio de ativos finacneiros dos requeridos no exterior. Também incluem no pedido a suspensão do praceamento da Fazenda São Marcos, onde a falida São Fernando tem plantação de cana (f. 1.081-92).

        É a síntese do necessário.
        Decido.

        A questão é simples, pois concedida a antecipação dos efeitos do provimento final da desconsideração da personalidade jurídica inversa e para atingir sócios ocultos, temos que os bens destes sócios e empresas são abrangidos pelos efeitos da falência de indisponibilidade de bens, assim, qualquer execução em andamento sobre bens daqueles incluídos como sócios da São Fernando, ou pelo menos que tenham se locupletado da pessoa jurídica em benefício próprio, responderão por estes atos com seu patrimônio pessoal.

        No caso, a Fazenda São Marcos, propriedade dos requeridos, não pode ser alienada em execução e será, pela decisão inicial, incluída na massa falida para cobrir os débitos com os credores, observadas as regras dos créditos do quadro geral. Desse modo, por tais razões, a indisponibilidade dos bens dos sócios ocultos, a cana de açúcar plantada no imóvel que, supostamente, é da massa falida,

2

Este documento é cópia do original assinado digitalmente por CESAR DE SOUZA LIMA. Liberado nos autos digitais por César de Souza Lima, em 21/09/2020 às 09:48. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0810455-77.2020.8.12.0002 e o código 127B4A2.



**Estado de Mato Grosso do Sul**
Poder Judiciário
**Dourados**
**5ª Vara Cível**

defiro a suspensão da praça, por força da decisão de f. 1.040-70.

De outro norte, como existe a narrativa de dinheiro em contas no exterior, principalmente Bahamas , com empresa "offshore" Doex Investment Management Ltd ("Donex Bahamas), sediada em Nassau, com investimento de R$ 1.5000.000,00, com possível intenção de ocultar patrimônio, temos a necessidade do bloqueio judicial de ativos financeiros, contas, dinheiro de qualquer espécie, ações, debêntures em qualquer país estrangeiro, principalmente Bahamas e Estados Unidos da América, como se extrai do documento de f. 992-5:

Management Ltd., com sede em Bahamas Financial Centre, PO Box N-4801, Shirley and Charlotte Street, Nassau, Bahamas (**"Donex Investment Management Ltd."**), no valor total de R$ 1.500.000,00 (um milhão e quinhentos mil reais), mediante subscrição e integralização de novas ações de emissão da **Donex Investment Management Ltd**.

6. **DELIBERAÇÕES:** Colocadas as matérias constantes da ordem do dia em votação, os sócios quotistas, de maneira unânime, aprovaram o investimento da Sociedade, no valor total de R$ 1.500.000,00 (um milhão e quinhentos mil reais), mediante subscrição e integralização de novas ações de emissão da **Donex Investment Management Ltd**.

7. **ENCERRAMENTO:** Oferecida a palavra a quem dela quisesse fazer uso e como ninguém se manifestou, foram encerrados os trabalhos e suspensa a Reunião pelo tempo necessário para a lavratura desta ata, a qual lida e achada conforme, foi aprovada e assinada por todos os presentes.

São Paulo, 29 de maio de 2013.

Mesa:

_____
**FERNANDO DE BARROS BUMLAI**
(Presidente)

_____
**CRISTIANE DE BARROS COSTA MARQUES BUMLAI PAGNONCELLI**
(Secretária)

Vale consignar que o bloqueio de ativos financeiros, de qualquer ordem, não obsta a subsistência das pessoas física e jurídicas, eis que são valores que estão, supostamente ocultados em outros países.

Diante do exposto, acolho o pedido de reconsideração,

**3**

SEM VALOR DE CIDADANIA

Mod. 990016092 - Endereço: Av. Presidente Vargas, nº 210, prédio anexo, Centro - CEP 79804-030, Fone: (67) 3902-1732, Dourados-MS - E-mail: dou-5vciv@tjms.jus.br

Este documento é cópia do original assinado digitalmente por CESAR DE SOUZA LIMA. Liberado nos autos digitais por César de Souza Lima, em 21/09/2020 às 09:48. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0810455-77.2020.8.12.0002 e o código 127B4A2.



**Estado de Mato Grosso do Sul**
Poder Judiciário
**Dourados**
**5ª Vara Cível**

parcialmente, para determinar:

a) a suspensão da praça de quaisquer bens dos executados no processo n.º 1128168-72.2015.8.26.0100, da 16ª vara cível de São Paulo-SP, inclusive do imóvel rural denominado Fazenda São Marcos, pois, por decisão em tutela de urgência pode ser incluída no rol de bens da Falida São Fernando Açúcar e Álcool Ltda;

b) Determino o bloqueio de todos ativo financeiros dos réus no exterior, principalmente nas Bahamas e Estados Unidos da América, até o valor de R$ 2.202.722.644,51. Para tanto expeça-se carta rogatória ou outro meio, mais rápido possível, para cumprimento da ordem.

Oficie-se para cumprimento ou outro meio que possa efetivar as medidas, ora adotadas.

P.I.C.

Dourados, 21 de setembro de 2020.


César de Souza Lima
Juiz de Direito

**4**

Este documento é cópia do original assinado digitalmente por CESAR DE SOUZA LIMA. Liberado nos autos digitais por César de Souza Lima, em 21/09/2020 às 09:48. Para acessar os autos processuais, acesse o site https://esaj.tjms.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0810455-77.2020.8.12.0002 e o código 127B4A2.

*EXHIBIT "3"*

p.

**Judiciary Branch**

**Mato Grosso do Sul State Court of Appeals**

**Chambers of Judge Paulo Alberto de Oliveira**

**Interlocutory Appeal No. 1413886-76.2020.8.12.0000**

Appellant(s): Fernando de Barros Bumlai

Counselor(s): Rodolfo Fontana Boeira da Silva, Ricardo Cholbi Tepedino, Bruno Poppa, Jose Eduardo Tavanti Junior and Sofia Saad Gonçalves

Appellee(s): Bankruptcy Estate of São Fernando Açúcar e Álcool LTDA, Bankruptcy Estate of São Fernando Energia I Ltda, Bankruptcy Estate of São Fernando Energia II LTDA, Bankruptcy Estate of São Marcos Energia e Participações LTDA and Bankruptcy Estate of São Pio Empreendimentos e Participações LTDA

Counselor(s): Octaviano Bazilio Duarte Filho and Henrique Rodrigues Forssell

**DECISION**

*Case records received on October 22, 2020*

An *Interlocutory Appeal* was filed by **Fernando de Barros Bumlai** against an order issued in **case No. 0810455-77.2020.8.12.0002** by the 5th Civil Court of the Judicial District of Dourados, State of Mato Grosso do Sul (MS), which, in a *Procedural Incident Motion for Piercing of Corporate Veil with Request to Extend the Effects of Bankruptcy*, underline granted a request for *provisional relief* submitted by the **Bankruptcy Estate of São Fernando Açúcar e Álcool LTDA.**, **Bankruptcy Estate of São Fernando Energia I Ltda.**, **Bankruptcy Estate of São Fernando Energia II LTDA.**, **Bankruptcy Estate of São Marcos Energia e Participações LTDA.**, and **Bankruptcy Estate of São Pio Empreendimentos e Participações LTDA.** to:

*a*) Piercing the corporate veil against **Agropecuária CF Ltda.**, **Cristiane de Barros Costa Marques Bumlai Pagnonceli**, **Donex Participações e Empreendimentos OSJC LTDA.**, **Fernando de Barros Bumlai**, **Guilherme de Barros Costa Marques Bumlai**, **José Carlos da Costa Marques Bumlai**, and **Maurício de Barros Bumlai**; and

*b*) Order the attachment of assets and rights of the respondents, in Brazil and abroad, by enjoining any *transfer, receipt of income and proceeds*, or *any other manner of disposal of their assets/rights* until the limit of the bankruptcy liabilities, i.e. R$2,202,722.644.51 – p. 1.081-1.092 of the lower court case records.

In a subsequent order on a *request for reconsideration* submitted by the claimants, the trial Court additionally ordered:

*a*) The stay of the auction of any assets of the debtors in **Case No. 1128168-72.2015.8**.26.0100 with the 16th Civil Court of São Paulo, SP, including a rural property known as *Fazenda São Marcos*, because, by force of an order issued on a request for provisional relief, it may be included in the list of assets of *Debtor São Fernando Açúcar e Álcool Ltda.*; and

*b*) The freezing of all financial assets held by the respondents abroad, particularly in the *Bahamas* and in the *United States of America*, up to an amount of R$2,202,722,644.51 (p. 1.11-1.114 of the lower court case records).

The appellant argues, in summary, that:

*a*) He has no relationship whatsoever with the "*São Fernando Group*," of which he has never "*been a partner, whether ostensible or dormant, much less a manager*" (p. 06);

*b*) The losses purportedly caused by the appellant as a result of the alleged acts in which he participated reach an amount of "*approximately R\$55 million,*" i.e. "*merely 2.5% of the bankruptcy liabilities, which exceed 2.1 billion Reais,*" which circumstance is sufficient in itself to rule out "*any verisimilitude of the allegation of commingling of assets which could cause losses to the bankruptcy estate or have any effect on the insolvency*" (p. 07);

*c*) The accusations against the appellant in the complaint are "*few and false*";

*d*) There is "*no evidence whatsoever that the appellant is attempting to exhaust his assets to the point of jeopardizing the final outcome sought in the procedural incident motion*" (p. 08), and, therefore, there is no danger of *irreparable* or *difficult-to-repair harm* which could justify the request for preliminary injunction;

*e*) The "danger of harm to the appellant" is clear, as the latter could "*be barred from his most elementary right arising from civil capacity for years on end until the procedural incident motion is adjudicated by the trial court and all the distorted assumptions underlying the cause of action fabricated by the appellees are dismissed*" (p. 08-09); and

*f*) In view of all the foregoing, the case records contain no "*evidence of likelihood of the right or of danger of harm or risk to the useful outcome of the proceedings*" as required by **art. 300** of the **Code of Civil Procedure (CPC)**, to justify "*the granting of provisional relief in one of the forms set forth in art. 301*";

Accordingly, he requested **provisional appellate relief** in order to "*immediately release the grave lien suffered by the appellant, either fully or at least by staying the freezing on the 'receipt of income and proceeds' from assets owned by the appellant,*" and, in the merits, the granting of the appeal to "*fully remove the attachment on the assets of the appellant*" (p. 01-30).

**This is my report.**

**I proceed to rule.**

As a rule, an *Interlocutory Appeal* does not operate as supersedeas (**main provision** of **art. 995** of the **2015 Code of Civil Procedure (CPC/15)**).

However, **art. 995**, **sole paragraph** of the **2015 Code of Civil Procedure (CPC/15)** exceptionally authorizes the granting of **supersedeas effect** until the Appellate Court renders its final decision, subject to the likelihood of success of the appeal (*fumus boni iuris*) and to the risk of severe and difficult-to-repair or irreparable harm (*periculum in mora*):

"**Art. 995**. Appeals do not stay the effectiveness of the decision, unless otherwise set forth in law or in a court decision.

**Sole paragraph**. The effectiveness of the decision under appeal may be stayed by decision of the reporting judge when the immediate effects thereof could pose a risk of severe and difficult-to-repair or irreparable harm and there is demonstration of the likelihood of success of the appeal."

In turn, **art. 1.019**, **item I** of the **2015 Code of Civil Procedure**, in addition to also allowing the granting of **supersedeas effect** to an interlocutory appeal, also established the possibility of granting **provisional appellate relief**:

"**Art. 1.019**. After the interlocutory appeal is filed with the appellate court and immediately assigned, except in the event of application of art. 932, items III and IV, the reporting judge, within five (5) days:

**I** – May grant supersedeas effect to the appeal or grant, by way of provisional relief, wholly or in part, the relief sought in the appeal and notify his decision to the trial court;

[…]"

By the way, **art. 299**, **sole paragraph**, together with **art. 932**, **item II**, of the **2015 Code of Civil Procedure** also authorize the Reporting Judge to **grant provisional appellate relief**, subject to satisfaction of the *fumus boni juris* and *periculum in mora* requirements:

"**Art. 299**. Provisional relief shall be requested to the trial court and, when precedent, to the court that has competent jurisdiction over the primary claim.

**Sole paragraph**. Subject to any special provision, in cases under the original jurisdiction of the appellate court and <u>in appeals, provisional relief shall be requested to the trial body that has competent jurisdiction over the merits</u>.

Art. 932. <u>The reporting judge shall</u>:

[…]

II – Review the request for <u>provisional relief</u> in appeals and in cases under the original jurisdiction of the appellate court."

In the case at hand, in a superficial review, subject to a more in-depth examination of the facts regarding the *real* and *actual* occurrence of the fraudulent acts attributed to the appellant – a task which will certainly require a detailed analysis to be conducted in due time (e.g. in the trial of the merits of this appeal and/or final trial of the *Procedural Incident Motion for Piercing of Corporate Veil with Request to Extend the Effects of Bankruptcy*) –, the procedural time in which the dispute is being analyzed imposes the finding that, contrary to what the appellant alleges, the losses purportedly caused to the **Bankruptcy Estate** of the "**São Fernando Group**" where not caused by *specific acts* of his.

On the contrary, there are <u>several</u> facts stated in the complaint, specifically those attributed to appellant **Fernando de Barros Bumlai** (*paragraphs 47-144* – p. 15-42 of the lower court case records), which purportedly enabled the use of assets of the "**São Fernando Group**," particularly of debtor **São Fernando Açúcar e Álcool LTDA.**, in favor and for the benefit of the *Bumlai Family*, always, it seems, under the coordination and with direct participation of patriarch *José Carlos Bumlai*, who is not even a partner of the companies belonging to the debtor group, but, **just like the appellant** (who is a respondent in the procedural incident motion as a "*dormant partner*"), purportedly perpetrated, whether directly or indirectly (through the legal entities of which he is a partner), *several acts* that ultimately caused huge losses to the bankrupt business group, apparently qualifying as a *commingling of assets* and abusive and willful use of the *corporate veil of legal entities*.

In this regard, the following facts are extracted from the complaint, in which the appellant *directly participated*, even if only as a partner of other legal entities, but which, as stated above, ultimately appear to have caused severe and reiterated losses to the assets of the "**São Fernando Group**":

"Likewise, Cristiane Bumlai and **Fernando Bumlai** ostensibly had the same promiscuous relationship with the São Fernando Group. The same, as **sole partners** of Agropecuária JB, formalized with the São Fernando Group the fraudulent transaction under which the coffers of the latter funded the luxury Aircraft acquired for the family's leisure travels (Exhibit 10). They received, as seen above, millions of *Reais* through Agropecuária JB. Shortly before the filing for judicial reorganization of the São Fernando Group, they began to operate as **intermediaries** of the family (Exhibit 09) by concentrating the family's assets in order to exempt them from liability for the wrongdoings in the São Fernando Group. **The assets of both of them began to commingle with those of the Bumlai Family, which, in turn, were also commingled with those of the São Fernando Group**. Given such commingling of assets, Cristiane and **Fernando Bumlai also took the position of "dormant partners" of the São Fernando Group** and actively contributed to the acts of exhaustion of assets already detailed above.

[…]

In summary, the members of the Bumlai Family, including both those who appeared in the corporate documents (i.e. Mauricio Bumlai and Guilherme Bumlai) and those who acted as "dormant" partners i.e. José Carlos Bumlai, Cristiane Bumlai, and Fernando Bumlai), perpetrated acts of abuse of the corporate entity which culminated with the bankruptcy of the São Fernando Group and, accordingly, should be held liable" (p. 45-46 of the lower court case records).

According to a precedent of the **Superior Court of Justice (STJ)**, upon "*evidence of the commingling of assets between formally separate companies, the corporate veil of the debtor may be pierced **in order to extend the effects of its bankruptcy to the other companies involved**'* (**RMS 16.105/GO**, **Reporting Justice:**

**Nancy Andrighi**, Third Panel, *Court Register (DJ)*, September 22, 2003, p. 314).

Indeed, in addition to the possibility of extending the effects of bankruptcy to *legal entities* that, in principle, appear to have assisted in the reiterated perpetration of acts harmful to the assets of the bankrupt business group and to their respective creditors, it is also possible, in theory, to extend such effects to the (*individual*) partners of such legal entities included in the bankruptcy upon evidence of *abuse* consisting of *deviation from purpose* (i.e. an intentional act of the partners with the purpose of defrauding third parties) or ***commingling of assets*** (**REsp 1.686.162/SP**, **Reporting Justice: Ricardo Villas Bôas Cueva**, Third Panel, *Electronic Court Register (DJe*), December 3, 2019).

In this regard, **art. 50** of the **2002 Civil Code (CC/02)** provides that, in the event of **abuse of the corporate entity** consisting of **deviation from purpose** or **commingling of assets**, the Court may, upon request, pierce the *corporate veil* so that the effects of certain obligational relationships **be extended to the individual assets of the *managers* or *partners* of the legal entity** who directly or indirectly benefitted from such abuse.

In accordance with **paragraph 1** of the abovementioned **art. 50**, deviation from purpose is the use of the legal entity **for the purpose of defrauding creditors** and perpetrating wrongdoings of any nature, which apparently was the case here, when the appellant, as partner of separate legal entities belonging to the "***São Fernando Group***," entered into several legal transactions with the latter with were flagrantly harmful to it, but also directly benefitted **the appellant**, his siblings, and his father (i.e. the *Bumlai Family*).

In turn, in accordance with **paragraph 2** of **art. 50**, the ***commingling of assets*** is demonstrated by the **lack of separation between the respective assets of the parties**, characterized by ***i*)** repeated performance by the company of obligations of the partner or manager, or vice versa, ii) transfer of assets or liabilities without actual consideration, except of a proportionally insignificant amount, and ***iii***) other acts violating the separation between the respective assets. In accordance with **paragraph 3**, the (reverse) application of the extension of the obligations of partners or managers to the legal entity is also possible, when it is found that the legal entity is using individuals to evade its obligations to creditors.

In the case at hand, based on the mere statement of the facts in the complaint submitted to the trial court, which was supported by **copious documentary evidence** (p. 68-1.110), it is possible to glimpse a severe and atypical scenario consisting of ***abuse of the corporate entity*** of several ***legal entities*** and ***commingling of assets*** of several ***individuals*** and ***legal entities*** involved in quite anomalous transactions, characterizing a real imbroglio, which based the request for *piercing of the corporate veil and extension of the effects of bankruptcy*.

Thus, for purposes of review of the request for preliminary injunction, considering, *on one hand*, the complexity of the case and the severe effects of the potential release of the assets already at this early moment, and, *on the other hand*, the need to ensure, before making any decision with potentially irreversible effects, prior and effective adversary proceeding in favor of respondents/appellees, i.e. the ***Bankruptcy Estate of São Fernando Açúcar e Álcool LTDA.***, ***Bankruptcy Estate of São Fernando Energia I Ltda.***, ***Bankruptcy Estate of São Fernando Energia II LTDA.***, ***Bankruptcy Estate of São Marcos Energia e Participações LTDA.***, and ***Bankruptcy Estate of São Pio Empreendimentos e Participações LTDA.***, that it is **necessary** to **uphold the freezing** of assets ordered against appellant ***Fernando de Barros Bumlai***, **except** with regard to the management and use/disposal of the **proceeds** from his assets, a total freezing of which could pose a risk to his and his family's proper support.

**In view of the foregoing, I GRANT, but merely IN PART**, the request for *provisional appellate relief* solely to exclude, from the order of freezing of assets under appeal, the **management and use/disposal of the proceeds from the assets** of the appellant, a total freezing of which could pose a risk to his and his family's proper support.

**Notify the Court <u>immediately</u> of the foregoing.**

Notify the appellee(s) of the foregoing, in accordance with the provisions of **art. 1.019**, **item II** of the **2015 Code of Civil Procedure**, so that they may submit an appellee's brief within fifteen (15) days, it being understood that they may submit any documentation they may find necessary.

Afterwards, send this to the *Office of the State Attorney General* to submit its opinion.

**Notify.**

Campo Grande, MS, October 23, 2020.

**J. Paulo Alberto de Oliveira**

Reporting Judge

This document is a copy of the original digitally signed by PAULO ALBERTO DE OLIVEIRA and entered in the case records on October 23, 2020 at 7:01 P.M.

To view the original, access https://esaj.tjms.jus.br/pastadigital/sgcr/abrirConferenciaDocumento.do and enter case number 1413886-76.2020.8.12.0000 and code 3694634.

pas/250293.doc



*Poder Judiciário*
*Tribunal de Justiça de Mato Grosso do Sul*
*Gabinete do Desembargador  Paulo Alberto de Oliveira*

Agravo de Instrumento nº 1413886-76.2020.8.12.0000

| | |
|---|---|
| Agravante(s): | Fernando de Barros Bumlai |
| Advogado(a,s): | Rodolfo Fontana Boeira da Silva, Ricardo Cholbi Tepedino, Bruno Poppa, Jose Eduardo Tavanti Junior e Sofia Saad Gonçalves |
| Agravado(a,s): | Massa Falida de São Fernando Açúcar e Álcool LTDA,    Massa Falida de São Fernando Energia I Ltda,    Massa Falida de São Fernando Energia II LTDA, Massa Falida De São Marcos Energia e Participações LTDA  e  Massa Falida de São Pio Empreendimentos e Participações LTDA |
| Advogado(a,s): | Octaviano Bazilio Duarte Filho e Henrique Rodrigues Forssell |

## DECISÃO

*Autos recebidos em carga em 22/10/2020*

Trata-se de *Agravo de Instrumento* interposto por **Fernando de Barros Bumlai** contra decisão interlocutória proferida nos **autos nº 0810455-77**.**2020**.**8**.**12**.**0002**  pelo Juiz da 5ª Vara Cível da Comarca de Dourados-MS, que, em *Incidente de Desconsideração de Personalidade Jurídica com Pedido de Extensão dos Efeitos da Falência*,  deferiu requerimento de *tutela provisória* formulado pela **Massa Falida de São Fernando Açúcar e Álcool LTDA**,    **Massa Falida de São Fernando Energia I Ltda**,    **Massa Falida de São Fernando Energia II LTDA**,   **Massa Falida De São Marcos Energia e Participações LTDA** e **Massa Falida de São Pio Empreendimentos e Participações LTDA**, para:

*a*) desconsiderar a personalidade jurídica em desfavor de  ***Agropecuária CF Ltda***,   ***Cristiane de Barros Costa Marques Bumlai Pagnonceli***,   ***Donex Participações e Empreendimentos OSJC LTDA***,   ***Fernando de Barros Bumlai***,   ***Guilherme de Barros Costa Marques Bumlai***,   ***José Carlos da Costa Marques Bumlai***  e  ***Maurício de Barros Bumlai***;

*b*) determinar o arresto de bens e direitos  dos requeridos, no Brasil e no exterior,

Este documento é cópia do original, assinado digitalmente por PAULO ALBERTO DE OLIVEIRA, liberado nos autos em 23/10/2020 às 19:01 .
Para conferir o original, acesse o site https://esaj.tjms.jus.br/pastadigital/sgcr/abrirConferenciaDocumento.do, informe o processo 1413886-76.2020.8.12.0000 e código 3694634.



*Poder Judiciário*
*Tribunal de Justiça de Mato Grosso do Sul*
*Gabinete do Desembargador  Paulo Alberto de Oliveira*

para vedar a *transferência, percepção de rendimentos e frutos* ou *qualquer outra forma de disposição dos bens/direitos patrimoniais* até o limite do passivo falimentar de R$ 2.202.722.644,51 – f. 1.081-1.092, na origem.

Em decisão subsequente, que atendeu *pedido de reconsideração* dos autores, o Juízo de origem determinou, ainda:

***a***) a <u>suspensão da praça</u> de quaisquer bens dos executados no **Processo nº 1128168-72.2015.8.26.0100**, da 16ª Vara Cível de São Paulo-SP, inclusive do imóvel rural denominado *Fazenda São Marco*s,  pois, por decisão em tutela de urgência pode ser incluída no rol de bens da *Falida São Fernando Açúcar e Álcool Ltda*;

***b***) o <u>bloqueio de  todos  ativos financeiros dos réus no exterior</u>, principalmente nas *Bahamas*  e   *Estados Unidos da América*, até o valor de R$  2.202.722.644,51 (f. 1.11-1.114, na origem).

O agravante sustenta, em suma, que:

***a***) não guarda relação alguma com o "*Grupo São Fernando*", do qual jamais "*foi sócio, escritural ou oculto, muito menos administrador*" (f. 06);

***b***) aos prejuízos que supostamente teriam sido causados pelo agravante, decorrentes dos alegados atos dos quais teria participado, alcançariam o valor de "*cerca  de R$ 55 milhões*";  ou seja, de "*meros 2,5% do passivo inscrito no concurso, de mais de 2,1 bilhões de reais*",  circunstância que afastaria, por si só, "*a verossimilhança da alegação de confusão patrimonial que fosse apta a gerar danos à massa falida ou ter qualquer implicância na insolvência*" (f. 07);

***c***) são "*poucas e falsas*" as imputações feitas ao agravante na inicial;

***d***) não há "*mínimo indício de prova a demonstrar que o recorrente estaria agindo*

Este documento é cópia do original, assinado digitalmente por PAULO ALBERTO DE OLIVEIRA, liberado nos autos em 23/10/2020 às 19:01.
Para conferir o original, acesse o site https://esaj.tjms.jus.br/pastadigital/sgcr/abrirConferenciaDocumento.do, informe o processo 1413886-76.2020.8.12.0000 e código 3694634.



*Poder Judiciário*

*Tribunal de Justiça de Mato Grosso do Sul*

*Gabinete do Desembargador Paulo Alberto de Oliveira*

*de modo a dilapidar o seu patrimônio a ponto de colocar em xeque o resultado final perseguido no incidente*" (f. 08), não havendo, por isso, o perigo de *dano irreparável* ou de *difícil reparação* a amparar o pedido liminar;

 *e*) é evidente o "*perigo de reverso ao agravante*", já que este pode "*ver tolhido o mais elementar direito decorrente da capacidade civil por anos a fio, até que, julgado o incidente de origem, sejam rejeitadas todas as distorcidas premissas que embasam a causa fabricada pelas agravadas*" (f. 08-09);

 *f*) que, por tudo que expôs,  inexistem nos autos "*elementos que evidenciem a probabilidade do direito e o perigo de dano ou o risco ao resultado útil do processo*", como exige  o  **art**. **300**,  do **CPC**, para que "*se defira tutela de urgência em uma das formas previstas no art. 301*";

 Requereu, assim, a a **antecipação da tutela recursal**, para que "*se libere, de imediato, a gravosa constrição sofrida pelo recorrente, senão em sua integralidade, ao menos para que se afaste o bloqueio da 'percepção de rendimentos e frutos' oriundos dos bens titulados pelo agravante*"; e , no mérito, o  provimento do recurso, para afastar "*por completo a constrição que recai sobre os bens do agravante*" (f. 01-30).

 **É o relatório**.

 **Decido**.

 A regra é a de que o *Agravo de Instrumento* não possui efeito suspensivo (**art**. **995**, *caput*, do  **CPC/15**).

 Porém, o **art**. **995**, **parágrafo único**, do **CPC/15** autoriza, excepcionalmente, a concessão de **efeito suspensivo** até o pronunciamento definitivo do Órgão Colegiado,  desde que presente a probabilidade  de  provimento  do recurso (*fumus boni iuris*) e  o  risco de

Este documento é cópia do original, assinado digitalmente por PAULO ALBERTO DE OLIVEIRA, liberado nos autos em 23/10/2020 às 19:01 .
Para conferir o original, acesse o site https://esaj.tjms.jus.br/pastadigital/sgcr/abrirConferenciaDocumento.do, informe o processo 1413886-76.2020.8.12.0000 e código 3694634.

Poder Judiciário

*Tribunal de Justiça de Mato Grosso do Sul*

*Gabinete do Desembargador  Paulo Alberto de Oliveira*

dano grave,  de difícil  ou  impossível reparação (*periculum in mora*):

> "**Art. 995**.  Os recursos não impedem a eficácia da decisão, salvo disposição legal ou decisão judicial em sentido diverso.
>
> **Parágrafo único**.  A eficácia da decisão recorrida poderá ser suspensa por decisão do relator, se da imediata produção de seus efeitos houver risco de dano grave, de difícil ou impossível reparação, e ficar demonstrada a probabilidade de provimento do recurso".

Por sua vez, o **art**. **1**.**019**, **inc**. **I**, do **Código de Processo Civil/2015**, a par de também possibilitar a atribuição de **efeito suspensivo** ao agravo de instrumento, ainda previu a possibilidade de deferimento de **antecipação dos efeitos da tutela recursal**:

> "**Art. 1.019**.  Recebido o agravo de instrumento no tribunal e distribuído imediatamente, se não for o caso de aplicação do art. 932, incisos III e IV, o relator, no prazo de 5 (cinco) dias:
>
> **I -** poderá atribuir efeito suspensivo ao recurso ou deferir, em antecipação de tutela, total ou parcialmente, a pretensão recursal, comunicando ao juiz sua decisão;
> [...]".

A  propósito,  o  **art**. **299**,  **parágrafo  único**, c/c **art**. **932**, **inc**. **II**, do **Código de Processo Civil/2015**, também autorizam o  Relator a  **antecipar os  efeitos  da  tutela recursal**, desde  que  presentes  os  requisitos  do *fumus boni juris*  e  do  *periculum in mora:*

> "**Art. 299**.  A tutela provisória será requerida ao juízo da causa e, quando antecedente, ao juízo competente para conhecer do pedido principal.
> **Parágrafo único**.  Ressalvada disposição especial, na ação de competência originária de tribunal e nos recursos a tutela provisória será requerida ao órgão jurisdicional competente para apreciar o mérito.
>
> Art. 932.  Incumbe ao relator:
> [...]
> **II -** apreciar o pedido de tutela provisória nos recursos e nos processos

Este documento é cópia do original, assinado digitalmente por PAULO ALBERTO DE OLIVEIRA, liberado nos autos em 23/10/2020 às 19:01 .
Para conferir o original, acesse o site https://esaj.tjms.jus.br/pastadigital/sgcr/abrirConferenciaDocumento.do, informe o processo 1413886-76.2020.8.12.0000 e código 3694634.



*Poder Judiciário*
*Tribunal de Justiça de Mato Grosso do Sul*
*Gabinete do Desembargador   Paulo Alberto de Oliveira*

de competência originária do tribunal;"

Na espécie, num juízo perfunctório, à guisa de maiores aprofundamentos no campo fático acerca da *real* e *efetiva* ocorrência dos atos fraudulentos imputados ao agravante – cuja tarefa, por certo, demandará análise pormenorizada,  a ser feita em momento oportuno (*v.g.*, julgamento do mérito do presente recurso e/ou julgamento final do *Incidente de Desconsideração de Personalidade Jurídica   com   Pedido de Extensão dos Efeitos da Falência*) –, impõe-se, em razão do momento processual em que se analisa a controvérsia, ponderar que, ao contrário do que sustenta o agravante, não seriam *atos pontuais* de sua autoria que teriam causado prejuízo à **Massa Falida**  do  "**Grupo São Fernando**".

Ao contrário, <u>diversos</u>  são os fatos imputados na inicial, especificamente ao agravante **Fernando de Barros Bumlai** (*parágrafos 47 a 144* – f. 15-42,  na origem), que teriam viabilizado  o uso de recursos do "**Grupo São Fernando**", em especial oriundos da falida **São Fernando Açúcar e Álcool LTDA**, em favor e em benefício da *Família Bumlai*, sempre, ao que parece, com a coordenação e participação direta também do patriarca *José Carlos Bumlai*, que sequer integraria também o quadro societário das empresas componentes do grupo falido, mas que, **assim como o agravante** (que figura como réu no incidente na condição de "*sócio oculto*"),  teriam  levado a efeito a prática de *diversos atos*, seja diretamente, seja indiretamente (por meio de pessoas jurídicas das quais integram o quadro societário), que, ao fim e ao cabo, viabilizaram a criação de um prejuízo milionário ao grupo econômico que foi declarado falido, em aparente prática de *confusão patrimonial*  e de eventual uso abusivo e doloso da *personalidade de pessoas jurídicas*.

Nesse sentido,  extraem-se da inicial  os seguintes fatos, que teriam a *participação direta* do agravante,  ainda que como integrante do quadro societário de outras

Este documento é cópia do original, assinado digitalmente por PAULO ALBERTO DE OLIVEIRA, liberado nos autos em 23/10/2020 às 19:01 .
Para conferir o original, acesse o site https://esaj.tjms.jus.br/pastadigital/sgcr/abrirConferenciaDocumento.do, informe o processo 1413886-76.2020.8.12.0000 e código 3694634.



*Poder Judiciário*
*Tribunal de Justiça de Mato Grosso do Sul*
*Gabinete do Desembargador  Paulo Alberto de Oliveira*

pessoas jurídicas, mas que, como dito, ao fim e ao cabo, acabaram, ao que parece, por

viabilizar intenso e reiterado prejuízo ao patrimônio do  "***Grupo São Fernando***", *verbis*:

> "De modo análogo, Cristiane Bumlai e **Fernando Bumlai** ostentaram semelhante relação de promiscuidade com o Grupo São Fernando. Os mesmos, na condição de **únicos sócios** da Agropecuária JB, formalizaram com o Grupo São Fernando o negócio fraudulento pelo qual os cofres deste último custearam a Aeronave de luxo adquirida para o passeio da família (Anexo 10). Receberam, como visto, milhões de reais por intermédio da Agropecuária JB. Passaram a funcionar, pouco antes do ajuizamento da recuperação judicial do Grupo São Fernando, como **interpostas pessoas** do grupo familiar (Anexo 09), concentrando o patrimônio familiar para isentá-los da responsabilidade pelos malfeitos no Grupo São Fernando. **O patrimônio de ambos passou a se confundir com o da Família Bumlai, que, por seu turno, se confundia com o do Grupo São Fernando**. Ante tamanha confusão patrimonial, Cristiane e **Fernando Bumlai também assumiram a posição de "sócios ocultos" do Grupo São Fernando**, contribuindo ativamente nos atos de dilapidação patrimonial já pormenorizados acima.
>
> [...]
>
> Em suma, os membros da Família Bumlai, tanto aqueles que constam nos documentos societários (Mauricio Bumlai e Guilherme Bumlai), quanto aqueles que atuavam de forma "oculta" (José Carlos Bumlai, Cristiane Bumlai, e Fernando Bumlai), empreenderam atos de abuso de personalidade que culminaram na bancarrota do Grupo São Fernando; e, dessa forma, devem ser responsabilizados." (f. 45-46, na origem)

Conforme precedente do **STJ**, uma vez "*caracterizada a confusão patrimonial entre sociedades formalmente distintas, é legítima a desconsideração da personalidade jurídica da falida **para que os efeitos do decreto falencial alcancem as demais***

Este documento é cópia do original, assinado digitalmente por PAULO ALBERTO DE OLIVEIRA, liberado nos autos em 23/10/2020 às 19:01 .
Para conferir o original, acesse o site https://esaj.tjms.jus.br/pastadigital/sgcr/abrirConferenciaDocumento.do, informe o processo 1413886-76.2020.8.12.0000 e código 3694634.



*Poder Judiciário*
*Tribunal de Justiça de Mato Grosso do Sul*
*Gabinete do Desembargador  Paulo Alberto de Oliveira*

sociedades envolvidas" (**RMS 16.105/GO**, Rel. **Min. Nancy Andrighi**, Terceira Turma, DJ 22/09/2003, p. 314).

Com efeito, para além da possibilidade de extensão da falência para as *pessoas jurídicas* que, em  princípio, aparentam ter concorrido para a prática reiterada de atos lesivos ao patrimônio do grupo econômico-empresarial  falido  e aos seus respectivos credores, também é possível, em tese, a extensão de tais efeitos aos sócios (*pessoas físicas*) destas pessoas jurídicas  incluídas  na  falência, se constatada a ocorrência de *abuso* caracterizado pelo *desvio de finalidade* (ato intencional dos sócios com intuito de fraudar terceiros) ou *confusão patrimonial* (**REsp 1.686.162/SP**, Rel. **Min. Ricardo Villas Bôas Cueva**, Terceira Turma, DJe 03/12/2019).

Nesse sentido, prevê o **art. 50**, do **CC/02**, que, em caso de *abuso da personalidade jurídica*, caracterizado pelo *desvio de finalidade* ou pela *confusão patrimonial*, poderá o Juiz, a requerimento, desconsiderar a *personalidade jurídica* para que os efeitos de certas e determinadas relações de obrigações **sejam estendidos aos bens particulares de administradores** ou de *sócios* **da pessoa jurídica** beneficiados direta ou indiretamente pelo abuso.

Segundo o **§ 1º**, do referido **art. 50**, o *desvio de finalidade* é a utilização da pessoa jurídica **com o propósito de lesar credores** e para a prática de atos ilícitos de qualquer natureza;  situação  esta,  ao que parece,  ocorrida na espécie, quando o agravante, como sócio de pessoas   jurídicas distintas do "*Grupo São Fernando*", com este entabulou diversos negócios jurídicos, flagrantemente lesivos a este, mas que teriam beneficiado diretamente, **tanto o agravante**, quanto seus irmãos e pai (*Família Bumlai*).

Por sua vez, segundo o **§ 2º**, do **art. 50**, tem-se a *confusão patrimonial* pela **ausência de separação de fato entre os patrimônios**, caracterizada pelo:  *i*) cumprimento

Este documento é cópia do original, assinado digitalmente por PAULO ALBERTO DE OLIVEIRA, liberado nos autos em 23/10/2020 às 19:01 .
Para conferir o original, acesse o site https://esaj.tjms.jus.br/pastadigital/sgcr/abrirConferenciaDocumento.do, informe o processo 1413886-76.2020.8.12.0000 e código 3694634.



*Poder Judiciário*
*Tribunal de Justiça de Mato Grosso do Sul*
*Gabinete do Desembargador  Paulo Alberto de Oliveira*

repetitivo pela sociedade de obrigações do sócio ou do administrador ou vice-versa; ii) transferência de ativos ou de passivos sem efetivas contraprestações, exceto os de valor proporcionalmente insignificante; e   *iii*) outros atos de descumprimento da autonomia patrimonial, sendo possível também, segundo prevê o **§ 3º**, a possibilidade de aplicação (inversa) da extensão das obrigações de sócios ou de administradores à pessoa jurídica, na hipótese em que se verificar que a pessoa jurídica se vale da pessoa física para se furtar de suas obrigações com  credores.

No caso dos autos, pelo simples relato da inicial na origem, que veio acompanhada de **farto acervo probatório-documental** (f. 68-1.110),  é  possível se antever um quadro grave e atípico;  tanto de *abuso da personalidade jurídica* de diversas *pessoas jurídicas*, quanto de *confusão patrimonial*  das várias *pessoas físicas*  e  *jurídicas* envolvidas nas negociações, bastante anômalas,  caracterizando  um verdadeiro imbróglio,  que embasaram o pedido de *desconsideração de personalidade jurídica com pedido de extensão dos efeitos da falência.*

Assim, para efeito de análise do pedido liminar, cotejados, *de um lado*, a complexidade do caso e os sérios efeitos de uma possível liberação patrimonial já neste momento incipiente, e, *do outro*, a necessidade de  se assegurar, antes da tomada de qualquer decisão com efeitos possivelmente irreversíveis,  a  perfectibilização  de contraditório prévio  e efetivo em favor dos requerentes-agravados *Massa Falida de São Fernando Açúcar e Álcool LTDA*,   *Massa Falida de São Fernando Energia I Ltda*, *Massa Falida de São Fernando Energia II LTDA*,   *Massa Falida De São Marcos Energia e Participações LTDA*  e *Massa Falida de São Pio Empreendimentos e Participações LTDA*, **impõe-se**  a  **manutenção da indisponibilidade**  de bens decretada em desfavor do agravante   *Fernando de Barros Bumlai*, **salvo**  no  tocante  à  administração  e

Este documento é cópia do original, assinado digitalmente por PAULO ALBERTO DE OLIVEIRA, liberado nos autos em 23/10/2020 às 19:01 .
Para conferir o original, acesse o site https://esaj.tjms.jus.br/pastadigital/sgcr/abrirConferenciaDocumento.do, informe o processo 1413886-76.2020.8.12.0000 e código 3694634.



*Poder Judiciário*
*Tribunal de Justiça de Mato Grosso do Sul*
*Gabinete do Desembargador    Paulo Alberto de Oliveira*

uso/disposição  dos **frutos** de seu patrimônio, cuja restrição total poderia ensejar riscos à manutenção de sua sobrevivência digna, bem como de sua família.

   **Diante do exposto**, **DEFIRO**, **apenas EM PARTE**, o requerimento de *antecipação da tutela recursal*, unicamente para ressalvar, do decreto de indisponibilidade de bens determinado pela decisão agravada, a **administração e uso/disposição dos frutos do patrimônio** do agravante, cuja restrição total poderia ensejar riscos à manutenção de sua sobrevivência digna, bem como de sua família.

   **Dê-se ciência <u>imediata</u> ao Juiz da causa**.

   Intime-se o(a,s) agravado(a,s), nos termos do **art**. **1.019**, **inc**. **II**, do **Código de Processo Civil/15**, para que responda(m) ao presente recurso no prazo de quinze (15) dias, facultando-lhe(s) juntar a documentação que entender necessária.

   Em seguida, colha-se o parecer da *Procuradoria-Geral de Justiça*.

   **Intimem-se**.

   Campo Grande-MS, 23 de outubro de 2020.

   **Des**. **Paulo Alberto de Oliveira**
Relator

Este documento é cópia do original, assinado digitalmente por PAULO ALBERTO DE OLIVEIRA, liberado nos autos em 23/10/2020 às 19:01.
Para conferir o original, acesse o site https://esaj.tjms.jus.br/pastadigital/sgcr/abrirConferenciaDocumento.do, informe o processo 1413886-76.2020.8.12.0000 e código 3694634.

*EXHIBIT "4"*

p.

*Judiciary Branch*

**Mato Grosso do Sul State Court of Appeals**

**Chambers of Judge Paulo Alberto de Oliveira**

**Interlocutory Appeal No. 1415037-77.2020.8.12.0000**

Appellant(s): Cristiane de Barros Costa Marques Bumlai Pagnoncelli

Counselor(s): Rodolfo Fontana Boeira da Silva, Ricardo Cholbi Tepedino, Bruno Poppa, Jose Eduardo Tavanti Junior and Sofia Saad Gonçalves

Appellee(s): Bankruptcy Estate of São Fernando Açúcar e Álcool LTDA, Bankruptcy Estate of São Fernando Energia I Ltda, Bankruptcy Estate of São Fernando Energia II LTDA, Bankruptcy Estate of São Marcos Energia e Participações LTDA and Bankruptcy Estate of São Pio Empreendimentos e Participações LTDA

Counselor(s): Octaviano Bazilio Duarte Filho and Henrique Rodrigues Forssell

**DECISION**

*Case records received on November 16, 2020*

An *Interlocutory Appeal* was filed by **Cristiane de Barros Costa Marques Bumlai Pagnoncelli** against an order issued in **case No. 0810455-77.2020.8.12.0002** by the 5th Civil Court of the Judicial District of Dourados, State of Mato Grosso do Sul (MS), which, in a *Procedural Incident Motion for Piercing of Corporate Veil with Request to Extend the Effects of Bankruptcy*, <u>granted</u> a request for *provisional relief* submitted by the **Bankruptcy Estate of São Fernando Açúcar e Álcool LTDA.**, **Bankruptcy Estate of São Fernando Energia I Ltda.**, **Bankruptcy Estate of São Fernando Energia II LTDA.**, **Bankruptcy Estate of São Marcos Energia e Participações LTDA.**, and **Bankruptcy Estate of São Pio Empreendimentos e Participações LTDA.** to:

*a*) Piercing the corporate veil against **Agropecuária CF Ltda.**, **Cristiane de Barros Costa Marques Bumlai Pagnonceli**, **Donex Participações e Empreendimentos OSJC LTDA.**, **Fernando de Barros Bumlai**, **Guilherme de Barros Costa Marques Bumlai**, **José Carlos da Costa Marques Bumlai**, and **Maurício de Barros Bumlai**; and

*b*) Order the attachment of assets and rights of the respondents, in Brazil and abroad, by enjoining any *transfer*, *receipt of income and proceeds*, or *any other manner of disposal of their assets/rights* until the limit of the bankruptcy liabilities, i.e. R$2,202,722.644.51 – p. 1.081-1.092 of the lower court case records.

In a subsequent order on a *request for reconsideration* submitted by the claimants, the trial Court additionally ordered:

*a*) The stay of the auction of any assets of the debtors in **Case No. 1128168-72.2015.8.**26.0100 with the 16th Civil Court of São Paulo, SP, including a rural property known as *Fazenda São Marcos*, because, by force of an order issued on a request for provisional relief, it may be included in the list of assets of *Debtor São Fernando Açúcar e Álcool Ltda.*; and

*b*) The freezing of all financial assets held by the respondents abroad, particularly in the *Bahamas* and in the *United States of America*, up to an amount of R$2,202,722,644.51 (p. 1.11-1.114 of the lower court case records).

The appellant argues, in summary, that:

*a*) She has no relationship whatsoever with the "*São Fernando Group*," of which she has never "*been a partner, whether ostensible or dormant, much less a manager*" (p. 05);

*b*) The losses purportedly caused by the appellant as a result of the alleged acts in which she participated reach an amount of "*approximately R$37.5 million*," i.e. "*merely 1.7% of the bankruptcy liabilities, which exceed 2.1 billion Reais*," which circumstance is sufficient in itself to rule out "*any verisimilitude of the allegation of commingling of assets which could cause losses to the bankruptcy estate or have any effect on the insolvency*" (p. 05);

*c*) There is a "*great danger of reverse damage to the appellant, which as hereby noted, is being even prevented from complying with her ordinary financial duties and continuing her business, which are necessary for her support and the support of her mainly*" (p. 06), this because the appealed order expressly prevented "*receipt, by the appellant, of the proceeds and revenue originating from her personal assets, which include those amounts she receives from third parties for the sale of sugarcane planted on private land and of which [...] she derives her support*" (p. 06);

d) She reiterated that "*the impossibility of receiving the funds originating from the sale of sugarcane owned by her will cause serious and non-recoverable damage to the appellant herself and to third parties, including to her service providers, creating an actual 'snowball'*" (p. 22);

e) Finally, she noted that there is no "*damage or risk that justifies that the appellant is attempting to exhaust her assets to the point of jeopardizing the final outcome sought in the procedural incident motion*" (p. 19);

Accordingly, she requested **provisional appellate relief** in order to "*immediately release the grave lien suffered by the appellant, either fully or at least by staying the freezing on the 'receipt of income and proceeds' from assets owned by the appellant*," (p. 24) and, in the merits, the granting of the appeal to "*fully remove the attachment on the assets of the appellant*" (p. 01-25).

**This is my report.**

**I proceed to rule.**

As a rule, an *Interlocutory Appeal* does not operate as supersedeas (**main provision** of **art. 995** of the **2015 Code of Civil Procedure (CPC/15)**).

However, **art. 995**, **sole paragraph** of the **2015 Code of Civil Procedure (CPC/15)** exceptionally authorizes the granting of **supersedeas effect** until the Appellate Court renders its final decision, subject to the likelihood of success of the appeal (*fumus boni iuris*) and to the risk of severe and difficult-to-repair or irreparable harm (*periculum in mora*):

"**Art. 995**. Appeals do not stay the effectiveness of the decision, unless otherwise set forth in law or in a court decision.

**Sole paragraph**. The effectiveness of the decision under appeal may be stayed by decision of the reporting judge when the immediate effects thereof could pose a risk of severe and difficult-to-repair or irreparable harm and there is demonstration of the likelihood of success of the appeal."

In turn, **art. 1.019**, **item I** of the **2015 Code of Civil Procedure**, in addition to also allowing the granting of **supersedeas effect** to an interlocutory appeal, also established the possibility of granting **provisional appellate relief**:

"**Art. 1.019**. After the interlocutory appeal is filed with the appellate court and immediately assigned, except in the event of application of art. 932, items III and IV, the reporting judge, within five (5) days:

**I** – May grant supersedeas effect to the appeal or grant, by way of provisional relief, wholly or in part, the relief sought in the appeal and notify his decision to the trial court;

[...]"

By the way, **art. 299**, **sole paragraph**, together with **art. 932**, **item II**, of the **2015 Code of Civil Procedure** also authorize the Reporting Judge to **grant provisional appellate relief**, subject to satisfaction of the *fumus boni juris* and *periculum in mora* requirements:

"**Art. 299**. Provisional relief shall be requested to the trial court and, when precedent, to the court that

has competent jurisdiction over the primary claim.

**Sole paragraph**. Subject to any special provision, in cases under the original jurisdiction of the appellate court and in appeals, provisional relief shall be requested to the trial body that has competent jurisdiction over the merits.

**Art. 932.** The reporting judge shall:

[…]

**II** – Review the request for provisional relief in appeals and in cases under the original jurisdiction of the appellate court."

In the case at hand, in a superficial review, subject to a more in-depth examination of the facts regarding the *real* and *actual* occurrence of the fraudulent acts attributed to the appellant – a task which will certainly require a deep and detailed analysis to be conducted in due time (e.g. in the trial of the merits of this appeal and/or final trial of the *Procedural Incident Motion for Piercing of Corporate Veil with Request to Extend the Effects of Bankruptcy*) –, the procedural time in which the dispute is being analyzed imposes the finding that, contrary to what the appellant alleges, the losses purportedly caused to the **Bankruptcy Estate** of the "**São Fernando Group**" where not caused by *specific acts* of her.

On the contrary, there are underline facts stated in the complaint, specifically those attributed to appellant **Cristiane de Barros Costa Marques Bumlai Pagnoncelli** (*paragraphs 47-144* – p. 15-42 of the lower court case records), which purportedly enabled the use of assets of the "**São Fernando Group**," particularly of debtor **São Fernando Açúcar e Álcool LTDA.**, in favor and for the benefit of the *Bumlai Family*, always, it seems, under the coordination and with direct participation of patriarch *José Carlos Bumlai*, who is not even a partner of the companies belonging to the debtor group as well, but, **just like the appellant** (who is a respondent in the procedural incident motion as a "*dormant partner*"), purportedly perpetrated, whether directly or indirectly (through the legal entities of which she is a partner), *several acts* that ultimately caused huge losses to the bankrupt business group, apparently qualifying as a *commingling of assets* and abusive and willful use of the *corporate veil of legal entities*.

In this regard, the following facts are extracted from the complaint, in which the appellant *directly participated*, even if only as a partner of other legal entities, but which, as stated above, ultimately appear to have caused severe and reiterated losses to the assets of the "**São Fernando Group**":

"Likewise, Cristiane Bumlai and **Fernando Bumlai** ostensibly had the same promiscuous relationship with the São Fernando Group. The same, as **sole partners** of Agropecuária JB, formalized with the São Fernando Group the fraudulent transaction under which the coffers of the latter funded the luxury Aircraft acquired for the family's leisure travels (Exhibit 10). They received, as seen above, millions of *Reais* through Agropecuária JB. Shortly before the filing for judicial reorganization of the São Fernando Group, they began to operate as **intermediaries** of the family (Exhibit 09) by concentrating the family's assets in order to exempt them from liability for the wrongdoings in the São Fernando Group. **The assets of both of them began to commingle with those of the Bumlai Family, which, in turn, were also commingled with those of the São Fernando Group**. Given such commingling of assets, Cristiane and **Fernando Bumlai also took the position of "dormant partners" of the São Fernando Group** and actively contributed to the acts of exhaustion of assets already detailed above.

[…]

In summary, the members of the Bumlai Family, including both those who appeared in the corporate documents (i.e. Mauricio Bumlai and Guilherme Bumlai) and those who acted as "dormant" partners i.e. José Carlos Bumlai, **Cristiane Bumlai**, and Fernando Bumlai), perpetrated acts of abuse of the corporate entity which culminated with the bankruptcy of the São Fernando Group and, accordingly, should be held liable" (p. 45-46 of the lower court case records).

According to a precedent of the **Superior Court of Justice (STJ)**, upon "*evidence of the commingling of assets between formally separate companies, the corporate veil of the debtor may be pierced **in order to extend the***

*effects of its bankruptcy to the other companies involved*' (**RMS 16.105/GO**, **Reporting Justice: Nancy Andrighi**, Third Panel, *Court Register* (*DJ*), September 22, 2003, p. 314).

Indeed, in addition to the possibility of extending the effects of bankruptcy to *legal entities* that, in principle, appear to have assisted in the reiterated perpetration of acts harmful to the assets of the bankrupt business group and to their respective creditors, it is also possible, in theory, to extend such effects to the (*individual*) partners of such legal entities included in the bankruptcy upon evidence of *abuse* consisting of *deviation from purpose* (i.e. an intentional act of the partners with the purpose of defrauding third parties) or *commingling of assets* (ST], **REsp 1.686.162/SP**, **Reporting Justice: Ricardo Villas Bôas Cueva**, Third Panel, *Electronic Court Register* (*DJe*), December 3, 2019).

In this regard, **art. 50** of the **2002 Civil Code (CC/02)** provides that, in the event of **abuse of the corporate entity** consisting of **deviation from purpose** or **commingling of assets**, the Court may, upon request, pierce the *corporate veil* so that the effects of **certain** obligational relationships **be extended to the individual assets of the *managers* or *partners* of the legal entity** who directly or indirectly benefitted from such abuse.

In accordance with **paragraph 1** of the abovementioned **art. 50**, deviation from purpose is the use of the legal entity **for the purpose of defrauding creditors** and perpetrating wrongdoings of any nature, which apparently was the case here, when the appellant, as partner of separate legal entities belonging to the "***São Fernando Group*,**" entered into several legal transactions with the latter with were flagrantly harmful to it, but also directly benefitted **the appellant**, her siblings, and her father (i.e. the *Bumlai Family*).

In turn, in accordance with **paragraph 2** of **art. 50**, the **commingling of assets** is demonstrated by the **lack of separation between the respective assets of the parties**, characterized by ***i)*** repeated performance by the company of obligations of the partner or manager, or vice versa, ii) transfer of assets or liabilities without actual consideration, except of a proportionally insignificant amount, and ***iii)*** other acts violating the separation between the respective assets. In accordance with **paragraph 3**, the (reverse) application of the extension of the obligations of partners or managers to the legal entity is also possible, when it is found that the legal entity is using individuals to evade its obligations to creditors.

In the case at hand, based on the mere statement of the facts in the complaint submitted to the trial court, which was supported by **copious documentary evidence** (p. 68-1.110), it is possible to glimpse a severe and atypical scenario consisting of **abuse of the corporate entity** of several **legal entities** and **commingling of assets** of several **individuals** and **legal entities** involved in quite anomalous transactions, characterizing a real imbroglio, which based the request for *piercing of the corporate veil and extension of the effects of bankruptcy*.

Thus, for purposes of review of the request for preliminary injunction, considering, *on one hand*, the complexity of the case and the severe effects of the potential release of the assets already at this early moment, and, *on the other hand*, the need to ensure, before making any decision with potentially irreversible effects, prior and effective adversary proceeding in favor of respondents/appellees, i.e. the **Bankruptcy Estate of São Fernando Açúcar e Álcool LTDA.**, **Bankruptcy Estate of São Fernando Energia I Ltda.**, **Bankruptcy Estate of São Fernando Energia II LTDA.**, **Bankruptcy Estate of São Marcos Energia e Participações LTDA.**, and **Bankruptcy Estate of São Pio Empreendimentos e Participações LTDA.**, that it is **necessary** to **uphold the freezing** of assets ordered against appellant **Cristiane de Barros Costa Marques Bumlai Pagnoncelli**, **except** with regard to the management and use/disposal of the **proceeds** from her assets (including amounts originating from leases, such as the lease agreed with *Raízen Energia S/A* – p. 06), a total freezing of which could pose a risk to her and her family's proper support.

**In view of the foregoing, I GRANT, but merely IN PART**, the request for *provisional appellate relief* solely to exclude, from the order of freezing of assets under appeal, the **management and use/disposal of the proceeds from the assets** of the appellant, a total freezing of which could pose a

risk to her and her family's proper support.

**Notify the Court <u>immediately</u> of the foregoing.**

Notify the appellee(s) of the foregoing, in accordance with the provisions of **art. 1.019**, **item II** of the **2015 Code of Civil Procedure**, so that they may submit an appellee's brief within fifteen (15) days, it being understood that they may submit any documentation they may find necessary.

Afterwards, send this to the *Office of the State Attorney General* to submit its opinion.

**Notify.**

Campo Grande, MS, November 17, 2020.

**J. Paulo Alberto de Oliveira**

Reporting Judge

This document is a copy of the original digitally signed by PAULO ALBERTO DE OLIVEIRA and entered in the case records on November 17, 2020 at 6:42 P.M.

To view the original, access https://esaj.tjms.jus.br/pastadigital/sgcr/abrirConferenciaDocumento.do and enter case number 1415037-77.2020.8.12.0000 and code 37564FE.

pgi/pas/262406.doc



*Poder Judiciário*

*Tribunal de Justiça de Mato Grosso do Sul*

*Gabinete do Desembargador Paulo Alberto de Oliveira*

Agravo de Instrumento 1415037-77.2020.8.12.0000

| | |
|---|---|
| **A**gravante(s): | Cristiane de Barros Costa Marques Bumlai Pagnoncelli |
| Advogado(a,s): | Rodolfo Fontana Boeira da Silva, Ricardo Cholbi Tepedino, Bruno Poppa, Jose Eduardo Tavanti Junior e Sofia Saad Gonçalves |
| Agravado(a,s): | Massa Falida de São Fernando Açúcar e Álcool LTDA,    Massa Falida de São Fernando Energia I Ltda,    Massa Falida de São Fernando Energia II LTDA, Massa Falida De São Marcos Energia e Participações LTDA  e  Massa Falida de São Pio Empreendimentos e Participações LTDA |
| Advogado(a,s): | Octaviano Bazilio Duarte Filho e Henrique Rodrigues Forssell |

**DECISÃO**

*Autos recebidos em carga em 16/11/2020*

Trata-se de *Agravo de Instrumento* interposto por **Cristiane de Barros Costa Marques Bumlai Pagnoncelli** contra decisão interlocutória proferida nos **autos nº 0810455-77**.**2020**.**8**.**12**.**0002** pelo Juiz da 5ª Vara Cível da Comarca de Dourados-MS, que, em *Incidente de Desconsideração de Personalidade Jurídica com Pedido de Extensão dos Efeitos da Falência*, deferiu requerimento de *tutela provisória* formulado pela **Massa Falida de São Fernando Açúcar e Álcool LTDA**,    **Massa Falida de São Fernando Energia I Ltda**, **Massa Falida de São Fernando Energia II LTDA**,   **Massa Falida De São Marcos Energia e Participações LTDA**  e  **Massa Falida de São Pio Empreendimentos e Participações LTDA**, para:

*a*) desconsiderar a personalidade jurídica em desfavor de *Agropecuária CF Ltda*, **Cristiane de Barros Costa Marques Bumlai Pagnonceli**,    *Donex Participações e Empreendimentos OSJC LTDA*,    *Fernando de Barros Bumlai*,    *Guilherme de Barros Costa Marques Bumlai*,    *José Carlos da Costa Marques Bumlai*  e   *Maurício de Barros Bumlai*;

Este documento é cópia do original, assinado digitalmente por PAULO ALBERTO DE OLIVEIRA, liberado nos autos em 17/11/2020 às 18:42 . Para conferir o original, acesse o site https://esaj.tjms.jus.br/pastadigital/sgcr/abrirConferenciaDocumento.do, informe o processo 1415037-77.2020.8.12.0000 e código 37564FE.



*Poder Judiciário*
*Tribunal de Justiça de Mato Grosso do Sul*
*Gabinete do Desembargador Paulo Alberto de Oliveira*

*b*) determinar o <u>arresto de bens e direitos</u>  dos requeridos, no Brasil e no exterior, para vedar a *transferência, percepção de rendimentos e frutos* ou *qualquer outra forma de disposição   dos bens/direitos patrimoniais* até o limite do passivo falimentar   de R$ 2.202.722.644,51 – f. 1.081-1.092, na origem.

Em decisão subsequente, que atendeu *pedido de reconsideração* dos autores, o Juízo de origem determinou, ainda:

*a*) a <u>suspensão da praça</u> de quaisquer bens dos executados no **Processo nº 1128168-72**.**2015**.**8**.26.0100, da 16ª Vara Cível de São Paulo-SP, inclusive do imóvel rural denominado *Fazenda São Marco*s, pois, por decisão em tutela de urgência pode ser incluída no rol de bens da *Falida São Fernando Açúcar e Álcool Ltda*;

*b*) o <u>bloqueio de todos  ativos financeiros dos réus no exterior</u>, principalmente nas *Bahamas* e  *Estados Unidos da América*, até o valor de R$ 2.202.722.644,51 (f. 1.11-1.114, na origem).

A agravante sustenta, em suma, que:

*a*) não guarda relação alguma com o "*Grupo São Fernando*", do qual jamais "*foi sócia, escritural ou oculta, muito menos administradora*" (f. 05);

*b*) aos prejuízos que supostamente teriam sido causados pela agravante, decorrentes dos alegados atos dos quais teria participado, alcançariam o valor de "*cerca  de R$ 37,5 milhões*";  ou seja, de "*meros 1,7% do passivo inscrito no concurso, de mais de 2,1 bilhões de reais*",  circunstância que afastaria, por si só, "*a verossimilhança da alegação de confusão patrimonial que fosse apta a gerar danos à massa falida ou ter qualquer implicância na insolvência*" (f. 05);

*c*) há um "*exuberante perigo de dano reverso à agravante, que, como desde logo*

Este documento é cópia do original, assinado digitalmente por PAULO ALBERTO DE OLIVEIRA, liberado nos autos em 17/11/2020 às 18:42.
Para conferir o original, acesse o site https://esaj.tjms.jus.br/pastadigital/sgcr/abrirConferenciaDocumento.do, informe o processo 1415037-77.2020.8.12.0000 e código 37564FE.



*Poder Judiciário*
*Tribunal de Justiça de Mato Grosso do Sul*
*Gabinete do Desembargador   Paulo Alberto de Oliveira*

se registra, está sendo impedida inclusive de cumprir com suas obrigações financeiras ordinárias e dar andamento a seus negócios, necessários para a sua subsistência e de seus familiares" (f. 06), isso  porque  a  decisão agravada expressamente impediu "*a percepção, pela agravante, dos frutos e rendimentos oriundos de seu patrimônio pessoal, no que se incluem aqueles valores que recebe de terceiros pela venda de cana-de-açúcar cultivada em suas terras particulares e dos quais [...] depende a sua subsistência*" (f. 06);

   ***d***) reiterou que "*a impossibilidade de receber os recursos oriundos da venda da cana que é de sua propriedade ocasionará prejuízos graves e irreparáveis à agravante e mesmo a terceiros, inclusive aos seus prestadores de serviço, constituindo uma verdadeira  'bola de neve'*" (f. 22);

   ***e***) ressaltou, por fim, que inexiste "*perigo ou risco a justificar que a recorrente estaria agindo de modo a dilapidar o seu patrimônio a ponto de colocar em xeque o resultado final perseguido no incidente*" (f. 19);

   Requereu, assim, a a **antecipação da tutela recursal**, para que "*se libere, de imediato, a gravosa constrição sofrida pelo recorrente, senão em sua integralidade, ao menos para que se afaste o bloqueio da 'percepção de rendimentos e frutos' oriundos dos bens titulados*" pela agravante (f. 24); e , no mérito, o provimento do recurso, para  afastar "*por completo a constrição que recai sobre os bens da agravante*" (f. 01-25).

   **É o relatório**.

   **Decido**.

   A regra é a de que o *Agravo de Instrumento* não possui efeito suspensivo (**art**. **995**, *caput*, do **CPC/15**).

   Porém, o **art**. **995**, **parágrafo único**, do **CPC/15** autoriza, excepcionalmente, a

Este documento é cópia do original, assinado digitalmente por PAULO ALBERTO DE OLIVEIRA, liberado nos autos em 17/11/2020 às 18:42 .
Para conferir o original, acesse o site https://esaj.tjms.jus.br/pastadigital/sgcr/abrirConferenciaDocumento.do, informe o processo 1415037-77.2020.8.12.0000 e código 37564FE.



*Poder Judiciário*
*Tribunal de Justiça de Mato Grosso do Sul*
*Gabinete do Desembargador   Paulo Alberto de Oliveira*

concessão de **efeito suspensivo** até o pronunciamento definitivo do Órgão Colegiado,  desde que  presente  a  probabilidade  de  provimento  do  recurso (*fumus boni iuris*)  e  o  risco  de dano grave,  de difícil  ou  impossível reparação (*periculum in mora*):

> "**Art**. **995**. Os recursos não impedem a eficácia da decisão, salvo disposição legal ou decisão judicial em sentido diverso.
>
> **Parágrafo único**. A eficácia da decisão recorrida poderá ser suspensa por decisão do relator, se da <u>imediata</u> produção de seus efeitos <u>houver risco de dano grave, de difícil ou impossível reparação</u>, e ficar demonstrada a <u>probabilidade de provimento do recurso</u>".

Por sua vez, o **art**. **1**.**019**, **inc**. **I**, do **Código de Processo Civil/2015**, a par de também possibilitar a atribuição de **efeito suspensivo** ao agravo de instrumento, ainda previu a possibilidade de deferimento de **antecipação dos efeitos da tutela recursal**:

> "**Art. 1.019**. Recebido o agravo de instrumento no tribunal e distribuído imediatamente, se não for o caso de aplicação do art. 932, incisos III e IV, o relator, no prazo de 5 (cinco) dias:
>
> **I -** poderá atribuir <u>efeito suspensivo</u> ao recurso ou deferir, em <u>antecipação de tutela</u>, total ou parcialmente, a pretensão recursal, comunicando ao juiz sua decisão;
> [...]".

A  propósito,  o  **art**. **299**,  **parágrafo  único**, c/c **art**. **932**, **inc**. **II**, do **Código de Processo Civil/2015**, também autorizam o  Relator a  **antecipar os efeitos da tutela recursal**, desde que  presentes os requisitos do *fumus boni juris* e do  *periculum in mora:*

> "**Art. 299**. A tutela provisória será requerida ao juízo da causa e, quando antecedente, ao juízo competente para conhecer do pedido principal.
> **Parágrafo único**. Ressalvada disposição especial, na ação de competência originária de tribunal e <u>nos recursos a tutela provisória será requerida ao órgão jurisdicional competente para apreciar o mérito</u>.

Este documento é cópia do original, assinado digitalmente por PAULO ALBERTO DE OLIVEIRA, liberado nos autos em 17/11/2020 às 18:42 .
Para conferir o original, acesse o site https://esaj.tjms.jus.br/pastadigital/sgcr/abrirConferenciaDocumento.do, informe o processo 1415037-77.2020.8.12.0000 e código 37564FE.



*Poder Judiciário*
*Tribunal de Justiça de Mato Grosso do Sul*
*Gabinete do Desembargador Paulo Alberto de Oliveira*

> **Art. 932**.  Incumbe ao relator:
> [...]
>            **II -** apreciar o pedido de tutela provisória nos recursos e nos processos de competência originária do tribunal;"

Na espécie, num juízo perfunctório, à guisa de maiores aprofundamentos no campo fático acerca da *real* e *efetiva* ocorrência dos atos fraudulentos imputados à agravante – cuja tarefa, por certo, demandará profunda e pormenorizada análise, a ser feita em momento oportuno (*v.g.*, julgamento do mérito do presente recurso e/ou julgamento final do *Incidente de Desconsideração de Personalidade Jurídica com Pedido de Extensão dos Efeitos da Falência*) –, impõe-se, em razão do momento processual em que se analisa a controvérsia, ponderar que, ao contrário do que sustenta a agravante, não seriam *atos pontuais* de sua autoria que teriam causado prejuízo à *Massa Falida* do "*Grupo São Fernando*".

Ao contrário, diversos são os fatos imputados na inicial, especificamente à agravante *Cristiane de Barros Costa Marques Bumlai Pagnoncelli* (*parágrafos 47 a 144* – f. 15-42, na origem), que teriam viabilizado o uso de recursos do "*Grupo São Fernando*", em especial oriundos da falida *São Fernando Açúcar e Álcool LTDA*, em favor e em benefício da *Família Bumlai*, sempre, ao que parece, com a coordenação e participação direta também do patriarca *José Carlos Bumlai*, que sequer integraria também o quadro societário das empresas componentes do grupo falido, mas que, **assim como a agravante** (que figura como ré no incidente na condição de "*sócia oculta*"), teriam levado a efeito a prática de *diversos atos*, seja diretamente, seja indiretamente (por meio de pessoas jurídicas das quais integram o quadro societário), que, ao fim e ao cabo, viabilizaram o ensejo de um prejuízo milionário ao grupo econômico que foi declarado falido, em aparente prática de *confusão patrimonial* e de eventual uso abusivo e doloso da *personalidade de pessoas jurídicas*.

Este documento é cópia do original, assinado digitalmente por PAULO ALBERTO DE OLIVEIRA, liberado nos autos em 17/11/2020 às 18:42.
Para conferir o original, acesse o site https://esaj.tjms.jus.br/pastadigital/sgcr/abrirConferenciaDocumento.do, informe o processo 1415037-77.2020.8.12.0000 e código 37564FE.



*Poder Judiciário*
*Tribunal de Justiça de Mato Grosso do Sul*
*Gabinete do Desembargador Paulo Alberto de Oliveira*

Nesse sentido, extraem-se da inicial os seguintes fatos, que teriam a *participação direta* da agravante, ainda que como integrante do quadro societário de outras pessoas jurídicas, mas que, como dito, ao fim e ao cabo, acabaram, ao que parece, por viabilizar intenso e reiterado prejuízo ao patrimônio do "*Grupo São Fernando*", *verbis*:

> "De modo análogo, **Cristiane Bumlai** e Fernando Bumlai ostentaram semelhante relação de promiscuidade com o Grupo São Fernando. Os mesmos, na condição de **únicos sócios** da Agropecuária JB, formalizaram com o Grupo São Fernando o negócio fraudulento pelo qual os cofres deste último custearam a Aeronave de luxo adquirida para o passeio da família (Anexo 10). Receberam, como visto, milhões de reais por intermédio da Agropecuária JB. Passaram a funcionar, pouco antes do ajuizamento da recuperação judicial do Grupo São Fernando, como **interpostas pessoas** do grupo familiar (Anexo 09), concentrando o patrimônio familiar para isentá-los da responsabilidade pelos malfeitos no Grupo São Fernando. **O patrimônio de ambos passou a se confundir com o da Família Bumlai, que, por seu turno, se confundia com o do Grupo São Fernando**. Ante tamanha confusão patrimonial, Cristiane e **Fernando Bumlai também assumiram a posição de "sócios ocultos" do Grupo São Fernando**, contribuindo ativamente nos atos de dilapidação patrimonial já pormenorizados acima.
>
> [...]
>
> Em suma, os membros da Família Bumlai, tanto aqueles que constam nos documentos societários (Mauricio Bumlai e Guilherme Bumlai), quanto aqueles que atuavam de forma "oculta" (José Carlos Bumlai, **Cristiane Bumlai**, e Fernando Bumlai), empreenderam atos de abuso de personalidade que culminaram na bancarrota do Grupo São Fernando; e, dessa forma, devem ser responsabilizados." (f. 45-46, na origem)

Conforme precedente do **STJ**, uma vez "*caracterizada a confusão patrimonial entre sociedades formalmente distintas, é legitima a desconsideração da personalidade jurídica da falida **para que os efeitos do decreto falencial alcancem as demais sociedades envolvidas**"* (**RMS 16.105/GO**, Rel. **Min**. **Nancy Andrighi**, Terceira Turma, DJ 22/09/2003, p. 314).

Este documento é cópia do original, assinado digitalmente por PAULO ALBERTO DE OLIVEIRA, liberado nos autos em 17/11/2020 às 18:42.
Para conferir o original, acesse o site https://esaj.tjms.jus.br/pastadigital/sgcr/abrirConferenciaDocumento.do, informe o processo 1415037-77.2020.8.12.0000 e código 37564FE.



*Poder Judiciário*
*Tribunal de Justiça de Mato Grosso do Sul*
*Gabinete do Desembargador  Paulo Alberto de Oliveira*

Com efeito, para além da possibilidade de extensão da falência para as *pessoas jurídicas* que, em  princípio, aparentam ter concorrido para a prática reiterada de atos lesivos ao patrimônio do grupo econômico-empresarial  falido  e aos seus respectivos credores, também é possível, em tese, a extensão de tais efeitos aos sócios (*pessoas físicas*) destas pessoas jurídicas  incluídas  na  falência, se constatada a ocorrência de *abuso* caracterizado pelo *desvio de finalidade* (ato intencional dos sócios com intuito de fraudar terceiros) ou **confusão patrimonial** (**STJ, REsp 1**.**686**.**162/SP**, Rel. **Min**. **Ricardo Villas Bôas Cueva**, Terceira Turma, DJe 03/12/2019).

Nesse sentido, prevê o **art**. **50**, do **CC/02**, que, em caso de ***abuso da personalidade jurídica***, caracterizado pelo ***desvio de finalidade*** ou pela ***confusão patrimonial***, poderá o Juiz, a requerimento, desconsiderar a *personalidade jurídica* para que os efeitos de <u>certas</u> e <u>determinadas</u> relações de obrigações **sejam estendidos aos bens particulares de administradores** ou de *sócios* **da pessoa jurídica** beneficiados direta ou indiretamente pelo abuso.

Segundo o **§ 1º**, do referido **art**. **50**, o ***desvio de finalidade*** é a utilização da pessoa jurídica **com o propósito de lesar credores** e para a prática de atos ilícitos de qualquer natureza;  situação esta,  ao que parece,  ocorrida na espécie, quando a agravante, como sócia de pessoas   jurídicas distintas do "***Grupo São Fernando***", com este entabulou diversos negócios jurídicos, flagrantemente lesivos a este, mas que teriam beneficiado diretamente, **tanto a agravante**, quanto seus irmãos e pai (*Família Bumlai*).

Por sua vez, segundo o **§ 2º**, do **art**. **50**, tem-se a ***confusão patrimonial*** pela **ausência de separação de fato entre os patrimônios**, caracterizada pelo:  *i*) cumprimento repetitivo pela sociedade de obrigações do sócio ou do administrador ou vice-versa; ii) transferência de ativos ou de passivos sem efetivas contraprestações, exceto os de valor

Este documento é cópia do original, assinado digitalmente por PAULO ALBERTO DE OLIVEIRA, liberado nos autos em 17/11/2020 às 18:42 .
Para conferir o original, acesse o site https://esaj.tjms.jus.br/pastadigital/sgcr/abrirConferenciaDocumento.do, informe o processo 1415037-77.2020.8.12.0000 e código 37564FE.



*Poder Judiciário*
*Tribunal de Justiça de Mato Grosso do Sul*
*Gabinete do Desembargador  Paulo Alberto de Oliveira*

proporcionalmente insignificante;  e   ***iii***) outros atos de descumprimento da autonomia patrimonial, *sendo possível também*, segundo prevê o **§ 3º**, a possibilidade de aplicação (inversa) da extensão das obrigações de sócios ou de administradores à pessoa jurídica, na hipótese em que se verificar que a *pessoa jurídica* se vale da *pessoa física* para se furtar de suas obrigações com  credores.

No caso dos autos, pelo simples relato da inicial na origem, que veio acompanhada de **<u>farto acervo probatório-documental</u>** (f. 68-1.110),  é  possível se antever um quadro grave e atípico;  tanto de ***abuso da personalidade jurídica**** de diversas ***pessoas jurídicas****, quanto de ***confusão patrimonial****  das  várias *****pessoas físicas****  e   *****jurídicas****  envolvidas  nas  negociações, bastante **anômalas**,  caracterizando  **um verdadeiro imbróglio**, que embasaram o pedido de *desconsideração de personalidade jurídica com pedido de extensão dos efeitos da falência.*

Assim,  para efeito de análise do pedido liminar, cotejados, *de um lado*, a complexidade do caso e os sérios efeitos de uma possível liberação patrimonial já neste momento incipiente,  e, *do  outro*,  a  necessidade  de  se assegurar, antes da tomada de qualquer decisão com efeitos possivelmente irreversíveis,  a    perfectibilização  de contraditório prévio  e efetivo em favor dos requerentes-agravados ***Massa Falida de São Fernando Açúcar e Álcool LTDA***,     ***Massa Falida de São Fernando Energia I Ltda***, ***Massa Falida de São Fernando Energia II LTDA***,   ***Massa Falida De São Marcos Energia e Participações LTDA***  e  ***Massa Falida de São Pio Empreendimentos e Participações LTDA***, **<u>impõe-se</u>**   a  **<u>manutenção da indisponibilidade</u>**  de bens decretada em desfavor da agravante  ***Cristiane de Barros Costa Marques Bumlai Pagnoncelli***,  **<u>salvo</u>** no tocante à administração e  uso/disposição dos **frutos** de seu  patrimônio (inclusive valores oriundos de arrendamentos, como aquele mantido com a   *Raízen  Energia  S/A*  –  f. 06), cuja restrição

Este documento é cópia do original, assinado digitalmente por PAULO ALBERTO DE OLIVEIRA, liberado nos autos em 17/11/2020 as 18:42 .
Para conferir o original, acesse o site https://esaj.tjms.jus.br/pastadigital/sgcr/abrirConferenciaDocumento.do, informe o processo 1415037-77.2020.8.12.0000 e código 37564FE.



*Poder Judiciário*
*Tribunal de Justiça de Mato Grosso do Sul*
*Gabinete do Desembargador  Paulo Alberto de Oliveira*

total poderia ensejar riscos à manutenção de sua sobrevivência digna, bem como de sua família.


**Diante do exposto**, **DEFIRO**, **apenas EM PARTE**, o requerimento de *antecipação da tutela recursal*, unicamente para ressalvar, do decreto de indisponibilidade de bens determinado pela decisão agravada, a **administração e uso/disposição dos frutos do patrimônio** da agravante, cuja restrição total poderia ensejar riscos à manutenção de sua sobrevivência digna, bem como de sua família.

**Dê-se ciência <u>imediata</u> ao Juiz da causa**.

Intime-se o(a,s) agravado(a,s), nos termos do **art**. **1**.**019**, **inc**. **II**, do **Código de Processo Civil/15**, para que responda(m) ao presente recurso no prazo de quinze (15) dias, facultando-lhe(s) juntar a documentação que entender necessária.

Em seguida, colha-se o parecer da *Procuradoria-Geral de Justiça*.

**Intimem-se**.

Campo Grande-MS, 17 de novembro de 2020.

**Des**. **Paulo Alberto de Oliveira**
Relator

Este documento é cópia do original, assinado digitalmente por PAULO ALBERTO DE OLIVEIRA, liberado nos autos em 17/11/2020 às 18:42 .
Para conferir o original, acesse o site https://esaj.tjms.jus.br/pastadigital/sgcr/abrirConferenciaDocumento.do, informe o processo 1415037-77.2020.8.12.0000 e código 37564FE.

*EXHIBIT "5"*

p.

**Judiciary Branch**

**Mato Grosso do Sul State Court of Appeals**

**Chambers of Judge Paulo Alberto de Oliveira**

**Interlocutory Appeal No. 1415142-54.2020.8.12.0000**

Appellant(s): Agropecuária CF LTDA

Counselor(s): Sofia Saad Gonçalves, Ricardo Cholbi Tepedino, Bruno Poppa, Jose Eduardo Tavanti Junior and Rodolfo Fontana Boeira da Silva

Appellee(s): Bankruptcy Estate of São Fernando Açúcar e Álcool LTDA, Bankruptcy Estate of São Fernando Energia I Ltda, Bankruptcy Estate of São Fernando Energia II LTDA, Bankruptcy Estate of São Marcos Energia e Participações LTDA and Bankruptcy Estate of São Pio Empreendimentos e Participações LTDA

Counselor(s): Octaviano Bazilio Duarte Filho and Henrique Rodrigues Forssell

## DECISION

*Case records received on November 17, 2020*

An *Interlocutory Appeal* was filed by **Agropecuária CF LTDA** against an order issued in **case No. 0810455-77.2020.8.12.0002** by the 5th Civil Court of the Judicial District of Dourados, State of Mato Grosso do Sul (MS), which, in a *Procedural Incident Motion for Piercing of Corporate Veil with Request to Extend the Effects of Bankruptcy*, underlined granted a request for *provisional relief* submitted by the **Bankruptcy Estate of São Fernando Açúcar e Álcool LTDA.**, **Bankruptcy Estate of São Fernando Energia I Ltda.**, **Bankruptcy Estate of São Fernando Energia II LTDA.**, **Bankruptcy Estate of São Marcos Energia e Participações LTDA.**, and **Bankruptcy Estate of São Pio Empreendimentos e Participações LTDA.** to:

*a*) Piercing the corporate veil against **Agropecuária CF Ltda.**, **Cristiane de Barros Costa Marques Bumlai Pagnonceli**, **Donex Participações e Empreendimentos OSJC LTDA.**, **Fernando de Barros Bumlai**, **Guilherme de Barros Costa Marques Bumlai**, **José Carlos da Costa Marques Bumlai**, and **Maurício de Barros Bumlai**; and

*b*) Order the attachment of assets and rights of the respondents, in Brazil and abroad, by enjoining any *transfer*, *receipt of income and proceeds*, or *any other manner of disposal of their assets/rights* until the limit of the bankruptcy liabilities, i.e. R$2,202,722.644.51 – p. 1.081-1.092 of the lower court case records.

In a subsequent order on a *request for reconsideration* submitted by the claimants, the trial Court additionally ordered:

*c*) The stay of the auction of any assets of the debtors in **Case No. 1128168-72.2015.8**.26.0100 with the 16th Civil Court of São Paulo, SP, including a rural property known as *Fazenda São Marcos*, because, by force of an order issued on a request for provisional relief, it may be included in the list of assets of *Debtor São Fernando Açúcar e Álcool Ltda.*; and

*d*) The freezing of all financial assets held by the respondents abroad, particularly in the *Bahamas* and in the *United States of America*, up to an amount of R$2,202,722,644.51 (p. 1.11-1.114 of the lower court case records).

The appellant argued, in summary, that:

*a*) neither itself "*nor its members, Fernando and Cristiane Bumlai*", have held any "*equity interest in the bankrupt companies, it being understood that the latter have also never held any management office therein*" (p. 04-05);

*b*) with respect to the allegation of supposed use of appellant **Agropecuária CF** as a mechanism to shield the assets of **José Carlos, Maurício** and **Guilherme Bumlai**, "*not only has the appellant been organized years before the filing for judicial reorganization by the bankrupt debtors, but the real properties that belong to it and which have been contributed to it were acquired much before the very commencement of the activities of São Fernando*" (p. 05), i.e., "*all properties have been acquired or inherited much before the project of São Fernando Plant was conceived, and evidently before commencement of its operations*" (p. 05), and therefore there is not even "*any relationship between the assets of Agropecuária CF and those of São Fernando, and the first has not been built at the expenses of the dilapidation of the second*" (p. 08);

*c*) with respect to the allegation that **Agropecuária CF** "*was allegedly part of an 'actual economic and family group'*, it adds that "*the mere corporate or family relationship*" is not sufficient "*for its liability*" (p. 05), even because "*the real properties owned by Agropecuária CF is composed of a total of ten registrations (see exhibit 4), it being understood that the other properties [...] remain in the assets of the individuals who are members of the Bumlai family (see exhibits 5/15), which already proves that the allegation of shielding cannot be accepted*" (p. 09);

*d*) with respect to the accusation made against the appellant, relating to the acquisition of the *Cessna Aircraft, Model 560XL*, supposedly carried out with funds of São Fernando Plant, for "*the purpose of 'paying for the caprices' of the Bumlai Family*", it explained that "*it is very simple to demonstrate that the transaction was carried out by Agropecuária CF by means of its member Cristiane – and not of the bankrupt companies! –, who paid, by way of down payment, R$3.5 million for the acquisition*" (p. 06);

*e*) said plane would be used "*to achieve the corporate purpose of the appellant*" (p. 06), and it was leased to **São Fernando** only after that, "*for a price lower than the market price, being used exclusively for performance of the corporate business of the bankrupt companies*", noting also that "*São Fernando was only interested in carrying out this transaction with the appellant because it would pay an amount significantly lower than the amount it would disburse in case it would charter a jet from third parties, to the extent that Agropecuária CF accepted to agree on the lease for an amount lower than the market price*" (p.13);

*f*) there is no "*danger of delay that would be a ground for immediate adoption of the burdensome freezing order*" (p. 06), and there is also a "*danger of reverse damage to the appellant, which is being prevented from complying with its ordinary financial obligations and to continue its business, which circumstance, if extended, will lead to its inevitable and early bankruptcy*" (p. 06) because it is now "*about to incur a series of contractual defaults and to completely interrupt its operating cycle, due to the prohibition to freely manage its assets and even enjoying the revenue of its activity*" (p. 06);

*g*) the appealed preliminary injunction is "*completely exaggerated and disproportional*", because "*even if it had caused losses to the Bankruptcy Estate*" (p. 07), it would have made it "*in the amount of R$6,538,639.94, equivalent to the aircraft lease amount, which represents less than 0.3% of the liabilities claimed in the bankruptcy*" (p. 07), i.e., in other words, "*due to a transaction that amounts to R$6.5 million – which is, after all, the total amount paid by São Fernando to Agropecuária CF by way of lease, including all costs -, it claims that the appellant be held liable for liabilities amounting to R$2.2 billion, which amount is 338 higher!*" (p. 14), so that "*to the maximum extent, Agropecuária CF could be ordered, in a specific action, to reimburse the Bankruptcy Estate for these amounts paid by way of lease of the aircraft, but never to support all bankruptcy debts*" (p. 14);

*h*) Finally, it notes that "*in case it is not possible to pay the ordinary expenses relating to the breeding of animals and the planting, harvesting and transportation of biological assets - which include, incidentally, the payment of the company's employees and service providers -*", the appellant "*will be prevented from continuing operating and, as a final and inevitable effect, the appellant will go bankrupt*" (p. 17).

Accordingly, he requested **provisional appellate relief** in order to "*immediately release the grave lien suffered by the appellant, either fully or at least by staying the freezing on the 'receipt of income and proceeds' from assets owned by the appellant,*" (p. 19) and, in the merits, the granting of the appeal to "*fully remove the attachment on the assets of the appellant*" (p. 01-20).

**This is my report.**

**I proceed to rule.**

As a rule, an *Interlocutory Appeal* does not operate as supersedeas (**main provision** of **art. 995** of the **2015 Code of Civil Procedure (CPC/15)**).

However, **art. 995**, **sole paragraph** of the **2015 Code of Civil Procedure (CPC/15)** exceptionally authorizes the granting of **supersedeas effect** until the Appellate Court renders its final decision, subject to the likelihood of success of the appeal (*fumus boni iuris*) and to the risk of severe and difficult-to-repair or irreparable harm (*periculum in mora*):

"**Art. 995**. Appeals do not stay the effectiveness of the decision, unless otherwise set forth in law or in a court decision.

**Sole paragraph**. The effectiveness of the decision under appeal may be stayed by decision of the reporting judge when the underline immediate effects thereof could <u>pose a risk of severe and difficult-to-repair or irreparable harm</u> and there is demonstration of the <u>likelihood of success of the appeal</u>."

In turn, **art. 1.019**, **item I** of the **2015 Code of Civil Procedure**, in addition to also allowing the granting of **supersedeas effect** to an interlocutory appeal, also established the possibility of granting **provisional appellate relief**:

"**Art. 1.019**. After the interlocutory appeal is filed with the appellate court and immediately assigned, except in the event of application of art. 932, items III and IV, the reporting judge, within five (5) days:

**I** – May grant <u>supersedeas effect</u> to the appeal or grant, by way of <u>provisional relief</u>, wholly or in part, the relief sought in the appeal and notify his decision to the trial court;

[…]"

By the way, **art. 299**, **sole paragraph**, together with **art. 932**, **item II**, of the **2015 Code of Civil Procedure** also authorize the Reporting Judge to **grant provisional appellate relief**, subject to satisfaction of the *fumus boni juris* and *periculum in mora* requirements:

"**Art. 299**. Provisional relief shall be requested to the trial court and, when precedent, to the court that has competent jurisdiction over the primary claim.

**Sole paragraph**. Subject to any special provision, in cases under the original jurisdiction of the appellate court and <u>in appeals, provisional relief shall be requested to the trial body that has competent jurisdiction over the merits</u>.

**Art. 932**. <u>The reporting judge shall</u>:

[…]

**II** – Review the request for <u>provisional relief</u> in appeals and in cases under the original jurisdiction of the appellate court."

In the case at hand, in a superficial review, subject to a more in-depth examination of the facts regarding the *real* and *actual* occurrence of the fraudulent acts attributed to the appellant – a task which will certainly require a deep and detailed analysis to be conducted in due time (e.g. in the trial of the merits of this appeal and/or final trial of the *Procedural Incident Motion for Piercing of Corporate Veil with Request to Extend the Effects of Bankruptcy*) –, the procedural time in which the dispute is being analyzed imposes the finding that, contrary to what the appellant alleges, the losses purportedly caused to the **Bankruptcy Estate** of the "**São Fernando Group**" where not caused by *specific acts* of his.

On the contrary, there are <u>several</u> facts stated in the complaint, specifically those attributed to the members of the appellant **Fernando** and **Cristiane Bumlai** (*paragraphs 47-144* – p. 15-42 of the lower court case records), which purportedly enabled the use of assets of the "**São Fernando Group**," particularly of debtor **São Fernando Açúcar e Álcool LTDA.**, in favor and for the benefit of the *Bumlai Family*, always, it seems, under the coordination and with direct participation of patriarch *José Carlos Bumlai*, who is not even a partner of the companies belonging to the debtor group as well, but purportedly perpetrated, whether directly or indirectly (through the legal entities of which he is a

partner, underline{including} the now appellant ***Agropecuária CF LTDA***, former ***Agropecuária JB LTDA.***), *several acts* that ultimately caused huge losses to the bankrupt business group, apparently qualifying as a *commingling of assets* and abusive and willful use of the *corporate veil of legal entities*, including the now appellant ***Agropecuária CF LTDA***, former ***Agropecuária JB LTDA***.

In this regard, the following facts are extracted from the complaint, in which the appellant company *directly participated*, which, as stated above, ultimately appear to have caused severe and reiterated losses to the assets of the "***São Fernando Group***":

"47. The Bumlai Family has contributed a large portion of its real estate assets to the share capital of **Agropecuária JB**, which is also a defendant in this incident motion.

Until a few days before the filing for judicial reorganization of the São Fernando Group, **Agropecuária JB** was owned by José Carlos Bumlai and his four children, Mauricio Bumlai, Guilherme Bumlai, Cristiane Bumlai and Fernando Bumlai (as shown in the corporate document included in Exhibit 09).

48. Exactly seven (7) days before the filing for judicial reorganization, on April 5, 2013, José Carlos Bumlai, Mauricio Bumlai and Guilherme Bumlai **filed with the Commercial Registry of Mato Grosso do Sul the 5th Amendment to the Articles of Association of Agropecuária JB, by means of which they transferred their respective equity interests to Fernando Bumlai and Cristiane Bumlai, so that the latter became the full owners of such company (see Exhibit 09)**.

49. Some months later, in September 2013, Fernando Bumlai and Cristiane Bumlai signed a resolution of partners of Agropecuária JB (Exhibit 09) approving the acquisition of a luxury Cessna Aircraft, model 560XL (the "Aircraft"), by means of financing granted by the U.S. company Cessna Finance Corporation in the amount of six million four hundred thousand U.S. dollars (US$6,400,000.00). As subsequently noted (see below), the Aircraft was declaredly to have been acquired to transport the members of the Bumlai Family in their private travels.

50. Unexpectedly, it was identified that some months thereafter, the Aircraft acquired by Agropecuária JB was "leased" by the bankrupt company São Fernando Açúcar e Álcool Ltda., as noted in the Private Instrument of Lease Agreement dated March 1, 2014 (Exhibit 10). The monthly lease amount was stipulated at one hundred and thirty thousand U.S. dollars (US$130,000.00), in addition to other maintenance costs that should be paid by the currently bankrupt company, which was then in a prebankruptcy situation, São Fernando Açúcar e Álcool Ltda.

51. From then on, these amounts commenced to be paid by São Fernando Group in favor of Agropecuária JB. As demonstrated in the accounting records of São Fernando Group (Exhibit 11), between 2014 and 2016 São Fernando Açúcar e Álcool paid a little more than R$6.5 million to Agropecuária JB by way of "lease" of the Aircraft and reimbursement for maintenance expenses.

[...]

56. That means, a company held by the same family group (Agropecuária JB) acquired a luxury aircraft and transferred the burden of its payment to a company in prebankruptcy situation (São Fernando Açúcar e Álcool Ltda.), without commercial reasons. In other words, the Bumlai Family shamefully used the cash of São Fernando Group to pay for its caprices. And worse: by devious ways, it used public funds to finance them, since most part of the amounts contributed to São Fernando Group originated from the National Economic and Social Development Bank (BNDES).

57. As if this were not sufficient, the Bankruptcy Estate has also obtained documentation from Cessna Finance Corporation, stating that the purpose of the acquisition by Agropecuária JB was to "enable the transportation of its shareholders, considering that they had business both in São Paulo/SP and in Campo Grande/MS" (Exhibit 14). Agropecuária JB itself has expressly declared to Cessna Finance Corporation that the purpose of the Aircraft was to transport the family members, without any relation to the subject matter of São Fernando Group.

[...]

158. Likewise, Cristiane Bumlai and Fernando Bumlai ostensibly had the same promiscuous relationship with the São Fernando Group. **The same, as sole partners of Agropecuária JB, formalized with the São Fernando Group the fraudulent transaction under which the coffers of the latter funded the luxury Aircraft acquired for the family's leisure travels (Exhibit 10). They received, as seen above, millions of *Reais* through Agropecuária JB.** Shortly before the filing for judicial reorganization of the São Fernando Group, they began to operate as intermediaries of the family (Exhibit 09) by concentrating the family's assets in order to exempt them from liability for the wrongdoings in the São Fernando Group. The assets of both of them began to commingle with those of the Bumlai Family, which, in turn, were also commingled with those of the São Fernando Group. Given such commingling of assets, Cristiane and Fernando Bumlai also took the position of "dormant partners" of the São Fernando Group and actively contributed to the acts of exhaustion of assets already detailed above.

[…]

161. In summary, the members of the Bumlai Family, including both those who appeared in the corporate documents (i.e. Mauricio Bumlai and Guilherme Bumlai) and those who acted as "dormant" partners i.e. José Carlos Bumlai, Cristiane Bumlai, and Fernando Bumlai), perpetrated acts of abuse of the corporate entity which culminated with the bankruptcy of the São Fernando Group and, accordingly, should be held liable (p. 16-17 and p. 45-46 of the lower court case records).

According to a precedent of the **Superior Court of Justice (STJ)**, upon "*evidence of the commingling of assets between formally separate companies, the corporate veil of the debtor may be pierced* **in order to extend the effects of its bankruptcy to the other companies involved**" (**RMS 16.105/GO**, **Reporting Justice: Nancy Andrighi**, Third Panel, *Court Register* (*DJ*), September 22, 2003, p. 314).

In this regard, **art. 50** of the **2002 Civil Code (CC/02)** provides that, in the event of **abuse of the corporate entity** consisting of **deviation from purpose** or **commingling of assets**, the Court may, upon request, pierce the *corporate veil* so that the effects of certain obligational relationships **be extended to the assets** of those who directly or indirectly benefitted from such abuse.

In accordance with **paragraph 1** of the abovementioned **art. 50**, deviation from purpose is the use of the legal entity **for the purpose of defrauding creditors** and perpetrating wrongdoings of any nature, which apparently was the case here, when the appellant, even if not a part of the "*São Fernando Group*," entered into legal transactions with the latter with were flagrantly harmful to it, but also directly benefitted **the appellant** and its members (***Fernando*** and ***Cristiane Bumlai***) and their family (i.e. the *Bumlai Family*).

In turn, in accordance with **paragraph 2** of **art. 50**, the ***commingling of assets*** is demonstrated by the **lack of separation between the respective assets of the parties**, characterized by *i*) repeated performance by the company of obligations of the partner or manager, or vice versa, **ii)** transfer of assets or liabilities without actual consideration, except of a proportionally insignificant amount, and *iii*) other acts violating the separation between the respective assets. In accordance with **paragraph 3**, the (reverse) application of the extension of the obligations of partners or managers to the legal entity is also possible, when it is found that the legal entity is using individuals to evade its obligations to creditors.

In the case at hand, based on the mere statement of the facts in the complaint submitted to the trial court, which was supported by **copious documentary evidence** (p. 68-1.110), it is possible to glimpse a severe and atypical scenario consisting of ***abuse of the corporate entity*** of several ***legal entities*** and ***commingling of assets*** of several ***individuals*** and ***legal entities*** involved in quite anomalous transactions, characterizing a real imbroglio, which based the request for *piercing of the corporate veil and extension of the effects of bankruptcy*.

In this context, it seems that the defendant/appellant ***Agropecuária CF LTDA*** has been used by its members ***Fernando*** and ***Cristiane Bumlai*** to protect their assets, so that, due to the harmful acts

committed against **"São Fernando Group"**, these assets could not be reached by a possible claim for extension of the bankruptcy; which transfer of assets, including real estate, was partially admitted in this appeal, albeit the aforementioned purpose has been denied.

In addition, it is also undisputed that an aircraft of the defendant-appellant **Agropecuária CF LTDA** was leased to **"São Fernando Group"**, at the acknowledged cost of **R$300,000.00 per month**, and this, when the **Judicial Reorganization** is already in progress, under the weak argument that this amount was allegedly much lower than the market price of an equivalent lease.

The argument that such aircraft would also serve to facilitate travels for negotiation with creditors or for raising possible investments is also in principle unreasonable when nothing of this has been actually provided in the case records. It actually sounds reckless that, already during a financial crisis, **"São Fernando Group"** would choose to spend such a high **monthly** amount to, among its purposes, facilitate meetings and negotiations with creditors, paying for this, in favor of **Agropecuária CF LTDA**, the same amount of the monthly installment of the aircraft financing, when in fact the ideal, within the context then in effect, would be to perform actions and adopt measures to spare and reduce expenses, due to the financial conditions that led to the filing for **Judicial Reorganization** of **"São Fernando Group"**.

Therefore, the reality shown in the case records requires **caution**, which recommends us to await the trial on the merits of the appeal to better examine both the possible expansion, in the form of **art. 50** of the Civil Code, of the effects of the bankruptcy of **"São Fernando Group"** against the defendant-appellant **Agropecuária CF LTDA**, and the extent of this measure (delimitation), due to the supposed harmful facts/acts performed by it, which characterize the possible occurrence of **property confusion**.

Thus, for purposes of review of the request for preliminary injunction, considering, *on one hand*, the complexity of the case and the severe effects of the potential release of the assets already at this early moment, and, *on the other hand*, the need to ensure, before making any decision with potentially irreversible effects, prior and effective adversary proceeding in favor of respondents/appellees, i.e. the **Bankruptcy Estate of São Fernando Açúcar e Álcool LTDA.**, **Bankruptcy Estate of São Fernando Energia I Ltda.**, **Bankruptcy Estate of São Fernando Energia II LTDA.**, **Bankruptcy Estate of São Marcos Energia e Participações LTDA.**, and **Bankruptcy Estate of São Pio Empreendimentos e Participações LTDA.**, that it is **necessary** to **uphold the freezing** of assets ordered against appellant **Agropecuária CF LTDA**, **except** with regard to the management and use/disposal of the **proceeds** from his assets, a total freezing of which could pose a risk to its activity.

**In view of the foregoing, I GRANT, but merely IN PART**, the request for *provisional appellate relief* solely to exclude, from the order of freezing of assets under appeal, the **management and use/disposal of the proceeds from the assets** of the appellant, a total freezing of which could pose a risk to its activity.

**Notify the Court immediately of the foregoing.**

Notify the appellee(s) of the foregoing, in accordance with the provisions of **art. 1.019**, **item II** of the **2015 Code of Civil Procedure**, so that they may submit an appellee's brief within fifteen (15) days, it being understood that they may submit any documentation they may find necessary.

Afterwards, send this to the *Office of the State Attorney General* to submit its opinion.

**Notify.**

Campo Grande, MS, November 20, 2020.

**J. Paulo Alberto de Oliveira**

Reporting Judge

This document is a copy of the original digitally signed by PAULO ALBERTO DE OLIVEIRA and entered in the case records on November 20, 2020 at 11:47 A.M.

To view the original, access https://esaj.tjms.jus.br/pastadigital/sgcr/abrirConferenciaDocumento.do and enter case number 1415142-54.2020.8.12.0000 and code 3760D3A.



*Poder Judiciário*
*Tribunal de Justiça de Mato Grosso do Sul*
*Gabinete do Desembargador   Paulo Alberto de Oliveira*

Agravo de Instrumento nº 1415142-54.2020.8.12.0000

| | |
|---|---|
| Agravante(s): | Agropecuária CF LTDA |
| Advogado(a,s): | Sofia Saad Gonçalves, Ricardo Cholbi Tepedino, Bruno Poppa, Jose Eduardo Tavanti Junior e Rodolfo Fontana Boeira da Silva |
| Agravado(a,s): | Massa Falida de São Fernando Açúcar e Álcool LTDA,    Massa Falida de São Fernando Energia I Ltda,    Massa Falida de São Fernando Energia II LTDA, Massa Falida De São Marcos Energia e Participações LTDA  e  Massa Falida de São Pio Empreendimentos e Participações LTDA |
| Advogado(a,s): | Octaviano Bazilio Duarte Filho e Henrique Rodrigues Forssell |

**DECISÃO**

*Autos recebidos em carga em 17/11/2020*

Trata-se de *Agravo de Instrumento* interposto por ***Agropecuária CF LTDA*** contra decisão interlocutória proferida nos **autos nº 0810455-77**.**2020**.**8**.**12**.**0002**  pelo Juiz da 5ª Vara Cível da Comarca de Dourados-MS, que, em *Incidente de Desconsideração de Personalidade Jurídica com Pedido de Extensão dos Efeitos da Falência*, deferiu requerimento de *tutela provisória* formulado pela ***Massa Falida de São Fernando Açúcar e Álcool LTDA***, ***Massa Falida de São Fernando Energia I Ltda***, ***Massa Falida de São Fernando Energia II LTDA***, ***Massa Falida De São Marcos Energia e Participações LTDA*** e ***Massa Falida de São Pio Empreendimentos e Participações LTDA***, para:

***a***) desconsiderar a personalidade jurídica em desfavor de ***Agropecuária CF Ltda***, ***Cristiane de Barros Costa Marques Bumlai Pagnonceli***, ***Donex Participações e Empreendimentos OSJC LTDA***, ***Fernando de Barros Bumlai***, ***Guilherme de Barros Costa Marques Bumlai***, ***José Carlos da Costa Marques Bumlai*** e ***Maurício de Barros Bumlai***;

Este documento é cópia do original, assinado digitalmente por PAULO ALBERTO DE OLIVEIRA, liberado nos autos em 20/11/2020 às 11:47 .
Para conferir o original, acesse o site https://esaj.tjms.jus.br/pastadigital/sgcr/abrirConferenciaDocumento.do, informe o processo 1415142-54.2020.8.12.0000 e código 3760D3A.



*Poder Judiciário*
*Tribunal de Justiça de Mato Grosso do Sul*
*Gabinete do Desembargador Paulo Alberto de Oliveira*

*b*) determinar o <u>arresto de bens e direitos</u> dos requeridos, no Brasil e no exterior, para vedar a *transferência*, *percepção de rendimentos e frutos* ou *qualquer outra forma de disposição dos bens/direitos patrimoniais* até o limite do passivo falimentar de R$ 2.202.722.644,51 – f. 1.081-1.092, na origem.

Em decisão subsequente, que atendeu *pedido de reconsideração* dos autores, o Juízo de origem determinou, ainda:

*c*) a <u>suspensão da praça</u> de quaisquer bens dos executados no **Processo nº 1128168-72.2015.8**.26.0100, da 16ª Vara Cível de São Paulo-SP, inclusive do imóvel rural denominado *Fazenda São Marco*s, pois, por decisão em tutela de urgência pode ser incluída no rol de bens da *Falida São Fernando Açúcar e Álcool Ltda*;

*d*) o <u>bloqueio de todos ativos financeiros dos réus no exterior</u>, principalmente nas *Bahamas* e *Estados Unidos da América*, até o valor de R$ 2.202.722.644,51 (f. 1.11-1.114, na origem).

A agravante, em suma, pontuou o seguinte:

*a*) que, nem ela própria, "*nem tampouco seus sócios, Fernando e Cristiane Bumlai*", tiveram qualquer "*participação societária nas falidas, sendo certo que estes últimos também jamais exerceram nelas qualquer cargo de administração*" (f. 04-05);

*b*) no que diz respeito à alegação de suposta utilização da agravante **Agropecuária CF** como mecanismo de blindagem patrimonial dos bens de **José Carlos**, **Maurício** e **Guilherme Bumlai**, "*não só a agravante foi constituída anos antes da impetração de recuperação judicial pelas falidas, como os imóveis que lhe pertencem e nela foram integralizados foram adquiridos muito antes do próprio início das atividades da São Fernando*" (f. 05), ou seja, "*os imóveis foram todos adquiridos ou herdados muito antes de se*

Este documento é cópia do original, assinado digitalmente por PAULO ALBERTO DE OLIVEIRA, liberado nos autos em 20/11/2020 às 11:47.
Para conferir o original, acesse o site https://esaj.tjms.jus.br/pastadigital/sgcr/abrirConferenciaDocumento.do, informe o processo 1415142-54.2020.8.12.0000 e código 3760D3A.



*Poder Judiciário*
*Tribunal de Justiça de Mato Grosso do Sul*
*Gabinete do Desembargador   Paulo Alberto de Oliveira*

conceber o projeto da Usina São Fernando e, por evidente, anteriormente ao início de suas operações" (f. 05), de forma que nem sequer *"existe qualquer vínculo entre o patrimônio da Agropecuária CF e o da São Fernando, não tendo o primeiro sido construído às custas da dilapidação do segundo"* (f. 08);

*c*) que , no que diz respeito à alegação de que a **Agropecuária CF** "*integraria um 'grupo econômico de fato e familiar*', aduz que "*a mera relação societária ou familiar*" não é suficiente "*à sua responsabilização*" (f. 05), mesmo porque, "*o patrimônio imobiliário de titularidade da Agropecuária CF é composto por um total de dez matrículas (cf. doc. 4), sendo certo que os demais imóveis [...] permanecem no patrimônio das pessoas físicas que integram a família Bumlai (cf. docs. 5/15), o que já demonstra que o discurso de blindagem absolutamente não se sustenta*" (f. 09);

*d*) que, no tocante à acusação lançada contra a agravante, relativa à aquisição do avião *Cessna Aircraft*, *Modelo 560XL*, supostamente realizada através de recursos da **Usina São Fernando**, com "*o objetivo de 'custear os caprichos' da Família Bumlai*", explicou que "*é muito simples demonstrar que a operação foi realizada pela Agropecuária CF através de recursos de sua sócia Cristiane − e não das falidas! −, que pagou, a título de entrada, R$ 3,5 milhões pela aquisição*" (f. 06);

*e*) que referido avião seria utilizado "*para a consecução do objeto social da agravante*" (f. 06), e somente depois veio a ser locada à **São Fernando**, "*por valor abaixo de mercado, sendo utilizada exclusivamente para o desempenho dos negócios sociais das falidas*", ressaltado, ainda, que "*a São Fernando somente se interessou em celebrar esse negócio com a agravante porque pagaria um valor substancialmente inferior àquele que desembolsaria caso viesse a fretar o jato junto a terceiros, na medida em que a Agropecuária CF aceitou entabular a locação por valor inferior ao de mercado*" (f. 13);

Este documento é cópia do original, assinado digitalmente por PAULO ALBERTO DE OLIVEIRA, liberado nos autos em 20/11/2020 às 11:47 .
Para conferir o original, acesse o site https://esaj.tjms.jus.br/pastadigital/sgcr/abrirConferenciaDocumento.do, informe o processo 1415142-54.2020.8.12.0000 e código 3760D3A.



Poder Judiciário
Tribunal de Justiça de Mato Grosso do Sul
Gabinete do Desembargador   Paulo Alberto de Oliveira

*f*) que está ausente "*o perigo de dano que fundamentaria a adoção imediata da gravosa ordem de indisponibilidade*" (f. 06), havendo, ainda, "*perigo de dano reverso à agravante, que está sendo impedida de cumprir com suas obrigações financeiras ordinárias e dar andamento a seus negócios, circunstância que, acaso prolongada, levará à sua inevitável e precipitada quebra*" (f. 06), pois, no momento, está "*prestes a incorrer numa série de inadimplementos contratuais e na completa paralisação de seu ciclo operacional, diante do impedimento de realizar a livre gestão de seu patrimônio e até mesmo de fruir dos rendimentos de sua atividade*" (f. 06);

*g*) que há "*absoluto exagero e desproporção*" na medida liminar agravada, pois, "*ainda que houvesse ocasionado prejuízos à Massa Falida*" (f. 07), o teria feito "*no montante de R$ 6.538.639,94, equivalente ao valor de locação da aeronave, o qual representa menos de 0,3% do passivo inscrito no concurso*" (f. 07), ou seja, em outras palavras, "*em virtude de uma operação que monta a R$ 6,5 milhões − esse, afinal, o valor total pago pela São Fernando à Agropecuária CF a título de locação, incluindo todos os custos −, pretende seja a agravante responsabilizada por um passivo de R$ 2,2 bilhões, quantia 338 vezes superior!*" (f. 14), de forma que, "*quando muito poderia ser a Agropecuária CF condenada, em ação própria, à restituição à Massa Falida dessas quantias pagas a título de locação do avião, mas jamais a suportar todas as dívidas do concurso*" (f. 14);

*h*) ressalta, por fim, que, "*não sendo possível custear as despesas ordinárias ligadas à criação dos animais e ao plantio, colheita e transporte dos ativos biológicos − dentre as quais se incluem, aliás, o pagamento dos funcionários e prestadores de serviço da empresa −*", a agravante "*restará impossibilitada a continuidade de suas atividades, tendo por efeito final e inevitável a quebra da sociedade agravante*" (f. 17).

Este documento é cópia do original, assinado digitalmente por PAULO ALBERTO DE OLIVEIRA, liberado nos autos em 20/11/2020 às 11:47.
Para conferir o original, acesse o site https://esaj.tjms.jus.br/pastadigital/sgcr/abrirConferenciaDocumento.do, informe o processo 1415142-54.2020.8.12.0000 e código 3760D3A.



*Poder Judiciário*
*Tribunal de Justiça de Mato Grosso do Sul*
*Gabinete do Desembargador Paulo Alberto de Oliveira*

Requereu, assim, a a **antecipação da tutela recursal**, para que "*se libere, de imediato, a gravosa constrição sofrida pelo recorrente, senão em sua integralidade, ao menos para que se afaste o bloqueio da 'percepção de rendimentos e frutos' oriundos dos bens titulados*" pela agravante (f. 19); e, no mérito, o provimento do recurso, para afastar "*por completo a constrição que recai sobre os bens do agravante*" (f. 01-20).

**É o relatório**.

**Decido**.

A regra é a de que o *Agravo de Instrumento* não possui efeito suspensivo (**art. 995**, *caput*, do **CPC/15**).

Porém, o **art. 995**, **parágrafo único**, do **CPC/15** autoriza, excepcionalmente, a concessão de **efeito suspensivo** até o pronunciamento definitivo do Órgão Colegiado, desde que presente a probabilidade de provimento do recurso (*fumus boni iuris*) e o risco de dano grave, de difícil ou impossível reparação (*periculum in mora*):

> "**Art. 995**. Os recursos não impedem a eficácia da decisão, salvo disposição legal ou decisão judicial em sentido diverso.
> **Parágrafo único**. A eficácia da decisão recorrida poderá ser suspensa por decisão do relator, se da <u>imediata</u> produção de seus efeitos <u>houver risco de dano grave, de difícil ou impossível reparação</u>, e ficar demonstrada a <u>probabilidade de provimento do recurso</u>".

Por sua vez, o **art**. **1.019**, **inc**. **I**, do **Código de Processo Civil/2015**, a par de também possibilitar a atribuição de **efeito suspensivo** ao agravo de instrumento, ainda previu a possibilidade de deferimento de **antecipação dos efeitos da tutela recursal**:

> "**Art. 1.019**. Recebido o agravo de instrumento no tribunal e distribuído imediatamente, se não for o caso de aplicação do art. 932, incisos III e IV, o relator, no prazo de 5 (cinco) dias:
> **I -** poderá atribuir <u>efeito suspensivo</u> ao recurso ou deferir, em

Este documento é cópia do original, assinado digitalmente por PAULO ALBERTO DE OLIVEIRA, liberado nos autos em 20/11/2020 às 11:47.
Para conferir o original, acesse o site https://esaj.tjms.jus.br/pastadigital/sgcr/abrirConferenciaDocumento.do, informe o processo 1415142-54.2020.8.12.0000 e código 3760D3A.



*Poder Judiciário*

*Tribunal de Justiça de Mato Grosso do Sul*

*Gabinete do Desembargador   Paulo Alberto de Oliveira*

antecipação de tutela, total ou parcialmente, a pretensão recursal, comunicando ao juiz sua decisão; [...]".

A propósito, o **art**. **299**, **parágrafo único**, c/c **art**. **932**, **inc**. **II**, do **Código de Processo Civil/2015**, também autorizam o Relator a **antecipar os efeitos da tutela recursal**, desde que presentes os requisitos do *fumus boni juris* e do *periculum in mora:*

> "**Art. 299**. A tutela provisória será requerida ao juízo da causa e, quando antecedente, ao juízo competente para conhecer do pedido principal.
>
> **Parágrafo único**. Ressalvada disposição especial, na ação de competência originária de tribunal e <u>nos recursos a tutela provisória será requerida ao órgão jurisdicional competente para apreciar o mérito</u>.
>
> **Art. 932**.  <u>Incumbe ao relator</u>:
>
> [...]
>
> **II -** apreciar o pedido de <u>tutela provisória</u> nos recursos e nos processos de competência originária do tribunal;"

Na espécie, num juízo perfunctório, à guisa de maiores aprofundamentos no campo fático acerca da *real* e *efetiva* ocorrência dos atos fraudulentos imputados ao agravante − cuja tarefa, por certo, demandará  profunda e  pormenorizada análise,  a ser feita em momento oportuno (*v.g.*, julgamento do mérito do presente recurso e/ou julgamento final do *Incidente de Desconsideração de Personalidade Jurídica  com  Pedido de Extensão dos Efeitos da Falência*) −, impõe-se, em razão do momento processual em que se analisa a controvérsia, ponderar que, ao contrário do que sustenta a agravante, não seriam *atos pontuais* de sua autoria que teriam causado prejuízo à **Massa Falida** do "**Grupo São Fernando**".

Este documento é cópia do original, assinado digitalmente por PAULO ALBERTO DE OLIVEIRA, liberado nos autos em 20/11/2020 às 11:47.
Para conferir o original, acesse o site https://esaj.tjms.jus.br/pastadigital/sgcr/abrirConferenciaDocumento.do, informe o processo 1415142-54.2020.8.12.0000 e código 3760D3A.



*Poder Judiciário*
*Tribunal de Justiça de Mato Grosso do Sul*
*Gabinete do Desembargador  Paulo Alberto de Oliveira*

Ao contrário, <u>diversos</u>  são os fatos imputados na inicial, especificamente ao sócios da agravante, **Fernando** e **Cristiane Bumlai** (*parágrafos 47 a 144* − f. 15-42,  na origem), que teriam viabilizado  o uso de recursos do "**Grupo São Fernando**", em especial oriundos da falida ***São Fernando Açúcar e Álcool LTDA***, em favor e em benefício da *Família Bumlai*, sempre, ao que parece, com a coordenação e participação direta também do patriarca *José Carlos Bumlai*, que sequer integraria também o quadro societário das empresas componentes do grupo falido, mas que  teriam  levado a efeito a prática de *diversos atos*;  seja diretamente, seja indiretamente (por meio de *pessoas jurídicas* das quais integram o quadro societário, <u>dentre elas</u> a aqui agravante *Agropecuária CF LTDA* − atual denominação da *Agropecuária JB LTDA*.), que, ao fim e ao cabo, viabilizaram a criação de um prejuízo milionário ao grupo econômico que foi declarado falido, em aparente prática de *confusão patrimonial* e de eventual  uso abusivo e  doloso da *personalidade* de *pessoas jurídicas*, dentre as quais, a ora agravante *Agropecuária CF LTDA* − atual denominação da *Agropecuária JB LTDA*.

Nesse sentido,   extraem-se da inicial   os seguintes fatos, que teriam a *participação direta* da empresa agravante,  que, como dito, ao fim e ao cabo, acabaram, ao que parece, por viabilizar  intenso  e  reiterado  prejuízo  ao patrimônio do   "**Grupo São Fernando**", *verbis*:

> "47. A Família Bumlai incorporou boa parte de seu patrimônio imobiliário no capital social da **Agropecuária JB**, que também figura como ré neste incidente.
> Até poucos dias antes do ajuizamento do pedido de recuperação judicial do Grupo São Fernando, a **Agropecuária JB** era detida por José Carlos Bumlai e seus quatro filhos, Mauricio Bumlai, Guilherme Bumlai, Cristiane Bumlai e Fernando Bumlai (cf. demonstra o documento societário constantes do Anexo 09).
> 48. Exatos 7 (sete) dias antes do ajuizamento do pedido de recuperação judicial, em 05.04.2013, José Carlos Bumlai, Mauricio Bumlai e Guilherme Bumlai **protocolaram na Junta Comercial do Mato Grosso do Sul a 5ª Alteração do Contrato Social da Agropecuária JB, pelo qual transferiram suas**

Este documento é cópia do original, assinado digitalmente por PAULO ALBERTO DE OLIVEIRA, liberado nos autos em 20/11/2020 às 11:47 .
Para conferir o original, acesse o site https://esaj.tjms.jus.br/pastadigital/sgcr/abrirConferenciaDocumento.do, informe o processo 1415142-54.2020.8.12.0000 e código 3760D3A.



*Poder Judiciário*

*Tribunal de Justiça de Mato Grosso do Sul*

*Gabinete do Desembargador  Paulo Alberto de Oliveira*

**respectivas participações societárias para Fernando Bumlai e Cristiane Bumlai, de modo que estes últimos passaram a ser os integrais detentores dessa empresa (cf. Anexo 09)**.

49. Alguns meses após, em setembro de 2013, Fernando Bumlai e Cristiane Bumlai firmaram uma resolução de sócios da Agropecuária JB (Anexo 09) aprovando a aquisição de uma aeronave de luxo Cessna Aircraft, modelo 560XL (a "Aeronave"), mediante financiamento concedido pela companhia americana Cessna Finance Corporation no valor de US\$ 6.400.000,00 (seis milhões e quatrocentos mil dólares norte-americanos). Como se constatou posteriormente (v. abaixo), a Aeronave foi adquirida declaradamente para transportar os membros da Família Bumlai em suas viagens privadas.

50. De forma inesperada, identificou-se que, alguns meses após, a Aeronave adquirida pela Agropecuária JB foi "alugada" pela falida São Fernando Açúcar e Álcool Ltda., conforme se depreende do Instrumento Particular de Contrato de Locação datado de 1º de março de 2014 (Anexo 10). O valor mensal da locação foi estabelecido em US\$ 130.000,00 (cento e trinta mil dólares norte-americanos), além de outros custos com manutenção que deveriam ser pagos pela hoje falida, e naquela época em estado pré-falimentar, São Fernando Açúcar e Álcool Ltda.

51. A partir de então, tais valores passaram a ser pagos pelo Grupo São Fernando em favor da Agropecuária JB. Conforme demonstrado pelos registros contábeis do Grupo São Fernando (Anexo 11), entre 2014 e 2016 a São Fernando Açúcar e Álcool pagou mais de R\$ 6.5 milhões para a Agropecuária JB a título de "aluguel" da Aeronave e reembolso de despesas com manutenção.

[...]

56. Ou seja, uma sociedade detida pelo mesmo grupo familiar (Agropecuária JB) adquiriu uma aeronave de luxo e transferiu o ônus de seu pagamento a uma empresa em situação pré-falimentar (São Fernando Açúcar e Álcool Ltda.), sem justificativa comercial. Em outras palavras, a Família Bumlai utilizou vergonhosamente o caixa do Grupo São Fernando para custear seus caprichos. E pior: por vias transversas, utilizou recursos públicos para financiá-los, uma vez que a maior parte dos valores aportados no Grupo São Fernando originara-se do BNDES.

57. Não bastasse isso, a Massa Falida obteve, também, documentação da Cessna Finance Corporation no sentido de que o propósito da aquisição, pela Agropecuária JB era o de "viabilizar o deslocamento de seus acionistas, considerando que estes possuíam negócios tanto em São Paulo/SP quanto em Campo Grande/MS" (Anexo 14). A própria Agropecuária JB declarou expressamente à Cessna Finance Corporation que o objetivo da Aeronave era transportar os membros da família, sem qualquer relação com o objeto do Grupo São Fernando.

[...]

158. De modo análogo, Cristiane Bumlai e Fernando Bumlai ostentaram semelhante relação de promiscuidade com o Grupo São Fernando. **Os mesmos, na condição de únicos sócios da Agropecuária JB, formalizaram com o Grupo São**

Este documento é cópia do original, assinado digitalmente por PAULO ALBERTO DE OLIVEIRA, liberado nos autos em 20/11/2020 às 11:47 .
Para conferir o original, acesse o site https://esaj.tjms.jus.br/pastadigital/sgcr/abrirConferenciaDocumento.do, informe o processo 1415142-54.2020.8.12.0000 e código 3760D3A.



*Poder Judiciário*
*Tribunal de Justiça de Mato Grosso do Sul*
*Gabinete do Desembargador    Paulo Alberto de Oliveira*

**Fernando o negócio fraudulento pelo qual os cofres deste último custearam a Aeronave de luxo adquirida para o passeio da família (Anexo 10). Receberam, como visto, milhões de reais por intermédio da Agropecuária JB.** Passaram a funcionar, pouco antes do ajuizamento da recuperação judicial do Grupo São Fernando, como interpostas pessoas do grupo familiar (Anexo 09), concentrando o patrimônio familiar para isentá-los da responsabilidade pelos malfeitos no Grupo São Fernando. O patrimônio de ambos passou a se confundir com o da Família Bumlai, que, por seu turno, se confundia com o do Grupo São Fernando. Ante tamanha confusão patrimonial, Cristiane e Fernando Bumlai também assumiram a posição de "sócios ocultos" do Grupo São Fernando, contribuindo ativamente nos atos de dilapidação patrimonial já pormenorizados acima.

[...]

161. Em suma, os membros da Família Bumlai, tanto aqueles que constam nos documentos societários (Mauricio Bumlai e Guilherme Bumlai), quanto aqueles que atuavam de forma "oculta" (José Carlos Bumlai, Cristiane Bumlai, e Fernando Bumlai), empreenderam atos de abuso de personalidade que culminaram na bancarrota do Grupo São Fernando; e, dessa forma, devem ser responsabilizados." (f. 16-17 e f. 45-46, na origem)

Conforme precedente do **STJ**, uma vez "*caracterizada a confusão patrimonial entre sociedades formalmente distintas, é legitima a <u>desconsideração da personalidade jurídica da falida</u> **para que os efeitos do decreto falencial alcancem as demais sociedades envolvidas**"* (**RMS 16.105/GO**, Rel. **Min**. **Nancy Andrighi**, Terceira Turma, DJ 22/09/2003, p. 314).

Nesse sentido, prevê o **art**. **50**, do **CC/02**, que, em caso de *abuso da personalidade jurídica*, caracterizado pelo *desvio de finalidade* ou pela *confusão patrimonial*, poderá o Juiz, a requerimento, desconsiderar a *personalidade jurídica* para que os efeitos de <u>certas</u> e <u>determinadas</u> relações de obrigações **sejam estendidos aos bens** daqueles beneficiados direta ou indiretamente pelo abuso.

Este documento é cópia do original, assinado digitalmente por PAULO ALBERTO DE OLIVEIRA, liberado nos autos em 20/11/2020 às 11:47 .
Para conferir o original, acesse o site https://esaj.tjms.jus.br/pastadigital/sgcr/abrirConferenciaDocumento.do, informe o processo 1415142-54.2020.8.12.0000 e código 3760D3A.



*Poder Judiciário*
*Tribunal de Justiça de Mato Grosso do Sul*
*Gabinete do Desembargador Paulo Alberto de Oliveira*

Segundo o **§ 1º**, do referido **art**. **50**, o *desvio de finalidade* é a utilização da pessoa jurídica **com o propósito de lesar credores** e para a prática de atos ilícitos de qualquer natureza; situação esta, ao que parece, ocorrida na espécie, quando a agravante, mesmo não integrando o "***Grupo São Fernando***", com este entabulou negócios jurídicos, flagrantemente lesivos a este, mas que teriam beneficiado diretamente, **tanto a agravante**, quanto seus sócios (***Fernando*** e ***Cristiane Bumlai***) e familiares (*Família Bumlai*).

Por sua vez, segundo o **§ 2º**, do **art**. **50**, tem-se a ***confusão patrimonial*** pela **ausência de separação de fato entre os patrimônios**, caracterizada pelo: ***i*)** cumprimento repetitivo pela sociedade de obrigações do sócio ou do administrador ou vice-versa; ii) transferência de ativos ou de passivos sem efetivas contraprestações, exceto os de valor proporcionalmente insignificante; e ***iii*)** outros atos de descumprimento da autonomia patrimonial, *sendo possível também*, segundo prevê o **§ 3º**, a possibilidade de aplicação (inversa) da extensão das obrigações de sócios ou de administradores à pessoa jurídica, na hipótese em que se verificar que a *pessoa jurídica* se vale da *pessoa física* para se furtar de suas obrigações com credores.

No caso dos autos, pelo simples relato da inicial na origem, que veio acompanhada de **farto acervo probatório-documental** (f. 68-1.110), é possível se antever um quadro grave e atípico; tanto de ***abuso da personalidade jurídica*** de diversas ***pessoas jurídicas***, quanto de ***confusão patrimonial*** das várias ***pessoas físicas*** e ***jurídicas*** envolvidas nas negociações bastante ***anômalas***, caracterizando um **verdadeiro imbróglio**, que embasaram o pedido de *desconsideração de personalidade jurídica com pedido de extensão dos efeitos da falência*.

Nesse contexto, ao que parece, a ré-agravante ***Agropecuária CF LTDA*** teria sido utilizada por seus sócios ***Fernando*** e ***Cristiane Bumlai*** para a proteção patrimonial destes,

Este documento é cópia do original, assinado digitalmente por PAULO ALBERTO DE OLIVEIRA, liberado nos autos em 20/11/2020 às 11:47 .
Para conferir o original, acesse o site https://esaj.tjms.jus.br/pastadigital/sgcr/abrirConferenciaDocumento.do, informe o processo 1415142-54.2020.8.12.0000 e código 3760D3A.



*Poder Judiciário*
*Tribunal de Justiça de Mato Grosso do Sul*
*Gabinete do Desembargador  Paulo Alberto de Oliveira*

para, em razão dos atos lesivos praticados contra o "*Grupo São Fernando*", não serem tais bens alcançados por eventual pedido de extensão da falência; transferência patrimonial esta, aliás, de bens imóveis, em parte admitida no presente recurso, embora negada a finalidade referida.

Além disso, também é incontroversa  a  locação  de uma aeronave da ré-agravante *Agropecuária CF LTDA* ao "*Grupo São Fernando*",  ao custo reconhecido de **R$ 300.000,00  mensais**, e isto, quando  já em andamento a **Recuperação Judicial**, sob o frágil  argumento  de  que  essa quantia estaria bem abaixo do valor de mercado de uma locação equivalente.

É também, em princípio, despropositado,  o argumento de que tal aeronave serviria para facilitar deslocamentos para negociação com credores, ou para captar possíveis investimentos, quando, em verdade, nada disso foi comprovado nos autos, soando, de fato, temerário que, já em tempos de crise financeira, optasse  o  "*Grupo São Fernando*" por gastar tão vultosa  quantia **mensal**  para,  dentre  as  suas finalidades, facilitar encontros e negociações com credores, pagando por isso, em favor da *Agropecuária CF LTDA*, o mesmo valor da parcela mensal do financiamento da aeronave, quando, em verdade, o ideal, no contexto então vivido, seria se adotar atos e posturas para se  economizar e se  cortar despesas, frente à situação financeira que levou ao pedido de **Recuperação Judicial** do "*Grupo São Fernando*".

A realidade estampada nos autos exige, portanto, **cautela**, a recomendar que se aguarde o momento do julgamento do mérito recursal para melhor se examinar, tanto a eventual ampliação, na forma do **art**. **50**, do **CC**, dos efeitos da falência do "*Grupo São Fernando*" em desfavor da ré-agravante *Agropecuária CF LTDA*, quanto a extensão dessa medida  (delimitação),  frente  aos  supostos fatos/atos  lesivos  por  esta  praticados,

Este documento é cópia do original, assinado digitalmente por PAULO ALBERTO DE OLIVEIRA, liberado nos autos em 20/11/2020 às 11:47.
Para conferir o original, acesse o site https://esaj.tjms.jus.br/pastadigital/sgcr/abrirConferenciaDocumento.do, informe o processo 1415142-54.2020.8.12.0000 e código 3760D3A.



*Poder Judiciário*
*Tribunal de Justiça de Mato Grosso do Sul*
*Gabinete do Desembargador  Paulo Alberto de Oliveira*

caracterizadores de uma possível ocorrência de **confusão patrimonial**.

Assim, para efeito de análise do pedido liminar, cotejados, *de um lado*, a complexidade do caso e os sérios efeitos de uma possível liberação patrimonial já neste momento incipiente;  e, *do outro*, a necessidade de se assegurar, antes da tomada de qualquer decisão com efeitos possivelmente irreversíveis,  a  perfectibilização de contraditório prévio  e efetivo em favor dos requerentes-agravados **Massa Falida de São Fernando Açúcar e Álcool LTDA**,    **Massa Falida de São Fernando Energia I Ltda**, **Massa Falida de São Fernando Energia II LTDA**,   **Massa Falida De São Marcos Energia e Participações LTDA**  e  **Massa Falida de São Pio Empreendimentos e Participações LTDA**, **impõe-se**  a  **manutenção da indisponibilidade** de bens decretada em desfavor da agravante  **Agropecuária CF LTDA**, **salvo** no tocante à administração e  uso/disposição dos  **frutos** de  seu patrimônio, cuja restrição total poderia ensejar riscos à manutenção de  sua  atividade.

Diante do exposto, **DEFIRO**, **apenas EM PARTE**, o requerimento de *antecipação da tutela recursal*,  unicamente para ressalvar,  do  decreto de indisponibilidade de bens determinado pela decisão agravada,  a **administração e  uso/disposição dos frutos do patrimônio** da agravante, cuja  restrição  total  poderia ensejar riscos à manutenção de sua atividade.

Dê-se  ciência  **imediata**  ao  Juiz da causa.

Intime-se  o(a,s)  agravado(a,s), nos termos do **art**. **1.019**, **inc**. **II**, do **Código de Processo Civil/15**, para que responda(m) ao presente recurso no prazo de quinze (15) dias,

Este documento é cópia do original, assinado digitalmente por PAULO ALBERTO DE OLIVEIRA, liberado nos autos em 20/11/2020 às 11:47 .
Para conferir o original, acesse o site https://esaj.tjms.jus.br/pastadigital/sgcr/abrirConferenciaDocumento.do, informe o processo 1415142-54.2020.8.12.0000 e código 3760D3A.



*Poder Judiciário*
*Tribunal de Justiça de Mato Grosso do Sul*
*Gabinete do Desembargador  Paulo Alberto de Oliveira*

facultando-lhe(s) juntar a documentação que entender necessária.


Em seguida, colha-se o parecer da *Procuradoria-Geral de Justiça*.


**Intimem-se**.

Campo Grande-MS, 20  de novembro de 2020.


**Des**. **Paulo Alberto de Oliveira**
Relator

Este documento é cópia do original, assinado digitalmente por PAULO ALBERTO DE OLIVEIRA, liberado nos autos em 20/11/2020 às 11:47 .
Para conferir o original, acesse o site https://esaj.tjms.jus.br/pastadigital/sgcr/abrirConferenciaDocumento.do, informe o processo 1415142-54.2020.8.12.0000 e código 3760D3A.

*EXHIBIT "6"*

**Translation No. I-54472**
**Book No. 653**
**Page 456**

Sandra Regina Mattos Rudzit

TRADUTORA PÚBLICA

---

*I, Sandra Regina Mattos Rudzit, certified public translator, duly admitted and sworn by the Commercial Registry of the State of São Paulo, Brazil, hereby certify that a copy of a document was submitted to me, written in Portuguese, the translation of which is as follows:*

---

pages

### The Judicial Branch

### Court of Appeals of the State of Mato Grosso do Sul - Office of Appellate Judge Paulo Alberto de Oliveira

**Interlocutory Appeal No. 1405509-82.2021.8.12.0000**

Appellant(s): Guilherme de Barros Costa Marques Bumlai and Maurício de Barros Bumlai

Counsel: Daniel Penteado de Castro

Appellee(s): Bankruptcy Estate of São Fernando Açúcar e Álcool LTDA, Bankruptcy Estate of São

Fernando Energia I Ltda, Bankruptcy Estate of São Fernando Energia II LTDA, Bankruptcy Estate of São Marcos Energia e Participações LTDA and Bankruptcy Estate of São Pio Empreendimentos e Participações LTDA

Counsel(s): Octaviano Bazilio Duarte Filho and Henrique Rodrigues Forssell

### DECISION

*Records received from the court clerk on May 3, 2021.*

This is an *Interlocutory Appeal* filed by **Guilherme de Barros Costa Marques Bumlai** and **Maurício de Barros Bumlai** against the interlocutory decision rendered in the records of **Case No. 0810455-77.2020.8.12.0002** by the Judge of the 5th Civil Court of the Judicial District of Dourados, State of Mato Grosso do Sul, who, pursuant to an *Incident Motion for Piercing of Corporate Veil with a Request for Extension of the Effects of the Bankruptcy*, underline granted a motion for *provisional relief* filed by **Bankruptcy Estate of São Fernando Açúcar e Álcool LTDA, Bankruptcy Estate of São Fernando Energia I Ltda, Bankruptcy Estate of São Fernando Energia II LTDA, Bankruptcy Estate of São Marcos Energia e Participações LTDA** and *Bankruptcy Estate of São Pio Empreendimentos e Participações LTDA*, in order to:

a) pierce the corporate veil of *Agropecuária CF Ltda, Cristiane de Barros Costa Marques Bumlai Pagnonceli, Donex Participações e Empreendimentos OSJC LTDA, Fernando de Barros Bumlai, Guilherme de Barros Costa Marques Bumlai, José Carlos da Costa Marques Bumlai* and *Maurício de Barros Bumlai;*

b) order the attachment of assets and rights of the respondents, both in Brazil and overseas, in order to prohibit the *transfer, receipt of revenues and proceeds, or any form of disposal of assets/equity rights* up to the limit of the bankruptcy liabilities, that is, R$2,202,722,644.51 - pages 1.081-1.092, at the lower court.

Pursuant to a subsequent decision that granted the *incident motion for piercing of corporate veil* filed by the claimants, the lower court judge also ordered:

*a)* suspension of the auction of any assets of the execution debtors under **Case No. 1128168-72.2015.8.**26.0100, of the 16th Civil Court of São Paulo, State of São Paulo, including the rural real property named *Fazenda São Marcos,* because, pursuant to an urgent relief decision, it may be included in the list of assets of *bankrupt company São Fernando Açúcar e Álcool Ltda;*

*b)* freeze of all financial assets of the defendants abroad, in particular in the *Bahamas* and the *United States of America,* up to the amount of R$2,202,722,644.51 (pages 1.11-1.114, at the lower court).

**Interlocutory Appeal**: the appellants claim, in sum, that:

---

SANDRA REGINA MATTOS RUDZIT - Tradutora Pública e Intérprete Comercial - Português - Inglês - Matrícula na JUCESP nº 1688- CPF 082.060.018-08- RG 8.222.837-1
Rua Matias Aires, 402- 5° andar, cj. 51 - 01309-020- São Paulo - SP- Brasil - Fone/Fax: 55-11-3155-7383- e-mail: just@just.trd.br- www.just.trd.br

This public translation certificate was digitally signed by the Official Translator Sandra Regina Mattos Rudzit, JUCESP 1688. The verification code at https://www.portaldeassinaturas.com.br:443 is F037-C0EE-2888-7138.                    Página 1 de 15

**Translation No. I-54472**
**Book No. 653**
**Page 457**

a) "*the amount of deals carried out by the Appellants, as mentioned in the complaint, are perfectly consistent with the corporate activities that have been carried out by them for years and the property obtained throughout this period. Indeed, a significant portion of the assets of the Appellants has been fairly invested in the São Fernando Group*" (page 10);

b) "*they have not misappropriated, but rather invested, R$200,000,000.00 to promote the activities of the São Fernando Group*" (page 13), and "*in 2012, before the filing of the Request for Judicial Reorganization, pursuant to the negotiations of financial debts of the bankrupt companies, the Appellants offered real properties held by the individuals as guarantee for debts of the São Fernando Group in the historical amount of R$297,864,653,751*" (page 13);

c) "*in 2010, long before the Judicial Reorganization, shareholders Guilherme and Maurício offered the real property as guarantee for a million-dollar debt of São Fernando, which demonstrates that there is no such intention to hide assets to the detriment of the company*" (page 16), and, in addition to the guarantees at issue, "*also in 2012, the Appellants offered guarantees of over R$350,000,000.0011 for debts of the São Fernando Group, which, on that occasion, were negotiated with BNDES and Banco do Brasil*" (page 16);

*d)* there was no misappropriation and/or commingling of assets regarding the use of the aircraft purchased by the São Fernando Group, as it was used for promotion of business activities;

*e)* the "*withdrawals*" made by *José Carlos Bumlai* have a demonstrated business purpose;

*f)* the payments made to *Legend Engenheiros* did not involve appellants **Guilherme** and **Maurício Bumlai***;*

*g)* the merger of *company TSF Logística* into **São Fernando** did not cause losses, even because such company had a million-dollar turnover, and there was no operations involving the cash of **São Fernando**;

*h)* there was no loss or fraud regarding the payment of debts of *Immbrax;*

*i)* no equipment of **São Fernando** was misappropriated;

*j)* the supply of sugarcane by the appellants to **São Fernando** was legal and compliant;

*k)* no biological asset of **São Fernando** was appropriated by the appellants;

*l)* the payments to *Faccilytho* were intended for settlement of non-bankruptcy debts of *São Fernando;*

*m)* the legal requirements for the attachment of property were not fulfilled, with no probability of the right and danger of damage; on the contrary, there is a clear risk of reverse damage to the appellants, "*since the freezing of assets affects all the assets held by them - the order freezes two billion Reais, as well as the proceeds and dividends resulting from them, which even compromises the support of the Appellants and their respective families*" (page 57).

Thus, they filed an **appeal provisional remedy**, so that "*the effects of the appealed decisions be immediately cancelled, and all assets of the Appellants that have been frozen be released until the final judgment of this Interlocutory Appeal*", or, secondarily, "*at least that all proceeds and revenues arising from the assets of the Appellants be released, and the freeze amount to be reduced to R$171,827,880.01 75, which corresponds to the amounts claimed by the Appellants*" (page 63).

Regarding the merits, a motion was filed to "*amend the appealed decisions, and revoke the injunction for piercing of the corporate veil of the Appellees in relation to the Appellants, as well as the attachment of the assets of the Appellants granted by the lower court, thus imposing on the Appellees the burden of paying all expenses and fees arising from the write-off of the attachments that may have been recorded*" or, secondarily, "*order a reduction in the freeze amount to R$171,827,880.01 76, and release all proceeds and revenues arising from assets of the Appellants*" (f. 01-63).

**This is the report.**

**I hereby decide.**

The rule is that the Interlocutory Appeal does not have supersedeas effect (**Article 995, introductory paragraph, of the Code of Civil Procedure of 2015**).

SANDRA REGINA MATTOS RUDZIT - Tradutora Pública e Intérprete Comercial - Português - Inglês - Matrícula na JUCESP nº 1688- CPF 082.060.018-08- RG 8.222.837-1
Rua Matias Aires, 402- 5° andar, cj. 51 - 01309-020- São Paulo - SP- Brasil - Fone/Fax: 55-11-3155-7383- e-mail: just@just.trd.br- www.just.trd.br

**Translation No. I-54472**
**Book No. 653**
**Page 458**

Sandra Regina Mattos Rudzit

TRADUTORA PÚBLICA

However, **Article 995, sole paragraph**, of the **Code of Civil Procedure of 2015** exceptionally authorizes the granting of **supersedeas** until the final decision by the Panel of Judges, provided that there is probability of granting the appeal *(fumus boni iuris)* and the risk of damage that is serious or difficult or impossible to cure *(periculum in mora):*

"**Article 995**. The appeals do not prevent the decision from being effective, except for court orders otherwise.

**Sole Paragraph**. The effectiveness of the appealed decision may be suspended by decision of the rapporteur, if upon immediate effects thereof there is a risk of damage that is serious or difficult or impossible to cure, and the probability of granting the appeal is demonstrated".

In turn, **Article 1.019, subparagraph I, of the Code of Civil Procedure of 2015**, in order to enable the **supersedeas** to the Interlocutory Appeal, also provides for the possibility of granting the **appeal provisional remedy**:

"**Article 1.019**. Upon receipt of the Interlocutory Appeal at the court and immediate filing thereof, in the event Article 932, subparagraphs III and IV, is not applicable, the Rapporteur may, within five (5) days:

**I -** grant supersedeas to the appeal or grant, as provisional remedy, in whole or in part, the appeal, and inform the judge of the decision; [...]".

Indeed, **Article 299, Sole Paragraph**, combined with **Article 932, subparagraph II,** of the **Code of Civil Procedure of 2015**, also authorizes the Rapporteur to grant an **appeal provisional remedy**, provided that the requirements of the *fumus boni juris* and *periculum in mora* are present:

"**Article 299**. The provisional relief will be filed with the court of the action, and, when antecedent, with the court of competent jurisdiction to take cognizance of the main claim.

**Sole Paragraph**. Except for special provisions, regarding actions which the lower court has competent jurisdiction and the appeals, the provisional remedy will be filed with the judging body with competent jurisdiction to review the merits.

**Article 932.** The Rapporteur will:

[...]

**II -** review the motion for provisional relief on the appeals and proceedings subject to the original jurisdiction of the court;"

In this case, according to perfunctory judgment, in view of the necessity of more detailed factual explanation on the *actual* occurrence of the fraudulent acts attributable to the appellants - which will certainly demand a detailed review to be carried out in a timely fashion (e.g., judgment of the merits of this appeal and/or final judgment of the *Incident Motion for Piercing of Corporate Veil with a Request for Extension of the Effects of the Bankruptcy)* - considering the procedural timing at which this dispute is reviewed, one has to ponder that, contrary to whatever the appellant claims, the *specific acts* performed by them which caused losses to the **Bankruptcy Estate** of the "**São Fernando Group**" were not occasional.

On the contrary, there are several facts claimed in the complaint that would have enabled the use of funds of the "**São Fernando Group**", in particular those from bankrupt company **São Fernando Açúcar e Álcool LTDA**, for the benefit of the *Bumlai Family*, apparently always with the coordination and direct participation of the patriarch, *José Carlos Bumlai*, who did not even appear in the shareholder structure of the companies forming the bankrupt group, but who, **as the appellants**, would have performed *several acts*, whether directly or indirectly, that eventually resulted in million-dollar losses to the economic group that was declared as bankrupt, in an apparent practice of *commingling of assets* and possible abusive, willful use of *corporate veil*.

SANDRA REGINA MATTOS RUDZIT - Tradutora Pública e Intérprete Comercial - Português - Inglês - Matrícula na JUCESP nº 1688- CPF 082.060.018-08- RG 8.222.837-1
Rua Matias Aires, 402- 5° andar, cj. 51 - 01309-020- São Paulo - SP- Brasil - Fone/Fax: 55-11-3155-7383- e-mail: just@just.trd.br- www.just.trd.br

**Translation No. I-54472**
**Book No. 653**
**Page 459**

Sandra Regina Mattos Rudzit

TRADUTORA PÚBLICA

In this sense, the following facts may be inferred from the complaint to suggest the *direct participation* of the appellants, but which, as mentioned above, seemed to eventually enable intense, repeated asset losses for the "*São Fernando Group*", as transcribed below*:*

"[...] although only Mauricio Bumlai and Guilherme Bumlai were shareholders and officers of the São Fernando Group, the other members of the Bumlai Family had a closed equity and managerial relationship with the bankrupt companies.

[...]

By comparing the legal assumptions provided above with this case, one can easily perceive that the piercing of the corporate veil and extension of the bankruptcy effects claimed herein **must encompass not only Mauricio and Guilherme Bumlai, who were formal shareholders of the São Fernando Group,** but also the other members of the Bumlai Family.

[...]

That is to say, **although Mauricio Bumlai has all his assets unavailable pursuant to court order, he continues to freely transact cash abroad using his wife as catalyst for such fraud.**

In sum, the members of the Bumlai family, **both those listed in the corporate documents (Mauricio Bumlai and Guilherme Bumlai),** and those who were "hidden" (José Carlos Bumlai, Cristiane Bumlai and Fernando Bumlai), **perpetrated acts of abuse of corporate veil that resulted in the bankruptcy of the São Fernando Group; and, therefore, must be held accountable.**" (pages 45-46, of the lower court)

According to prior decisions of the **Superior Court of Appeals - STJ**, when "*commingling of assets between formally different companies is characterized, the piercing of the corporate veil of the bankrupt company is legitimate* **in order for the effects of the bankruptcy also achieve the other companies involved**" **(RMS 16.105/GO**, Rapporteur: **Justice Nancy Andrighi**, Third Panel, published in the Courts Gazette on September 22, 2003, page 314).

In this sense, **Article 50** of the **Civil Code of 2002** provides that, in case of *abuse of corporate veil,* characterized by *deviation from purpose* or *commingling of assets,* the Judge may, upon request, pierce the *corporate veil* so that the effects of underline relations of obligations **also apply to the property** of those that may have benefited directly or indirectly from the abuse.

Pursuant to **paragraph 1**, **Article 50**, *deviation from purpose* means the use of a legal entity **in order to harm creditors** and perpetrate illegal acts of any nature; which situation seems to have occurred in this case when the appellants entered into deals that were blatantly harmful to the "*São Fernando Group*", but which would have directly benefited both the appellants and their family members *(Bumlai Family).*

In turn, pursuant to **paragraph 2**, **Article 50**, there is *commingling of assets* due to the **failure to actually segregate the assets,** characterized by: ***i)*** repetitive compliance by the company with obligations of the shareholder or officer, or vice-versa; ***ii)*** transfer of assets or liabilities with no actual consideration, except for those of proportionally insignificant value; and ***iii)*** other acts of violation of equity independence, *which also enables,* pursuant to **paragraph 3**, the possibility of (inverted) application of the extension of the obligations of shareholders and officers to the legal entity, in the event that the *legal entity* uses an *individual* not to comply with obligations towards creditors.

In this case, for the mere account in the complaint in the lower court, which is accompanied by **a significant amount of evidence/documents** (page 68-1.110), it is possible to anticipate a serious, atypical scenario; both of *abuse of the corporate veil* of several *legal entities,* and *commingling of assets* of several *individuals* and *legal entities* involved in the *anomalous* negotiations, thus characterizing complete confusion, which served as basis for the incident motion for *piercing of corporate veil with a request for extension of the effects of the bankruptcy.*

The facts verified in the records, therefore, requires caution, and recommend to wait for the time of

SANDRA REGINA MATTOS RUDZIT - Tradutora Pública e Intérprete Comercial - Português - Inglês - Matrícula na JUCESP nº 1688- CPF 082.060.018-08- RG 8.222.837-1
Rua Matias Aires, 402- 5° andar, cj. 51 - 01309-020- São Paulo - SP- Brasil - Fone/Fax: 55-11-3155-7383- e-mail: just@just.trd.br- www.just.trd.br

This public translation certificate was digitally signed by the Official Translator Sandra Regina Mattos Rudzit, JUCESP 1688. The verification code at https://www.portaldeassinaturas.com.br:443 is F037-C0EE-2888-7138.                                                         Página 4 de 15



**Translation No. I-54472**
**Book No. 653**
**Page 460**

judgment of the appeal's merits to better examine the possible extension, pursuant to **Article 50** of the **Civil Code**, of the effects of the bankruptcy of the "***São Fernando Group***" to the detriment of the defendants/appellants, as to the extent of such action (delimitation), in view of the alleged harmful facts/acts perpetrated by them, which characterize the possible occurrence of ***commingling of assets***.

Thus, in order to review the claim for injunction, considering, *on the one hand*, the complexity of the case and the serious effects of a possible release of assets at this incipient time; and, *on the other hand*, the need to ensure, before making any decisions with possibly irreversible effects, the right to be heard of the claimants/appellees ***Bankruptcy Estate of São Fernando Açúcar e Álcool LTDA***, ***Bankruptcy Estate of São Fernando Energia I Ltda***, ***Bankruptcy Estate of São Fernando Energia II LTDA***, ***Bankruptcy Estate of São Marcos Energia e Participações LTDA*** and ***Bankruptcy Estate of São Pio Empreendimentos e Participações LTDA***, the <u>unavailability</u> of the property ordered against appellants ***Guilherme de Barros Costa Marques Bumlai*** and ***Maurício de Barros Bumlai*** <u>should be upheld,</u> <u>except</u> for the management use/disposal of the **proceeds** of their assets, whose total restriction could result in risks to the dignified survival of their families.

**In view of the above, I HEREBY GRANT, only IN PART**, the motion for the *appeal provisional remedy,* solely to impose an exception, regarding the order for unavailability of assets pursuant to the appealed decision, on the **management and use/disposal of the proceeds of the assets** of the appellants, whose total restriction could result in risks to the dignified survival of their families.

**The Judge of the case should be** immediately <u>notified</u> **of this decision.**

Notify the appellees, pursuant to **Article 1.019, subparagraph II**, of the **Code of Civil Procedure of 2015,** to respond to this appeal within fifteen (15) days, entitled to attach any documents as they think fit.

Also, the Office of the Attorney General of Justice should be granted access to the records.

Finally, I grant the motion on page 77, and the Judicial Office should take such actions required to grant the appellants access to the records.

**Notify.**

Campo Grande, State of Mato Grosso do Sul, May 5, 2021.

**Appellate Judge Claudionor Miguel Abss Duarte**

Interim Rapporteur

This document is a copy of the original, signed digitally by CLAUDIONOR MIGUEL ABSS DUARTE, released in the case records on May 5, 2021, at 9:34a.m.

To          check          the          original,          log          on          to
https://esaj.tjms.jus.br/pastadigital/sgcr/abrirConferenciaDocumento.do, inform case number 1405509-82.2021.8.12.0000 and code 3EC91A2.
*IN WITNESS WHEREOF I set my hand and seal to this translation.*

*São Paulo, June 22, 2021*

*Fees: R$1,440.90*

*Receipt No. 23891*

SANDRA REGINA MATTOS RUDZIT

Certified Translator

rag/301636.doc

SANDRA REGINA MATTOS RUDZIT - Tradutora Pública e Intérprete Comercial - Português - Inglês - Matrícula na JUCESP nº 1688- CPF 082.060.018-08- RG 8.222.837-1
Rua Matias Aires, 402- 5° andar, cj. 51 - 01309-020- São Paulo - SP- Brasil - Fone/Fax: 55-11-3155-7383- e-mail: just@just.trd.br- www.just.trd.br

This public translation certificate was digitally signed by the Official Translator Sandra Regina Mattos Rudzit, JUCESP 1688. The verification code at https://www.portaldeassinaturas.com.br:443 is F037-C0EE-2888-7138.



# Poder Judiciário
# Tribunal de Justiça de Mato Grosso do Sul
# Gabinete do Desembargador Paulo Alberto de Oliveira

**Agravo de Instrumento nº 1405509-82.2021.8.12.0000**

| | |
|---|---|
| Agravante(s): | Guilherme de Barros Costa Marques Bumlai e Maurício de Barros Bumlai |
| Advogado(a,s): | Daniel Penteado de Castro |
| Agravado(a,s): | Massa Falida de São Fernando Açúcar e Álcool LTDA,    Massa Falida de São Fernando Energia I Ltda,    Massa Falida de São Fernando Energia II LTDA, Massa Falida De São Marcos Energia e Participações LTDA  e  Massa Falida de São Pio Empreendimentos e Participações LTDA |
| Advogado(a,s): | Octaviano Bazilio Duarte Filho E Henrique Rodrigues Forssell |

**DECISÃO**

*Autos recebidos em carga em 03/05/2021*

Trata-se de *Agravo de Instrumento* interposto por **Guilherme de Barros Costa Marques Bumlai** e **Maurício de Barros Bumlai** contra decisão interlocutória proferida nos **autos nº 0810455-77**.**2020**.**8**.**12**.**0002** pelo Juiz da 5ª Vara Cível da Comarca de Dourados-MS que, em *Incidente de Desconsideração de Personalidade Jurídica com Pedido de Extensão dos Efeitos da Falência*, deferiu requerimento de *tutela provisória* formulado pela **Massa Falida de São Fernando Açúcar e Álcool LTDA**,    **Massa Falida de São Fernando Energia I Ltda**, **Massa Falida de São Fernando Energia II LTDA**,    **Massa Falida De São Marcos Energia e Participações LTDA**  e  **Massa Falida de São Pio Empreendimentos e Participações LTDA**, para:

***a***) desconsiderar a personalidade jurídica em desfavor de  **Agropecuária CF Ltda**, **Cristiane de Barros Costa Marques Bumlai Pagnonceli**,    **Donex Participações e Empreendimentos OSJC LTDA**,    **Fernando de Barros Bumlai**,    **Guilherme de Barros Costa Marques Bumlai**,    **José Carlos da Costa Marques Bumlai**  e  **Maurício de Barros Bumlai**;

Este documento é cópia do original, assinado digitalmente por CLAUDIONOR MIGUEL ABSS DUARTE, liberado nos autos em 05/05/2021 às 09:34.
Para conferir o original, acesse o site https://esaj.tjms.jus.br/pastadigital/sgcr/abrirConferenciaDocumento.do, informe o processo 1405509-82.2021.8.12.0000 e código 3EC91A2.



# Poder Judiciário
# Tribunal de Justiça de Mato Grosso do Sul
# Gabinete do Desembargador Paulo Alberto de Oliveira

*b*) determinar o <u>arresto de bens e direitos</u> dos requeridos, no Brasil e no exterior, para vedar a *transferência*, *percepção de rendimentos e frutos* ou *qualquer outra forma de disposição dos bens/direitos patrimoniais* até o limite do passivo falimentar de R$ 2.202.722.644,51 – f. 1.081-1.092, na origem.

Em decisão subsequente, que atendeu *pedido de reconsideração* dos autores, o Juízo de origem determinou, ainda:

*a*) a <u>suspensão da praça</u> de quaisquer bens dos executados no **Processo nº 1128168-72**.**2015**.**8**.26.0100, da 16ª Vara Cível de São Paulo-SP, inclusive do imóvel rural denominado *Fazenda São Marco*s, pois, por decisão em tutela de urgência pode ser incluída no rol de bens da *Falida São Fernando Açúcar e Álcool Ltda*;

*b*) o <u>bloqueio de todos ativos financeiros dos réus no exterior</u>, principalmente nas *Bahamas* e *Estados Unidos da América*, até o valor de R$ 2.202.722.644,51 (f. 1.11-1.114, na origem).

**Agravo de Instrumento**: as agravante sustentam, em suma, que:

*a*) "*o valor de negócios realizados pelos Agravantes, mencionados na petição inicial, são perfeitamente compatíveis com as atividades empresariais que desempenham há anos e o patrimônio conquistado ao longo deste período. Inclusive, boa parte dos ativos dos Agravantes foram justamente investidos no Grupo São Fernando*" (f. 10);

*b*) "*não desviaram, mas sim investiram R$ 200.000.000,00 para fomentar as atividades do Grupo São Fernando*" (f. 13), sendo que, "*ainda em 2012, antes da distribuição do Pedido de Recuperação Judicial, no âmbito de negociações de dívidas financeiras das empresas falidas, os Agravantes ofereceram bens imóveis de titularidade das pessoas físicas em garantia das dívidas do Grupo São Fernando, no valor histórico de R$297.864.653,751*" (f.

Este documento é cópia do original, assinado digitalmente por CLAUDIONOR MIGUEL ABSS DUARTE, liberado nos autos em 05/05/2021 às 09:34.
Para conferir o original, acesse o site https://esaj.tjms.jus.br/pastadigital/sgcr/abrirConferenciaDocumento.do, informe o processo 1405509-82.2021.8.12.0000 e código 3EC91A2.



# Poder Judiciário
# Tribunal de Justiça de Mato Grosso do Sul
# Gabinete do Desembargador Paulo Alberto de Oliveira

13);

***c***) "*em 2010, muito antes da Recuperação Judicial, os sócios Guilherme e Maurício ofereceram o imóvel em garantia de dívida milionária da São Fernando, o que comprova a inexistência de qualquer intenção de blindagem patrimonial em detrimento da companhia*" (f. 16) e, além das garantias reais em questão, "*também em 2012, os Agravantes ofereceram garantias fidejussórias de mais de R$350.000.000,0011 para dívidas do Grupo São Fernando que, naquela ocasião, foram renegociadas com o BNDES e o Banco do Brasil*" (f. 16);

***d***) não houve desvio e/ou confusão patrimonial na utilização aeronave adquirida pelo Grupo São Fernando, pois esta foi utilizada para o desempenho e fomento de funções empresariais;

***e***) os "*saques*" realizados por *José Carlos Bumlai* possuem lastro comercial comprovado;

***f***) os pagamentos realizados à *Legend Engenheiros* não tiveram o envolvimento dos agravantes **Guilherme** e **Maurício Bumlai**;

***g***) a incorporação da *Empresa TSF Logística* à **São Fernando** não gerou prejuízo, mesmo porque essa empresa possuía faturamento milionário e não houve qualquer movimentação no caixa da **São Fernando**;

***h***) não houve prejuízo ou fraude no pagamento de dívidas da *Immbrax;*

***i***) não houve desvio de equipamentos da **São Fernando**;

***j***) foi lícito e regular o fornecimento de cana-de-açúcar pelos agravantes à **São Fernando**;

Este documento é cópia do original, assinado digitalmente por CLAUDIONOR MIGUEL ABSS DUARTE, liberado nos autos em 05/05/2021 às 09:34.
Para conferir o original, acesse o site https://esaj.tjms.jus.br/pastadigital/sgcr/abrirConferenciaDocumento.do, informe o processo 1405509-82.2021.8.12.0000 e código 3EC91A2.



# Poder Judiciário
# Tribunal de Justiça de Mato Grosso do Sul
# Gabinete do Desembargador Paulo Alberto de Oliveira

***k***) não houve apropriação de ativos biológicos da ***São Fernando*** pelos agravantes;

***l***) os pagamentos à *Faccilytho* se destinaram à quitação de débitos extraconcursais da *São Fernando*;

***m***) os requisitos legais para o arresto de bens não foram preenchidos, não havendo probabilidade do direito e perigo de dano, ao contrário, há flagrante risco de dano reverso aos agravantes, " *já que o bloqueio de bens congela todo o patrimônio por eles detido – a ordem é para bloquear mais de 2 bilhões de reais! –, bem como os frutos e dividendos deles decorrentes, o que compromete a própria mantença dos Agravantes e de suas respectivas famílias*" (f. 57).

Requereram, assim, a **antecipação da tutela recursal**, para "*que sejam imediatamente sustados os efeitos das r. decisões recorridas, liberando-se todos os bens dos Agravantes que foram bloqueados, até o julgamento final deste Agravo de Instrumento*", ou, subsidiariamente, "*ao menos para que sejam liberados todos os frutos e rendimentos decorrentes dos patrimônios dos Agravantes e reduzido o valor do bloqueio de bens para R\$171.827.880,01 75 , que corresponde aos valores alegados pelas Agravadas*" (f. 63).

No mérito, requereu o provimento para "*reformar as r. decisões recorridas, revogando-se a liminar de desconsideração da personalidade jurídica das Agravadas em relação aos Agravantes, bem como o arresto de bens dos Agravantes deferido na origem, impondo às Agravadas o ônus de arcar com todas as despesas e emolumentos decorrentes da baixa dos arrestos eventualmente registrados*" ou, subsidiariamente, para "*determinar a redução do valor do bloqueio de bens para R\$ 171.827.880,01 76, liberando-se todos os frutos e rendimentos decorrentes dos patrimônios dos Agravantes*" (f. 01-63).

Tribunal de Justiça de Mato Grosso do Sul - Av. Mato Grosso - Bloco 13 - Parque dos Poderes - 79031-902 - Campo Grande - MS

Este documento é cópia do original, assinado digitalmente por CLAUDIONOR MIGUEL ABSS DUARTE, liberado nos autos em 05/05/2021 às 09:34.
Para conferir o original, acesse o site https://esaj.tjms.jus.br/pastadigital/sgcr/abrirConferenciaDocumento.do, informe o processo 1405509-82.2021.8.12.0000 e código 3EC91A2.



# Poder Judiciário
# Tribunal de Justiça de Mato Grosso do Sul
# Gabinete do Desembargador Paulo Alberto de Oliveira

**É o relatório**.

**Decido**.

A regra é a de que o *Agravo de Instrumento* não possui efeito suspensivo (**art**. **995**, *caput*, do **CPC/15**).

Porém, o **art**. **995**, **parágrafo único**, do **CPC/15** autoriza, excepcionalmente, a concessão de **efeito suspensivo** até o pronunciamento definitivo do Órgão Colegiado, desde que presente a probabilidade de provimento do recurso (*fumus boni iuris*) e o risco de dano grave, de difícil ou impossível reparação (*periculum in mora*):

> "**Art. 995**. Os recursos não impedem a eficácia da decisão, salvo disposição legal ou decisão judicial em sentido diverso.
> **Parágrafo único**. A eficácia da decisão recorrida poderá ser suspensa por decisão do relator, se da imediata produção de seus efeitos houver risco de dano grave, de difícil ou impossível reparação, e ficar demonstrada a probabilidade de provimento do recurso".

Por sua vez, o **art**. **1**.**019**, **inc**. **I**, do **Código de Processo Civil/2015**, a par de também possibilitar a atribuição de **efeito suspensivo** ao agravo de instrumento, ainda previu a possibilidade de deferimento de **antecipação dos efeitos da tutela recursal**:

> "**Art. 1.019**. Recebido o agravo de instrumento no tribunal e distribuído imediatamente, se não for o caso de aplicação do art. 932, incisos III e IV, o relator, no prazo de 5 (cinco) dias:
> **I -** poderá atribuir efeito suspensivo ao recurso ou deferir, em antecipação de tutela, total ou parcialmente, a pretensão recursal, comunicando ao juiz sua decisão; [...]".

A propósito, o **art**. **299**, **parágrafo único**, c/c **art**. **932**, **inc**. **II**, do **Código de Processo Civil/2015**, também autorizam o Relator a **antecipar os efeitos da tutela**

Este documento é cópia do original, assinado digitalmente por CLAUDIONOR MIGUEL ABSS DUARTE, liberado nos autos em 05/05/2021 às 09:34.
Para conferir o original, acesse o site https://esaj.tjms.jus.br/pastadigital/sgcr/abrirConferenciaDocumento.do, informe o processo 1405509-82.2021.8.12.0000 e código 3EC91A2.



# Poder Judiciário
# Tribunal de Justiça de Mato Grosso do Sul
# Gabinete do Desembargador Paulo Alberto de Oliveira

**recursal**, desde que presentes os requisitos do *fumus boni juris* e do *periculum in mora:*

> "**Art. 299**. A tutela provisória será requerida ao juízo da causa e, quando antecedente, ao juízo competente para conhecer do pedido principal.
> **Parágrafo único**. Ressalvada disposição especial, na ação de competência originária de tribunal e <u>nos recursos a tutela provisória será requerida ao órgão jurisdicional competente para apreciar o mérito</u>.
>
> Art. 932. <u>Incumbe ao relator</u>:
> [...]
> **II -** apreciar o pedido de <u>tutela provisória</u> nos recursos e nos processos de competência originária do tribunal;"

Na espécie, num juízo perfunctório, à guisa de maiores aprofundamentos no campo fático acerca da *real* e *efetiva* ocorrência dos atos fraudulentos imputados aos agravantes – cuja tarefa, por certo, demandará análise pormenorizada, a ser feita em momento oportuno (*v.g.*, julgamento do mérito do presente recurso e/ou julgamento final do *Incidente de Desconsideração de Personalidade Jurídica com Pedido de Extensão dos Efeitos da Falência*) –, impõe-se, em razão do momento processual em que se analisa a controvérsia, ponderar que, ao contrário do que sustentam os agravantes, não seriam *atos pontuais* de sua autoria que teriam causado prejuízo à **Massa Falida** do "**Grupo São Fernando**".

Ao contrário, <u>diversos</u> são os fatos imputados na inicial, que teriam viabilizado o uso de recursos do "**Grupo São Fernando**", em especial oriundos da falida ***São Fernando Açúcar e Álcool LTDA***, em favor e em benefício da *Família Bumlai*, sempre, ao que parece, com a coordenação e participação direta também do patriarca *José Carlos Bumlai*, que sequer integraria o quadro societário das empresas componentes do grupo falido, mas que, **assim como os agravantes**, teriam levado a efeito a prática de *diversos atos*, seja diretamente, seja indiretamente, que, ao fim e ao cabo, viabilizaram a criação de um prejuízo milionário ao grupo econômico que foi declarado falido, em aparente prática de *confusão patrimonial* e de

Este documento é cópia do original, assinado digitalmente por CLAUDIONOR MIGUEL ABSS DUARTE, liberado nos autos em 05/05/2021 às 09:34. Para conferir o original, acesse o site https://esaj.tjms.jus.br/pastadigital/sgcr/abrirConferenciaDocumento.do, informe o processo 1405509-82.2021.8.12.0000 e código 3EC91A2.



# Poder Judiciário
# Tribunal  de Justiça  de Mato Grosso  do Sul
# Gabinete  do Desembargador  Paulo Alberto  de Oliveira

eventual  uso abusivo  e doloso  da *personalidade  de  pessoas jurídicas*.

Nesse sentido,   extraem-se da inicial   os seguintes fatos, que teriam a *participação direta* dos agravantes,  mas que, como dito, ao fim e ao cabo, acabaram, ao que parece, por viabilizar  intenso  e  reiterado  prejuízo  ao  patrimônio  do   "***Grupo São Fernando***", *verbis*:

> "[...]  embora  somente  Mauricio  Bumlai  e  Guilherme  Bumlai compusessem  o quadro  de sócios  e administradores do Grupo São Fernando, os demais membros da Família Bumlai ostentavam íntima relação patrimonial e gerencial com as sociedades Falidas.
>
> [...]
>
> Cotejando-se, agora, as premissas jurídicas esboçadas acima com o caso dos autos, fica fácil perceber que a desconsideração da personalidade jurídica e extensão dos efeitos da falência aqui pleiteadas **devem abranger não somente Mauricio e Guilherme Bumlai, que formalmente participavam do quadro societário do Grupo São Fernando**, mas também os demais membros da Família Bumlai.
>
> [...]
>
> Ou  seja,  **embora Mauricio Bumlai tenha todos os seus bens sujeitos à ndisponibilidade declarada judicialmente, continua a movimentar dinheiro ivremente no exterior, utilizando sua esposa como catalisadora da fraude**.
>
> Em suma, os membros da Família Bumlai, **tanto aqueles que constam nos documentos societários (Mauricio Bumlai e Guilherme Bumlai)**, quanto aqueles que atuavam de forma "oculta" (José Carlos Bumlai, Cristiane Bumlai, e Fernando Bumlai), **empreenderam atos de abuso de personalidade que culminaram na bancarrota do Grupo São Fernando; e, dessa forma, devem ser responsabilizados.**" (f. 45-46, na origem)

Este documento é cópia do original, assinado digitalmente por CLAUDIONOR MIGUEL ABSS DUARTE, liberado nos autos em 05/05/2021 às 09:34.
Para conferir o original, acesse o site https://esaj.tjms.jus.br/pastadigital/sgcr/abrirConferenciaDocumento.do, informe o processo 1405509-82.2021.8.12.0000 e código 3EC91A2.



# Poder Judiciário
# Tribunal de Justiça de Mato Grosso do Sul
# Gabinete do Desembargador Paulo Alberto de Oliveira

Conforme precedente do **STJ**, uma vez "*caracterizada a confusão patrimonial entre sociedades formalmente distintas, é legitima a* <u>*desconsideração da personalidade jurídica da falida*</u> *para que os efeitos do decreto falencial alcancem as demais sociedades envolvidas*" (**RMS 16**.**105/GO**, Rel. **Min**. **Nancy Andrighi**, Terceira Turma, DJ 22/09/2003, p. 314).

Nesse sentido, prevê o **art**. **50**, do **CC/02**, que, em caso de *abuso da personalidade jurídica*, caracterizado pelo *desvio de finalidade* ou pela *confusão patrimonial*, poderá o Juiz, a requerimento, desconsiderar a *personalidade jurídica* para que os efeitos de <u>certas</u> e <u>determinadas</u> relações de obrigações **sejam estendidos aos bens** daqueles beneficiados direta ou indiretamente pelo abuso.

Segundo o **§ 1º**, do referido **art**. **50**, o *desvio de finalidade* é a utilização da pessoa jurídica **com o propósito de lesar credores** e para a prática de atos ilícitos de qualquer natureza; situação esta, ao que parece, ocorrida na espécie, quando os agravantes entabularam negócios jurídicos, flagrantemente lesivos ao "*Grupo São Fernando*", mas que teriam beneficiado diretamente, tanto as agravantes, quanto seus familiares (*Família Bumlai*).

Por sua vez, segundo o **§ 2º**, do **art**. **50**, tem-se a *confusão patrimonial* pela **ausência de separação de fato entre os patrimônios**, caracterizada pelo: *i*) cumprimento repetitivo pela sociedade de obrigações do sócio ou do administrador ou vice-versa; ii) transferência de ativos ou de passivos <u>sem efetivas contraprestações</u>, exceto os de valor proporcionalmente insignificante; e *iii*) outros atos de descumprimento da autonomia patrimonial, *sendo possível também*, segundo prevê o **§ 3º**, a possibilidade de aplicação (inversa) da extensão das obrigações de sócios ou de administradores à pessoa jurídica, na

Este documento é cópia do original, assinado digitalmente por CLAUDIONOR MIGUEL ABSS DUARTE, liberado nos autos em 05/05/2021 às 09:34.
Para conferir o original, acesse o site https://esaj.tjms.jus.br/pastadigital/sgcr/abrirConferenciaDocumento.do, informe o processo 1405509-82.2021.8.12.0000 e código 3EC91A2.



# Poder Judiciário
# Tribunal de Justiça de Mato Grosso do Sul
# Gabinete do Desembargador Paulo Alberto de Oliveira

hipótese em que se verificar que a *pessoa jurídica* se vale da *pessoa física* para se furtar de suas obrigações com credores.

No caso dos autos, pelo simples relato da inicial na origem, que veio acompanhada de **farto acervo probatório-documental** (f. 68-1.110), é possível se antever um quadro grave e atípico; tanto de *abuso da personalidade jurídica* de diversas *pessoas jurídicas*, quanto de *confusão patrimonial* das várias *pessoas físicas* e *jurídicas* envolvidas nas negociações bastante *anômalas*, caracterizando um **verdadeiro imbróglio**, que embasaram o pedido de *desconsideração de personalidade jurídica com pedido de extensão dos efeitos da falência*.

A realidade estampada nos autos exige, portanto, **cautela**, a recomendar que se aguarde o momento do julgamento do mérito recursal para melhor se examinar, tanto a eventual ampliação, na forma do **art**. **50**, do **CC**, dos efeitos da falência do "*Grupo São Fernando*" em desfavor dos réus-agravantes, quanto a extensão dessa medida (delimitação), frente aos supostos fatos/atos lesivos por estes praticados, caracterizadores de uma possível ocorrência de *confusão patrimonial*.

Assim, para efeito de análise do pedido liminar, cotejados, *de um lado*, a complexidade do caso e os sérios efeitos de uma possível liberação patrimonial já neste momento incipiente; e, *do outro*, a necessidade de se assegurar, antes da tomada de qualquer decisão com efeitos possivelmente irreversíveis, a perfectibilização de contraditório prévio e efetivo em favor dos requerentes-agravados **Massa Falida de São Fernando Açúcar e Álcool LTDA**, **Massa Falida de São Fernando Energia I Ltda**, **Massa Falida de São Fernando Energia II LTDA**, **Massa Falida De São Marcos Energia e Participações LTDA** e **Massa Falida de São Pio Empreendimentos e Participações LTDA**,

Este documento é cópia do original, assinado digitalmente por CLAUDIONOR MIGUEL ABSS DUARTE, liberado nos autos em 05/05/2021 às 09:34.
Para conferir o original, acesse o site https://esaj.tjms.jus.br/pastadigital/sgcr/abrirConferenciaDocumento.do, informe o processo 1405509-82.2021.8.12.0000 e código 3EC91A2.



# Poder Judiciário
# Tribunal de Justiça de Mato Grosso do Sul
# Gabinete do Desembargador Paulo Alberto de Oliveira

**impõe-se** a **manutenção da indisponibilidade** de bens decretada em desfavor dos agravantes *Guilherme de Barros Costa Marques Bumlai* e *Maurício de Barros Bumlai*, **salvo** no tocante à administração e uso/disposição dos **frutos** de seu patrimônio, cuja restrição total poderia ensejar riscos à manutenção de sua sobrevivência digna, bem como de suas famílias.

      **Diante do exposto**, **DEFIRO**, **apenas EM PARTE**, o requerimento de *antecipação da tutela recursal*, unicamente para ressalvar, do decreto de indisponibilidade de bens determinado pela decisão agravada, a **administração e uso/disposição dos frutos do patrimônio** dos agravantes, cuja restrição total poderia ensejar riscos à manutenção de sua sobrevivência digna, bem como de suas famílias.

      **Dê-se ciência imediata ao Juiz da causa**.

      Intime-se o(a,s) agravado(a,s), nos termos do **art**. **1.019**, **inc**. **II**, do **Código de Processo Civil/15**, para que responda(m) ao presente recurso no prazo de quinze (15) dias, facultando-lhe(s) juntar a documentação que entender necessária.

      Oportunamente, dê-se vista dos autos à *Procuradoria-Geral de Justiça*.

      Por fim, defiro o requerimento de f. 77, cabendo à Secretaria Judiciária a adoção das medidas necessárias para viabilizar o acesso dos agravantes aos autos.

      **Intimem-se**.

      Campo Grande-MS, 5 de maio de 2021.

      **Des**. **Claudionor Miguel Abss Duarte**
      Relator em Substituição Legal

Este documento é cópia do original, assinado digitalmente por CLAUDIONOR MIGUEL ABSS DUARTE, liberado nos autos em 05/05/2021 às 09:34.
Para conferir o original, acesse o site https://esaj.tjms.jus.br/pastadigital/sgcr/abrirConferenciaDocumento.do, informe o processo 1405509-82.2021.8.12.0000 e código 3EC91A2.